MARK BRNOVICH
ARIZONA ATTORNEY GENERAL
Firm State Bar No. 14000

Patricia Cracchiolo LaMagna (No. 021880)
Aubrey Joy Corcoran (No. 025423)
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona  85004
Tel.:(602) 542-8854
Fax:(602) 542-8308
EducationHealth@azag.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D.T., a minor, by and through his parent and next friend Lizette Trujillo; Jane Doe, a minor, by and through her parent and next friend Susan Doe; and Helen Roe, a minor, by and through her parent and next friend Megan Roe,<br><br>Plaintiffs,<br><br>v.<br><br>Dr. Cara Christ, M.D., in her official capacity as State Registrar of Vital Records and Director the Arizona Department of Health Services, Arizona Department of Health Services; Thomas Salow, in his official capacity as Branch Chief of the Division of Public Health Licensing Services at the Arizona Department of Health Services; and Krystal Colburn, in her official capacity as Bureau Chief and Assistant Registrar of the Bureau of Vital Records as the Arizona Department of Health Services,<br><br>Defendants. | No. 4:20-cv-00484-JAS<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |

1   Plaintiff Jane Doe is not entitled to mandatory preliminary injunctive relief

2   because she is not prevented from obtaining an amended birth certificate.[1]   Because an

3   administrative process to amend her birth certificate is available to her, the

4   constitutional violations that she alleges are also not occurring.   Accordingly, the

5   requested injunctive relief should be denied because (1) she cannot succeed on the

6   merits; (2) she will not suffer irreparable harm if injunctive relief is not granted; and (3)

7   the balance of equities and public interest will not tip in her favor.   Jane Doe's Motion

8   for Preliminary Injunction ("Motion") is based on rumor and a misapprehension of the

9   law and fails to adequately assert that Defendants have prevented her from amending

10  the sex/gender field on her birth certificate.   Transgender individuals, regardless of age,

11  are currently able to amend the sex/gender field on their birth certificates without

12  proving that they have undergone surgery.   Jane Doe's assertion that Arizona law

13  requires her to undergo surgery before she is able to amend the sex/gender field on her

14  birth certificate is false.

15  There is an administrative process by which Jane Doe is able to amend the

16  sex/gender field on her birth certificate and obtain an amended registered birth

17  certificate that she can use for her school registration.[2]   This lawsuit and this request for

18  a preliminary injunction are not it.   Jane Doe's Motion is legally deficient and therefore

19  this Court should dismiss it.

20  The following Memorandum of Points and Authorities supports this Response.

21

22  [1] Defendants note that Plaintiffs' Complaint does not include a request for preliminary
    injunctive relief or mandatory preliminary injunctive relief.  (Doc. 1 at 21.)

23

24  [2] Given Jane Doe's imminent need to obtain an amended birth certificate for her school
    registration, the currently available method by which Jane Doe may amend the
    sex/gender field on her birth certificate without undergoing surgery has already been

25  communicated to her counsel in an attempt to ensure that she has sufficient time to
    complete the amendment process, obtain her amended birth certificate, and register for

26  school.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     Factual Background.**

3        The Legislature established a statewide system of vital records and appointed the

4    Director of the Arizona Department of Health Services ("the Department") as the state

5    registrar of vital records.  A.R.S. § 36-302.  Defendants Dr. Cara Christ, Director of the

6    Department; Thomas Salow, Branch Chief of the Division of Public Health Licensing

7    Services at the Department; and Krystal Colburn, Assistant State Registrar and Bureau

8    Chief of the Bureau of Vital Records at the Department, implement and enforce the

9    statewide system of vital records through the Department.[3]  A.R.S. §§ 36-302, 36-303.

10   Defendants and the Department have only the authority that the Legislature has granted

11   to them.  *See Facilitec, Inc. v. Hibbs*, 206 Ariz. 486, 488, ¶ 10, 80 P.3d 765, 767 (2003)

12   ("Because agencies are creatures of statute, the degree to which they can exercise any

13   power  depends  upon  the legislature's grant of authority to  the agency."); *see  also*

14   *Cochise County v. Kirschner,* 171 Ariz. 258, 261, 830 P.2d 470, 473 (App. 1992) ("An

15   agency . . . has no powers other than those the legislature has delegated to it.").

