MARK BRNOVICH
ARIZONA ATTORNEY GENERAL
Firm State Bar No. 14000
Patricia Cracchiolo LaMagna (Bar No. 021880)
Aubrey Joy Corcoran (Bar No. 025423)
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona  85004
Telephone:(602) 542-8854
Fax:(602) 542-8308
EducationHealth@azag.gov

STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck (Bar No. 012377)
Nicholas D. Acedo (Bar No. 021644)
Dana M. Keene, (Bar No. 033619)
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
nacedo@strucklove.com
dkeene@strucklove.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| D.T., a minor, by and through his parent and next friend Lizette Trujillo; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Dr. Cara Christ, M.D., et al.,<br><br>Defendants. | No. 4:20-cv-00484-JAS<br><br>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT |

This Court should dismiss Plaintiffs' Amended Complaint (Doc. 47) pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack Article III standing to bring their claims against Defendants and because their claims are inextricably intertwined with the state court's decisions on their petitions to amend their birth certificates. If not dismissed for lack of subject-matter jurisdiction, this Court should abstain and decline jurisdiction over this matter in the interests of federalism, comity, and equity. In addition, Plaintiffs have failed to state a claim upon which relief may be granted and therefore the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as well.[1] If the case is not dismissed in its entirety, Plaintiffs D.T. and Jane Doe should be dismissed because their claims are moot, and Defendants Thomas Salow and Krystal Colburn should be dismissed because Plaintiffs' claims against them are duplicative. Finally, if any claims survive, this matter should be transferred to the Phoenix Division because the Tucson Division is not the proper venue.

For all the reasons set forth in the following Memorandum of Points and Authorities, this Court should dismiss Plaintiffs' Amended Complaint.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      Factual Background.**

The Legislature established a statewide system of vital records and appointed the Director of the Arizona Department of Health Services ("ADHS") as the state registrar of vital records. A.R.S. § 36-302. Defendants Dr. Cara Christ, Director of ADHS; Thomas Salow, Branch Chief of the Division of Public Health Licensing Services at ADHS; and Krystal Colburn, Assistant State Registrar and Bureau Chief of the Bureau of Vital Records ("BVR") at ADHS, implement and enforce the statewide system of vital records through ADHS.[2] A.R.S. §§ 36-302, 36-303. Defendants exercise only the authority that

---

[1] Defendants have attached to this Motion the required certification that they have complied with LRCiv 12.1(c).

[2] Because the state registrar implements and enforces the vital records statutes and rules through the Department, Defendants will use "the Department" when referring to administrative actions and processes.

1   the Legislature has granted them.  *See Facilitec, Inc. v. Hibbs*, 80 P.3d 765, 767, ¶ 10

2   (Ariz. 2003) ("Because agencies are creatures of statute, the degree to which they can

3   exercise any power depends upon the legislature's grant of authority to the agency.").

4        The state registrar may amend registered certificates only as authorized by Arizona

5   Revised Statutes title 36, chapter 3.  A.R.S. § 36-323.  Whereas the Legislature has given

6   the state registrar broad authority to adopt rules to make *corrections* to vital records, her

7   authority to *amend* registered birth certificates is limited.  *Compare* A.R.S. § 36-323(C)

8   (stating generally that "the state registrar shall adopt rules for making corrections to vital

9   records"); with A.R.S. §§ 36-323(A), (B) and 36-337 (specifically enumerating when the

10  state registrar may amend registered birth certificates).  The Legislature has defined

11  "correction" as "a change made to a registered certificate because of a typographical error,

12  including misspelling and missing or transposed letters or numbers" and has defined

13  "amend" as "to make a change, other than a correction, to a registered certificate by

14  adding, deleting or substituting information on that certificate."  A.R.S. § 36-301.

15       Even though there is a statutorily defined distinction between a "correction" to a

16  birth certificate and an "amendment" to a birth certificate, Plaintiffs continually conflate

17  the two terms.  (Doc. 47 ¶¶ 6, 19-21, 45, 47, 49, 52, 54, 56, 69-70, 81, 83, 93, 102, 111,

18  125-126, 142-143.)  In doing this, they misapprehend the authority that ADHS has to

19  amend birth certificates and disregard the limitations that the Legislature has established

20  for when and how ADHS may make an amendment to a birth certificate.  Because

21  Plaintiffs falsely state that the changes that they seek to make to the sex/gender field of

22  their birth certificates are "corrections," they incorrectly assert (1) that ADHS has

23  authority to make rules to create a new "private administrative process to change the sex

24  listed on their Arizona birth certificates" and (2) that because ADHS has not created such

25  a process through its rules, Defendants are violating their constitutional rights.  (*Id.* ¶¶ 7-

26  8.)  In making these arguments, they wrongly equate their requests to amend their birth

27  certificates with others' requests to correct their birth certificates and allege that their

28  rights are being violated because the administrative process for amending a birth

1   certificate is not the same as the administrative process for correcting a birth certificate.

2   (*Id.* ¶ 6.)  In reality, anyone seeking to amend their birth certificate for any reason must

3   comply with the requirements in A.R.S. § 36-337.  Further, contrary to Plaintiffs'

4   assertion that only transgender youth must obtain a court order to amend their birth

5   certificates, (*see, e.g.*, Doc. 47 ¶ 6 [stating that "[u]nlike other youth, transgender youth in

6   Arizona have only one option open to them that is more expensive, confusing, and time-

7   consuming), the process set forth in A.R.S. § 36-337(A)(4) is not specific to anyone or

8   any kind of amendment—it does not apply exclusively to transgender individuals seeking

9   to amend the sex/gender field on their birth certificates.

10      The changes that Plaintiffs seek to make to the sex/gender field of their birth

11   certificates are amendments, not corrections.  In their Amended Complaint, Plaintiffs have

12   established that at birth their families intentionally assigned them a gender and that it was

13   only as they grew that their families came to realize that they did not identify with the

14   genders that had been assigned to them.  (*Id.* ¶¶ 58-111.)  They have not asserted that the

15   genders identified in the sex/gender field of their birth certificates were unintentional,

16   typographical errors.  *See* A.R.S. § 36-301(6) (defining "correction").  To the contrary, all

17   have alleged that their families initially related to them in a manner that was consistent

18   with the gender identified in the sex/gender field of their birth certificates.  (Doc. 47 ¶¶

19   58-111.)  Therefore, Plaintiffs are seeking "to make a change, other than a correction, to a

20   registered certificate by adding, deleting or substituting information on that certificate."

