MARK BRNOVICH
ARIZONA ATTORNEY GENERAL
Firm State Bar No. 14000
Patricia Cracchiolo LaMagna (Bar No. 021880)
Aubrey Joy Corcoran (Bar No. 025423)
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone:(602) 542-8854
Fax:(602) 542-8308
EducationHealth@azag.gov

STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Daniel P. Struck (Bar No. 012377)
Nicholas D. Acedo (Bar No. 021644)
Dana M. Keene, (Bar No. 033619)
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
nacedo@strucklove.com
dkeene@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| D.T., a minor, by and through his parent and next friend Lizette Trujillo; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Dr. Cara Christ, M.D., et al.,<br><br>Defendants. | No. 4:20-cv-00484-JAS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

Plaintiffs state that they "seek to amend their birth certificates through the state-created administrative process *that is available to all Arizonans*." (Doc. 61 at 3 [emphasis added].) However, rather than availing themselves of the administrative process set forth in A.R.S. § 36-337(A)(4) and A.A.C. R9-19-208(B), (P)(2) that *is* available to *all* Arizona-born individuals, they incorrectly claim that they are "prevented from" amending their birth certificates through an administrative process. (Id. at 7.) There is no constitutional requirement to allow Plaintiffs to amend their birth certificates through their preferred process and their requested relief cannot redress their alleged injuries. Accordingly, the Court should dismiss Plaintiffs' Amended Complaint.

## I. The Court Does Not Have Subject-Matter Jurisdiction Because Plaintiffs Do Not Have Article III Standing.[1]

Plaintiffs misplace reliance on *M.S. v. Brown*, 902 F.3d 1076 (9th Cir. 2018), to lower their burden to establish redressability. (Doc. 61 at 7.) Redressability is an "irreducible" component of standing and "no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). Consistent with that proposition, the Ninth Circuit in *Brown* held that the district court lacked subject-matter jurisdiction because the plaintiff's "requested remedies [were] either ineffective or beyond the scope of the district court's remedial power" and therefore the plaintiff could not establish redressability. 902 F.3d at 1082. The court explained that although a plaintiff does not need to demonstrate that redressability is guaranteed, a plaintiff must "show a 'substantial likelihood' that the relief sought would redress the injury[.]" *Id.* (internal quotation marks omitted). Additionally, it held that if a favorable judicial decision would not require or likely lead the defendant to redress the plaintiff's claimed injury or if a federal court lacks the power to issue such relief, then the plaintiff will not have Article III standing. *Id.* "This is so even where, as here, a plaintiff alleges constitutional violations." *Id.*

---

[1] Plaintiffs have agreed to voluntarily dismiss Plaintiffs D.T. and Jane Doe and Defendants Salow and Colburn. (Doc. 66 at 3.) The Court should dismiss them.

Here, Plaintiffs seek (1) a declaration that the surgical requirement in A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O) is unconstitutional (Doc. 47 at 33, ¶ B) and (2) an injunction prohibiting Director Christ from enforcing that requirement (id. at 33, ¶ B). As discussed in Defendants' Motion, Plaintiffs' requested relief cannot redress their alleged injuries. The Court cannot grant the requested relief because striking the language that makes Subsection (A)(3) applicable to only individuals who have had a "sex change operation" would leave only Subsection (A)(3)(a) operative, thereby effectively nullify Subsections (A)(1), (A)(2), and (A)(4) by allowing all individuals to simply submit a written request for an amendment without providing any evidence to support that request. The only way to keep those Subsections viable (and meaningful) would be to entirely invalidate the administrative process that is currently available to individuals who have had a sex change operation or to add new language to the statute and regulation, which the Court cannot do.[2] *See United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 479 (1995) (the Court has an "obligation to avoid judicial legislation"). Because none of these options redress Plaintiffs' alleged injuries, they lack Article III standing.

