Patrick Gunn (admitted *Pro Hac Vice*)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:   (415) 693-2070
Facsimile:   (415) 693-2222
Email:       pgunn@cooley.com

Mary O'Grady (011434)
Colin Proksel (034133)
Payslie Bowman (035418)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone:   (602) 640-9000
Facsimile:   (602) 640-9050
Email:       mogrady@omlaw.com
Email:       cproksel@omlaw.com
Email:       pbowman@omlaw.com

*Attorneys for Plaintiffs and Proposed Class*
Additional counsel listed on following page

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D.T., a minor, by and through his parent and next friend Lizette Trujillo; Jane Doe, a minor, by and through her parent and next friend Susan Doe; Helen Roe, a minor, by and through her parent and next friend Megan Roe; James Poe, a minor by and though his parent and next friend Laura Poe; and Carl Voe, a minor by and though his parent and next friend Rachel Voe, <br><br> Plaintiffs, <br><br> v. <br><br> Dr. Cara M. Christ, in her official capacity as State Registrar of Vital Records and Director of the Arizona Department of Health Services; Thomas Salow, in his official capacity as Branch Chief of the Division of Public Health Licensing Services at the Arizona Department of Health Services; and Krystal Colburn, in her official capacity as Bureau Chief and Assistant State Registrar of the Bureau of Vital Records at the Arizona Department of Health Services, <br><br> Defendants. | Case No. 4:20-cv-484-JAS <br><br> **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Barrett J. Anderson (admitted *Pro Hac Vice*)
COOLEY LLP
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:     (858) 550-6000
Facsimile:     (858) 550-6420
Email:          banderson@cooley.com

Asaf Orr (admitted *Pro Hac Vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone:     (415) 392-6257
Facsimile:     (415) 392-8442
Email:          aorr@nclrights.org

*Attorneys for Plaintiffs and Proposed Class*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.   <u>INTRODUCTION</u>

Plaintiffs Helen Roe, James Poe, and Carl Voe (collectively, "Plaintiffs" or "Named Plaintiffs") represent a putative class of transgender people who were born in Arizona but are unable to correct the sex listed on their birth certificates through the private administrative process created by A.R.S. § 36-337(A)(3).  By restricting that process to applicants who have undergone and can provide proof of a "sex change operation," Arizona impermissibly excludes many transgender Arizonans from obtaining an accurate birth certificate in a manner that safeguards their safety and privacy, causing them significant and lasting harm.

Plaintiffs seek to certify a class to pursue injunctive relief for all similarly situated transgender people and prevent any further enforcement of this unlawful surgical requirement.  Plaintiffs satisfy the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.  Accordingly, this Court should grant Plaintiffs' motion for class certification.

## II.   <u>BACKGROUND</u>

Plaintiffs are transgender young people who were born in Arizona.[1]  (Am. Compl. (Dkt. 47) ¶¶ 1–2.)  Plaintiffs meet the diagnostic criteria for gender dysphoria.  (*Id.* ¶¶ 89, 97, 109.)  Due to their age, there is no medically appropriate surgical treatment for Plaintiffs' gender dysphoria.  (*Id.* ¶¶ 5, 32, 38–39, 49, 51, 115.)  And, because of advances in the treatment of gender dysphoria, Plaintiffs may never need surgery to alleviate their gender dysphoria.  (*Id.* ¶ 5.)  Denying Plaintiffs the opportunity to amend the sex listed on their birth certificates through the private administrative process created by Subsection (A)(3)—which requires proof that the applicant received a "sex change operation"—causes them substantial present and future harm.  (*Id.* ¶¶ 1, 43, 49.)  Living with inaccurate birth certificates means Plaintiffs either risk disclosing private medical information and

---

[1]   To streamline the issues raised in Defendants' motion to dismiss the amended complaint, Plaintiffs D.T. and Jane Doe agreed to voluntarily dismiss their claims.  (*See* Dkt. 66.)  On July 21, 2021, the Court issued an order dismissing these two plaintiffs from the case.  (*See* Dkt. 78.)

