Patrick Gunn (admitted *Pro Hac Vice*)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:   (415) 693-2070
Facsimile:   (415) 693-2222
Email:       pgunn@cooley.com

Mary O'Grady (011434)
Colin Proksel (034133)
Payslie Bowman (035418)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone:   (602) 640-9000
Facsimile:   (602) 640-9050
Email:       mogrady@omlaw.com
Email:       cproksel@omlaw.com
Email:       pbowman@omlaw.com

*Attorneys for Plaintiffs and Proposed Class*
Additional counsel listed on following page

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HELEN ROE, a minor, by and through her parent and next friend MEGAN ROE; JAMES POE, a minor, by and through his parent and next friend LAURA POE; AND CARL VOE, a minor, by and through his parent and next friend RACHEL VOE,<br><br>Plaintiffs,<br><br>v.<br><br>DON HERRINGTON, in his official capacity as Interim State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,<br><br>Defendant. | Case No. 4:20-cv-484-JAS<br><br>**PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**<br><br>**\*CORRECTED\*** |

COOLEY LLP

**PLAINTIFFS' MOTION TO COMPEL**

Barrett J. Anderson (admitted *Pro Hac Vice*)
COOLEY LLP
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:    (858) 550-6000
Facsimile:    (858) 550-6420
Email:          banderson@cooley.com

Asaf Orr (admitted *Pro Hac Vice*)
NATIONAL CENTER FOR LESBIAN
RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone:    (415) 392-6257
Facsimile:    (415) 392-8442
Email:          aorr@nclrights.org

*Attorneys for Plaintiffs and Proposed Class*

COOLEY LLP

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move the Court for an order compelling Defendant to (i) respond completely and accurately to Interrogatory Nos. 9–16 and produce non-privileged documents in response to Document Request Nos. 14–17; (ii) respond completely and accurately to Interrogatory No. 1; (iii) apply Plaintiffs' proposed search parameters for electronically stored information (ESI) and produce non-privileged, responsive documents; and (iv) grant such other relief as the Court may deem just and proper.[1]

## I.    INTRODUCTION

It has been more than seven months since the Court denied Defendant's motion to dismiss and Plaintiffs filed their motion for class certification.  Under the operative scheduling order, the parties should be in the final weeks of fact discovery, but Defendant has stonewalled Plaintiffs' efforts to obtain documents and information about core issues in this case.  The result is remarkable: while Plaintiffs have completed document production and are prepared to offer their clients for depositions next month,[2] Defendant has refused to respond to numerous discovery requests about his key defenses or produce a single email. Plaintiffs bring this motion to resolve three discrete issues and get discovery back on track.

*First*, Defendant has not provided *any* information in discovery about his justification for enforcing the surgical requirement in A.R.S. § 36-337(A)(3), even though a central question in this case is whether he had an exceedingly persuasive justification for doing so.  (Dkt. 83 (Order Denying Defendant's Mtn. to Dismiss) at 9 (concluding heightened scrutiny applies to Plaintiffs' equal protection claim).)[3]  Defendant argues that Plaintiffs' requests seek attorney mental impressions and "legal conclusions," but the

---

[1] Plaintiffs have not requested oral argument but are available at the Court's convenience to address the issues raised in this motion.

[2] Plaintiffs agreed to a 30-day extension of Defendant's time to depose Plaintiffs and non-party Lizette Trujillo.  Otherwise, those depositions would have concluded by the end of May 2022.

[3] Unless otherwise noted, all other ECF references are to *Roe, et al. v. Herrington, et al.*, Case No. 20-cv-484-JAS (D. Ariz.).

requests do no such thing.  Plaintiffs seek information and documents about *Defendant's* justification for enforcing the surgical requirement.  That justification is not a legal conclusion; it is the factual basis for at least one of Defendant's defenses and an issue on which he carries the burden of proof.

*Second*, Defendant has refused to respond completely to discovery requests that seek information about policies and processes of the Arizona Department of Health Services ("ADHS") for "correcting" the sex marker on an Arizona birth certificate.  Specifically, Defendant erroneously insists that this case can only be about an "amendment" to a birth certificate and thus any information regarding corrections is irrelevant.  This position ignores Plaintiffs' amended complaint, which alleges that Defendant's policy of accepting a physician's letter to correct information on a person's birth certificate pursuant to A.R.S. § 36-323(c)—including the sex marker—is evidence that Defendant treats transgender people differently than nontransgender people and undermines Arizona's purported justifications for enforcing the surgical requirement in A.R.S. § 36-337(A)(3).

