MARK BRNOVICH
ARIZONA ATTORNEY GENERAL
Firm State Bar #14000
Patricia Cracchiolo LaMagna, Bar #021880
Aubrey Joy Corcoran, Bar #025423
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004
Tel.: (602) 542-8854
Fax: (602) 542-8308
EducationHealth@azag.gov

STRUCK LOVE BOJANOWSKI &
ACEDO, PLC
Daniel P. Struck, Bar #012377
Nicholas D. Acedo, Bar #021644
Dana M. Keene, Bar #033619
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.: (480) 420-1600
dstruck@strucklove.com
nacedo@strucklove.com
dkeene@strucklove.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; James Poe, a minor, by and through his parent and next friend Laura Poe; and Carl Voe, a minor, by and through his parent and next friend, Rachel Voe, | NO. 4:20-cv-00484-JAS |
| | **DEFENDANT'S RESPONSE TO PLAINTIFFS' CORRECTED MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS** |
| Plaintiffs, | |
| v. | |
| Don Herrington, in his official capacity as Interim State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, | |
| Defendant. | |

Defendant Don Herrington ("Director Herrington") opposes Plaintiffs' Corrected Motion to Compel Responses to Interrogatories and Production of Documents (Dkt. 121). Plaintiffs' requests regarding Director Herrington's "governmental interest(s) and other justification(s)" for A.R.S. § 36-337(A)(3) are improper, irrelevant, and based on a false premise. The discovery of information regarding "corrections" as defined A.R.S. § 36-301(6) is entirely irrelevant to any claims or defenses in this case.  And finally, Plaintiffs' request for ESI discovery is irrelevant, overbroad, unduly burdensome, and grossly disproportionate to the needs of this case. Plaintiffs' Motion to Compel should be denied.

## I.   Plaintiffs' Motion to Compel Should be Denied.

### A.   Plaintiffs' Interrogatory Nos. 9-16 and Requests for Production Nos. 14-17 Seek Irrelevant, Improper, and Privileged Information.

Interrogatory Nos. 9-16 and Request for Production Nos. 14-17 request Director Herrington to describe and explain *his* "governmental interest(s) and other justification(s)" under both the Equal Protection and Substantive Due Process clauses "for denying transgender individuals who have not undergone a 'sex change operation' the ability to CHANGE the sex listed on their BIRTH RECORDS under subsection (A)(3) of Arizona Revised Statute section 36-337."[1]  (Dkt. 120-1 at 5-20.)

First, these requests are based on the false premise that Director Herrington "denies" transgender individuals who have not undergone a sex change operation the ability to amend the sex listed on their birth certificates.  Every individual—sex change operation or not— has the opportunity to amend the sex listed on an Arizona birth certificate through the court order process set forth in A.R.S. § 36-337(A)(4).  Moreover, Plaintiffs' requests presume that the statute and/or Director Herrington discriminates against them.  To respond to these requests as currently worded would be conceding that necessary element of Plaintiffs' equal protection and due process claims.  Only *if* Plaintiffs are discriminated against must there

---

[1] Contrary to Plaintiffs' assertions, these requests do not seek any information regarding Director Herrington's governmental interests and/or justifications for any regulation promulgated by ADHS.  (*See* Dkt. 121 at 8.)

1

be a legitimate governmental purpose. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014). Director Herrington does not concede that Plaintiffs' constitutional rights have been or will be violated here or that the statute is discriminatory. By compelling him to respond, he must concede either that false premise or that no governmental interest and/or justification exists for "denying" transgender individuals who have not undergone a sex change operation the opportunity to amend their birth certificates under Subsection (A)(3). Director Herrington requested that Plaintiffs re-phrase these requests so that he could adequately respond, but Plaintiffs refused.

Next, these requests seek information regarding *Director Herrington's* alleged "denial" of Plaintiffs' ability to amend their birth certificates under Subsection (A)(3). That too is a false premise because Plaintiffs do not allege that Director Herrington and/or ADHS denied them anything. ADHS does not create, construct, and/or adopt Arizona statutes. Neither ADHS, nor Director Herrington, were involved in or have ever been involved in this process. Rather, ADHS is required by law to follow applicable statutes, including A.R.S. § 36-337, and is tasked only with implementing and enforcing those statutes. *See* A.R.S. §§ 36-302, 36-303. Thus, to the extent Plaintiffs' requests seek information underlying the enactment and/or adoption of this statute or the interests and/or justifications behind Subsection (A)(3), Director Herrington cannot respond to it. Such legislative intent is in the possession of the Arizona Legislature.

