MARK BRNOVICH
ARIZONA ATTORNEY GENERAL
Firm State Bar #14000
Patricia Cracchiolo LaMagna, Bar #021880
Aubrey Joy Corcoran, Bar #025423
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004
Tel.: (602) 542-8854
Fax: (602) 542-8308
EducationHealth@azag.gov

STRUCK LOVE BOJANOWSKI &
ACEDO, PLC
Daniel P. Struck, Bar #012377
Nicholas D. Acedo, Bar #021644
Dana M. Keene, Bar #033619
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.: (480) 420-1600
dstruck@strucklove.com
nacedo@strucklove.com
dkeene@strucklove.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; James Poe, a minor, by and through his parent and next friend Laura Poe; and Carl Voe, a minor, by and through his parent and next friend, Rachel Voe,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Don Herrington, in his official capacity as Interim State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,<br><br>　　　　　　　　　　　Defendant. | NO. 4:20-cv-00484-JAS<br><br>**DEFENDANT HERRINGTON'S SEPARATE STATEMENT ON OUTSTANDING DISCOVERY ISSUES** |

Per the Court's Minute Entry Order (Dkt. 148), Defendant Don Herrington ("Director Herrington") submits this separate statement outlining his position on outstanding discovery issues, including ESI, raised at the July 13, 2022 oral argument on the parties' motions to compel.

**I.  Plaintiffs' Facial Challenge.**

At the oral argument, Plaintiffs argued for the first time in this lawsuit that they were only asserting a facial challenge to the relevant statute, A.R.S. § 36-337(A)(3). Director Herrington informed the Court that Plaintiffs had asserted *both* an as-applied and facial challenge to the relevant statute as evidenced from the specific claims in their Amended Complaint,[1] including the 70+ paragraphs of allegations regarding emotional harm to the individual Plaintiffs,[2] and the various arguments asserted by Plaintiffs in briefing on their Motion to Compel and in response to Director Herrington's Motion to Dismiss that could only have pertained to an as-applied challenge.

Plaintiffs argued that Director Herrington should have known they were only asserting a facial challenge because on January 10, 2022 they sent correspondence "clearly"

---

[1] Paragraph 116 of the Amended Complaints states: The Class satisfies the commonality requirements of Rule 23(a)(2) because there are questions of law and fact common to the Class. Pursuant to Subsection (A)(3), Defendants have acted or refused to act on grounds generally applicable to the Class. This action raises questions of law common to all members of the Class, including: (a) whether Subsection (A)(3), facially **and as applied to members of the Class**, violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (b) whether Subsection (A)(3), facially **and as applied to members of the Class**, violates the Substantive Due Process Right to Privacy secured by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; (c) whether Subsection (A)(3), facially **and as applied to members of the Class**, violates the Substantive Due Process Right to Individual Liberty and Autonomy of the Fourteenth Amendment to the U.S. Constitution; and (d) whether Subsection (A)(3), facially **and as applied to members of the Class**, violates the Substantive Due Process Right to Choose whether to undergo a particular medical treatment secured by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. All members of the Class share at least one common question of fact: Whether the purported justification(s) for excluding transgender people who do not meet the surgical requirement for changing their birth certificate via the private administrative process created by Subsection (A)(3) are pretext(s) for impermissible discrimination? (Dkt. 47 at ¶ 116) (emphasis added).