16       The state registrar may amend registered certificates only as authorized by

17   Arizona Revised Statutes title 36, chapter 3.  A.R.S. § 36-323.  Whereas the Legislature

18   has given the state registrar broad authority to adopt rules to make *corrections* to vital

19   records, her authority to *amend* registered birth certificates is limited.  *Compare* A.R.S.

20   § 36-323(C) (stating generally that "the state registrar shall adopt rules for making

21   corrections to vital records") with A.R.S. §§ 36-323(A), (B) and 36-337 (enumerating

22   when the state registrar may amend registered birth certificates).  The Legislature has

23   defined "correction" as "a change made to a registered certificate because of a

24

---

25   [3] Because the state registrar implements and enforces the vital records statutes and rules
     through the Department, Defendants will use "the Department" when referring to
26   administrative actions and processes.

1    typographical error, including misspelling and missing or transposed letters or numbers"

2    and has defined "amend" as "to make a change, other than a correction, to a registered

3    certificate by adding, deleting or substituting information on that certificate."[4]   A.R.S.

4    § 36-301.

5         All amendments to birth certificates are administrative actions and must follow

6    an administrative process that includes submitting a written request for the amendment

7    in a Department-approved format, paying the required fee, and submitting any required

8    documents to support the request for the amendment.  A.R.S. §§ 36-302(B) (authorizing

9    the state registrar to adopt administrative rules to implement the system of vital

10   records); 36-323 (stating that the state registrar shall make amendments to registered

11   certificates according to the vital records statutes and rules); 36-337 (stating the

12   circumstances under which the state registrar is authorized to amend a birth certificate);

13   36-341 (authorizing the state registrar to establish fees for amending registered

14   certificates); A.A.C. R9-19-103(E)(2)(c)(ii) (stating that an applicant has administrative

15   appeal rights when an application to amend a birth certificate is denied); R9-19-

16   105(A)(5)(a) (establishing the fee for amending a birth certificate); R9-19-208

17   (establishing the administrative process and requirements for requesting an amendment

18   to a birth certificate).  The Legislature has authorized the Department to amend the

19   sex/gender field on a birth certificate when it receives, in addition to a written request

20   and fee payment, one of the following documents to support the request for the

21   amendment:

22        a.    A written statement by a physician verifying that the person has

23              undergone a sex change operation,

24

25   [4] Jane Doe states that she seeks a "corrected birth certificate."  (Doc. 3 at 4, 16, 19.)
     However, under A.R.S. § 36-301, a change to the sex/gender field would be an
26   amendment to a birth certificate, not a correction.

4

1          b.     A written statement by a physician verifying that the person has a

2                  chromosomal count that establishes the sex of the person as different than

3                  in the registered birth certificate, *or*

4          c.     A court order ordering an amendment to the sex/gender field on the

5                  person's birth certificate.

6  A.R.S. § 36-377(A); *see also* Colburn Decl. ¶ 4.  Accordingly, a person who has not

7  undergone surgery[5] would submit a court order ordering an amendment to the

8  sex/gender field when making a written request to amend the registered birth certificate.

9  A.R.S. § 36-377(A); A.A.C. R9-19-208(B), (P)(2); *see also* Colburn Decl. ¶ 4.

10        Defendants and the Department comply with the vital records statutes, A.R.S.

11  title 36, chapter 3, and rules, A.A.C. title 9, chapter 19, and therefore will amend the

12  sex/gender field on a birth certificate when ordered to do so.  Colburn Decl. ¶¶ 3, 5, 6.

13  When the Department receives (1) a written request for an amended birth certificate in a

14  Department-approved format from a person, or the person's parent or legal guardian if

15  the person is a minor; (2) the applicable fee payment; and (3) a court order ordering an

16  amendment to the sex/gender field on the person's birth certificate, the Department will

17  make the amendment without requiring proof that the person has undergone surgery.

18  Colburn Decl. ¶ 6.   This is not hypothetical—this has been and is presently occurring

19  at the Department.