21   *See* A.R.S. § 36-301(2) (defining "amend").  Because they are seeking to *amend* their

22   birth certificates, they must comply with the requirements for amending a birth certificate

23   in A.R.S. § 36-337.  While ADHS may promulgate rules to establish processes for making

24   *corrections* to birth certificates, contrary to Plaintiffs' assertions, ADHS lacks any

25   authority to promulgate a process for amending a birth certificate that exceeds the

26   authority granted by A.R.S. § 36-337.

27

28

1

**LEGAL ARGUMENT**

2

I.    **Plaintiffs Lack Article III Standing and, Therefore, the Court Lacks Subject-Matter Jurisdiction.**

3

4       Defendants move to dismiss Plaintiffs' Amended Complaint under Federal Rule of

5  Civil Procedure 12(b)(1) because Plaintiffs do not have Article III standing.  This Court

6  therefore lacks subject-matter jurisdiction over their claims.  *See* 5B Charles Alan Wright

7  et al, Federal Practice and Procedure § 1350 (3d ed.).

8
               It is a principle of first importance that the federal courts are
9             tribunals of limited subject matter jurisdiction. . . . A federal
              court's entertaining a case that is not within its subject matter
10            jurisdiction is no mere technical violation; it is nothing less
              than an unconstitutional usurpation of state judicial power.
11            Accordingly, there is a presumption that a federal court lacks
              subject matter jurisdiction, and the party seeking to invoke
12            federal jurisdiction must affirmatively allege the facts
              supporting it.  If these facts are challenged, the burden is on
13            the party claiming jurisdiction to prove that the court has
              jurisdiction over the subject matter.
14

15  13 Charles Alan Wright et al, Federal Practice and Procedure § 3522 (3d ed.) (footnotes

16  omitted).  "[T]he standing inquiry requires careful judicial examination of a complaint's

17  allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the

18  *particular claims* asserted."  *Oregon Prescription Drug Monitoring Program v. U.S. Drug

19  Enf't Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017) (internal quotation marks omitted).  To

20  proceed in federal court, a plaintiff must have Article III standing.

21
               To satisfy Article III standing, a plaintiff must show (1) it
22            "ha[s] suffered an 'injury in fact'" that is "concrete and
              particularized" and "actual or imminent, not conjectural or
23            hypothetical;" (2) a "causal connection between the injury"
              and the challenged action of the defendant; and (3) that it is
24            "likely, as opposed to merely speculative, that the injury will
              be redressed by a favorable decision."
25

26  *Multistar Indus., Inc. v. U.S. Dep't of Transp.*, 707 F.3d 1045, 1054 (9th Cir. 2013)

27  (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).  Federal courts

28  also lack subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when

a defendant has sovereign immunity.  *See* 5B Charles Alan Wright et al, Federal Practice and Procedure § 1350 (3d ed.).

### A.    Plaintiffs D.T. and Jane Doe No Longer Have Standing.

Plaintiffs contradictorily allege that Defendants are *prohibiting* Plaintiffs from amending the sex/gender field on their birth certificates (*see* Doc. 47 ¶¶ 19-21, 43, 45, 132) and that Defendants are violating their constitutional rights because they are required to obtain a court order before *amending* the sex/gender field on their birth certificates (*id.* ¶¶ 6-7, 48-57, 126, 132, 138, 142-143).  However, neither allegation is relevant to D.T. or Jane Doe because they have already received their amended birth certificates.[3]  (Doc. 47 ¶¶ 71-72, 84.)  Accordingly, D.T. and Jane Doe lack Article III standing because there is no current case or controversy between them and Defendants.

Plaintiffs vaguely allege that D.T. and Jane Doe have been injured and are entitled to "nominal damages" due to delay, effort, and expense they incurred in obtaining their amended birth certificates.  (*Id.* ¶¶ 72, 84; *see also id.* at 33, ¶ E.)  But nominal damages are not recoverable against Defendants, who are sued only in their official capacities.  (*Id.* ¶¶ 19-21.)  The State is entitled to Eleventh Amendment immunity from all damages and is otherwise not a "person" under 42 U.S.C. § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989).  And "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* at 71.  Accordingly, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," and both are immune from damages. *Id.* at 70-71.

For all the foregoing reasons, D.T. and Jane Doe lack Article III standing and should be dismissed from this case.

---

[3] At the time that Plaintiffs filed their Amended Complaint, D.T. had submitted his application to amend the sex/gender field on his birth certificate according to the Department's administrative process set forth in A.A.C. R9-19-208(B) and (P)(2) (Doc. 47 ¶ 72), but he had not yet received a copy of his amended birth certificate.  The Department subsequently processed his application according to its standard administrative process and provided him with a copy of his amended birth certificate.

1              **B.     The Remaining Plaintiffs Also Lack Article III Standing.**

2            Even assuming that Plaintiffs can demonstrate that they have suffered an injury in

3 fact that was caused by Defendants' actions, Plaintiffs still lack Article III standing

4 because their alleged injuries cannot be redressed by a favorable decision from this Court.

5 If this Court ultimately ruled that A.R.S. § 36-337(A)(3) violates Plaintiffs' constitutional

6 rights, it would not change the administrative process that Plaintiffs would need to follow

7 to amend the sex/gender field on their birth certificates.  A ruling in Plaintiffs' favor

8 would change nothing for them—it would only prevent individuals who are not a party to

9 this lawsuit from being able to use the process that the Legislature established in A.R.S. §

10 36-337(A)(3).  Regardless of the Court's ruling in this case, everything will remain status

11 quo for Plaintiffs—they will still have to obtain a court order pursuant to A.R.S. § 36-

12 337(A)(4) to amend the sex/gender field on their birth certificates.  Accordingly, because

13 their alleged injuries cannot be redressed by a favorable ruling, they lack Article III

14 standing.  This Court therefore lacks subject-matter jurisdiction.