Plaintiffs try to compare their claims to challenges of unconstitutional restrictions in other cases such as *Pavan v. Smith*, 137 S. Ct. 2075 (2017), *Obergefell v. Hodges*, 576 U.S. 644 (2015), and *Loving v. Virginia*, 388 U.S. 1 (1967). However, in those cases, the plaintiffs were challenging their express exclusion from laws. Here, Plaintiffs are not expressly denied the ability to amend their birth certificates. Furthermore, contrary to Plaintiffs' assertions, A.R.S. § 36-337(A)(3) does not discriminate against them. Subsection (A)(3) applies equally to all persons who have not undergone a sex change

---

[2] Eliminating the requirement for an individual to provide a written physician statement would remove any requirement to provide evidence substantiating the basis for the requested amendment to the birth certificate. Changing that evidentiary requirement is a legislative function that should be left to the Arizona Legislature. Additionally, because birth certificates are used as identification documents— which is Plaintiffs' stated purpose for wanting to amend their birth certificates—it is conceivable that eliminating the evidentiary requirement could discredit the validity and reliability of Arizona birth certificates for identification purposes on a national and international basis, thereby impacting all Arizona-born individuals.

operation. Plaintiffs' assertion that the statute and regulation do not permit them to amend the gender marker on their birth certificates is also incorrect. It is not even true for the Plaintiffs in this case. D.T. and Jane Doe have both successfully amended the gender fields on their birth certificates without having a sex change operation. They did so through the process that is available to all Arizona-born individuals. *See* A.R.S. § 36-337(A)(4); A.A.C. R9-19-208(B), (P)(2). The remaining Plaintiffs do not have standing.

## II. Plaintiffs' Claims Are Barred by the *Rooker-Feldman* Doctrine.

Plaintiffs argue that *Rooker-Feldman* does not apply because they are not challenging the merits of any "state court judgments." That is irrelevant. The *Rooker–Feldman* doctrine is not limited to final judgments; it applies equally to interlocutory orders. *See*, *e.g.*, *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (denial of motion to quash). Moreover, *Rooker-Feldman* "bars any claim that is 'inextricably intertwined' with the decision of a state court, even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based on constitutional principles." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 n.4 (9th Cir. 2003). A claim is inextricably intertwined if its adjudication "would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* at 898.

Here, Plaintiffs' allegations are inextricably intertwined with their state-court proceedings. Helen Roe, James Poe, and Carl Voe expressly allege that they petitioned the state court to change the gender marker on their birth certificates. (Doc. 47, ¶¶ 93, 102, 111.) It is thus "immaterial that [Plaintiffs] frame [their] federal complaint as a constitutional challenge to the state courts' decisions, rather than as a direct appeal of those decisions" to this Court. *Bianchi*, 334 F.3d at 900 n.4. Whether or not Plaintiffs challenged the constitutionality of the surgery requirement in (A)(3) in their state-court proceedings is also irrelevant because they do not deny that they could have done so. *See Plummer v. State Bar of Ariz.*, 2009 WL 2222713, at *4 (D. Ariz. July 23, 2009) ("Generally, Rooker–Feldman will act as a bar to jurisdiction unless 'there was literally no

effective opportunity to present the federal question to the state court.'") (citation omitted); *accord Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n.1 (2005) ("A district court could not entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was 'inextricably intertwined' with the state court's judgment."). Further, if Plaintiffs are dissatisfied with the state court's rulings, they must appeal those through the state court. Plaintiffs may not simply abandon their petitions or circumvent the state-appellate process by filing federal claims in this Court. *See Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998); *see also*, *e.g.*, *Keliihuluhulu v. Strance*, 2016 WL 2930902, at *3 (D. Haw. May 19, 2016) ("The *Rooker-Feldman* doctrine divests federal district courts of jurisdiction to conduct direct reviews of state court judgments even when a federal question is presented."), *aff'd*, 692 F. App'x 406 (9th Cir. 2017). *Rooker-Feldman* thus bars Plaintiffs' de facto appeal of the state court's orders to this Court under the guise of constitutional claims.