intensely personal aspects of their identities to participate in activities—from in-person schooling to recreational sports—or forgo participation altogether. (*Id.* ¶¶ 34–35, 43–44.) That forced disclosure negatively affects their overall health, development, and well-being and limits their interest and ability to engage in those everyday activities.[2] (*Id.*)

Many other transgender people who were born in Arizona are in the same situation and experience similar harms. (*Id.* ¶¶ 115, 120.) Because their birth certificates do not accurately reflect their identities, they experience bullying, harassment, and discrimination in every aspect of their lives, from employment and education to places of public accommodation. (*Id.* ¶¶ 4, 7, 35, 43, 137.) Transgender people also often experience anxiety about who may discover that they are transgender and about losing control over who knows that private information because they are required to share it with people to whom they would not otherwise disclose that information. (*Id.* ¶ 43.) They are also at higher risk of physical harm. (*Id.*)

On January 8, 2021, Plaintiffs filed the amended complaint, adding two individual Plaintiffs as well as class allegations on behalf of:

> All transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificates but have not undergone a "sex change operation" as treatment for their gender dysphoria.

(*Id.* ¶ 113) (the "Proposed Class"). The amended complaint alleges that Subsection (A)(3) violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment by discriminating against transgender people and burdening their right to privacy, liberty, autonomy, and medical decision-making authority. On March 10, 2021, Defendant moved to dismiss the amended complaint. (*See* Dkt. 54.)

---

[2] To date, Defendant has insisted that Plaintiffs and the putative class members could readily obtain amended birth certificates by petitioning a state court pursuant to Subsection (A)(4). (*See, e.g.*, Dkt. 54 ("Subsection (A)(4) permits an amendment without requiring any medical procedure.").) That is misleading. As detailed in the amended complaint and recognized by the Court in its order denying Defendant's motion to dismiss, the court-order process imposes significant burdens on transgender people, ranging from the costs to the public nature of the proceedings. (Am. Compl. ¶¶ 6, 51–54.) But, irrespective of those differences, the availability of the court-order process does not cure the constitutional defects of the surgical requirement in Subsection (A)(3).

The Court denied Defendants' motion to dismiss and issued its formal order on August 5, 2021. (Dkts. 77, 83.) Finding that Arizona's surgical requirement facially discriminates against transgender people, the Court concluded that Plaintiffs sufficiently pled their Equal Protection and Due Process Clause claims. (Order (Dkt. 83) at 7–12.) The Court also rejected Defendant's arguments that Plaintiffs lacked a redressable injury and that federal abstention doctrines warrant dismissal. (*Id.* at 13, 15–16.)

## III.   **ARGUMENT**

"Class actions have two primary purposes: to further judicial economy by avoiding multiple suits and to protect the rights of persons who 'might not be able to present claims on an individual basis.'" *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 567 (C.D. Cal. 2008). Certifying a class under Federal Rule of Civil Procedure 23 is appropriate where, as here, a putative class satisfies the criteria set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation, and where it "fit[s] into one of the three categories described in" Rule 23(b). *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). Though "[t]he decision to grant or deny class certification is within the trial court's discretion," *id.*, "[a] plaintiff whose lawsuit meets the requirements of Rule 23 has a 'categorical' right 'to pursue his claim as a class action.'" *Al Otro Lado, Inc. v. Wolf*, 336 F.R.D. 494, 499 (S.D. Cal. 2020) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010)). "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015).

### A.   **The Proposed Class satisfies the requirements of Rule 23(a).**

The Proposed Class and its counsel meet each requirement of Rule 23(a). *First*, the number of transgender individuals who were born (or will be born) in Arizona and who seek to change the sex listed on their birth certificates but have not undergone a "sex change operation" is sufficiently large such that joinder of these individuals is not practical. *Second*, the claims stem from the uniform enforcement of an unconstitutional statutory

requirement and regulation that exclude all class members from using the private administrative process to correct the sex listed on their birth certificates, raising common issues of law and fact. *Third*, the Named Plaintiffs' claims are typical of those of the Proposed Class. *Fourth*, counsel for Plaintiffs—two large private law firms and a specialized civil rights non-profit—are more than adequate to represent the Proposed Class.