*Third*, despite Plaintiffs' best efforts, the parties have been unable to agree on search parameters that Defendant will apply to ESI in his possession, custody, or control.  Defendant took ten weeks to respond to Plaintiffs' first search parameters proposal, only to rescind his counterproposal at the parties' meet and confer two weeks later.  Defendant now insists that he is not obligated to run any of Plaintiffs' proposed search terms other than the ones that ADHS used when it responded to a pre-suit public records request.

## II.    BACKGROUND

### A.    The Court Denies Defendant's Motion to Dismiss and Plaintiffs File a Motion for Class Certification.

Plaintiffs—all transgender young people who were born in Arizona—filed the amended class action complaint on January 8, 2021.  (Dkt. 47 ("Am. Compl.").)  The amended complaint alleges that Defendant's enforcement of A.R.S. § 36-337(A)(3) and various implementing regulations discriminates against Plaintiffs and the Proposed Class on the basis of their sex and transgender status and invades their constitutional rights to

3

privacy, liberty and autonomy, and their right to choose whether to undergo a particular medical treatment, all in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution.  (*Id.*)  On March 10, 2021, Defendant moved to dismiss the amended complaint. (Dkt. 54.)  The Court denied Defendant's motion to dismiss in its entirety and issued a formal order on August 5, 2021.  (Dkts. 77, 83.)  As relevant here, the Court concluded that the surgical requirement in A.R.S. § 36-337(A)(3) facially discriminates against transgender people, thus triggering "heightened scrutiny." (Dkt. 83 at 7–12.)

On August 25, 2021, Plaintiffs filed a motion seeking to certify a class consisting of "[a]ll transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificates but have not undergone a 'sex change operation' as treatment for their gender dysphoria."  (Dkt. 89 at 2.)  After Plaintiffs' class certification motion was filed, the parties disagreed about the most efficient way to conduct discovery, including whether class certification discovery and merits discovery should be bifurcated. (Dkt. 91.)  Following a case management conference, on September 15, 2021, the Court ordered that the parties "shall have 60 days . . . to conduct class action discovery, 30 days to propound written discovery, and 30 days from the date of the last written response to take the depositions of Lizette Trujillo and the parents/next friends of the three named Plaintiffs." (Dkt. 100.)  The Court explained that "[t]he written discovery and depositions shall primarily focus on class certification issues," but that "to the extent there is any potential overlap with merits issues, it shall be allowed via both written discovery requests and during the depositions."  (*Id.*)

**B.      Plaintiffs Have Completed Production, But Defendant Has Barely Begun.**

On October 15, 2021, Plaintiffs served their First Sets of Interrogatories and Requests for the Production of Documents.  (Exs. 1–2.)[4]  Defendant served responses and objections to the interrogatories and document requests on December 6, 2021, and

---

[4] All Ex. ___ cites are to the Declaration of Colin M. Proksel, which has been filed concurrently herewith.

supplemented his responses on February 28, 2022. (Exs. 3–4.) As relevant here, Defendant indicated in response to more than ten separate document requests that he "ha[d] not conducted a search of available ESI but [would] do so once the parties have agreed to a search protocol." (Ex. 4.) Defendant declined to respond to interrogatories and document requests about his justification for enforcing A.R.S. § 36-337(A)(3) on the ground that those requests sought the mental impressions of Defendant's attorneys and "legal conclusions." (Exs. 3–4.)

In January 2022, Plaintiffs proposed search parameters for Defendant's planned ESI review, which included search terms, custodians, and a date range. At the same time, Plaintiffs identified numerous deficiencies in Defendant's discovery responses, including those relating to ADHS's justification for enforcing the challenged statute. On April 6, 2022—more than ten weeks after Plaintiffs first proposed ESI search parameters— Defendant made a counterproposal to Plaintiffs' proposed search parameters.

On April 19, 2022, at Defendant's request, the parties met and conferred about outstanding discovery issues. At the outset, Defendant informed Plaintiffs that he was withdrawing his ESI counterproposal because he had not fully investigated the basis for the counterproposal prior to sending it. Defendant also informed Plaintiffs that he would only agree to fewer search terms than those he had offered in his withdrawn counterproposal. Specifically, he said that he would not agree to run search terms other than those used by ADHS to respond to a public records request to which ADHS responded months before this lawsuit was filed. Because Defendant had not investigated Plaintiffs' proposed search parameters, he was unable to explain the incremental number of documents that hit on Plaintiffs' proposed search parameters that did not also hit on the search terms used by ADHS in responding to the public records request.