Finally, Plaintiffs' contention that Director Herrington bears the burden to "offer a justification *for enforcing* the surgical requirement" is misplaced. (*See* Dkt. 121 at 8, citing *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982), emphasis added.) Under *Hogan*, "the party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an 'exceedingly persuasive justification' *for the classification*." 458 U.S. at 724 (emphasis added). "The burden is met only by showing at least that *the classification* serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Id*. (emphasis added). Plaintiffs have not asked for that. Moreover, the

"justification" analysis under the Equal Protection and Due Process Clauses is legal *argument*. "Discovery as to legal arguments is impermissible." *Kendrick v. Sullivan*, 125 F.R.D. 1, 4 (D.D.C. 1989). Really, Plaintiffs are asking Director Herrington to divine all the reasons why the Arizona legislature enacted the statute. They are asking the wrong person.

**B.    Information Regarding "Corrections" to Registered Birth Certificates is Irrelevant to Any Claim or Defense in This Case.**

Plaintiffs' Interrogatory No. 1 requests that Defendant "List and describe each and every ADHS and/or BVR POLICY CONCERNING a CHANGE or request to CHANGE the sex listed on a BIRTH RECORD." (Dkt. 121-1 at 1.) Plaintiffs defined "CHANGE" as "any amendment, addition, alteration, deletion, correction, modification, or substitution." (Dkt. 121-2 at 7.) Director Herrington appropriately objected to this definition of "CHANGE." (Dkt. 121-2 at 35-37.) As stated in his objections, a birth certificate registered in the State of Arizona can *only* be amended or corrected pursuant to A.R.S. § 36-323. (*Id.* at 35.) Thus, there is no legal meaning to the words "addition," "alteration," "deletion," "modification," and/or "substitution," and Plaintiffs' use of these terms in their definition of CHANGE are both superfluous and legally inapplicable.

Director Herrington also objected to the word "CHANGE" to the extent it encompasses the term "correction." (Dkt. 121-1 at 4; Dkt. 121-2 at 35-37.) The terms "correction" and "amend[ment]" are legally distinct. The Arizona Legislature has defined "correction" as "a change made to a registered birth certificate because of a typographical error, including misspelling and missing or transposed letters or numbers." *See* A.R.S. § 36-301(6). (*See also* Dkt. 121-2 at 35-36.) It has defined "amend" as "a change, other than a correction, to a registered certificate by adding, deleting or substituting information on that certificate." A.R.S. § 36-301(2). (*See also* Dkt. 121-2 at 36.)

Plaintiffs improperly conflate the terms "correct" with "amend" and have

unnecessarily and protractedly confused that distinction in this case.[2] (*See, e.g.*, Dkt. 47 ¶¶ 6, 19-21, 45, 47, 49, 52, 54, 56, 69-70, 81, 83, 93, 102, 111, 125-126, 142-143.)  Contrary to the conclusory arguments contained in Plaintiffs' Motion to Compel, Plaintiffs' claims relate *solely* to the alleged unconstitutionality of the "surgical requirement" contained in A.R.S. § 36-337(A)(3) and its "implementing regulation" A.A.C. R-9-19-208(O). (*See* Dkt. 47 at ¶¶ 121-44.)  Their equal protection claim specifically alleges that Plaintiffs and the putative class—transgender people who have *not* undergone a sex change operation—are prevented "from obtaining birth certificates through the process created by Subsection (A)(3)" because they have not undergone a sex change operation, which "impermissibly discriminates" against them on the basis of sex and transgender status.  (*Id.* at ¶¶ 125-26.)  There is no allegation or claim regarding "corrections" made to the named Plaintiffs' birth certificates due to typographical errors, and they have not alleged that "corrections" as defined in § 36-301(6) are at issue in this case.  There are no allegations that Plaintiffs' birth certificates contain typographical errors, including misspelling and missing or transposed letters or numbers, so that a "correction" would be appropriate or applicable here.