[2] Given the enormity of allegations asserted regarding each individual Plaintiff, it is by no means unreasonable to assume that the very crux of this case, as alleged, is that the relevant statute discriminates against Plaintiffs *as applied to them*.

stating that they were. (*See* Plaintiffs' January 10, 2022 correspondence at Dkt. 122-2 at 39–42.)  But aside from a single reference to a "facially discriminatory statute," this correspondence makes no mention of either their facial or as-applied challenge. (*Id.*)  It certainly does not clearly state that Plaintiffs were withdrawing their as-applied challenge and were only asserting a facial challenge. (*Id.*)

Thus, Plaintiffs' position that they had asserted only a facial challenge since the inception of this lawsuit is demonstrably false.  To suggest that Director Herrington misunderstood their claims and/or should have known they abandoned their as-applied challenge at some point during this litigation is unsupported.  Given the allegations asserted in the Amended Complaint and the arguments asserted in the parties' various briefs, Director Herrington had a sincerely held belief that Plaintiffs were asserting *both* a facial and as-applied challenge in this case.  Director Herrington became aware that Plaintiffs were discarding their as-applied challenge at the oral argument on July 13, 2022.

Accordingly, Director Herrington was required to rethink his position on the relevance of the ESI discovery requested by Plaintiffs given the fact that they are only asserting a facial challenge.  Director Herrington does not believe discovery, much less hundreds of thousands of pages of ESI discovery, as discussed at length below, could possibly be relevant to the Court's determination of whether § 36-337(A)(3) is unconstitutional on its face.  The parties met and conferred telephonically on August 1 to discuss outstanding issues related to discovery.  At the meet and confer, undersigned counsel made his position known regarding the irrelevance of ESI discovery and requested that Plaintiffs provide authority in support of their position that *any* discovery is relevant to their facial challenge.  Plaintiffs provided reasoning that is only applicable to as-applied challenges.  Plaintiffs also maintained their position that ESI discovery is relevant to Director Herrington's "justifications" for the statute, and once again requested that he provide Plaintiffs with those justifications.  Director Herrington declined to provide any "justifications" unless and until the Court ordered him to do so.

1    Plaintiffs—not Director Herrington—have the burden of showing that the discovery they seek is relevant. *See Heffernan v. Pinnacle Health Facilities XXVI LP*, 2021 WL 2530837, at * (D. Ariz. Jan. 22, 2021) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirements of Rule 26(b)(b)(1)."). To date, Plaintiffs have failed to provide Director Herrington with *any* authority supporting their position that extrinsic evidence, including Director Herrington's purported "justifications" for enforcing the statute, obtained through discovery is relevant to their *facial* challenge. As stated below, Plaintiffs' request for ESI discovery related to Director Herrington's "justifications" is so broad and vague that, even if relevant, does not satisfy Rule 26(b)(1)'s proportionality requirement.

Plaintiffs have taken the position that Director Herrington "waived" his relevance argument with respect to ESI by not asserting it in response to Plaintiffs' Motion to Compel. Not so. Because Director Herrington believed in good faith that Plaintiffs asserted both an as-applied challenge and a facial challenge, ESI discovery was arguably relevant to Plaintiffs' as-applied challenge. Director Herrington became aware that Plaintiffs abandoned their as-applied challenge at the oral argument, and he could not possibly have asserted this particular relevance argument in response to Plaintiffs' motion to compel. Moreover, there is no merit to Plaintiffs' contention that Director Herrington has "waived" a relevance argument during a discovery dispute.

At this point, Director Herrington's position is that extrinsic evidence obtained through ESI discovery is completely irrelevant to Plaintiffs' facial challenge challenging the constitutionality of the relevant statute. The parties have, however, continued to attempt to narrow the ESI discovery at issue as ordered by this Court, which is described in detail, below.

**II.   ESI Issues.**

As stated at the oral argument, Plaintiffs' counsel provided undersigned counsel with a set of narrowed search terms on June 29, *after* the parties' motions to compel were fully briefed. On the same date, undersigned counsel provided these narrowed search terms to

the IT department at ADHS and requested they generate a "hit count report" for all 20 of Plaintiffs' proposed custodians during the timeframe January 1, 2017 to present. Undersigned counsel was informed by IT at ADHS that their collection tool did not have the capacity to apply Plaintiffs' narrowed search phrases.[3] Undersigned counsel and IT for ADHS were required to modify these search terms and phrases so that the collection tool could conduct a search. On July 11, IT for ADHS provided undersigned counsel with a "hit count report" based on the search terms, custodians, and date range proposed. The hit count report generated a total of 23,783 hits. Undersigned counsel was informed that this hit count measured hits in emails only. The collection tool could not determine whether there were multiple hits in the same email or in duplicate emails, and it could not search attachments to emails. There was no accurate way of knowing at that point how many emails, much less pages, the search uncovered.