20        The Department *has received* and *has amended* the sex/gender field on

21  individuals' birth certificates based on court orders to do so.  *Id.* ¶ 7.   When the

22  Department has received written requests to amend the sex/gender fields on individuals'

23

24  [5] Section 36-337(A)(3) is applicable to individuals who have undergone surgery as well
as those who have a chromosomal count that establishes that their sex is different than

25  in their registered birth certificates.  This portion of A.R.S. § 36-337(A)(3) is not at
issue and therefore Defendants' Response will limit or exclude this language as

26  necessary.

1    birth certificates together with fee payments and court orders ordering an amendment to

2    the sex/gender fields on the individuals' birth certificates, it has amended the sex/gender

3    fields without requiring proof that the individuals have undergone surgery.  *Id.*

4    In the Motion, Jane Doe asserts that "Defendants' conduct is impeding [her]

5    healthy development and well-being and causing her serious irreparable harms" (Doc. 3

6    at 8), but offers only inadmissible hearsay as the basis for her allegation.  Jane Doe

7    states in her Motion that her doctor "informed Susan [Doe] that [the Department]

8    required proof of surgery, even when seeking a court-ordered change to the sex listed on

9    the birth certificate" and that she "confirmed this information in conversations with

10   several parents raising transgender children in her area."  (*Id.* at 9; *see also* Doc. 3-6

11   ¶ 25.)   Susan Doe further states in her declaration that she "attempted to submit an

12   application to correct Jane's sex marker with the Arizona Department of Health

13   Services" and that she "was informed by [an unnamed Department] employee that

14   Arizona requires proof of gender-confirming surgery before a transgender person can

15   correct the sex listed on their birth certificate" (Doc. 3-6 ¶ 24), however these

16   allegations are not included in Plaintiffs' Complaint or Jane Doe's Motion.[6]  Ultimately

17   Jane Doe admits that Susan Doe did not attempt to obtain a court order to amend the

18   sex/gender field on Jane Doe's birth certificate.  (Doc. 3 at 9.)   Further, she fails to

19   assert that Susan Doe made any attempt to request that a Department representative

20   appear at a superior court hearing on a petition to amend the sex/gender field on Jane

21

22   [6] Susan Roe's assertion that she was "informed by [an unnamed Department] employee"
     is inadmissible hearsay as are her communications with Jane Doe's doctor and other
23   parents.  Moreover, while an individual applying for an amendment under A.R.S. § 36-
     337(A)(3) *would* need to submit to the Department a physician's written statement that
24   either verifies the person's sex change operation or verifies the person's chromosomal
     count, an individual applying for an amendment under A.R.S. § 36-337(A)(4) would
25   need to submit to the Department only a court order ordering an amendment to the birth
     certificate.  It is possible that Susan Roe misunderstood this distinction or asked only
26   how one would apply for an amendment under A.R.S. § 36-337(A)(3) specifically.

1   Doe's birth certificate to explain how the Department processes court orders that order

2   an amendment to the sex/gender field on a birth certificate.

3         To the best of Ms. Colburn's knowledge, Susan Doe (1) has not submitted a

4   written request to the Department to amend the sex/gender field on Jane Doe's birth

5   certificate, (2) has not contacted her or anyone at the Department to determine how she

6   may amend the sex/gender field on Jane Doe's birth certificate when Jane Doe has not

7   undergone a sex change operation and does not have a chromosomal count that

8   establishes Jane Doe's sex as different than in her registered birth certificate, and (3) has

9   not requested that the Department produce a representative to answer questions or

10  provide testimony at a superior court hearing on a petition to amend Jane Doe's birth

11  certificate.[7]  *Id.* ¶¶ 10-12.  When requested, the Department will generally produce a

12  representative to answer questions or provide testimony at a superior court hearing on a

13  petition to amend a birth certificate.  *Id.* ¶ 8.

14        Defendants, the Department, and Arizona law do not require individuals to have

15  undergone surgery before being able to amend the sex/gender field on their registered

16  birth certificates.  A.R.S. § 36-337(A)(4), A.A.C. R9-19-208(B), (P)(2); Colburn Decl.