15            Plaintiffs' Amended Complaint seeks an order from this Court to permanently

16 enjoin Defendants from denying applications from transgender people who have

17 undergone clinically appropriate treatment for the purpose of a gender transition and who

18 seek to amend the sex/gender field on their birth certificates under A.R.S. § 36-337(A)(3)

19 and A.A.C. R9-19-208(O).  (Doc. 47 at 31, ¶ C.)  Accordingly, Plaintiffs are asking this

20 Court to effectively rewrite the statute's language.  A.R.S. § 36-337(A)(3) states that

21
22           [t]he state registrar shall amend the birth certificate for a person born in this state when the state registrar receives . . . [f]or a person who has undergone a sex change operation or

23           has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate, both of the

24           following:

25           (a) [a] written request for an amended birth certificate from the person or, if the person is a child, from the child's parent

26           or legal guardian.

27           (b) [a] written statement by a physician that verifies the sex change operation or chromosomal count.

28

1   A.R.S. § 36-337(A)(3)'s plain language makes clear that it is applicable to only
2   individuals who have undergone a sex change operation or who have a chromosomal
3   count that establishes that the person's sex is different than what is in the registered birth
4   certificate.  Nevertheless, Plaintiffs ask this Court to interpret A.R.S. §36-337 as including
5   an additional, unspecified group of individuals— transgender people who have undergone
6   clinically appropriate treatment for the purpose of a gender transition—and make A.R.S. §
7   36-337(A)(3) applicable to them as well.  However, this cannot be done because it would
8   require the Court to legislate from the bench and rewrite the statutory language.  Thus,
9   even if the Court finds that A.R.S. § 36-337(A)(3) violates Plaintiffs' constitutional rights,
10  it cannot enter an order that would change the process by which Plaintiffs may amend
11  their birth certificates.  It can only invalidate the existing statutory language.

12      An unambiguous statute must be construed literally.  *See Azar v. Allina Health*
13  *Services*, 139 S. Ct. 1804, 1815 (2019) ("[C]ourts aren't free to rewrite clear statutes
14  under the banner of our own policy concerns.").  Courts cannot engage in judicial
15  legislation.  *See Freytag v. C.I.R.*, 501 U.S. 868, 873-74 (1991) ("[C]ourts are not at
16  liberty to create an exception where Congress has declined to do so." [internal quotation
17  marks omitted]).  Rather, arguments to adopt a different policy should be directed to the
18  Legislature, whose job it is to make policy.  *See U.S. v. Rutherford*, 442 U.S. 544, 555
19  (1979) ("[F]ederal courts do not sit as councils of revision, empowered to rewrite
20  legislation in accord with their own conceptions of prudent public policy.").

21      A.R.S. § 36-337(A)(3)'s language is plain and unambiguous.  Nonetheless,
22  Plaintiffs assert that the statute's plain language should be invalidated and request that it
23  be reinterpreted to include them and other transgender people who have undergone
24  clinically appropriate treatment for the purpose of a gender transition.  (Doc. 47 ¶¶ 5-6, 8,
25  49, 53-57, 125-126, 137-134, 138-139, 142-144; *see also id.* at 31, ¶ E.)  If the Court were
26  to grant Plaintiffs' request, it would not only be required to find that A.R.S. § 36-
27  337(A)(3) is unconstitutional, it would also be required to create a nonexistent exception
28  to the plain language of A.R.S. § 36-337(A)(3) and establish the type, quantity, and

quality of information that an individual would have to provide to ADHS in order to establish that the individual had undergone clinically appropriate treatment for the purpose of a gender transition.

For Plaintiffs' injuries to be redressed by a favorable decision, the Court would have to address the following questions before ADHS could process applications from individuals who have undergone clinically appropriate treatment for the purpose of a gender transition pursuant to A.R.S. § 36-337(A)(3).   Would individuals have to demonstrate that they have completed clinically appropriate treatment for the purpose of a gender transition or would it be sufficient for them to demonstrate that they are in the process of undergoing treatment in order to obtain an amended birth certificate under A.R.S. § 36-337(A)(3)?[4]   What type, quality, or quantity of treatment is sufficient for a person to demonstrate that they are undergoing or have undergone clinically appropriate treatment for the purpose of a gender transition?   Is a written statement by a physician verifying nonsurgical treatment sufficient evidence to support an amendment to a person's birth certificate or should more evidence be required?   How should "clinically appropriate treatment" be defined?   What if someone cannot afford treatment or chooses not to undergo any kind of treatment?   Should the newly created exception be applicable to only individuals who identify as transgender or who undergo treatment?   None of this information is included in the statute and would be required for ADHS to be able to

---

[4] Plaintiffs assert that individuals who have "undergone" (i.e., *completed*) clinically appropriate treatment for the purpose of a gender transition should be permitted to amend their birth certificates pursuant to A.R.S. § 36-337(A)(3)'s administrative process.  (Doc. 47 at 31, ¶ C.)  While making this assertion, they also explain that gender transition is a process consisting of several components including puberty-delaying medication at the onset of puberty and subsequent hormone-replacement therapy to develop secondary-sex characteristics.  (*Id.* ¶¶ 32, 36-38.)  Plaintiffs are between the ages of five and thirteen. (*Id.* ¶¶ 58, 73, 86, 94, 103.)  Therefore, even if the Court were to issue the injunction that Plaintiffs' request—prohibiting the Department from denying an amendment to the sex listed on the birth certificates of transgender people who have "*undergone*" clinically appropriate treatment for the purpose of a gender transition (*id.* at 31, ¶ C)—it would not redress Plaintiffs' injuries because they would not be able to seek an amendment under A.R.S. § 36-337(A)(3) if they were in the process of *undergoing* clinically appropriate treatment for the purpose of a gender transition, which one would expect to be the case for children between the ages of five and thirteen.

1  process applications from individuals who have undergone clinically appropriate
2  treatment for the purpose of a gender transition.  Yet, these are likely only some of the
3  policy questions that the Court would be required to answer if it were to rule in Plaintiffs'
4  favor and enjoin ADHS from denying an individual's application to amend the sex/gender
5  field on the person's birth certificate, even if the person is unable to meet any of A.R.S. §
6  36-337(A)(3)'s requirements.

7        Because the Court is not empowered to rewrite legislation, it is the Legislature that
8  is in the best position to address these policy questions and therefore Plaintiffs' request
9  should be directed to the Legislature, not this Court.  At most, this Court could deem
10  A.R.S. § 36-337(A)(3) unconstitutional and invalidate it, which would result in the A.R.S.
11  § 36-337(A)(3) administrative process being unavailable to anyone and leaving Plaintiffs'
12  ability to amend their birth certificates unchanged so that the Court's ruling would
13  ultimately have no impact on Plaintiffs, thereby preventing them from having standing.