**III. Assuming Jurisdiction Exists, the Lawsuit Should Be Dismissed or Transferred to the Phoenix Division.**

Plaintiffs contend that Local Rule 5.1(a) mandates that the case remain in the Tucson Division, but that Rule applies only if the cause of action arose in more than one county. Plaintiffs are challenging Director Christ's *enforcement* of an Arizona statute and regulation, and they do not allege that Director Christ engaged in any county other than Maricopa County. Indeed, Plaintiffs concede that venue is proper in the Phoenix Division. (Doc. 56 at 14.) Because Plaintiffs' cause of action could have arisen only in the Phoenix Division, Local Rule 5.1(a) does not apply, venue is improper in the Tucson Division under 28 U.S.C. § 1406(a), and this case should be transferred pursuant to Local Rule 77.1(c).

Plaintiffs' opposition to a transfer under 28 U.S.C. § 1404(a) and (b) also falls short. Plaintiffs do not dispute that Director Christ works and resides in the Phoenix Division, that most (if not all) non-party witnesses and custodians of records are in

4

Phoenix, and that most of the documentary evidence pertinent to Plaintiffs' claims is located at ADHS and BVR central offices in Phoenix. (Doc. 56 at 14–15.) Although they contend that a transfer would inconvenience the two Plaintiffs who live in Pima County, any inconvenience is vastly disproportionate to the inconveniences imposed on Director Christ and the non-party witnesses. (Doc. 61 at 13.) Indeed, Plaintiffs acknowledge that depositions "will almost certainly" be held in Phoenix. *See Gomez v. Wells Fargo Bank*, 2009 WL 1936790, at *3 (D. Ariz. July 2, 2009) (litigation costs are reduced where action is pursued in venue where most of the witnesses expected to testify or give depositions, and near the location of documents likely to be at issue in the case). The number of witnesses who work and reside in the Phoenix Division, and the amount of documentary evidence that is located there, will exponentially multiply if the class is certified to include *all* Arizona transgender children.[3]

Plaintiffs' claims that litigation costs will not be "significantly more in Tucson than in Phoenix given their proximity" is simply not true. (Doc. 61 at 14.) Phoenix and Tucson are not in proximity (they are more than 100 miles apart), as evidenced by the separate Divisions. *See* LRCiv 77.1; *see also Cheval Farm LLC v. Chalon,* 2011 WL 13047301, at *4 (D. Ariz. Jan. 19, 2011) (recognizing that traveling over 100 miles between Tucson and Phoenix constitutes inconvenience); *Medicenters of Am., Inc. v. T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974) (granting interdivision motion to transfer venue in part because travelling approximately 100 miles was an inconvenience to defendant and witnesses). "When government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer,

---

[3] Director Christ will oppose class certification, but the prospect of litigating this lawsuit in the Tucson Division *if* the class is certified should be considered, as the number of witnesses, amount of documentary evidence, and discovery efforts will increase exponentially. Significantly, a trial in the Tucson Division would not only create a logistical nightmare, but it would also cost the State an inordinate amount of money in transportation and accommodation costs alone as compared to the costs potentially expended by Plaintiffs. It is undisputed that the Phoenix Division is the "center of discovery," and this is especially true if the class is certified. *Bratton v. Schering-Plough Corp.*, 2007 WL 2023482, at *5 (D. Ariz. July 12, 2007) (transferring venue to the "center of discovery" in nationwide class action lawsuit).