### 1.   The size of the Proposed Class exceeds the numerosity requirement and joinder of all class members is impracticable.

A proposed class satisfies the numerosity requirement if "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Generally, 40 or more members will satisfy the numerosity requirement.'" *Toomey v. Arizona*, 2020 WL 2465707, at *2 (D. Ariz. May 12, 2020) (quoting *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *2 (D. Ariz. 2009)). Plaintiffs "'need not identify the precise number of potential class members.'" *Id.*; 1 Newberg on Class Actions § 3:13 (5th ed.). Rather, a class can be "certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). Further, "[w]here the relief sought is 'only injunctive or declaratory,' the numerosity requirement is somewhat relaxed, and 'even speculative or conclusory allegations regarding numerosity' are sufficient to permit certification." *Fraihat v. U.S. Imm. & Customs Enf"t*, 445 F. Supp. 3d 709, 736–37 (C.D. Cal. 2020).

The Proposed Class easily satisfies the numerosity requirement. There are over 34,000 transgender people in Arizona.[3] A national survey found that approximately two

---

[3]   Studies indicate there are approximately 30,550 transgender adults and 3,650 transgender youth between thirteen and seventeen years old in Arizona. *See* ANDREW R. FLORES ET AL., WILLIAMS INST., HOW MANY ADULTS IDENTIFY AS TRANSGENDER IN THE UNITED STATES? (2016), at 3, https://williamsinstitute.law.ucla.edu/wp content/uploads/Trans-Adults-US-Aug-2016.pdf; KERITH J. CONRON, WILLIAMS INST., LGBT YOUTH POPULATION IN THE UNITED STATES (2020), at 1, https://williamsinstitute.law.ucla.edu/wp-content/uploads/LGBT-Youth-US-Pop-Sep-2020.pdf. (Declaration of Colin Proksel ("Proksel Decl."), Exs. A, B). There are also transgender children under age thirteen in Arizona (as evidenced by the ages of Plaintiffs,

thirds of transgender people do not possess any identity document, including a birth certificate, that correctly reflects their gender identity.[4]  Of the transgender people who want to correct the sex listed on their birth certificates, only nine percent have been able to do so.[5]  The percentage of transgender people who have undergone surgical treatment for their gender dysphoria is similarly low, ranging between twenty-five and thirty-five percent.[6]  This percentage is nearly zero among transgender young people who, with limited exceptions applicable to older adolescents, cannot undergo surgery due to their age.

Presuming that only a quarter of the transgender people living in Arizona were born in the state,[7] a conservative estimate of the number of putative class members would be in the thousands even after reducing the estimate to account for the percentage of transgender people who have either corrected their birth certificates or undergone a "sex change operation."  Transgender young people alone would account for hundreds of putative class members in that estimate.  Those calculations still undercount transgender young people because the available demographic data does not include anyone under thirteen, a category of transgender young people who also need to correct the sex listed on their birth certificates (as evidenced by the Named Plaintiffs).  Altogether, this demographic data provides evidence that the Proposed Class meets the numerosity requirement, even if the

_____

which range from five to nine).  However, the number of children in this category is difficult to determine because demographic surveys are not generally administered to children of that age.

[4]     SANDY E. JAMES ET AL., NAT'L CTR. FOR TRANSGENDER EQUAL., THE REPORT OF THE 2015 U.S. TRANSGENDER SURVEY (2016), at 87, https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf. (Proksel Decl., Ex. C.)

[5]     *Id.* at 82.