Following the April 19 meet and confer, the parties exchanged additional correspondence in an effort resolve their outstanding discovery disputes. However, the parties are currently at an impasse on each of the issues raised in this motion.

### III.    ARGUMENT

Under Rule 26(b)(1) of the Federal Rule of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The relevancy standard under Rule 26 is "extremely broad," and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Pettit v. Sierra*, 2021 WL 488338, at *1–2 (D. Ariz. Feb. 2, 2021).

Under Rule 37, a party may move for an order compelling discovery when the opposing party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3). The party opposing discovery "bears the burden of supporting its objections and showing why discovery should not be allowed." *Pinson v. United States*, 2022 WL 1122176, at *4 (D. Ariz. Apr. 14, 2022).

**A.    Defendant Should Be Required to Provide Complete and Accurate Responses to Plaintiffs' Interrogatories Relating to His Justification for Enforcing A.R.S. § 36-337(A)(3) and to Produce Related Documents.**

Defendant has refused to answer Interrogatory Nos. 9–16 and Document Request Nos. 14–17, which seek information about a critical issue in this case: whether ADHS has any justification for enforcing the surgical requirement in A.R.S. § 36-337(A)(3). (Exs. 3–4.) These requests seek documents and information that are directly relevant to Defendant's defenses to Plaintiffs' claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Defendant's stated reasons refusing to respond to these requests are meritless.

There is no question that these requests seek information that is discoverable under Rule 26. (*Id.*) As the Court recognized in denying Defendant's motion to dismiss,

6                                    **PLAINTIFFS' MOTION TO COMPEL**

enforcement of the surgical requirement facially discriminates against Plaintiffs and members of the Proposed Class on the basis of their sex and transgender status, triggering "heightened scrutiny" under the Equal Protection Clause.[5] (*See* Dkt. 83 at 7–12.) For A.R.S. § 36-337(A)(3) to survive judicial review under the Equal Protection Clause's heightened scrutiny standard, ADHS must offer an "exceedingly persuasive justification" for enforcing it. *See Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723–24 (1982). Specifically, ADHS must demonstrate that enforcing the requirement "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* at 724 (internal quotations omitted). The justification must also be "genuine, not hypothesized or invented post hoc in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

There is no dispute, nor could there be, that Defendant must offer a justification for enforcing the surgical requirement. Indeed, one of Defendant's affirmative defenses is that "his actions and inactions have been made pursuant to a legitimate government purpose." (Dkt. 102 at 23.) Defendant's justification for enforcing A.R.S. 36-337(A)(3) is therefore plainly discoverable under Rule 26, and Plaintiffs are entitled to documents and information about that justification. *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)"); 34(a) (permitting a party to serve a request for documents "within the scope of Rule 26(b)").

To understand Defendant's justification for enforcing the surgical requirement, Plaintiffs propounded Interrogatory Nos. 9–16 and Document Request Nos. 14–17, which seek the production of all documents that support any proffered justification. Defendant called these interrogatories "improper" and objected on the ground that they "seek[] the mental impressions and legal conclusions of counsel for Defendant, which is protected by

---

[5] Counts Two, Three, and Four of the amended complaint implicate the Plaintiffs'—and the Proposed Class's—fundamental constitutional rights under the Due Process Clause of the Fourteenth Amendment. To prevail, Defendant must prove the challenged statute or regulation is "narrowly tailored" to achieve "a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

the attorney-client privilege and/or work-product doctrine." (Ex. 3.) Defendant later supplemented his answers by stating: "Defendant will consider supplementing this response should Plaintiffs rephrase this Interrogatory so that it does not seek a legal conclusion." (*Id.*) Defendant made a similar statement in supplemental responses to Plaintiffs' Document Requests Nos. 14–17. (Ex. 4.)