Indeed, § 36-337 is titled "Amending birth certificates," and is applicable *only* to amendments.  *See* A.R.S. § 36-337(A) ("The state registrar shall *amend* the birth certificate for a person born in this state when the state registrar receives any of the following[.]") (emphasis added.)  The statute is devoid of the term "correction" as defined in § 36-301(6).  Where there is no typographical error, *no one*—even those who submit a physician's statement that verifies an individual's sex change operation under Subsection (A)(3)—in the State of Arizona can "correct" the sex listed on their birth certificates via the process outlined in Subsection (A)(3).[3]  It is impossible to correct a birth certificate under

---

[2] Director Herrington has repeatedly made Plaintiffs aware of this distinction. (*See* Dkt. 23 at 3-6; Dkt.54 at 3-4.)

[3] Plaintiffs' allegation that Director Herrington has a "policy of accepting a physician's letter to correct information on a person's birth certificate pursuant to A.R.S. § 36-323(C)" showcases Plaintiffs' fundamental misunderstanding of A.R.S. 36-337(A). (Dkt. 121 at 3.)  Plaintiffs should not be permitted to conduct discovery based on their own incorrect misunderstanding.

Subsection (A)(3) because an operation is not a "typographical error" as defined. Individuals may only *amend* the sex listed on their birth certificates through Subsection (A)(3). Thus, Plaintiffs are seeking to *amend* the sex listed on their birth certificates.

Plaintiffs have failed to satisfy their threshold burden by demonstrating that the information regarding a "correction" to a birth certificate is relevant to their claims in this lawsuit. *See Heffernan v. Pinnacle Health Facilities XXVI LP*, 2021 WL 2530837, at *1 (D. Ariz. Jan. 22, 2021) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)."). Plaintiffs' entire argument is based on the incorrect assumption that, absent a typographical error, individuals can "correct" the sex listed on a birth certificate under Subsection (A)(3) when they cannot. Information related to "corrections" cannot (and should not) be used to "test the veracity and persuasiveness of Defendant's purported justification(s) for enforcing A.R.S. § 36-337" because Plaintiffs' claims fall solely within § 36-337(a), and § 36-337(a) relates only to amendments. (Dkt. 121 at 11.) Allowing Plaintiffs to conduct discovery into "corrections" opens a Pandora's Box of immaterial information that will only further confuse the issues in this case.

Moreover, Plaintiffs' reliance on a single email from an ADHS employee dated September 5, 2018, is not enough to allow wholesale discovery into an irrelevant topic, particularly because there is no context provided for the information contained in this email. (*See* Dkt. 121-2 at 100-01.) Nevertheless, the information described in the email is accurate and consistent with Director Herrington's position. If there is a typographical error (referred to as a "data entry error" in the email) involving the registrant's sex (i.e., the hospital incorrectly entered the wrong sex on the birth certificate registration worksheet after the birth of a child), the birth certificate could be "corrected" if certain supporting worksheets, medical records, and/or physician letters are provided to support the correction. (Dkt. 121-2 at 100-01.) That is different from the allegations in this case because Plaintiffs have not asserted any typographical and/or data entry errors.

Director Herrington provided information responsive to this Interrogatory with

respect to amendments only. (Dkt. 121-2 at 36-38.) Information related to "corrections" as defined in § 36-301(6) is inappropriate because it is inapplicable to any of the claims or defenses in this case. Plaintiffs' Motion to Compel should be denied with respect to Interrogatory No. 1.[4]

### C. Plaintiffs' Proposed ESI Search Protocol is Unduly Burdensome, Overbroad, and Disproportionate to the Needs of this Case.

Plaintiffs' vague recitation of the events regarding ESI discovery is neither complete nor accurate. At the outset, Director Herrington has not yet conducted a search of available ESI for the sole reason that the parties have yet to agree on an appropriate and proportionate ESI search protocol, including custodians, search terms, and a date range. Director Herrington's responses to Plaintiffs' numerous discovery requests that may seek information contained in ESI as referenced in Plaintiffs' Motion to Compel are therefore appropriate at this stage.