Nonetheless, undersigned counsel instructed IT for ADHS to transfer the data to the Attorney General's Office Litigation Support Group,[4] so it could analyze this data further to determine the number of documents, emails, and page numbers contained in this data so that undersigned counsel could ultimately determine whether proportionality issues existed. Undersigned counsel informed Plaintiffs' counsel of this progress on July 12 and advised the Court of the same at the oral argument on July 13.

On July 19, Plaintiffs' counsel proposed to meet and confer to discuss Director Herrington's progress regarding ESI, and to discuss "streamlining" this litigation given that Plaintiffs are only asserting a facial challenge. On July 20, undersigned counsel notified Plaintiffs' counsel that the data transfer from ADHS to the Litigation Support Group was

---

[3] The collection tool currently used by IT for ADHS is not designed for e-discovery litigation and lacks the sophistication of tools used for that purpose.

[4] The Litigation Support Group is a small group of individuals employed by the Attorney General's Office to assist attorneys with e-discovery litigation. It utilizes sophisticated e-discovery software platforms that it enables it to process, analyze, store, and produce ESI in litigation.

successful, but that, given its size, the data was still in the process of being "unzipped"[5] by the Litigation Support Group.  Undersigned counsel informed Plaintiffs' counsel that after the data was unzipped, the Litigation Support Group would process and deduplicate (i.e., remove all duplicate emails and/or documents) it, and would be able to provide a more accurate analysis regarding the amount of data, the types of data, and the number of pages. The Litigation Support Group informed undersigned counsel that this process could take about 5-6 days if no issues arose, and undersigned counsel informed Plaintiffs' counsel of this timeframe.  Undersigned counsel declined to meet and confer with Plaintiffs' counsel to discuss "streamlining issues" prior to the Court's ruling on the motions to compel.

On July 22, Plaintiffs' counsel again requested to meet and confer, indicating that "it appears that there are some areas—in addition to ESI—where the parties could reach a mutual agreement," including school records, medical records, and social media records. The same day, undersigned counsel agreed to meet and confer on July 27 under the assumption that the Litigation Support Group would be finished processing and analyzing the data by that date.

On July 25, the Litigation Support Group informed undersigned counsel that processing was still not complete, but that they expected processing to be complete on July 27 if no issues arose although they could not provide an exact timeframe.  On July 26, undersigned counsel requested that the meet and confer scheduled for July 27 be rescheduled to August 1 to give the Litigation Support Group enough time to fully process and complete the data analysis. Plaintiffs' counsel agreed to reschedule the meet and confer to for the afternoon of August 1.

On July 28, the Litigation Support Group informed undersigned counsel that the data processing was complete and provided undersigned counsel with a general analytic

---

[5] IT for ADHS transferred this data in a "zipped," or compressed file, which takes up less storage space and can be transferred more quickly than "unzipped" files. Files must be "unzipped" after transfer in order to view them.  The process of "unzipping" means that they must be extracted and expanded into their original state.  This takes time, particularly if there are multiple types of data, as there were here.

overview of the processed data. They informed undersigned counsel that the data contained 49,556 distinct documents, including 16,188 email messages and 33,368 attachments/embedded objects. They estimated that this data contained approximately 688,000 pages of documents but noted that their analytic tool could not account for Excel spreadsheet pages and therefore the total page count only included a single-page placeholder for Excel spreadsheets. They estimated that the number of Excel spreadsheet pages was approximately 100,000, which brought the total page count to approximately 800,000. The Litigation Support Group advised undersigned counsel that this analysis was fairly accurate but could change during the quality control process and/or once the data was exported and loaded onto Eclipse (a software platform used for reviewing and production). Undersigned counsel provided Plaintiffs' counsel with an overview of this analysis.