17  ¶¶ 3-7.  There are three methods by which an individual may amend the sex/gender field

18  on a registered birth certificate: (1) providing a physician statement verifying the

19  person's sex change operation, (2) providing a physician statement verifying the

20  person's chromosomal count, *or* (3) providing a court order ordering an amendment to a

21  birth certificate.  A.R.S. § 36-337(A)(3), (4).  The process set forth in A.R.S. § 36-

22  337(A)(3) and A.A.C. R9-19-208(O) is applicable to only individuals who have

23  undergone a sex change operation or who have a chromosomal count that establishes

24  the individuals' sex as different than in their registered birth certificates.  Individuals

25  _____

[7] Ms. Colburn is aware of Jane Doe's and Susan Doe's true identities.  Colburn Decl.
26  ¶ 9.

7

1   who do not meet these prerequisites may avail themselves of the administrative process

2   to amend their birth certificates by submitting to the Department a court order ordering

3   an amendment to the sex/gender field on their registered birth certificates.  A.R.S. § 36-

4   337(A)(4), A.A.C. R9-19-208(B), (P)(2); Colburn Decl. ¶¶ 3-7.  Thus, Jane Doe is not

5   required to undergo surgery before being able to amend the sex/gender field on her

6   registered birth certificate.  Moreover, she has not identified what conduct Defendants

7   are engaging in that is causing her irreparable harm.

8   **II.      Argument.**

9          To obtain a preliminary injunction a plaintiff must satisfy a four-factor test

10  establishing that (1) she is likely to succeed on the merits, (2) she is likely to suffer

11  irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in

12  her favor, and (4) an injunction is in the public interest.  *Winter v. Natural Res. Def.*

13  *Council Inc.,* 555 U.S. 7, 20 (2008).  These factors are weighed on a sliding scale so that

14  "if a plaintiff can only show that there are 'serious questions going to the merits'—a

15  lesser showing than likelihood of success on the merits—then a preliminary injunction

16  may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the

17  other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709

18  F.3d 1281, 1291 (9th Cir. 2013) (citing *Alliance for the Wild Rockies v. Cottrell,* 632

19  F.3d 1127, 1135 (9th Cir. 2011)).   The first *Winter* factor—likely success on the

20  merits—is the most important because if a plaintiff fails to show a likelihood of success

21  on the merits no further determination of irreparable harm or balancing of hardships is

22  necessary.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

23          "The award of an interlocutory injunction by courts of equity has never been

24  regarded as strictly a matter of right, even though irreparable injury may otherwise

25  result to the plaintiff."  *Yakus v. U. S.*, 321 U.S. 414, 440 (1944).  "[I]t has long been

26

1   held that an injunction is 'to be used sparingly, and only in a clear and plain case.'"

2   *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Irwin v. Dixion*, 9 How. 10, 33, 13

3   L. Ed. 25 (1850)).   Mandatory preliminary injunctions are "particularly disfavored"

4   because they go "well beyond simply maintaining the status quo." *Anderson v. United*

5   *States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (quoting *Martinez v. Mathews*, 544 F.2d

6   1233, 1243 (5th Cir. 1976)).

7        "The purpose of a preliminary injunction is merely to preserve the relative

8   positions of the parties until a trial on the merits can be held."   *Univ. of Texas v.*

9   *Camenisch*, 451 U.S. 390, 395 (1981).   However, while a prohibitory injunction

10  "prohibits a party from taking action and preserves the status quo," a mandatory

11  injunction "orders a responsible party to take action."   *Arizona Dream Act Coal. v.*

12  *Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (quoting *Marlyn Nutraceuticals, Inc. v.*

13  *Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878-79 (9th Cir. 2009)).   "'[C]ourts are

14  [therefore] more reluctant to grant a mandatory injunction than a prohibitory one and . .

15  . generally an injunction will not lie except in prohibitory form.'"   *Anderson v. United*

16  *States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (quoting *Clune v. Publishers' Ass'n of New*

17  *York City*, 214 F. Supp. 520, 531 (S.D.N.Y.), *aff'd,* 314 F.2d 343 (2d Cir. 1963)).