14        As a result, Plaintiffs do not have Article III standing and therefore this Court lacks
15  subject matter jurisdiction over the Amended Complaint.

16        **C.    This Court Lacks Jurisdiction Under the *Rooker-Feldman* Doctrine.[5]**

17        "*Rooker–Feldman* is a powerful doctrine that prevents federal courts from second-
18  guessing state court decisions by barring the lower federal courts from hearing de facto
19  appeals from state-court judgments. . . ."  *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th
20  Cir. 2003).  "If claims raised in the federal court action are 'inextricably intertwined' with
21  the state court's decision such that the adjudication of the federal claims would undercut
22  the state ruling or require the district court to interpret the application of state laws or
23  procedural rules, then the federal complaint must be dismissed for lack of subject matter
24  jurisdiction."  *Id.* (citing *Feldman*, 460 U.S. at 483 n.16, 486).  A federal action is
25  inextricably intertwined if it can succeed "only to the extent that the state court wrongly
26  decided the issues before it," or if "the relief requested would effectively reverse or void

27  _____

28        [5] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

1    the state court decision." *Fontana Empire Center, LLC v. City of Fontana*, 307 F.3d 987,

2    992 (9th Cir. 2002) (internal quotations and citations omitted).

3        Plaintiffs Helen Roe, James Poe, and Carl Voe all allege that they filed petitions to

4    amend the sex/gender field on their birth certificates in state court, as authorized by

5    A.R.S. § 36-337(A)(4).[6]   (Doc. 47 ¶¶ 93, 102, 111.)   They further allege that the state

6    court deferred ruling on their petitions and provided some of them with printed copies of

7    A.R.S. § 36-337, which they seemingly interpreted as instructions to comply with A.R.S.

8    § 36-337(A)(3) and/or A.A.C. R9-19-208(O).[7]   (*Id.*)   If Plaintiffs believe that the superior

9    court's actions were incorrect, their appropriate remedy is to appeal the superior court's

10   decisions in state court, not to seek a de facto appeal of those orders by asking this Court

11   to declare § 36-337(A)(3) and A.A.C. R9-19-208(O) unconstitutional and permanently

12   enjoin the state officials from enforcing state laws and regulations.   *See In re Marriage of*

13   *McLaughlin & Swanson*, 476 P.3d 336, 339 (Ariz. App. 2020) ("[T]he legislature has

14   given trial courts general authority to order ADHS to amend birth certificates.").

15       Additionally, this case is inextricably intertwined with those superior court orders

16   because granting relief in this case would require this Court to essentially hold that the

17   state courts erred.   *See Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030

18   (9th Cir. 2001); *see also Azevedo v. Fla. Dep't of Revenue Child Support Customer Servs.*,

19   2017 WL 5178486, at *3 n.4 (M.D. Fla. Oct. 19, 2017), *report and recommendation*

20   *adopted*, 2017 WL 5158406 (M.D. Fla. Nov. 7, 2017) ("By requesting that this Court

21   disestablish paternity and remove his name from the birth certificate, Plaintiff is

22   essentially asking the Court to vacate the Final Judgment.").   If Plaintiffs wish to

23   challenge the constitutionality of the state-court orders, they may urge the state courts to

24

25   _____

     [6] As noted above, Plaintiffs D.T. and Jane Doe's birth certificates have been
     amended, rendering their claims moot.

26   [7] Plaintiffs perplexingly state that "Carl is no longer within the jurisdiction of
     Arizona courts." (Doc. 47 ¶ 111.)   However, he has petitioned the superior court for an
27   order directed to an Arizona state agency to amend a document that is governed by
     Arizona law.   Accordingly, the Arizona superior court has jurisdiction over his petition.
28   His move to Maryland did not end the court's jurisdiction.

1    grant their petitions or appeal through the Arizona appellate courts.  *See Keliihuluhulu v.*

2    *Strance*, 2016 WL 2930902, at *3 (D. Haw. May 19, 2016), *aff'd*, 692 F. App'x 406 (9th

3    Cir. 2017) ("[T]o the extent Plaintiff contests state-court decisions, any such challenge

4    must be made through the state-court appellate process.").  *Rooker-Feldman* bars this

5    Court from exercising jurisdiction over those challenges here.

6    **II.    Assuming this Court has Subject-Matter Jurisdiction, Plaintiffs Filed this**
     **Lawsuit in the Wrong Venue.**

7

8    **A.    The Court Should Either Dismiss this Lawsuit or Transfer It to Phoenix**
     **Pursuant to 28 U.S.C. § 1406(a) and LRCiv 77(c).**

9    "A defendant over whom personal jurisdiction exists but for whom venue is

10   improper may move for dismissal or transfer for improper venue under 28 U.S.C. §

11   1406(a)."  *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181

12   (9th Cir. 2004); 28 U.S.C. § 1406(a).  Although venue is proper in the District of Arizona,

13   *see* 28 U.S.C. § 1391(b), the Local Rules of Civil Procedure establish geographic

14   divisions within the District and require that cases be tried in Phoenix if the cause of

15   action arose in the Phoenix Division (Maricopa, Pinal, Yuma, La Paz, and Gila Counties).

16   *See* LRCiv 77.1(a), (c) ("Unless otherwise ordered by the Court, all civil . . . cases

17   founded on causes of action . . . arising in the Phoenix [D]ivision shall be tried in Phoenix.

18   . . .").

19   Plaintiffs' claims all arose in Phoenix Division.  The Director of ADHS is "the

20   state registrar of vital records" and is responsible for administering and enforcing the vital

21   records statutes and rules and maintaining the statewide system of vital records.  A.R.S. §

22   36-302(A), (B).  The state registrar is also responsible for amending the birth certificate

23   for a person born in this state when she receives the requisite information to do so.  A.R.S.

24   § 36-337(A).  The statewide system of vital records that the state registrar maintains is the

25   only system of vital records in the state.  A.R.S. § 36-302(B)(3).