| | |
|---|---|
| 1 | who finances the federal government and who is no less worthy of the protections of the |
| 2 | law than corporate officers, shareholders, and employees." *In re Nat'l Presto Indus., Inc.,* |
| 3 | 347 F.3d 662, 665 (7th Cir. 2003)); *see also Sec. & Exch. Comm'n v. Christian Stanley,* |
| 4 | *Inc.,* 2012 WL 13012496, at *2 (C.D. Cal. Apr. 4, 2012) ("[I]nconvenience to the SEC in |
| 5 | the form of increased litigation expenses affects the public at large."). |
| 6 | That Plaintiffs filed their original complaint six months ago is also no reason to |
| 7 | deny a transfer. (Doc. 61 at 16.) The instant Motion is Director Christ's first responsive |
| 8 | pleading, and it appropriately challenges venue. *See* Fed. R. Civ. P. 12(b)(3); *see also* |
| 9 | *Henrietta Mine LLC v. A.M. King Indus. Inc.,* 2021 WL 65982, at *3 (D. Ariz. Jan. 7, |
| 10 | 2021) ("[A] motion to transfer venue under 1404(a) cannot be waived under Rule 12(h)"). |
| 11 | Any delay was caused by Plaintiffs first seeking a preliminary injunction (Doc. 3) and |
| 12 | then amending their Complaint to add class allegations (Doc. 47). |

**IV.     Alternatively, the Court Should Abstain and Decline Jurisdiction.**

      **A.     The Court Should Dismiss the Case Under *Younger*.**

Plaintiffs incorrectly argue that *Younger* does not apply because their state-court proceedings are not now ongoing. Whether state proceedings are "ongoing" is based on the date the complaint is filed. *See Adibi v. Cal. State Bd. of Pharmacy*, 461 F. Supp. 2d 1103, 1109–10 (N.D. Cal. 2006); *accord Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987) ("The critical question is. . . whether the state proceedings were underway before the initiation of the federal proceedings.") (internal quotations omitted). Moreover, "the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 369 (1989). Thus, *Younger* requires a party to "exhaust. . . state appellate remedies before seeking relief in the District Court." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1143 (C.D. Cal. 2014). Plaintiffs' failure to appeal the state-court orders also renders the state-court proceedings "ongoing." *See New Orleans*, 491 U.S. at 369 ("[A] party may not procure federal intervention by terminating

1 the state judicial process prematurely—forgoing the state appeal to attack the trial court's judgment in federal court."); *see also*, *e.g.*, *Huffman v. Pursue*, *Ltd.*, 420 U.S. 592, 611 n. 22 (1975) ("[A]ppellee may not avoid the standards of *Younger* by simply failing to comply with the procedures of perfecting its appeal within the [state] judicial system.").

Plaintiffs also incorrectly argue that *Younger* does not apply to this type of a civil case. (Doc. at 12.) "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved" and the "[p]roceedings [are] necessary for the vindication of important state policies or for the functioning of the state judicial system." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here, Plaintiffs' claims directly implicate the State's interest in enforcing the state court's orders entered pursuant to § 36-337(A)(4), which allegedly subjected them to a purported surgery requirement under § 36-337(A)(3). Plaintiffs do not dispute the State has an important interest in maintaining accurate birth certificates, but the State also has a vital interest in requiring judicial oversight under § 36-337(A)(4). This is especially true given that Plaintiffs are children, even though their parents may be well-intentioned. Plaintiffs' claims thus interfere with the State's interest as well as the state court's ability to provide judicial oversight pursuant to § 36-337(A)(4).

Under these circumstances, granting Plaintiffs' requested relief would be tantamount to enjoining the state-court proceedings. Because Plaintiffs do not dispute the remaining factors (Doc. 54 at 16-18), *Younger* requires dismissal of their claims. *See Fresh Int'l Corp. v. Agric. Labor Rels. Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986) ("When a case falls within the proscription of *Younger*, a district court must dismiss the federal action.").

**B.     The Court Should Stay the Case Under *Pullman*.**

Plaintiffs contend that *Pullman* does not apply because the state court proceedings are no longer pending. But "*Pullman* abstention applies whether or not a state proceeding is pending in which the federal constitutional claim may be raised." *Gilbertson v. Albright*, 381 F.3d 965, 971 n.6 (9th Cir. 2004).