[6]     Ian T. Nolan et. al., *Demographic and Temporal Trends in Transgender Identities and Gender Confirming Surgery*, 8 TRANSLATIONAL ANDROLOGY & UROLOGY 184 (2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6626314/.  (Proksel Decl., Ex. D.) There are many reasons why transgender people cannot or do not seek surgical treatment for gender dysphoria.  For some, it is not medically necessary.  For others, especially minors, laws and policies limit their access to such treatments.  And many others are deterred by the cost, lack of insurance coverage, limited number of providers, and other obstacles. *See id.*

[7]     Bloomberg CityLab, "The Geography of America's Mobile and 'Stuck,' Mapped," https://www.bloomberg.com/news/articles/2019-03-05/mobile-vs-stuck-who-lives-in-their-u-s-birth-state (last visited August 25, 2021) (noting that, in Arizona, twenty-three percent of adults over the age of twenty-five grew up in the state).  (Proksel Decl., Ex. E.)

precise number of class members is unknown. *See Fraihat*, 445 F. Supp. 3d at 736–37; *see also Toomey*, 2020 WL 2465707, at *3 (D. Ariz. May 12, 2020) (recommending that the court grant motion for class certification based on demographic data), *adopted by* 2020 WL 3197647 (D. Ariz. June 15, 2020) ("*Toomey II*").

The sufficiently large number of putative class members is further confirmed by Lizette Trujillo. (*See* Declaration of Lizette Trujillo ("Trujillo Decl.") at ¶¶ 6, 10, 11.) As a parent of a transgender child and a facilitator of a support group for families with transgender children, she is personally aware of at least fifty families who want to amend the sex listed on their children's birth certificates through ADHS's private administrative process but are unable to do so because of the surgical requirement in A.R.S. § 36-337(A)(3). (*Id.* at ¶ 12.) Based on Ms. Trujillo's one-on-one conversations with families and the amount of time the group spends discussing this topic, that number still significantly underestimates the number of putative class members. (*Id.* at ¶¶ 8, 10, 12.) It also does not account for the five to ten new families Ms. Trujillo connects with each month (*id.* at ¶ 6) or the number of transgender adults in the putative class. (*Id.* at ¶ 13.)

Moreover, "'[w]hile the number of class members is the most important factor, the ultimate question concerns the practicability of their joinder.'" *Valenzuela v. Ducey*, 2017 WL 6033737, at *4 (D. Ariz. Dec. 6, 2017). Here, joinder of all class members is impracticable. Transgender people experience disproportionately high rates of harassment and discrimination in all aspects of their lives. Nearly one out of every three transgender people who have tried to show an identity document incongruent with their gender identity reports suffering negative consequences as a result, such as being harassed, denied services, or assaulted.[8] The Proposed Class consists of transgender people seeking to correct their birth certificates to preserve their privacy and avoid such discrimination. Accordingly, many class members "would be reluctant to join a lawsuit that might publicize their circumstances." *Id.* at *5; *see also* Trujillo Decl. at ¶ 9, 12. Additionally, many class members are dispersed throughout Arizona and some indeterminate amount

[8]   James, *supra* note 4, at 90.

reside outside the state. All these factors support a finding that joinder is impracticable. *Valenzuela*, 2017 WL 6033737, at \*5.

Joinder is also impracticable because Plaintiffs seek relief on behalf of current transgender individuals who currently fall within the class definition—which likely numbers in the thousands—and future class members. "When discussing the practicability of joining future claimants, courts generally state that the numerosity requirements are relaxed due to the difficulty in determining the number and identity of these future claimants." 1 Newberg on Class Actions § 3:15 (5th ed.); *see also J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) ("[C]lasses including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them.") (internal quotation omitted). Courts generally find that "the presence of future class members renders joinder inherently impractical, thus satisfying the numerosity requirement's fundamental purpose." *Inland Empire-Immigrant Youth Collective v. Nielson*, 2018 WL 1061408, at \*7 (C.D. Cal. Feb. 26, 2018). That is true here.

### 2. Commonality is satisfied because the surgical requirement is a statutory requirement that excludes all members of the Proposed Class from using the private administrative process.