The interrogatories and document requests do not ask about, or seek documents that would reveal, counsel's mental impressions. Rather, they seek information and documents about *Defendant's* justification for enforcing the surgical requirement, which must have existed before this litigation was even contemplated. *See Virginia*, 518 U.S. at 533. Defendant has not offered any explanation for his claim that the requests seek counsel's mental impressions. In recent correspondence, Defendant has also suggested that Plaintiffs are seeking information about the "legislative intent" behind the challenged statute, which Defendant claims is not in his possession, custody, or control. This too misunderstands the requests. Plaintiffs seek information about *Defendant's* governmental justification for enforcing the statute and related regulation—a regulation promulgated by Defendant— independent of legislative intent. For that reason, Plaintiffs' interrogatories and document requests do not mention or seek information and documents about "legislative intent."

Defendant's other objection—that the interrogatories and requests seek a "legal conclusion"—is equally baseless. Defendant's governmental justification for enforcing the surgical requirement, whatever it may be, is a fact that is central to at least one of his affirmative defenses and an issue on which he carries the burden of proof. It is not a legal conclusion. *See Avila v. Mohave County*, 2015 WL 6660187, at *6–7 (D. Ariz. Nov. 2, 2015) (rejecting objections that interrogatories "call[ed] for a legal conclusion" when they sought "facts supporting [defendant's] affirmative defenses" and ordering defendant to supplement responses); *Firetrace USA, LLC v. Jesclard*, 2009 WL 73671, at *2–3 (D. Ariz. Jan. 9, 2009) (ordering defendants to respond to interrogatory seeking information about their affirmative defenses). Even if the requests did call for a legal conclusion, Defendant would still be obligated to respond to them. *See Thomas v. Cate*, 715 F. Supp. 2d 1012,

1029–30 (E.D. Cal. 2010) ("[T]he fact that an interrogatory calls for a legal conclusion is not grounds for an objection."); *see also Davis v. Buckley*, 2013 WL 12114581, at \*2 (D. Ariz. June 11, 2013) (interrogatories that seek a legal conclusion are only objectionable "when the legal conclusion is unrelated to the facts of the case").[6]

At bottom, this case is about whether ADHS has a constitutionally sufficient justification to enforce a law that, on its face, treats Arizonans differently based on their sex and transgender status and infringes upon rights safeguarded by the Due Process Clause.  If Defendant has such a justification, he is obligated to describe it and disclose information and documents about it; if he does not, then he should state so and narrow the case.  Accordingly, the Court should order Defendant to respond completely and accurately to Interrogatory Nos. 9–16 and produce non-privileged documents responsive to Document Request Nos. 14–17.

**B.      Defendant Should Be Required to Provide A Complete and Accurate Response to Interrogatory No. 1.**

Interrogatory No. 1 asks Defendant to "[l]ist and [d]escribe each and every ADHS and/or BVR policy concerning a change or request to change the sex listed on a birth record." (Ex. 1.)  Plaintiffs defined the scope of that interrogatory to include amendments, A.R.S. § 36-301(2), and corrections, A.R.S. § 36-301(6), to birth records.  (*See* Ex. 1 at 1.) Defendant, however, is refusing to provide any information or documents about the policies and procedures for "correcting" information on a birth record, which he claims, erroneously, has no relevance to this case.  (Ex. 3.)

---

[6] Defendant has also argued that the interrogatories and document requests "require[] an assumption that Plaintiff's equal protection rights have been violated." (Exs. 3–4.)  That is simply not true.  For example, there would be no equal protection violation if Defendant could offer an "exceedingly persuasive justification" for enforcing the surgical requirement. *See Hogan*, 458 U.S. at 723–24.  That is precisely why Defendant's justification is central to his defense to Plaintiffs' constitutional claims.  And, even if that assumption were embedded in Plaintiffs' interrogatories, it still would not justify Defendant's refusal to respond.  Accepting Defendant's argument would empower a defendant to ignore all discovery requests; by design, each request assumes that the defendant has violated the law, otherwise the request would not be relevant.

There is no basis for Defendant's relevance objection.  Plaintiffs' equal protection claim is based, in part, on Defendant's policy or practice of permitting nontransgender people to "correct" the sex listed on their birth certificates without surgical treatment.  (*See* Am. Compl. ¶ 56 ("ADHS does not impose the burdens of seeking a court order on nontransgender people when correcting or amending an inaccurate sex marker on a birth certificate. . . .  ADHS developed a policy permitting it to change sex markers on Arizona birth certificates with a physician's letter attesting to the error.")  Nontransgender people are simply required to submit a letter from a physician attesting to the error.[7]  The process for transgender people to change the sex listed on their birth certificate is far more onerous. (*See, e.g.*, Am. Compl. ¶¶ 53–54).  Plaintiffs' interrogatory seeks information and documents related to Defendant's policies and practices for "corrections" to a birth record in order to allow Plaintiffs to more fully compare and contrast the treatment of transgender and nontransgender people who change the sex listed on their birth certificate, bolstering their equal protection claim.