On January 12, 2022, Plaintiffs proposed that the parties enter into an agreement regarding the production of documents and ESI. (*See* Exhibit 1, email correspondence between counsel, at 2.) On January 24, 2022, Director Herrington stated that he needed more information before entering into an agreement and requested that Plaintiffs provide a list of their proposed ESI custodians, search terms, and a date range so that he could evaluate the relevance and burden of Plaintiffs' ESI search protocol and tailor the proposed agreement to the specifics of this case. (Ex. 1 at 1.) On January 25, 2022, Plaintiffs provided a list of proposed custodians, search terms, and a date range (hereafter referred to as "Plaintiffs' proposed search protocol"). (Ex. 1 at 1; *see also* Dkt. 121-2 at 102-103.) On February 7, 2022, Director Herrington advised Plaintiffs that he was evaluating Plaintiffs' proposed search protocol and was in the process of developing a counterproposal. (Ex. 2,

---

[4] Contrary to Plaintiffs' assertions, Director Herrington *did* assert an overbreadth, unduly burdensome, and proportionality objection to this Interrogatory based on the time-period of 2004 to present. (Dkt. 121 at 11; *see* Dkt. 121-2 at 36-37.) To the extent the Court finds that this information is relevant, the time-period should be limited to 2019 to present. (*See* Dkt. 121-2 at 36-37.)

email correspondence between counsel, at 1.)

At no point during this process did Plaintiffs disclose that counsel for Plaintiffs had previously submitted an expansive Public Records Request ("PRR") to ADHS on behalf of former Plaintiff Lizette Trujillo on July 27, 2020, prior to filing Plaintiffs' Complaint. (Ex. 3, correspondence from defense counsel dated May 16, 2022, at 2.)   Numerous correspondence was exchanged between Plaintiffs' counsel and Robert Lane, Administrative counsel for ADHS, regarding the scope of this PRR and an ESI search protocol was agreed upon. (*Id.*)  Documents and ESI responsive to the PRR were produced by ADHS in August and October of 2020. (*Id.*)  Neither Director Herrington, nor defense counsel, were involved in responding to the PRR, establishing an ESI search protocol, or producing any of the documents responsive to the PRR. (*Id.*)  It was not until after Plaintiffs submitted their proposed search protocol on January 25, that Director Herrington became aware of the PRR and the previously established ESI protocol. (*Id.*)

On April 6, 2022, Director Herrington provided an ESI counterproposal containing custodians, search terms, and a date range. (Ex. 4, email correspondence between counsel, at 6-7.)  At that point, it was Director Herrington's understanding that Plaintiffs' proposed search protocol overlapped in both time and scope with the ESI search protocol agreed to as part of the PRR. (*See id.*; *see also* Ex. 3 at 2.)  Director Herrington mistakenly believed that his counterproposal contained search terms, custodians, and a date range that were identical to those agreed upon by ADHS in responding to the PRR, and that ADHS had already produced the majority of ESI sought by Plaintiffs.[5]  (Ex. 3 at 2-3.)  He made it clear that he should not have to duplicate his efforts in collecting, reviewing, and producing ESI that was already produced in response to the PRR. (Ex. 4 at 6-7; Ex. 3 at 2.)

Director Herrington ultimately discovered that the ESI search protocol agreed to as

---

[5] Director Herrington relied on the correspondence exchanged between Plaintiffs' counsel and Robert Lane, as well as information provided to him by ADHS. Pursuant to the PRR, ADHS had already assessed many of the proposed search terms and determined that those terms would produce massive amounts of irrelevant ESI and were thus overbroad and unduly burdensome. (Ex. 3 at 2-3.)

part of the PRR response was indeed significantly narrower than his counterproposal. (Ex. 3 at 2.) At the parties' meet and confer on April 19, he withdrew the counterproposal and reiterated his position that the search terms and custodians should match those agreed upon in response to the PRR—again, to conserve resources and prevent the duplication of efforts—but also agreed to assess Plaintiffs' proposed search protocol further. Director Herrington subsequently withdrew the position that ESI search protocol in this case should match the ESI protocol agreed to as part of the PRR, and Plaintiffs' representations to the Court that this is his current position is inaccurate. (Ex. 4 at 2.)