The parties met and conferred on August 1, at which time undersigned counsel raised Director Herrington's relevance objection to ESI given that Plaintiffs abandoned their as-applied challenge and were only asserting a facial challenge. The parties discussed the relevance of this ESI as stated in Section I, above. Despite the relevance objection, undersigned counsel again stated that the amount of data was overbroad, unduly burdensome, and not proportional to the needs of this case. Without waiving any relevance objection, and in an attempt to continue to move these issues along, undersigned counsel agreed to conduct a more thorough and accurate "hit count" of all search terms so that the parties could continue to attempt to narrow these terms.

Undersigned counsel requested that the Litigation Support Group conduct a hit count on that same date. The Litigation Support Group informed undersigned counsel that they were unable to perform a hit count until the data was loaded onto Eclipse. At that point, the Litigation Support Group was performing a quality control analysis, which they estimated would be completed by Wednesday, August 3.[6] After that, the data could be loaded onto

---

[6] The Litigation Support Group advised undersigned counsel that processing this data took longer than expected because there are over 90 different file types (including approximately 2,000 Excel files) in this data set, which slowed processing immensely.

Eclipse and the hit count could be performed.

On August 9, the Litigation Support Group provided undersigned counsel with three excel spreadsheets which included a full data analysis, including a hit count of all search terms. That day, undersigned counsel attended a telephonic conference with the Litigation Support Group to discuss these results. A summary of this data analysis is as follows.

- The total number of items after processing/deduplication is 49,556 (which includes, emails, attachments, images, etc.), and the total number of email families containing these items is 15,489.
- The total number of distinct documents with one or more search terms was 18,138, and the total number of distinct documents with families totaled 43,174.
- To total hit count for each search term/phrase is as follows:[7]

| Search Term/Phrase | Total Hit |
|---|---:|
| "36-337(A)(3)" | 4950 |
| "36-337(A)(4)" | 4122 |
| "R9-19-208(O)" | 1966 |
| "R9-19-208(P)" | 484 |
| "sex change" | 9518 |
| "chromosomal count" | 4130 |
| "transgender" | 6079 |
| "transsexual" | 518 |
| "intersex" or "DSD" | 594 |
| "gender dysphoria" | 2474 |
| "gender identity" or "GID" | 5871 |
| "gender marker" | 7646 |
| "gender reassignment" or "sex reassignment" or "sexual reassignment" or "SRS" | 5243 |
| "gender conforming" or "gender confirming" or "gender confirmation" or "GCS" | 3124 |
| "gender affirming" or "gender affirmation" | 1440 |
| ("(A)(3)" or "(A)(4)") AND ("sex" or "operation" or "surgery" or "surgical") | 165907 |
| "sex" AND ("operation" or "surgery" or "surgical") | 52076 |
| "(A)(3)" AND "(A)(4)" | 95390 |

---

[7] The "total hits" measured the amount of times any search term appeared in any document, regardless of whether it appeared multiple times in the same document.

- The total page number for all documents was estimated at approximately 740,000. It is estimated that there are at least 100,000+ pages of excel spreadsheets, which puts the total number of pages at well over 800,000.
- There is a discrepancy between the 49,556 documents that were pulled, and the 43,174 documents with their families that contain applicable search terms. For unknown reasons, 6,382 documents did not contain any search term at all. The Litigation Support Group believes this is due to ADHS's imprecise collection tool but is analyzing this issue further. If those 6,382 documents are removed, it is estimated that the total number of pages will be approximately 436,202, although this still does not account for excel spreadsheet pages. The estimated total number of pages is in the 500,000 range.
- The estimated total size of this data is 35GB.