18        "'[A] preliminary injunction is an extraordinary and drastic remedy, one that

19  should not be granted unless the movant, *by a clear showing,* carries the burden of

20  persuasion.'"   *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C.

21  Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, at 129-30 (2d ed.

22  1995).   However, when a plaintiff seeks a mandatory preliminary injunction the already

23  high burden of persuasion is "doubly demanding."   *Garcia*, 786 F.3d at 740.   To

24  succeed on a motion for a mandatory preliminary injunction a plaintiff "must establish

25  that the law and facts *clearly favor* her position, not simply that she is likely to

26

9

1    succeed."  *Id.*  "In plain terms, mandatory injunctions should not issue in 'doubtful

2    cases.'"    *Id.* (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard*

3    *Trust,* 636 F.3d 1150, 1160 (9th Cir. 2011)).

4    **A.       Jane Doe Cannot Show That She Is Likely to Succeed on the Merits.**

5    Jane Doe's Motion can be disposed of on statutory grounds and therefore it is

6    unnecessary to address her constitutional claims.  *See Martin v. Int'l Olympic Comm.*,

7    740 F.2d 670, 675 (9th Cir. 1984) (stating that it is unnecessary to reach the

8    constitutional question if those claims can be disposed of on statutory grounds).

9    Nonetheless, the statutes and rules that authorize Defendants and the Department to

10   amend the sex/gender field on Arizona birth certificates serve important government

11   interests and are related to the achievement of those objectives.  *See Miss. Univ. for*

12   *Women v. Hogan*, 458 U.S. 718, 723-24 (1982).

13   Jane Doe seeks mandatory preliminary injunctive relief on the basis that she is

14   prevented from amending the sex/gender field on her birth certificate unless she has

15   undergone surgery.  (Doc. 3 at 9-11.)  This assertion is false.  The plain language of the

16   statutes and rules are clear that the superior court has "general authority to order [the

17   Department] to amend birth certificates."  *In re Marriage of McLaughlin & Swanson,* 2

18   CA-CV 2019-0210, 2020 WL 5887214, at *3, ¶ 13 (App. Oct. 5, 2020).  A person who

19   has not undergone surgery may amend the sex/gender field on their registered birth

20   certificate by submitting a written request to the Department with a court order ordering

21   an amendment to the individual's registered birth certificates.  A.R.S. § 36-337(A)(4);

22   A.A.C. R9-19-208(B), (P)(2).

23   Under A.R.S. § 36-337, the Department shall amend a person's birth certificate

24   when the conditions of that statute have been met.  The Department will therefore

25   amend the sex/gender field on a person's birth certificate when it receives one of the

26

10

1   following: (1) a physician's statement verifying that the person has undergone a sex

2   change operation, (2) a physician's statement verifying the person's chromosomal

3   count, *or* (3) a court order to amend the sex/gender field on the person's birth

4   certificate.  A.R.S. § 36-337(A)(3), (4).  Neither A.R.S. § 36-337(A)(3) nor A.A.C. R9-

5   19-208(O) prohibit a person who has not undergone surgery from amending the

6   sex/gender filed on their registered birth certificate.  Not only does Jane Doe's Motion

7   fail on statutory grounds, it fails on constitutional grounds as well.

8   Under the Fourteenth Amendment's Equal Protection Clause, all similarly

9   situated people must be treated alike.  *City of Cleburne v. Cleburne Living Ctr., Inc.*,

10   473 U.S. 432, 439 (1985).  "The Equal Protection Clause does not require identical

11   treatment; rather, it guarantees that the government will not classify individuals on the

12   basis of impermissible criteria."  *Seeboth v. Allenby*, 789 F.3d 1099, 1104 (9th Cir.

13   2015).  "Statutes create many classifications which do not deny equal protection; it is

14   only 'invidious discrimination' which offends the Constitution."  *Ferguson v. Skrupa*,

15   372 U.S. 726, 732 (1963).  A successful equal protection claim "requires the

16   governmental actor to have discriminated against the plaintiff."  *Barnes-Wallace v. City*

17   *of San Diego*, 704 F.3d 1067, 1085 (9th Cir. 2012); *see also City of Cleburne*, 473

18   U.S. at 439-40 (stating that plaintiffs establish an equal protection claim when they

19   show that they were treated differently than similarly situated people).  "[S]uccessful

20   equal protection claims additionally require plaintiffs to show the difference in

21   treatment was the result of intentional or purposeful discrimination."  *F.V. v. Barron*,

22   286 F. Supp. 3d 1131, 1140 (D. Idaho 2018) (internal quotation marks omitted).