26   The primary offices for ADHS, including BVR, are located in Phoenix.  Contact

27   Us, ADHS, https://www.azdhs.gov/contact.php (last visited Mar. 10, 2021); *see also U.S.*

28   *Small Bus. Admin.,* 853 F.3d 992, 1003 n.3 (taking judicial notice of government website

information and stating "[i]t is appropriate to take judicial notice of this information, as it was made publicly available by government entities").  All birth certificates are registered, issued, corrected, amended, and maintained by the BVR office in Phoenix.  (*See* Doc. 47 ¶ 46); *see also* A.R.S. §§ 36-302, 36-337.  In their high-level roles as agency director, state registrar, branch chief, bureau chief, and assistant state registrar, all Defendants work at the ADHS offices in Phoenix.  (*See* Doc. 47 ¶¶ 19-21.)

The crux of Plaintiffs' claims is that Defendants violated their constitutional rights by enforcing A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O) (Doc. 47 ¶¶ 19-21)— conduct that could only have occurred in the Phoenix Division, where Defendants are located.  In addition, Plaintiffs are challenging a state statute that was enacted by the State Legislature and a regulation that was promulgated by ADHS, both of which occurred in Phoenix.  Therefore, their cause of action arose out of the Phoenix Division, not the Tucson Division (Pima, Cochise, Santa Cruz, Graham, and Greenlee).  The Court should either dismiss it or transfer it to Phoenix pursuant to § 1406(a) and LRCiv 77.1(c).  *See Carranza v. Con-Way Incorp.*, 2010 WL 4777624, at *3 (D. Ariz. Oct. 29, 2010), *report and recommendation adopted*, 2010 WL 4775564, at *2 (D. Ariz. Nov. 17, 2010) ("[B]ecause the Plaintiffs have suggested no exceptional or compelling reason why [Local Rule 77.1(c)] should not be followed in this particular action, the Magistrate recommends that the case be transferred pursuant to the Local Rule and § 1406(a).").

### B.     Alternatively, the Court Should Transfer this Lawsuit to Phoenix Pursuant to 28 U.S.C. § 1404.

28 U.S.C. §§ 1404(a) and 1404(b) authorize a court to transfer a civil action to another division where it might have been brought "[f]or the convenience of parties and witnesses" and to promote "the interest of justice."  28 U.S.C. § 1404(a).  *See Cheval Farm LLC v. Chalon*, 2011 WL 13047301, at *2 (D. Ariz. Jan. 19, 2011) ("Intradistrict transfers pursuant to 28 U.S.C. § 1404(b) are discretionary transfers subject to the same analysis as under 28 U.S.C. § 1404(a) but are judged by a less rigorous standard.") (citation omitted).  In considering a transfer under § 1404, a court should consider several

1    factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).[8]

### 1.    Plaintiffs' choice of forum should be given minimal weight.

While a plaintiff's choice of forum is typically afforded some deference, any deference here should be minimal because the operative facts did not arise in the Tucson Division.  *See Cheval*, 2011 WL 13047301 at *2-3.  Moreover, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  Here, Plaintiffs seek to certify a class consisting of "[a]ll transgender individuals born in Arizona."  (Doc. 47 ¶ 113.)  This factor weighs in favor of a transfer.

### 2.    The convenience of parties and witnesses outweighs the Plaintiffs' choice of forum.

"The convenience of the forum to party and non-party witnesses is the most critical factor to review." *Reaves v. Cable One, Inc.*, 2011 WL 5331695, at *4 (D. Ariz. Nov. 7, 2011) (internal quotation marks omitted).  Requiring Defendants and their employees, all of whom are responsible for the management and/or operation of ADHS and BVR—the central offices of which are in Phoenix—to travel to and from Tucson to engage in discovery and/or attend trial would divert from their official duties and potentially disrupt the efficient operations of ADHS and BVR.  *See American GNC Corp. v. GoPro, Inc.*,

---

[8] Because both the Phoenix and Tucson Divisions are in the District of Arizona, factors related to familiarity with governing law and compulsory process to compel attendance of non-party witnesses need not be considered. There is also no "relevant agreement" at issue in this case, although, as noted above, the statute and regulation at issue were enacted/promulgated in Phoenix and are enforced in Phoenix.

1    2018 WL 6074395, at *18 (S.D. Cal. Nov. 6, 2018) ("Transfer is also appropriate when
2    there could be a substantial disruption to a party's business operations based on the
3    number of its employee-witnesses that could be called to testify at trial beyond their
4    district of residence.").  Moreover, Phoenix is more convenient for Jane Doe, a resident of
5    Maricopa County (Doc. 47 ¶ 15), and there is no additional burden imposed on Carl Voe
6    (who lives in Maryland) to travel to Phoenix.  (*Id*. ¶ 18.)   Further, most non-party
7    witnesses and custodians of records are employed by ADHS and BVR in Phoenix.  *See*
8    *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, 2011 WL 197831, at *3-4 (N.D. Cal.
9    Jan. 20, 2011) (transferring case where majority of third-party witnesses and documents
10   were in transferee district).  This factor weighs heavily in favor of a transfer.

11          **3.**     **The parties' contacts with the forum weighs in favor of transfer.**

12         Only three of the five Plaintiffs reside in the Tucson Division.  (Doc. 47 ¶¶ 14, 16-
13   17).  Plaintiff Jane Doe resides in the Phoenix Division, and Plaintiff Carl Voe resides in
14   neither Division.  (Doc. 47 ¶¶ 15, 18).  Plaintiffs' local counsel are in Phoenix.[9]  (Doc. 1.)
15   All three Defendants and their counsel are in the Phoenix Division. (Doc. 21; Doc. 52.)
16   Thus, more parties have contacts with the Phoenix Division than with the Tucson
17   Division.  *See Global Thermoforming Inc., v. Auto-Owners Ins. Co.*, 2021 WL 65981, at
18   *5 (D. Ariz. 2021) (case-related contacts of parties are given greater weight in transferring
19   venue).  This factor weighs in favor of a transfer.

20          **4.**     **The costs of litigation and access to sources of proof weigh in**
21                      **favor of transfer.**

22         Most of the evidence pertinent to Plaintiffs' claims, including documentary
23   evidence and witnesses, are centrally located at ADHS and BVR offices in Phoenix.  *See*
24   *Bratton v. Schering-Plough Corp.*, 2007 WL 2023482, at *5 (D. Ariz. July 12, 2007)
25   (transferring venue to the "center of discovery" in a nationwide class action lawsuit).
26   Thus, the costs associated with litigating this case in Tucson would be significantly

27
28   [9] Plaintiffs are represented by the law firms Osborn Maledon, P.A. (Phoenix) and
     Cooley LLP (California) and the National Center for Lesbian Rights (California).