Plaintiffs' contention that the state-court proceedings will not resolve the merits of their constitutional claims is also wrong. "*Pullman* abstention is an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions." *San Remo Hotel v. City & Cty. of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998). Here, Plaintiffs' claims raise sensitive federal questions, seeking a declaratory judgment to invalidate an Arizona statute and regulation under federal law and enjoin their enforcement. These federal questions can be narrowed, if not completely mooted, by a ruling from the state court on Plaintiffs' petitions, including any appeals. *See*, *e.g.*, *Young v. Brown*, 2015 WL 5255311, at *4 (E.D. Cal. Sept. 9, 2015) (*Pullman* abstention is appropriate where the federal claim "can, potentially, be cured before or during trial, or, again, on direct appeal to the state appellate courts"). This is especially true given the Arizona Court of Appeals recent decision in *In re Marriage of McLaughlin & Swanson*, 476 P.3d 336, 339 (Ariz. App. 2020), which made clear the "the legislature has given trial courts general authority to order ADHS to amend birth certificates."

### C. The Court Should Dismiss the Case Under *Brillhart* or Stay the Case under *Colorado River*.

Plaintiffs incorrectly argue that this Court may not abstain unless exceptional circumstances exist. In declaratory actions like this case, however, *Colorado River*'s requirement of "exceptional circumstances" does not apply because the district court's jurisdiction is discretionary. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995). Because Plaintiffs do not raise independent claims for damages, *Brillhart*'s discretionary standard applies. *Cf. Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 840 (9th Cir. 2017) (recognizing *Brillhart* does not require exceptional circumstances but applying *Colorado River* standard because of independent damages claims).

Nonetheless, exceptional circumstances exist to abstain. Plaintiffs do not dispute that three of the six *Colorado River/Brillhart* factors favor abstention: (1) the state court proceedings were filed first and have progressed further; (2) Plaintiffs should be bound by

1 | their initial choice of the state-court forum; and (3) Plaintiffs are essentially "forum
2 | shopping" by filing this lawsuit after experiencing setbacks in state court. The remaining
3 | three factors that Plaintiffs do dispute also favor abstention. First, Plaintiffs argue that
4 | there are no pending state-court proceedings. Like the analysis of "ongoing" proceedings
5 | for *Younger*, whether state-court proceedings are "pending" under *Brillhart* and *Colorado*
6 | *River* also depends on the date the federal action is filed. *Gov't Emps. Ins. Co. v. Dizol*,
7 | 133 F.3d 1220, 1225 (9th Cir. 1998); *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196,
8 | 1199 (9th Cir. 1992). It is undisputed that Plaintiffs' petitions were pending in state court
9 | when they filed this lawsuit. Second, Plaintiffs argue that Arizona law does not provide
10 | the rule of decision on the merits of their constitutional claims. This argument is myopic
11 | because the alleged constitutional violations depend on the interpretation and applicability
12 | of § 36-337(A), and Plaintiffs do not dispute that the state court can resolve those issues.
13 | Moreover, Plaintiffs' claims involve complex policy issues traditionally reserved to the
14 | states. The State not only has an important interest in them, but these legal and policy
15 | issues are better resolved by Arizona's courts, if not the Arizona Legislature. Third,
16 | Plaintiffs argue that proceeding in this Court would be more efficient and avoid piecemeal
17 | litigation because the state-court proceedings would not resolve all class members' claims.
18 | No class has been certified, however, and *putative* class members are *not parties* to this
19 | action. *See Molock v. Whole Foods Mkt. Group, Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020)
20 | ("[P]utative class members . . . are always treated as nonparties.") (citing *Smith v. Bayer*
21 | *Corp.*, 564 U.S. 299, 318 (2011)). Plaintiffs do not dispute that resolution of the state
22 | court petitions would dispose of *their* claims.