The Proposed Class also satisfies the commonality requirement because there are "questions of law and fact common to the class." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quotation marks omitted). Commonality requires that the class members' claims "depend upon a common contention" that is "capable of classwide resolution[.]" *Id.* "In a civil rights suit, 'commonality is satisfied where a lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)), *aff'd*, 695 F.3d 990 (9th Cir. 2012). This is particularly true where, as here, the class seeks only injunctive and declaratory relief. *Armstrong*, 275 F.3d at 868 (abrogated on other grounds); *see also*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020). Not all questions of law or fact at issue in a lawsuit need to be shared among class members to meet the commonality requirement; "[e]ven a single common question of law or fact that resolves a central issue will be sufficient." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020).

The Named Plaintiffs' claims satisfy this test. Plaintiffs challenge a provision of state law, the surgical requirement imposed by A.R.S. § 36-337(A)(3). As this Court previously concluded, the surgical requirement facially discriminates against transgender people. (Order (Dkt. 83) at 9–10.) Thus, the surgical requirement is a paradigmatic "system-wide practice or policy" because it uniformly bars "all of the putative class members" from relying on the private administrative process to correct the sex listed on their birth certificates. *See Armstrong*, 275 F.3d at 868. Courts routinely find the commonality requirement satisfied where a proposed class seeks to challenge governmental policies that discriminate against transgender individuals. *See*, *e.g.*, *Toomey II*, 2020 WL 3197647, at *1; *Monroe v. Meeks*, 335 F.R.D. 201, 206 (S.D. Ill. 2020) (certifying class challenging policies related to the treatment of gender dysphoria in Illinois state prisons); *Flack v. Wisc. Dep't of Health Servs.*, 331 F.R.D. 361, 370 (W.D. Wis. 2019) (certifying class challenging Wisconsin Medicaid's categorical exclusion of gender-affirming care for transgender individuals).

This action raises questions of law common to all members of the Proposed Class, including: (1) whether Subsection (A)(3) violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (2) whether Subsection (A)(3), facially and as applied to members of the Proposed Class, violates the Right to Privacy secured by the Due Process Clause of the Fourteenth Amendment; (3) whether Subsection (A)(3), facially and as applied to members of the Proposed Class, violates the Right to Individual Liberty and Autonomy of the Fourteenth Amendment; and (4) whether Subsection (A)(3), facially and as applied to members of the Proposed Class, violates the Right to Choose

whether to undergo a particular medical treatment secured by the Due Process Clause of the Fourteenth Amendment.

Plaintiffs and all members of the Proposed Class can trace their injury to a common source: the surgical requirement in Subsection (A)(3).  Plaintiffs' and the class members' inability to correct their birth certificates stems not from any circumstances particular to them, but instead flows from the uniform enforcement of the surgical requirement in Subsection (A)(3) to exclude all transgender individuals who have not had surgical treatment and who seek to correct the sex listed on their birth certificates.  Furthermore, the application and enforcement of Subsection (A)(3) has been centralized to a specific team within the Bureau of Vital Records in ADHS.  (*See* Proksel Decl., Ex. F at 16-17; Ex. G.)  Thus, any factual disputes that may arise in this litigation will be common to the Proposed Class and not specific to any class member.  All members of the Proposed Class share at least two additional common and critical questions of fact: (1) what justifications, if any, does the state have for requiring transgender people to undergo a "sex change operation" to use the private administrative process in Subsection (A)(3) to correct the sex listed on their birth certificates?; and (2) what safeguards, if any, does the state implement to protect the privacy of transgender people who are unable to correct the sex listed on their birth certificates because of Subsection (A)(3)?

Answering any one of the common legal and factual questions will "in one stroke . . . resolve an issue that is central to the validity of each one of the claims" brought by Plaintiffs and the Proposed Class.  Accordingly, those claims "depend upon a common contention . . . . capable of classwide resolution" and satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### 3. The Named Plaintiffs' claims are typical of those of the Proposed Class.