That information is also critical to Plaintiffs' ability test the veracity and persuasiveness of Defendant's purported justification(s) for enforcing A.R.S. § 36-337.  For example, Defendant's ability to change a nontransgender person's sex listed on their birth certificate without proof of surgery undermines any justification for imposing a surgical requirement on transgender people.  In fact, this Court previously recognized the relevance of this issue, questioning whether obtaining a letter from a physician would be any more "confusing, problematic, or burdensome than the current regime under A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208(O)."  (Dkt. 83 at 15.)  This is the precise question to which Plaintiffs seek answers.  Because Defendant has not articulated a proportionality or burden objection, the Court should order Defendant to respond to the interrogatory as written.

---

[7] In response to a public records request, ADHS produced a document showing that a sex marker on a birth certificate was "corrected" based on a doctor's note.  (*See* Ex. 5.)

**C.    Defendant Should Be Required to Search for and Produce ESI in Response to Plaintiffs' Requests for Production.**

As explained in further detail above, *see supra* II.B, Defendant responded to more than ten separate document requests by stating that he "ha[d] not conducted a search of available ESI but will do so once the parties have agreed to a search protocol." (Ex. 4 (Request Nos. 1–6, 10–13, 18).)  Defendant has categorically rejected Plaintiffs' proposed search parameters and taken the position that the ESI search terms in this action cannot be different from the search parameters that ADHS used to respond to a public records request submitted—and completed—months before this litigation began.  Defendant has not provided any authority for this position, despite repeated requests that he do so.  Plaintiffs' efforts to locate support for Defendant's position have been equally unavailing.  To the extent Plaintiffs' proposed ESI search parameters returned documents that ADHS produced in response to the public records request, Defendant nevertheless rejected Plaintiffs' search parameters, despite the fact he was unable to confirm how many additional documents exist.

Defendant subsequently informed Plaintiffs that he had done a cursory and limited search to gauge the number of documents that satisfied Plaintiffs' proposed search parameters.  After obtaining a large number of hits, Defendant demanded that Plaintiffs reduce the number of search terms.  Plaintiffs offered repeatedly to narrow the search terms if Defendant would explain what he intends to offer as justifications for the challenged statute and related regulations, as Plaintiffs' current list of terms is based in part on what they anticipate Defendant's justifications to be.  Defendants refused to do so.

In short, Defendant has refused to conduct a reasonable and proportional search for ESI that is responsive to Plaintiffs' requests and relevant to the claims and defenses in this case.  And, as noted in Section III.A, Defendant has denied Plaintiffs' the information they would need to meaningfully engage in a back-and-forth with Defendant about the search parameters.  Plaintiffs, however, cannot wait any longer and request that the Court order Defendant to run Plaintiffs' proposed search parameters, *see* Ex. 6, and produce non-privileged, responsive documents promptly and without further delay.

Cooley LLP

11                                                      **PLAINTIFFS' MOTION TO COMPEL**

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion.

Respectfully submitted,

Dated: May 25, 2022

OSBORN MALEDON, P.A.

s/*Colin Proksel*
Mary O'Grady (011434)
Colin Proksel (034133)
Payslie Bowman (035418)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone:   (602) 640-9000
Facsimile:   (602) 640-9050
Email:       mogrady@omlaw.com
Email:       cproksel@omlaw.com
Email:       pbowman@omlaw.com

Asaf Orr (admitted *Pro Hac Vice*)
NATIONAL CENTER FOR LESBIAN
RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone:   (415) 392-6257
Facsimile:   (415) 392-8442
Email:       aorr@nclrights.org

Patrick Gunn (admitted *Pro Hac Vice*)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:   (415) 693-2070
Facsimile:   (415) 693-2222
Email:       pgunn@cooley.com

Barrett J. Anderson (admitted *Pro Hac Vice*)
COOLEY LLP
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:   (858) 550-6000
Facsimile:   (858) 550-6420
Email:       banderson@cooley.com

*Attorneys for Plaintiffs and Proposed Class*