After the April 19 meet and confer, Director Herrington conducted a "hit count report" for all of Plaintiffs' proposed search terms for five of the proposed custodians who would likely generate the most email traffic (Cara Christ, Krystal Colburn, Thomas Salow, Colby Bower, and Nicole Heath). (Ex. 4 at 2.) He made Plaintiffs aware of the results of the "hit count report" on April 25. (*Id.*) The "hit count report" encompassed the number of times each search term appeared in the five custodians' saved emails from Plaintiffs' proposed date range of January 1, 2017 to April 25, 2022. (*Id.*) A total of 68,021 emails appeared on the "hit count report" for just these five custodians. (*Id.*) This total does not include a page count. (*Id.*) Nor does it include attachments to emails. (*Id.*) Thus, the total number of *pages* of documents (including attachments) for *all* custodians would likely number in the hundreds of thousands. (*Id.*) This number is staggering. It would undoubtedly take Director Herrington months to obtain, review, and produce these documents. Plaintiffs' proposed search terms are, therefore, overbroad, unduly burdensome, and disproportionate to the needs of this case.

The terms "sex," "surgical," "surgery," "operation," "(A)(3)," and "(A)(4)" generated an inordinate amount of hits in comparison to Plaintiffs' other proposed search terms.[6] (*Id.* at 2-3.) Director Herrington agreed to the application of all other search terms

---

[6] The terms "sex," "surgical," "surgery," and "operation" are general words that could be used in almost unlimited contexts at ADHS. (Ex. 4 at 3.) It is likely that most, if not all, of the emails that contain these words are entirely irrelevant to the issues in this lawsuit. Similarly, the terms "(A)(3)" and "(A)(4)" likely relate to other policies, statutes,

if Plaintiffs removed these six search terms from their list. (*Id.* at 3.) He also attempted to narrow Plaintiffs' proposed custodians by removing the individuals who were not employed by ADHS during the relevant timeframe and could not have responsive information. (Ex. 4 at 1-2.) Plaintiffs refused to narrow their search terms, citing Director Herrington's refusal to provide them with legal arguments and/or "positions" he intends to assert on the merits or in response to Plaintiffs' Motion for Class Certification as the reason for their refusal. (Ex. 5, correspondence from Plaintiffs' counsel dated April 28, 2022, at 2-3.) Plaintiffs then added an additional six custodians to their proposed list of custodians. (*Id.* at 3.) Director Herrington stated that he could not agree to additional custodians prior to determining the breadth and scope of Plaintiffs' search terms. (Ex. 3 at 5, 8.)

First, Director Herrington is not required to provide Plaintiffs with any of the legal arguments or "positions" he intends to assert in this case. That information is protected by the work-product doctrine and/or attorney-client privilege. To the extent Plaintiffs are requesting information regarding Director Herrington's "justifications," Director Herrington has objected to those improper requests as outlined in Section I.A., above. Information related to Director Herrington's "justifications" is completely unrelated to the ESI issue.

Nevertheless, even if Director Herrington is required to respond to Plaintiffs' Interrogatory Nos. 9-16 and Request for Production No. 14-17, Plaintiffs are still bound by the proportionality requirement contained in Rule 26(b)(1). Director Herrington should not be ordered to compile, review, and produce potentially hundreds of thousands of pages of irrelevant ESI discovery so that Plaintiffs can engage in a fishing expedition for information they *imagine* Director Herrington will rely on.[7] *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in

or regulations that in no way relate to the statute at issue. (*Id.*) Documents containing these terms likely have little to no value in this case.

[7] Plaintiffs' insinuation that Defendant will somehow have an unfair advantage by using documents he has not disclosed is entirely speculative and does not entitle Plaintiffs to this discovery.

fishing expeditions.") (quotations omitted). Plaintiffs have failed to provide any explanation as to what it is that they are looking for specifically or how this information could possibly be relevant. *See In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 565 (D. Ariz. 2016) ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.") (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 Amendment). Plaintiffs' refusal to narrow their search terms because they think evidence supporting Defendant's "anticipated justifications" may or may not be contained in documents with those search terms is the definition of a fishing expedition and is entirely speculative and improper. *See Calderon v. U.S. Dist. Ct. for the N. Dist. of California*, 98 F.3d 1102, 1106 (9th Cir. 1996) (Courts should not allow parties "to use federal discovery for fishing expeditions to investigate mere speculation."); *see also Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. 2010) ("Discovery must be narrowly tailored to reveal the nature and extent of the conflict, and must not be a fishing expedition.")