Undersigned counsel provided all of this information, including all three excel spreadsheets provided by the Litigation Support Group, to Plaintiffs' counsel on August 11.[8] Undersigned counsel advised Plaintiffs' counsel that regardless of whether the 6,382 documents are removed, this amount of data is overbroad, unduly burdensome, and not proportionate to the needs of this case, particularly because defense counsel will be tasked

---

[8] In correspondence between the parties, Plaintiffs insinuated that Director Herrington has been dilatory in this process and has caused "unnecessary" and "unwarranted" delays. Additionally, Plaintiffs demanded to know why the Litigation Support Group took so long to provide a hit count report and suggested that its litigation software was inept. Defendant takes issue with this insinuation. It was not the hit count report that has taken time here. The Litigation Support Group supports over 600 attorneys and takes each project in the priority that it is received. It is a small group that has worked diligently and meticulously to unzip, process, deduplicate, analyze, and upload the voluminous amount of data received from ADHS. As stated above, the amount of data is large and took an inordinate amount of time to unzip, process, and deduplicate given its size and file variance. Undersigned counsel has been in communication with individuals from this group almost daily, and they continued to provide updates on the various timeframes it took to complete processing and analytic tasks. To suggest that this team has not been diligent, that its software is in some way incompetent, or that Director Herrington delayed this case is utterly baseless. ESI collection, processing, and production takes time, and the time it has taken here is by no means unusual.

1  with reviewing each and every single page of these documents for privilege.

2  The hit count report shows that the following search phrases make up over 50% of
3  all data hits:

4  - ("(A)(3)" or "(A)(4)") AND ("sex" or "operation" or
5    "surgery" or "surgical")
6  - "sex" AND ("operation" or "surgery" or "surgical")
7  - "(A)(3)" AND "(A)(4)"

8  At this point, the parties are in essentially the same position as they were when they
9  briefed Plaintiffs' motion to compel.  If the Court finds that ESI is relevant to Plaintiffs'
10 facial challenge, Director Herrington maintains his position that the terms contained in these
11 three search phrases (sex, operation, surgery, surgical, (A)(3), and (A)(4)), are so broad,
12 general, and common that they likely appear in thousands of documents that have absolutely
13 no relevance to this case. (*See* Dkt. 127 at 9–12.)  Moreover, it would take several months,
14 if not more, for undersigned counsel to review, redact, and produce these documents. These
15 terms will continue to hit on an exorbitant amount of data if Plaintiffs do not narrow them
16 significantly or remove them entirely.  Until Plaintiffs do, the parties will continue to be at
17 an impasse with respect to ESI discovery.

18 Plaintiffs have taken the position that, regardless of whether Plaintiffs are asserting
19 an as-applied or facial challenge, Director Herrington is still required to produce his
20 "justifications," which they claim *could* be found in this data.  Even if Director Herrington
21 is ordered to produce his "justifications", Plaintiffs' request for this enormous amount of
22 ESI does not satisfy Rule 26(b)(1)'s proportionality test, and Plaintiffs have failed to proffer
23 sufficient reasoning or authority showing that it does. Wading through 500,000–800,000
24 pages of emails without any clear direction as to what Plaintiffs are looking for aside from
25 Director Herrington's "justifications" to enforce the statute is disproportionate to the needs
26 of this case and is the definition of a fishing expedition. (*See also* Dkt. 127 at 10–11.)

27 On August 12, Plaintiffs proposed that Director Herrington review and produce all
28 ESI except for ESI that hit on only one more of the three search phrases, above.  Plaintiffs

proposed that this ESI should "be segregated and maintained" pending the Court's determination on Director Herrington's production of his "justifications" for enforcing the statute. If the Court orders Director Herrington to disclose his justifications, Plaintiffs proposed that the parties meet and confer within 7 days of that disclosure to discuss "additional terms or limits" to the above search terms.

First, Director Herrington does not believe *any* ESI discovery is relevant here given that Plaintiffs are asserting only a facial challenge.