23   A law is more likely to be subject to heightened scrutiny because it impacts a

24   suspect or quasi-suspect class when the class has historically experienced purposeful

25   unequal treatment. *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 545 (9th Cir. 2004).

26

1   But, "even when a class has experienced a history of discrimination and prejudice, it is

2   not appropriate to afford that class suspect status under the equal protection clause

3   where there are also many legitimate reasons that the state might single out the class for

4   regulation." *Id.* at 442-45.  If a class is not afforded heightened scrutiny, the law is

5   afforded only rational basis review.

6   Defendants have not discriminated against Jane Doe she therefore cannot

7   succeed on her equal protection claim.  *See Barnes-Wallace v. City of San Diego*, 704

8   F.3d at 1085; *see also City of Cleburne*, 473 U.S. at 439-40.  She cannot show that she

9   has experienced invidious, intentional, or purposeful discrimination.  *See Ferguson v.*

10  *Skrupa*, 372 U.S. at 732; *F.V.*, 286 F. Supp. at 1140.

11  Contrary to Jane Doe's allegations, neither Defendants nor Arizona law

12  "relegat[e] transgender minors to a disfavored class of persons whose birth certificates

13  do not match who they are."  (Doc. 3 at 13.)  The administrative process that other

14  Arizonans use is available to transgender individuals regardless of age, including Jane

15  Doe.  *See* A.R.S. § 36-337(A)(4).  Through A.R.S. § 36-337(A)(4), all individuals born

16  in Arizona are able to obtain court orders for amendments that are not enumerated in

17  A.R.S. § 36-337.  *See also In re Marriage of McLaughlin & Swanson,* 2 CA-CV 2019-

18  0210, 2020 WL 5887214, at *3, ¶ 13.  And A.R.S. § 36-337(A)(3) provides a separate

19  process for amending the sex/gender field on a birth certificate for those individuals

20  who have undergone surgery or who have a chromosomal count that establishes the

21  person's sex as different from the registered birth certificate.  These statutory provisions

22  were not enacted with discriminatory animus.  If anything, Arizona law ensures that

23  transgender individuals who have, *and* those who have not, had surgery are able to

24  obtain birth certificates that match who they are.

25

26

12

1    Further, the fact that individuals who have undergone surgery or who have a

2   chromosomal count that establishes the person's sex as different from the registered

3   birth certificate are not required to obtain court orders to amend the sex/gender fields on

4   their birth certificates serves an important governmental objective.  As noted in a case

5   relied on by Jane Doe, "[t]he nature and duration of [the] transition [process] is variable

6   and individualized."  *F.V. v. Barron*, 286 F. Supp. 3d at 1137.  The determination of

7   whether someone has undergone the transition process so that the person's birth

8   certificate no longer reflects the person's gender identity is necessarily fact specific.

9   This is evident from the documents submitted with Jane Doe's Motion, which include

10  four declarations—including two from experts in the transgender field.   Those

11  documents explain the history related to Jane Doe's gender dysphoria and describe the

12  steps in her transition process to establish that the sex/gender field on her birth

13  certificate no longer reflects her gender identity.  This fact-specific inquiry is best suited

14  for the court, which can review those factual documents, take testimony, and make a

15  determination about the requested order.  And this is the process that the Legislature has

16  established.  This process serves the important governmental objective of maintaining

17  an accurate statewide system of vital records by ensuring that requests for birth

18  certificate amendments that are not enumerated in A.R.S. § 36-337 and the supporting

19  documents for those requests are properly reviewed by the court as a fact finder.  Jane

20  Doe's equal protection claim fails and so do her due process claims.

21    Jane Doe asserts that her substantive due process rights of informational privacy,

22  decisional autonomy, and bodily integrity are being violated.  These claims will be

23  addressed collectively.  All of Jane Doe's due process claims are based on the same

24  incorrect assertion that there is a "surgical requirement" that she is required to meet

25  before she will be permitted to amend the sex/gender field on her registered birth

26

13

1   certificate and therefore she is prevent from obtaining a birth certificate that matches

2   who she is, thereby violating her substantive due process rights.   As discussed

3   throughout this Response, Jane Doe is not prevented from obtaining a registered birth

4   certificate with an amended sex/gender field because she has not undergone surgery.