1   greater than litigating this case in Phoenix.  *See Park v. Dole Fresh Vegetables, Inc.*, 964
2   F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) ("Although developments in electronic
3   conveyance have reduced the cost of document transfer somewhat, costs of litigation can
4   still be substantially lessened if the venue is in the district in which most of the
5   documentary evidence is stored."); *see also Gomez v. Wells Fargo Bank*, 2009 WL
6   1936790, at *3 (D. Ariz. July 2, 2009) (litigation costs are reduced when action is pursued
7   in venue where most of the witnesses expected to testify or give depositions, and near the
8   location of documents likely to be at issue in the case).  These factors weigh heavily in
9   favor of a transfer.

10   When considered together, and under the "less rigorous standard" under § 1404(b),
11   *Cheval*, 2011 WL 13047301, at *2, these factors necessitate a transfer to Phoenix.

12   **III.   The Court Must Abstain and Decline Jurisdiction Under Principles of**
13   **Federalism, Comity, and Equity.**

14   **A.   The Court Must Dismiss the Case Under the *Younger* Doctrine.[10]**

15   "Absent extraordinary circumstances, 'interests of comity and federalism instruct
16   [federal courts] to abstain from exercising [their] jurisdiction in certain circumstances
17   when . . . asked to enjoin ongoing state . . . proceedings.'" *Page v. King*, 932 F.3d 898,
18   901 (9th Cir. 2019) (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716,
19   727 (9th Cir. 2017)).  Thus, "*Younger* abstention is appropriate when: (1) there is an
20   ongoing state judicial proceeding; (2) the proceeding implicates important state interests;
21   (3) there is an adequate opportunity in the state proceedings to raise constitutional
22   challenges; and (4) the requested relief seeks to enjoin or has the practical effect of
23   enjoining the ongoing state judicial proceeding." *Id.* at 901-02 (quotation omitted).

24   *Younger* abstention is appropriate here because all four elements are satisfied.
25   First, each Plaintiff has filed a state-court petition to amend their birth certificates.
26   Second, the State has an important interest in processing and maintaining accurate birth
27
28   [10] *Younger v. Harris*, 401 U.S. 37 (1971).

certificates and other vital records—authority that has been traditionally reserved to the states exclusively.  *See J.R. v. Utah*, 261 F. Supp. 2d 1268, 1294 n.39 (D. Utah 2002) ("The State also has a significant interest in the accuracy of the records it keeps, particularly vital records like birth certificates.").  Moreover, this lawsuit directly implicates the enforceability of A.R.S. § 36-337(A) and A.A.C. R9-19-208.  *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (recognizing application of *Younger* abstention in "state civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts'") (citation omitted). Third, Plaintiffs have an opportunity to adjudicate the constitutionality of the statute and regulation in their state court proceedings.  Fourth, this lawsuit directly interferes with the state-court proceedings because Plaintiffs not only seek a declaratory judgment that the statute and regulation are unconstitutional as applied to Plaintiffs, but they also seek to permanently enjoin the public administration of that statute and regulation.  *See Gilbertson v. Albright*, 381 F.3d 965, 977 (9th Cir. 2004) ("[T]he Court extended *Younger* beyond injunctions to declaratory judgments because a declaration has the same practical effect on a state court proceeding as an injunction.").

Under *Younger* abstention, dismissal is required unless there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Page*, 932 F.3d at 901. Here, Plaintiffs cannot show bad faith or harassment. Nor can Plaintiffs show, short of speculation, a "great, immediate, and irreparable harm" that would warrant "federal-court intervention" in the state-court petitions. *Moore*, 442 U.S. at 434.  Any alleged concern about privacy from having to complete the state-court petition process is merely speculative given that only Plaintiff Helen Roe alleges that she filed a motion to seal.  (Doc. 47 ¶ 93.)  And while D.T., and the parents of James Doe and Carl Voe allege concerns about the problems that *might* result from registering them for sports, such as placement on a girls' team, such an alleged injury is also speculative.  (*Id.* ¶¶ 68, 102, 110.)  Under *Younger*, this Court should dismiss.  *See World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079,

1  1081 (9th Cir. 1987) ("When a case falls within the proscription of *Younger*, a district
2  court must dismiss the federal action.") (quotation marks omitted).

3      **B.     Alternatively, this Court Should Dismiss or Stay the Case Until the**
       **State Court Proceedings Have Concluded.**
4

5          **1.     The *Pullman* Doctrine.**[11]

6          "Reflected among the concerns which have traditionally counseled a federal court
7  to stay its hand are the desirability of avoiding unseemly conflict between two
8  sovereignties, the unnecessary impairment of state functions, and the premature
9  determination of constitutional questions." *Martin v. Creasy*, 360 U.S. 219, 224 (1959).
10  "Central to all of these concerns are principles of comity and federalism." *C-Y Dev. Co. v.*
11  *City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983). The *Pullman* abstention doctrine
12  addresses these concerns by instructing federal courts to abstain when "a federal
13  constitutional issue . . . might be mooted or presented in a different posture by a state
14  court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*,
15  360 U.S. 185, 189 (1959). "*Pullman* abstention is appropriate when (1) the case touches
16  on a sensitive area of social policy upon which the federal courts ought not enter unless no
17  alternative to its adjudication is open, (2) constitutional adjudication plainly can be
18  avoided if a definite ruling on the state issue would terminate the controversy, and (3) the
19  possible determinative issue of state law is uncertain." *Confederated Salish v. Simonich,*
20  29 F.3d 1398, 1407 (9th Cir. 1994).

21          Abstention is appropriate under *Pullman* because this case satisfies all three
22  factors. First, Plaintiffs' Amended Complaint touches upon a sensitive area of social
23  policy exclusively reserved to the state—i.e., the processing and maintenance of accurate
24  birth and vital records. *See J.R.*, 261 F. Supp. 2d at 1294 n.39. Second, the
25  constitutionality of state-court orders requiring Plaintiffs to comply with A.R.S. § 36-
26  337(A) and A.A.C. R9-19-208 has been mooted by the birth certificate amendments of

27

28          [11] *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

1  D.T. and Jane Doe, and they can be mooted or otherwise avoided by a ruling from the

2  state court on the petitions of Helen Roe, James Poe, and Carl Voe.  Third, Plaintiffs'

3  claims that the statute and regulation are unconstitutional as applied to them turns on their

4  interpretation.  *See Harris Cty. Comm'rs Court v. Moore*, 420 U.S. 77, 84 (1975)

5  ("Among the cases that call most insistently for abstention are those in which the federal

6  constitutional challenge turns on a state statute, the meaning of which is unclear under

7  state law.").