All six *Colorado River/Brillhart* factors thus favor abstention. Accordingly, this Court should dismiss this case under *Brillhart*. Alternatively, it should stay the case under *Colorado River* until Plaintiffs have exhausted their remedies in state court.

**V.     Count I Should Be Dismissed for Failure to State a Claim.**

To support their equal-protection claim, Plaintiffs cite *Latta v. Otter*, 771 F3d 456 (9th Cir. 2014), and argue that § 36-337 "facially discriminates against transgender

9

people" in the same way that "bans on marriage for same-sex couples facially discriminated against lesbian, gay, and bisexual people." (Doc. 61 at 18.) But *Latta* and the same-sex-marriage-ban cases involved equal-protection challenges to statutes that "distinguish[ed] *on their face* between opposite-sex couples, who [were] permitted to marry and whose out-of-state marriages [were] recognized, and same-sex couples, who [were] not permitted to marry and whose marriages [were] not recognized." 771 F.3d at 467 (emphasis added); *see also id*. at 464 n.2. Section 36-337 does not facially distinguish between transgender persons and nontransgender persons, nor does it require only transgender persons to provide proof of a sex change operation to amend their birth certificates. The statute applies to *all* persons equally. Moreover, anyone can petition to amend the gender marker on their birth certificate without proof of a sex change operation.[4] *See* A.R.S. § 36-337(A)(4). Indeed, Plaintiffs' facial challenge of § 36-337 fails because they cannot establish that "no set of circumstances exists" under which a court order would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Plaintiffs argue that "Arizona courts have imported the surgical requirement from Subsection (A)(3) into (A)(4) and, as a result, transgender minors are" unable to amend their birth certificates without proof of a sex change operation.[5] (Doc. 61 at 19.) But a state court's interpretation of Subsection (A)(4) has nothing to do with Director Christ's "administration and enforcement of" the statute, which is the basis for Plaintiffs' equal-protection challenge. (Doc. 47, ¶¶ 19, 57, 124.) If a petitioner disagrees with a state court's interpretation, their remedy is to appeal that ruling, not sue to effectively abrogate the statute. Plaintiffs alternatively ask the Court to ignore Subsection (A)(4). But in determining whether Plaintiffs' constitutional rights were violated, all provisions in the

---

[4] Because the statute does not facially discriminate against transgender persons, Plaintiffs' argument that they need not allege *intentional* discrimination (Doc. 61 at 19-19) fails, and their failure to allege intentional discrimination is an additional basis to dismiss this claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

[5] To the extent that this has been an issue for Plaintiffs, it should now be resolved by *In re Marriage of McLaughlin & Swanson's* holding that "trial courts [have] general authority to order ADHS to amend birth certificates."

statute must be considered. *See Webster v. Reprod. Health Servs.*, 492 U.S. 490, 514 (1989) ("'In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' The Court of Appeals' interpretation also runs 'afoul of the well-established principle that statutes will be interpreted to avoid constitutional difficulties.'") (internal citations omitted); *Bridges v. Collette*, 2008 WL 53771, at *3 (W.D. Mich. Jan. 2, 2008) (rejecting challenge to statutory provision "because that subsection must be read in pari materia with section 600.2963(7) to preserve the constitutionality of the statute"). Plaintiffs offer no authority allowing the Court to read the statute in a vacuum.[6]