Plaintiffs satisfy the typicality requirement of Rule 23(a)(3) because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "when each class member's claim arises

from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations omitted). This requirement's "permissive standards" require only that a class representative's claims be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

Plaintiffs Helen Roe, James Poe, and Carl Voe are typical of the class they seek to represent. Like all members of the Proposed Class, the Named Plaintiffs are transgender individuals who were born in Arizona and wish to correct their birth certificates through the private administrative process created by Subsection (A)(3) but have not undergone the "sex change operation" currently required to do so. As a result, the Named Plaintiffs have been unable and will be unable to amend the sex listed on their birth certificates through that process.

Each of the Named Plaintiffs' claims arises from "the same course of events" as the class-wide claim: the surgical requirement imposed by Subsection (A)(3), which effectively bars them from correcting the sex listed on their birth certificates. *Rodriguez*, 591 F.3d at 1124. Plaintiffs and members of the Proposed Class also share the same legal claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Furthermore, the legal arguments the Named Plaintiffs advance in support of those claims are identical to those they assert on behalf of the entire class.

The interests of the Named Plaintiffs and the Proposed Class are in alignment. The surgical requirement currently bars all Plaintiffs and putative class members from using the private administrative process to amend their birth certificates. If Plaintiffs succeed in obtaining the class-wide declaratory and injunctive relief they seek, each of them and all members of the Proposed Class will benefit from the elimination of the surgical

requirement. Granting such relief will not require the Court to consider any class member's individual application to change the sex listed on their birth certificate. Rather, the Named Plaintiffs seek only the opportunity for themselves, and for all other similarly situated transgender people with Arizona birth certificates, to apply to amend the sex listed on their birth certificates through the existing private administrative process without being automatically rejected for failure to provide proof of surgery. This satisfies Rule 23(a)'s typicality requirement. *See Flack*, 331 F.R.D. at 369 (certifying class action challenge to Wisconsin's categorical exclusion of transition-related care from Medicaid plan because "all the claims arise from defendants' enforcing the Challenged Exclusion, and the relief sought simply seeks to allow the class members the right to individually seek treatment based on medical necessity, free from enforcement of the Challenged Exclusion.").

### 4. The Named Plaintiffs and their counsel will adequately represent the Proposed Class.

The adequacy requirement of Rule 23(a) involves examination of two issues: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. In considering whether named plaintiffs have conflicts of interest and will prosecute vigorously on behalf of the class, the commonality, typicality, and adequacy inquiries are intertwined. *See Wal-Mart*, 564 U.S. at 350 (commonality and typicality requirements "tend to merge with the adequacy-of-representation requirement"). In considering the latter factor, the Court may consider "competency of class counsel." *Id.*

The Named Plaintiffs' interests align with those of the Proposed Class. Because the amended complaint does not turn on any individual application to amend a birth certificate but rather on whether class members should have the opportunity to apply to amend the sex listed on their birth certificates through the private administrative process, the class members' interests are aligned.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

In asserting their own rights, the Named Plaintiffs will vindicate the rights of all members of the Proposed Class fairly and adequately. The Named Plaintiffs seek the same declaratory and injunctive relief as the other members of the Proposed Class: (1) a declaratory judgment that A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O) are unconstitutional; (2) permanent injunctions enjoining Defendant from enforcing that statute and regulation; and (3) an order for Defendant to create a constitutionally sound process for transgender people born in Arizona to amend the sex listed on their birth certificates. If the Named Plaintiffs successfully challenge the surgical requirement and obtain the relief sought, the relief would also benefit each member of the Proposed Class in precisely the same way. Thus, the interests of the class representatives are fully aligned with the interests of other putative class members.

Additionally, Plaintiffs' counsel are well qualified to represent the class. Plaintiffs are represented by experienced class action and civil rights practitioners from Cooley LLP and Osborn Maledon, P.A., two large law firms, and the National Center for Lesbian Rights (NCLR), a non-profit legal organization dedicated to advancing the civil and human rights of the LGBTQ community. Counsel Asaf Orr is a Senior Staff Attorney and the Director of the Transgender Youth Project at NCLR with extensive experience representing transgender minors and their families in a wide range of matters, including both class and individual actions challenging discriminatory policies. The individual attorneys serving as counsel from both Cooley and Osborn Maledon have substantial experience litigating complex class actions and civil rights matters, including some on behalf of transgender persons. These capable and experienced attorneys are well-qualified to represent the Proposed Class in this matter.

**B.      The Proposed Class satisfies the requirements of Rule 23(b)(2).**

Because the Proposed Class seeks equitable relief, it also satisfies Rule 23(b), which requires that the class fall within at least one of a set of enumerated types of classes. Rule 23(b)(2) defines one such type of class action as where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Class certification under Rule 23(b)(2) is appropriate where, as here, "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of the types of cases appropriate for certification under Rule 23(b)(2), *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997), because "the primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014); *see also Toomey*, 2020 WL 2465707 (D. Ariz. May 12, 2020) (certifying two classes of transgender people subject to a categorical exclusion in the health insurance plan offered to state employees), *adopted by* 2020 WL 3197647 (D. Ariz. June 15, 2020).

This case—a civil rights action alleging discrimination by a state agency and other violations of Plaintiffs' and putative class members' constitutional rights—is a "prime example[]" of the type of case for which Rule 23(b)(2) certification is appropriate. *Amchem*, 521 U.S. at 614. By enforcing the surgical requirement of Subsection (A)(3), Defendant is enforcing an unlawful statute and regulation "on grounds that apply generally to" all transgender people born in Arizona who cannot or have not undergone surgical treatment for their gender dysphoria but want to correct the sex listed on their birth certificates through Arizona's private administrative process. Accordingly, "a single injunction" prohibiting Defendant from continuing to require proof of a "sex change operation" would "provide relief to each member of the class" by allowing them to amend the sex listed on their birth certificates, provided they meet the other requirements for amending their birth certificates. *Wal-Mart*, 564 U.S. at 360.

## IV. **CONCLUSION**

For the reasons explained above, Plaintiffs meet Rule 23's requirements for certification of a class. The Court should certify the Proposed Class under Rule 23(b)(2) for declaratory and injunctive relief; designate the Named Plaintiffs as class

representatives; and designate their undersigned attorneys at Cooley LLP, Osborn Maledon, P.A., and the National Center for Lesbian Rights as class counsel.

Respectfully submitted,

Dated: August 25, 2021                          OSBORN MALEDON, P.A.


                                                 *s/ Colin M. Proksel*
                                                Mary O'Grady (011434)
                                                Colin Proksel (034133)
                                                Payslie Bowman (035418)
                                                OSBORN MALEDON, P.A.
                                                2929 North Central Avenue, 21st Floor
                                                Phoenix, Arizona 85012-2793
                                                Telephone:  (602) 640-9000
                                                Facsimile:   (602) 640-9050
                                                Email:        mogrady@omlaw.com
                                                Email:        cproksel@omlaw.com
                                                Email:        pbowman@omlaw.com

                                                Asaf Orr (admitted *Pro Hac Vice*)
                                                NATIONAL CENTER FOR LESBIAN RIGHTS
                                                870 Market Street, Suite 370
                                                San Francisco, California 94102
                                                Telephone:  (415) 392-6257
                                                Facsimile:   (415) 392-8442
                                                Email:        aorr@nclrights.org

                                                Patrick Gunn (admitted *Pro Hac Vice*)
                                                COOLEY LLP
                                                101 California Street, 5th Floor
                                                San Francisco, California 94111-5800
                                                Telephone:  (415) 693-2070
                                                Facsimile:   (415) 693-2222
                                                Email:        pgunn@cooley.com

                                                Barrett J. Anderson (admitted *Pro Hac Vice*)
                                                COOLEY LLP
                                                4401 Eastgate Mall
                                                San Diego, California 92121-1909
                                                Telephone:  (858) 550-6000
                                                Facsimile:   (858) 550-6420
                                                Email:        banderson@cooley.com

                                                *Attorneys for Plaintiffs and Proposed Class*