Contrary to Plaintiffs' unsupported assertions, there is *no* correlation between Director Herrington's "positions" in this case and the enormous amount of ESI discovery they have requested. Plaintiffs have failed to provide any good-faith basis as to why the application of all their proposed search terms, particularly general terms like "sex," "surgical," "surgery," "operation," "(A)(3)," and "(A)(4)", are relevant and proportional to the needs of this case. The amount of time and resources necessary to compile, review, and produce these documents compared to the exorbitant number of irrelevant documents this ESI search protocol would likely uncover is not proportional to any of the issues in this case, and thus the burden drastically outweighs any benefit under Rule 26(b)(1)'s proportionality analysis.

Director Herrington's initial intent in evaluating Plaintiffs' proposed search protocol was to conserve resources and to avoid having to compile, review, and produce ESI already in Plaintiffs' possession, and he acted in good faith in attempting to do so. Since then,

Director Herrington has made a good faith effort to come to an agreement regarding an ESI search protocol. Plaintiffs have refused to narrow their search terms, which has prevented the parties from agreeing on a reasonable ESI search protocol. For the reasons stated above, Plaintiffs' representation that their proposed search protocol constitutes a "reasonable and proportional search for ESI" is unsupportable. (*See* Dkt 121 at 12.) Thus, Plaintiffs' Motion to Compel Director Herrington to "run" their proposed search protocol as is should be denied.

Director Herrington will agree to apply all search terms aside from "sex," "surgical," "surgery," "operation," "(A)(3)," and "(A)(4)." In addition, ESI custodians have yet to be finalized. Plaintiffs' proposed search protocol includes eight former ADHS employees who were not employed there during the relevant timeframe and therefore would not have responsive emails.[8] (*See* Dkt. 121-2 at 102-103; Ex. 4 at 1.) Those individuals should not be included on Plaintiffs' list of custodians.[9] In addition, it is unclear whether Plaintiffs are still seeking the addition of six custodians as stated in their April 28, correspondence. (Ex. 5 at 3.) If they are, one of these custodians (Cecilia Vargas) would not have unique information independent of those custodians already on the proposed custodians list and should be removed. (*See* Ex. 5 at 3, Ex. 3 at 5.) The addition of five custodians would bring Plaintiffs' proposed custodian list up to 17 individuals. Director Herrington will need to analyze the breadth and burden of the application of these search terms to these 17 custodians, and respectfully reserves the right to object to the addition of these custodians once this analysis is complete.

---

[8] Those individuals are Will Humble, Cory Nelson, Patricia Adams, Valerie Grina, Khaleel Hussaini, Jeffrey Bloomberg, Kathleen Phillips, and Donald Schmid.

[9] Instead of agreeing to this, Plaintiffs demanded that Director Herrington agree that he shall not use or otherwise offer as evidence in this litigation any document or information created by these individuals. (Ex. 5 at 3.) Director Herrington is not agreeing to this. While there will be no ESI regarding these individuals, Director Herrington is entitled to rely on non-ESI documents that these individuals may have "created" prior to the relevant ESI timeframe. He is also entitled to rely on their declarations and is entitled to call any of these individuals as witnesses at trial. (Ex. 3 at 5.) Plaintiffs' proposal regarding the exclusion of potential evidence "created by" these witnesses is therefore improper.

## II.    Conclusion.

For all these reasons, Plaintiffs' Motion to Compel should be denied.


DATED this 8th day of June, 2022.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Dana M. Keene
Daniel P. Struck
Nicholas D. Acedo
Dana M. Keene
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

MARK BRNOVICH
ATTORNEY GENERAL
Patricia Cracchiolo LaMagna
Aubrey Joy Corcoran
1275 West Washington Street
Phoenix, AZ 85007

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Asaf Orr                   aorr@nclrights.org
Barrett J. Anderson        banderson@cooley.com
Colin M. Proksel           cproksel@omlaw.com
Mary R. O'Grady            mogrady@omlaw.com
Patrick P. Gunn            pgunn@cooley.com
Payslie M. Bowman          pbowman@omlaw.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Dana M. Keene