Second, Plaintiffs' proposition provides only a quick fix. If Director Herrington is required to disclose his "justifications" then the parties are back at square one with respect to these particular search terms, and Director Herrington will assert the same overbreadth, burden, and proportionality objection he has asserted to date. Moreover, Director Herrington will not agree to the application of these search phrases as is and cannot adequately evaluate Plaintiffs' proposal without knowing if and/or how Plaintiffs will attempt to narrow these terms further. At this point, Director Herrington's counterproposal is for Plaintiffs to remove the at-issue search phrases entirely. This counterproposal is, however, contingent on the Court finding that ESI discovery is relevant at all.

**III. School, Medical, and Social Media Records.**

At the oral argument, the parties were instructed to continue to attempt to come to an agreement on issues regarding school, medical, and social media records. At the August 1, meet and confer, Plaintiffs' counsel requested that Director Herrington agree to withdraw all requests for these records given that Plaintiffs are only asserting a facial challenge.[9] Director Herrington declined to withdraw these requests and maintains the position that these records are relevant to Plaintiffs' standing, and to their detailed allegations regarding

---

[9] Plaintiffs are using their facial challenge as both a shield and a sword. Plaintiffs cannot shield Director Herrington from conducting discovery into Plaintiffs' injuries by claiming this discovery is irrelevant to their facial challenge, but then request hundreds of thousands of pages' worth of ESI discovery, claiming that it is relevant to their facial challenge. They cannot have it both ways. In addition, Plaintiffs' Opposition to Defendant's Motion to Compel Plaintiffs' Supplemental Responses (Dkt. 138) is devoid of any argument that these records are irrelevant because Plaintiffs are only asserting a facial challenge.

1 emotional harm, harassment, and invasion of privacy.

2 On August 4, Plaintiffs asked whether Director Herrington would consider withdrawing the request for school records in exchange for Plaintiffs' explanations of their efforts to obtain the school records produced. Director Herrington requested that Plaintiffs provide these explanations so he could evaluate whether a withdrawal of the request for school records was appropriate.

3 Plaintiffs sent these explanations on August 8, which were non-specific and vague. Based upon the wording of these "explanations" and representations of Plaintiffs' counsel, it is unclear what records were requested and whether they constituted *all* records as requested by Director Herrington in Request No. 6. Director Herrington again requested that Plaintiffs simply execute releases for these records, which is not unduly burdensome, and will in no way subject Plaintiffs to embarrassment and/or harassment, as Director Herrington would ensure that that these releases do not include any information as to the name or nature of this case. Plaintiffs refused. It is unclear what Plaintiffs are hiding or why they will not simply execute releases. It is baffling that some of the schools attended by Plaintiffs have no record of them at all.

4 Aside from requesting that Director Herrington withdraw his requests for medical and social media records, the parties have not discussed those records. The parties remain at an impasse with respect to school, medical, and social media records.

DATED this 15th day of August, 2022.

                              STRUCK LOVE BOJANOWSKI & ACEDO, PLC

                              By    /s/ Dana M. Keene
                                  Daniel P. Struck
                                  Nicholas D. Acedo
                                  Dana M. Keene
                                  3100 West Ray Road, Suite 300
                                  Chandler, Arizona 85226

                                  MARK BRNOVICH
                                  ATTORNEY GENERAL
                                  Patricia Cracchiolo LaMagna
                                  Aubrey Joy Corcoran
                                  1275 West Washington Street
                                  Phoenix, AZ 85007

                                  *Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Asaf Orr | aorr@nclrights.org |
| Barrett J. Anderson | banderson@cooley.com |
| Colin M. Proksel | cproksel@omlaw.com |
| Mary R. O'Grady | mogrady@omlaw.com |
| Patrick P. Gunn | pgunn@cooley.com |
| Payslie M. Bowman | pbowman@omlaw.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Dana M. Keene