5   A.R.S. §§ 36-337(A)(3), (4); A.A.C. R9-19-208(B), (O), (P)(2); Colburn Decl. ¶¶ 3-7.

6   An administrative process currently exists through which Jane Doe may amend the

7   sex/gender field on her registered birth certificate.   A.R.S. § 36-337(A)(4); A.A.C. R9-

8   19-208(B), (P)(2).   Because Defendants are not preventing Jane Doe from obtaining an

9   amended birth certificate they are not violating her fundamental rights to informational

10   privacy, decisional autonomy, and bodily integrity.[8]

11   **B.      Jane Will Not Suffer Irreparable Harm.**

12   Mandatory injunctions are "particularly disfavored" and "are not granted unless

13   extreme or very serious damage will result and are not issued in doubtful cases."

14   *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879 (internal quotation marks omitted).

15   "Irreparable harm is harm for which there is no adequate legal remedy. . . ."   *E. Bay*

16   *Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020) (internal quotation

17   marks omitted).   "If the harm complained of is self-inflicted, it does not qualify as

18   irreparable."   *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839

19   (3d Cir. 1995) (citing 11A Charles A. Wright, Arthur R. Miller and Mary Kay

20   Kane, *Federal Practice & Procedure* § 2948.1 pp. 152-53 (1995); *see also Al Otro*

21   *Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("[S]elf-inflicted wounds are not

22

23   [8] In addition to the above claims, Jane Doe makes a single statement in her Motion that
states that she "moves to enjoin Defendants' continued enforcement of the surgical
24   requirement."   Because there is no "surgical requirement" for her to comply with before
she is able to amend her birth certificate, it is unclear what she seeks to enjoin.
25   Regardless, because her entire Motion is based on the erroneous belief that Arizona has
a "surgical requirement," it is anticipated that the above analysis would be equally
26   applicable to this request.

1   irreparable injury."). "An injunction will not issue if the person or entity seeking

2   injunctive relief shows a mere possibility of some remote future injury or a conjectural

3   or hypothetical injury." *Park Vill. Apartment Tenants Ass'n*, 636 F.3d at 1160 (internal

4   quotation marks and citations omitted). Jane Doe argues that she will suffer ongoing

5   and irreparable harm because she is unable to amend her birth certificate and because

6   her constitutional rights are being violated. (Doc. 3 at 16-17.) These arguments are

7   based on her mistaken belief that Arizona requires individuals to undergo surgery before

8   they are able to amend the sex/gender field on their birth certificates. (Doc. 3 at 17.)

9       The statutes and rules *do not* require a person to undergo surgery in order to

10   amend a birth certificate. A.R.S. §§ 36-337(A)(3), (4); A.A.C. R9-19-208(B), (O),

11   (P)(2). In fact, Defendants and the Department have been and are continuing to amend

12   the sex/gender field on birth certificates for which they receive court orders to do so.

13   Colburn Decl. ¶ 7. Individuals are not required to prove that they have had surgery

14   before their birth certificates are amended. *Id.* Jane Doe will not suffer the alleged

15   irreparable harm because her Motion is based on a misapprehension of the law.

16   Moreover, she has an adequate legal remedy that has been and currently is available to

17   her. She may petition the superior court for an order ordering an amendment to the

18   sex/gender field on her birth certificate. A.R.S. § 36-337(A)(4); *see also* Colburn Decl.

19   ¶ 7. Further, the Department will generally produce a representative to appear at a

20   hearing on a petition to amend a birth certificate when requested. Colburn Decl. ¶ 8.

21   Because there is an established process under which Jane Doe may promptly amend the

22   sex/gender field on her birth certificate, any alleged injury is remote, conjectural, and

23   hypothetical.

24       Finally, any harm that Jane Doe may experience is not irreparable because it is

25   self-inflicted. The Department is, and has been, amending the sex/gender fields on birth

26

15

1    certificates pursuant to court orders.  *Id.* ¶ 7.  Yet, Jane Doe and Susan Doe admit that

2    they did not file a petition with the superior court for a court order to amend the

3    sex/gender field on Jane Doe's birth certificate.  (Doc. 3 at 9.)  Jane Doe and Susan Doe

4    acknowledge that they accepted as true community rumors and chose not to pursue the

5    administrative process that is available to Jane Doe to amend her birth certificate.  (*Id.*)

6    Indeed, this is a process with which she is familiar because she states in her Motion that

7    she amended her name on her birth certificate in 2019 through a court order.  (*Id.*)

8    There can be no irreparable harm because "[s]elf-inflicted wounds are not irreparable

9    injury."  *Al Otro Lado*, 952 F.3d at 1008.

10            **C.        The Public Interest and Balance of Equities Do Not Favor Jane Doe.**

11            When a preliminary injunction is sought against a public entity, the last two

12    factors in the *Winter* test merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

13    (9th Cir. 2014).  In "balanc[ing] the competing claims of injury [courts] must consider

14    the effect on each party of the granting or withholding of the requested relief."  *Winter*,

15    555 U.S. at 24 (internal quotation marks omitted).  "In exercising their sound discretion,

16    courts of equity should pay particular regard for the public consequences in employing

17    the extraordinary remedy of injunction."  *Id.* (internal quotation marks omitted).  Even

18    more so when the relief sought is a mandatory injunction.

19            Here, the public interest and balance of equities tip sharply in Defendants' favor.

20    Contrary to Jane Doe's assertion that "a preliminary injunction here will not cause

21    hardship to Defendants because, as government officials, they cannot suffer harm from

22    an injunction that merely ends an unlawful practice" (Doc. 3 at 18 [internal quotation

23    marks omitted]), Defendants are not engaging in an unlawful practice.  *See* A.R.S.

24    §§ 36-337(A)(3), (4); A.A.C. R9-19-208(B), (O), (P)(2); *see also* Colburn Decl. ¶¶ 3-7.

25    Additionally, Jane Doe is not attempting to end an unlawful practice.  (Doc. at 18.)  She

26

16

1  is seeking a mandatory preliminary injunction and is therefore seeking to upend the

2  status quo.

3        Most importantly, she is seeking a mandatory *preliminary* injunction to obtain a

4  document that can be issued as only an official, *permanent* document.  If Jane Doe is

5  issued a permanent document to use as an identity document on only a preliminary

6  basis, it would open the door to a slippery slope that could damage the integrity of

7  Arizona's statewide system of vital records.  Because of the high level of confidence in

8  the integrity and security of Arizona's system of vital records, Arizona birth certificates

9  are used to establish identity and citizenship and entities such as the United States

10  Department of State rely on Arizona birth records to be true copies of a person's

11  permanent record.  Issuing Jane Doe a "preliminary" birth certificate that would be used

12  to create other records only to be subsequently voided if Defendants win on the merits,

13  would create confusion and diminish the respect that exists for the integrity and security

14  of Arizona's system of vital records.  If Arizona birth certificates could no longer be

15  trusted to be authentic documents, it could ultimately negatively impact every person

16  born in Arizona.

17  **III.    Conclusion.**

18        For all the foregoing reasons, this Court should dismiss Jane Doe's Motion.

19        Respectfully submitted this 15th day of November, 2020.

20

21                    MARK BRNOVICH
                  ATTORNEY GENERAL

22

23                    By  /s/Aubrey Joy Corcoran
                  Patricia Cracchiolo LaMagna

24                    Aubrey Joy Corcoran

25                    *Attorneys for Defendants*

26

17

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on November 15th, 2020, I electronically transmitted the

3   foregoing document to the Clerk's Office using the CM/ECF System for filing and

4   transmittal of a notice of electronic filing to the CM/ECF registrants.

5

6                                              /s/Aubrey Joy Corcoran

7

8

9   #9090872

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26