8       Because the *Pullman* factors warrant abstention, this Court may alternatively stay

9  this case pending the outcome of the state-court proceedings.  *See Columbia Basin*

10 *Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001) (holding "retention of

11 jurisdiction and not dismissal of the action is proper course" under *Pullman*).

12              **2.    The *Colorado River* and *Brillhart* Doctrines.[12]**

13       Abstention is appropriate under the *Colorado River* doctrine where, as here, the

14 plaintiffs have invoked the jurisdiction of state and federal courts concurrently and

15 proceeding in the federal court would be imprudent given concerns of conserving judicial

16 resources and disposing of litigation comprehensively.  *Tucker v. First Maryland Sav. &*

17 *Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir. 1991).  In applying this doctrine, the Ninth

18 Circuit considers eight factors, six of which are relevant to this case:

19                    [1] the desire to avoid piecemeal litigation; [2] the order in
20                    which the forums obtained jurisdiction; [3] whether federal
                      law or state law provides the rule of decision on the merits; [4]
21                    whether the state court proceedings can adequately protect the
                      rights of the federal litigants; [5] the desire to avoid forum
22                    shopping; and [6] whether the state court proceedings will
                      resolve all issues before the federal court.

23 *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017).

24       All six factors favor abstention in this case.  First, this lawsuit will result in

25 piecemeal litigation because it involves "the same issue[s], thereby duplicating efforts and

26 possibly reaching different results."  *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l*

27 _____

28 [12]    *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800
(1976); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

1    *Ins. Co*., 843 F.2d 1253, 1258 (9th Cir. 1988). For the same reasons discussed above,

2    there are also special concerns about proceeding piecemeal in parallel proceedings given

3    that the outcome of the state court proceedings could moot Plaintiffs' claims and render

4    federal intervention unnecessary. *Montanore*, 867 F.3d at 1167. Second, the state court

5    petitions were filed first and have progressed further than this case, which is only at the

6    pleading stage. *Id.* at 843. Plaintiffs also should be bound by their initial choice of the

7    state forum. *Cont'l Ins. Co.*, 843 F.2d at 1259. Third, state law provides the rule of

8    decision because the merits of Plaintiffs' claims depend on the interpretation of an

9    Arizona statute and regulation. *Montanore*, 867 F.3d at 1169. Fourth, the state court

10   proceedings are: (1) adequate to protect Plaintiffs' federal rights because there is no

11   impediment that would prevent the state courts from adjudicating whether the Arizona

12   statute and regulation are unconstitutional as applied to them; and (2) parallel to the

13   federal proceedings because they raise substantially the same issues. *Id.* Fifth, Plaintiffs

14   are merely "forum shopping" because they filed this lawsuit only after experiencing

15   setbacks in state court. *See id.* (forum shopping includes pursuing "suit in a new forum

16   after facing setbacks in the original proceeding"). Sixth, resolution of the state court

17   petitions will fully resolve Plaintiffs' claims here. *Id.* at 1170.

18        Further, because this is a declaratory action, these same six factors also warrant

19   abstention under the *Brillhart* doctrine, which instructs that district courts in declaratory

20   actions "should avoid needless determination of state law issues; . . . discourage litigants

21   from filing declaratory actions as a means of forum shopping; and . . . avoid duplicative

22   litigation." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). Where, as

23   here, "there are parallel state proceedings involving the same issues and parties pending at

24   the time the federal declaratory action is filed, there is a presumption that the entire suit

25   should be heard in state court." *Id.* Indeed, for all the prudential, federalism, and comity

26   concerns discussed above, the need to avoid entanglement with the state court proceedings

27   and the availability of other remedies further weigh in favor of *Brillhart* abstention. *Id.*

28   n.5.

This Court should abstain from entertaining this declaratory action and dismiss under the *Brillhart* doctrine.  *See Dizol*, 133 F.3d at 1225 ("[F]ederal courts should generally decline to entertain reactive declaratory actions.").  Alternatively, it may stay the case under the *Colorado River* doctrine.  *See Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990) (holding "district courts must stay, rather than dismiss, an action when they determine that they should defer to the state court proceedings under *Colorado River*.").

## IV.    The Amended Complaint Fails to State Several Claims.

To satisfy Federal Rule of Civil Procedure 8, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (1986)) (internal citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Rather, a complaint must allege sufficient factual matter that is "plausible on its face." *Id.*  Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*  A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### A.    Count I – Equal Protection Claim

The Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A plaintiff alleging an equal-protection claim must show that the defendant "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a

protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted).  When a statute is challenged as unconstitutional, a plaintiff must show that the statute "results in members of a certain group being treated differently from other persons based on membership in that group." *Sagana v. Tenorio*, 384 F.3d 731, 740 (9th Cir. 2004) (quoting *United States v. Lopez–Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995)).

Count I alleges that A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O) "impermissibly discriminate[] against transgender people on the basis of sex and transgender status" because, "[u]nlike their nontransgender peers and other Arizonans who can have accurate birth certificates and correct their birth certificates when necessary, transgender people are denied accurate birth certificates." (Doc. 47 ¶ 125.)  But both the statute and the regulation are facially neutral; they do not target or even reference transgender persons.  They apply to *all* persons seeking to amend their birth certificate.  A nontransgender person who seeks to amend their birth certificate under Subsection (A)(3) must abide by the same criteria.  Moreover, both transgender and nontransgender persons can amend their birth certificates under Subsection (A)(4).  Thus, it cannot be said that the statute and regulation treat transgender persons differently from nontransgender persons.

In addition, Plaintiffs do not allege that the statute and regulation *intentionally* discriminate against transgender persons.  They allege only that they "impermissibly" discriminate against them.  That does not state an equal-protection claim.  *Lee*, 250 F.3d at 686.  This Count should be dismissed.

### B.    Counts III & IV – Due Process Claims

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).  Neither Count III nor Count IV identify a protected interest.  Both should be dismissed.

Count III is grounded in a purported "right to live consistent with one's sex, which is a fundamental aspect of personal identity." (Doc. 47 ¶ 137.)  Plaintiffs allege that "Arizona law" burdens that right "by preventing transgender people from obtaining

amended birth certificates that reflect who they are." (*Id.*) The only authority they cite for this purported right is the right "to define and express their identity." (*Id.* ¶ 136 [quoting *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015)].) *Obergefell*, however, involved the right to marry, *Obergefell*, 576 U.S. at 664, and Plaintiffs cite no authority suggesting that that right includes the "right to live consistent with one's sex." Merely asserting a purported right in "vague generalities . . . will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 775-76 (2003). Moreover, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scare and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (internal quotation marks omitted).

Nonetheless, neither A.R.S. § 36-337(A)(3) nor A.A.C. R9-19-208(O) deprives or otherwise interferes with this purported right. They simply provide a means to amend a birth certificate, which can be done by either submitting proof of a "sex change operation" or petitioning the court. *See* A.R.S. § 36-337(A)(3)-(4), A.A.C. R9-19-208(B), (O), (P)(2).

Count IV is grounded in a purported "right to choose whether to undergo a particular medical treatment." (Doc. 47 ¶ 141.) Plaintiffs allege that Subsection (A)(3) infringes on that right because it requires them to undergo a "sex change operation" to amend their birth certificate. (*Id.* ¶ 142.) But the cases they cite to support that purported right do not establish it. *Glucksberg*, 521 U.S. at 720, involved the "right to refuse unwanted lifesaving medical treatment." *Washington v. Harper*, 494 U.S. 210, 221 (1990), involved a "liberty interest in avoiding the unwanted administration of antipsychotic drugs." And *Parham v. J.R.*, 442 U.S. 584, 600 (1979), addressed the "liberty interest in not being confined unnecessarily for medical treatment." Clearly, the Due Process Clause protects against *compelled* medical treatment. But none of these cases create a due process right to forego a purely voluntary medical procedure. *See Glucksberg*, 521 U.S. at 721 (due process claims require a "'careful description' of the asserted fundamental liberty interest").

1    Nonetheless, Subsection (A)(3) does not force Plaintiffs to undergo a "sex change
2    operation."  Their election to pursue an amended birth certificate under Subsection (A)(3)
3    is purely voluntary.  *See Carcano v. McCrory*, 203 F. Supp. 3d 615, 649 (M.D.N.C. 2016)
4    ("If the Due Process Clause were implicated any time an individual must undergo medical
5    treatment in order to access a desired benefit or service, it would cast serious doubts on a
6    wide variety of laws.").  And Subsection (A)(4) permits an amendment without requiring
7    any medical procedure.

8    ### C.    Defendants Salow and Colburn Should Be Dismissed as Duplicative.

9    All three Defendants are sued in their official capacities and are employees of
10   ADHS. Because official-capacity claims are the functional equivalent of a suit against the
11   State, *Hafer v. Melo,* 502 U.S. 21, 25 (1991), and Defendant Christ—the Director of
12   ADHS and State Registrar of Vital Records—is "charged with the execution of the vital
13   statistics laws of Arizona" and "has supervisory authority over the assistant state registrars
14   and deputy local registrars throughout Arizona" (Doc. 47 ¶ 19), any claims against her
15   subordinates, including Defendants Salow and Colburn (*id.* ¶¶ 20-21), are redundant.
16   Plaintiffs cannot recover any additional relief against Salow and Colburn that they cannot
17   recover against Director Christ.  Therefore, they should be dismissed.  *See Rosas v. Baca,*
18   No. CV 12-00428 DDP (SHx), 2012 WL 933609, at *1-2 (C.D. Cal. Mar. 20, 2012)
19   (dismissing all claims against three of the four individual defendants in their official
20   capacities as duplicative).

21   ## V.    Conclusion.

22   For all the foregoing reasons, this Court should dismiss Plaintiffs' Amended
23   Complaint (Doc. 47).  If the Amended Complaint is not dismissed in its entirety, then
24   D.T., Jane Doe, Thomas Salow, and Krystal Colburn should be dismissed from this case;
25   the Court should stay the matter pending final resolution of Plaintiffs' state-court
26   petitions; and the matter should be transferred to the Phoenix Division.

27

28

1

DATED this 10th day of March, 2021.

2

MARK BRNOVICH
ATTORNEY GENERAL

3

4

5

By /s/ Aubrey Joy Corcoran
Patricia Cracchiolo LaMagna
Aubrey Joy Corcoran

6

7

*Attorneys for Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**LRCiv 12.1(c) CERTIFICATION**

2

3

Defendants Dr. Cara Christ, State Registrar of Vital Records and Director of the

4

Arizona Department of Health Services; Thomas Salow, Branch Chief of Public Health

5

Licensing Services at the Arizona Department of Health Services; and Krystal Colburn,

6

Bureau Chief and Assistant Registrar of the Bureau of Vital Records at the Arizona

7

Department of Health Services ("Defendants") hereby submit the following LRCiv

8

12.1(c) Certification with respect to its concurrently-filed Defendants' Motion to Dismiss

9

Plaintiffs' Amended Complaint.

10

Defendants' counsel certify that pursuant to Local Rule of Civil Procedure 12.1(c),

11

before filing Defendants' Motion to Dismiss, counsel for Defendants met and conferred

12

telephonically with Plaintiffs' counsel on March 4, 2021, and followed up via e-mail on

13

March 8, 2021, to inform Plaintiffs about Defendants' intention to file a motion to dismiss

14

under Federal Rule of Civil Procedure 12(b)(6) and to provide Plaintiffs with their legal

15

theories for their Rule 12(b)(6) arguments.  The parties did not reach an agreement that

16

Plaintiffs' Amended Complaint was curable by a permissible amendment offered by the

17

Plaintiffs.  Plaintiffs asserted that their pleadings are sufficiently pleaded and do not

18

require further amendments.  Defendants therefore informed Plaintiffs that they would be

19

20

filing their Motion to Dismiss.

21

Date this 10th day of March, 2021.

22

23

/s/ Aubrey Joy Corcoran

24

25

26

27

28

26

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on March 10, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

3

4

5

                                          /s/ Aubrey Joy Corcoran

6

7

8

#9356894

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28