**VI. Counts III and IV Should Be Dismissed for Failure to State a Claim.**

Plaintiffs do not cite any case that recognizes a due process "right to live consistent with one's sex," the right purportedly supporting Count III. (Doc. 47, ¶ 137.) Count III should be dismissed for that reason alone. Plaintiffs instead cloak this purported right in the concept of "decisional autonomy," and cite cases that struck down statutes that, for example, prohibited same-sex couples from marrying, *Obergefell*, 576 U.S. at 653–54, and criminalized engaging in same-sex sexual conduct, *Lawrence v. Texas*, 539 U.S. 558, 563 (2003), providing single persons contraceptives, *Eisenstadt v. Baird*, 405 U.S. 438, 440-42 (1972), and teaching a school subject in a foreign language, *Meyer v. Nebraska*, 262 U.S. 390, 397 (1923). These cases—which involved the underlying rights to marry, to make intimate decisions regarding sexual conduct, to beget children, and to teach—do not lend any support to Plaintiffs' claimed due process right to amend their birth certificate free of administrative or judicial processes. *See Washington v. Glucksberg*, 521 U.S. 702, 727 (1997) ("That many of the rights and liberties protected by the Due Process Clause sound in personal autonomy does not warrant the sweeping conclusion that any

---

[6] Plaintiffs contend that the statute and regulation are subject to heightened scrutiny. (Doc. 61 at 17-18.) Since the standard of review is not at issue in this Motion, the Court should refrain from commenting or ruling on it.

and all important, intimate, and personal decisions are so protected."). Nor does § 36-337 ban or criminalize Plaintiffs' transgender status or way of life.

Plaintiffs urge the Court to allow this claim to go forward because, they assert, there are lawsuits in other districts litigating "state laws barring transgender people from correcting their birth certificates" that have not been dismissed. (Doc. 61 at 21.) But the courts in those cases did not or have not addressed the "decisional autonomy" claim that Plaintiffs raise here. *See Ray v. McCloud*, 2020 WL 8172750, at *2 (S.D. Ohio Dec. 16, 2020); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018); *see also Gore v. Lee*, No. 3:19-cv-00328 (M.D. Tenn. Apr. 1, 2020), Dkt. 65, 74 (motion to dismiss pending). More importantly, unlike § 36-337, the statutes in those cases categorically bar transgender persons from amending their birth certificates. *See Arroyo Gonzalez*, 305 F. Supp. 3d at 329; *Ray*, 2020 WL 8172750, at *1; *Gore*, No. 3:19-cv-00328, Dkt. 59, ¶ 5. The Court should dismiss Count III.

Plaintiffs' defense of Count IV—based on the purported "right to choose whether to undergo a particular medical treatment"—fares no better. As expected, they rely on those cases that recognize a right not to be *compelled* to undergo medical treatment. (Doc. 61 at 22.) Section § 36-337 does not force anyone to undergo medical treatment, nor does it condition an amendment on a medical procedure. Anyone can request an amendment under Subsection (A)(4), which does not require a sex change operation.

**VII. Plaintiffs Have Recently Disclosed Evidence that May Affect This Court's Jurisdiction and/or Abstention.**

On May 25, 2021, the day before this Reply was due, Plaintiffs' counsel disclosed the Plaintiffs' petitions to amend their birth certificates and several orders. These documents may affect the jurisdictional and/or abstention arguments made herein. If necessary, Defendants will file a notice or motion after their review.

**VIII. Conclusion.**

For these additional reasons, this Court should dismiss Plaintiffs' Amended Complaint or, alternatively, transfer it to the Phoenix Division.

DATED this 26th day of May, 2021.

                                  STRUCK LOVE BOJANOWSKI & ACEDO, PLC

                                  By  /s/ Daniel P. Struck
                                       Daniel P. Struck
                                       Nicholas D. Acedo
                                       Dana M. Keene
                                       3100 West Ray Road, Suite 300
                                       Chandler, Arizona 85226

                                       MARK BRNOVICH
                                       ATTORNEY GENERAL
                                       Patricia Cracchiolo LaMagna
                                       Aubrey Joy Corcoran

                                       *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Asaf Orr | aorr@nclrights.org |
| Barrett J. Anderson | banderson@cooley.com |
| Colin M. Proksel | cproksel@omlaw.com |
| Mary R. O'Grady | mogrady@omlaw.com |
| Patrick P. Gunn | pgunn@cooley.com |
| Payslie M. Bowman | pbowman@omlaw.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck