KRIS MAYES
ARIZONA ATTORNEY GENERAL
Firm State Bar #14000
Patricia Cracchiolo LaMagna, Bar #021880
Aubrey Joy Corcoran, Bar #025423
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004
Tel.: (602) 542-8854
Fax: (602) 542-8308
EducationHealth@azag.gov

STRUCK LOVE BOJANOWSKI &
ACEDO, PLC
Daniel P. Struck, Bar #012377
Nicholas D. Acedo, Bar #021644
Dana M. Keene, Bar #033619
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.: (480) 420-1600
dstruck@strucklove.com
nacedo@strucklove.com
dkeene@strucklove.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; James Poe, a minor, by and through his parent and next friend Laura Poe; and Carl Voe, a minor, by and through his parent and next friend, Rachel Voe,<br><br>                              Plaintiffs,<br><br>         v.<br><br>Don Herrington, in his official capacity as Interim State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,<br><br>                              Defendant. | NO. 4:20-cv-00484-JAS<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATON** |

Defendant, the Interim Director of the Arizona Department of Health Services ("ADHS") and Interim State Registrar for the Bureau of Vital Records, objects to class certification.[1]  The Court should not certify the putative class because certification of Plaintiffs' facial challenge to the vital records statute is unnecessary and inappropriate, and Plaintiffs have otherwise failed to establish the requisite elements under Civil Rules 23(a) and 23(b)(2).

**I.      Background.**

**A.      Arizona's Statutory Process for Amending Birth Certificates.**

The Director of ADHS is also the State Registrar of Vital Records.  A.R.S. § 36-302(A).  The State Registrar is the "custodian of vital records" and must "[a]dminister and enforce" Arizona's vital records laws and regulations.  A.R.S. § 36-302(B)(2), (4).  She must also "[i]nvestigate" and "[r]eport" to the county attorney violations of those laws and regulations.  A.R.S. § 36-302(B)(12), (13).  The State Registrar may only amend a birth certificate in accordance with the vital records laws and regulations.[2]  A.R.S. § 36-323(A).  Except in three circumstances, the State Registrar may only amend a birth certificate upon receiving "[a] court order ordering an amendment to a birth certificate."  A.R.S. § 36-337(A)(4).  The three exceptions to amending a birth certificate upon receipt of a court order are: (1) receipt of an adoption certificate to record the adopted person's adoptive parents, *see* § 36-337(A)(1); (2) receipt of a voluntary acknowledgment of paternity to record the person's biological father, *see* § 36-337(A)(2); and (3):

> For a person who has undergone a sex change operation or has
> a chromosomal count that establishes the sex of the person as

---

[1] Don Herrington held this position beginning in August 2021 until he retired in December 2022. Jennie Cunico is the Acting Interim Director and State Registrar until Dr. Theresa Cullen begins her tenure as Director and State Registrar on February 20, 2023. All other Defendants have been dismissed.

[2] "'Amend' means to make a change, other than a correction, to a registered certificate by adding, deleting or substituting information on that certificate." A.R.S. § 301(2). "'Correction' means a change made to a registered certificate because of a typographical error, including misspelling and missing or transposed letters or numbers." A.R.S. § 301(6). Plaintiffs' challenge concerns *amending* birth certificates, not correcting birth certificates.

1

> different than in the registered birth certificate, [receipt of] both of the following:
>
> (a) A written request for an amended birth certificate from the person or, if the person is a child, from the child's parent or legal guardian.
>
> (b) A written statement by a physician that verifies the sex change operation or chromosomal count.

*See* A.R.S. § 36-337(A)(3).  Unless the State Registrar receives a compliant (1) adoption certificate, (2) acknowledgment of paternity, or (3) written request for an amended birth certificate and physician's letter, she cannot amend a birth certificate for any reason without a court order.  A.R.S. §§ 36-323(A), 36-337(A).  Arizona Administrative Code ("A.A.C.") R9-19-208 mirrors these exceptions and requirements.

**B.    Plaintiffs' Allegations.**

Plaintiffs are three young transgender minors.  (Dkt. 47, ¶¶ 16–18.)  They allege that § 36-337(A)(3)'s "surgical requirement" is unconstitutional.  (*Id*. at 33, ¶ B.)  They contend that § 36-337(A)(3)'s surgical requirement—which requires proof of a "sex change operation"—is discriminatory, in violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses, because they are unable to undergo gender affirmation surgery (as minors), or may not need to in the future, and therefore are not eligible for R9-19-208(O)'s "private administrative process" but rather must comply with § 36-337(A)(4)'s requirement and obtain a "court order ordering an amendment" to their birth certificate (like non-transgender individuals who seek an amendment for any reason) before using R9-19-208(B)'s private administrative process.  (*Id*., ¶¶ 5–6, 24, 35–39, 50–55, 86–111, 121–144.)

Plaintiffs originally brought both a facial and as-applied challenge to the surgical requirement on behalf of themselves and all those similarly situated.  (*Id*., ¶ 116.)  They seek a declaration that the surgical requirement is unconstitutional, a permanent injunction enjoining the State Registrar (Defendant) "from enforcing the surgical requirement," and an injunction ordering Defendant to issue amended birth certificates to Plaintiffs.[3]  (*Id*. at

---

[3] Plaintiffs' attack on the surgical requirement in § 36-337(A)(3) is a red herring because, even if it is found to be unconstitutional and therefore stricken, Subsection (A)(3)

31, ¶¶ B–D.)  After filing their Amended Complaint, Plaintiffs moved to certify a class consisting of all transgender individuals born in Arizona who seek to change the sex listed on their birth certificates.[4]  (Dkt. 89.)  Their motion sought to certify both their facial and as-applied claims.  (*Id*. at 8.)  Defendant was granted an opportunity to conduct class discovery before filing their response, and near the end of that discovery, Plaintiffs withdrew their as-applied challenge.  (Dkt. 100; Dkt. 153 at 3.)

**II.      Plaintiffs Have Failed to Establish the Requirements for Class Certification.**

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  To obtain class certification, Plaintiffs must "satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b)."[5]  *Id.* (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)).  Before the Court may certify a class, it must be "satisfied, after a rigorous analysis," that the plaintiff proved by a preponderance of the evidence that the requirements of Rules 23(a) and 23(b) are both met.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard.").  This court has broad discretion in deciding whether to grant or deny class certification.  *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

---

is still only available if the person "has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate." And even if Subsection (A)(3) is stricken in its entirety (which Plaintiffs do not request), they, like all persons, must still comply with Subsection (A)(4).

[4] Plaintiffs were originally D.T., Jane Doe, and Helen Roe (Dkt. 1, ¶¶ 5–7), but after D.T. and Jane Doe amended their birth certificates by obtaining a court order, they voluntarily dismissed themselves (Dkt. 39; Dkt. 66 at 4; Dkt. 83 at 4 n.5), and James Poe and Carl Voe were added as Plaintiffs (Dkt. 47, ¶¶ 17–18).

[5] Plaintiffs argue that common questions under Rule 23(a)(2) include whether Subsection (A)(3) is unconstitutional "as applied" to putative class members. (Dkt. 89 at 8.) However, Plaintiffs have since withdrawn their as-applied challenge and the Court has unambiguously ruled that they are precluded from making an as-applied challenge. (Dkt. 153 at 3.)

### A.   Plaintiffs Merely Speculate Regarding Numerosity.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impractical."  "Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity requirement, mere speculation as to the number of parties involved is insufficient."  *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 256 (C.D. Cal. 2008).  Here, Plaintiffs merely speculate regarding numerosity.  Plaintiffs admit that "the available demographic data does not include anyone under 13" because demographic surveys are not administered to young minor children.  (Dkt. 89 at 6 n.3.)

Attempting to fill this evidentiary gap without any qualifying expert testimony or statistical analysis, Plaintiffs cite a hodgepodge of unrelated national surveys involving transgender *adults* and an irrelevant article that argues that America's class structure is changing.[6]  For instance, Plaintiffs cite one study to argue that only 9% of all "transgender people" who wish to change their birth certificates were able to do so (Dkt. 89 at 7, citing Dkt. 89-3 at 112), but that survey broadly defined "transgender" to include adults who did not identify as a particular sex, "such as genderqueer, non-binary, and crossdresser" people (*id.* at 53).  Moreover, the statistic was based on "All respondents who had ID/record and wanted to change it" (Dkt. 89-3 at 116), not just their birth certificates.  Nor did the study identify the reason they were unable to change their identities (e.g., there was no available court-order process like Subsection (A)(4) in their state or territory).  *See Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) (finding plaintiff's reliance on sales volume statistics insufficient where the statistics do not show the reason behind the purchases).

Nothing in these studies establishes the number of *young minor* children with Arizona birth certificates who, like Plaintiffs, wish to change the sex marker on their birth certificates under the extrajudicial process in Subsection (A)(3) *and* who object to obtaining

---

[6] Although one survey involved teenagers (Dkt. 89-3 at 20–25), Plaintiffs fail to point to anything in the study that shows those teenagers were similarly injured because they desired to amend their Arizona birth certificates extrajudicially under Subsection (A)(3) or objected to obtaining a court order under Subsection (A)(4).

a court order under Subsection (A)(4).[7]  Short of sheer speculation, Plaintiffs have not established numerosity through admissible evidence.[8]  *See Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363 PA (KKX), 2020 WL 6821072, at *4 (C.D. Cal. Oct. 7, 2020) ("Evidence of possible class membership is not evidence of actual numerosity.") (internal quotation omitted).  At most, Plaintiffs have shown a putative class of three: the named Plaintiffs, who are not even members of the class for the reasons stated below at Section II.B.  Three class members are, in any event, insufficiently numerous.

### B.   Plaintiffs Have Not Established Typicality or Adequacy.

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims and defenses of the class."  Rule 23(a)(4) similarly requires that "the representative parties will fairly and adequately protect the interests of the class."  The Ninth Circuit has adopted the class certification approach to standing, which requires the Court to determine that a plaintiff has individual standing and capacity at the class certification stage to represent the class.  *See Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citing *Sosna v. Iowa*, 419 U.S. 393, 397–403 (1975)); *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000).

Under this approach, whether a plaintiff has capacity to represent class members with a similar, but not identical injury, is an assessment of typicality and adequacy.  *Id.*  Absent individual standing, however, the plaintiff is not a member of the class, and therefore cannot establish typicality or adequacy.  *See Sosa*, 419 U.S. at 403 ("There must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23, but there must be a live controversy at the time this Court reviews the case…. A litigant must

---

[7] Because all name changes require a court order and because many young children with Arizona birth certificates who wish to change the sex marker on their birth certificates also seek to change their names on their birth certificates, it is conceivable that many, if not most, individuals would prefer to do both through a single court order. ████████████████

[8] The Court ruled that Plaintiffs' witness declaration submitted in support of numerosity (Dkt. 89-1) is inadmissible.  (Dkt. 153 at 3.)

5

be a member of the class which he or she seeks to represent at the time the class action is certified by the district court.") (internal footnote omitted). To establish individual standing under Article III, the plaintiff must prove that the defendant caused an actual, non-speculative injury that is redressable by a favorable decision.[9] *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000); *Multistar Indus., Inc. v. U.S. Dep't of Transp.*, 707 F.3d 1045, 1054 (9th Cir. 2013).

Here, Plaintiffs allege that "[b]irth certificates are commonly used in a wide variety of contexts, especially for young people who do not have any other form of government-issued identification, including enrolling in school and recreational sports, and obtaining other important identity documents (such as driver licenses, state identification cards, and passports)." (Dkt. 47, ¶ 42.) Plaintiffs further allege that their inability to amend the sex marker on their birth certificates under the "private administration process" under Subsection (A)(3) "forces them to disclose their transgender status—information that is private and sensitive—without their consent whenever they need to rely on birth certificates to establish their identity," and "exposes a transgender young person to an increased risk of harassment, discrimination, and potentially bodily harm." (*Id.*, ¶ 43.) Plaintiffs' own testimony, however, bely these allegations and demonstrate that their alleged injuries were not caused by Defendant and/or are speculative.

---

[9] The Court has not addressed whether Plaintiffs have Article III standing based on injury in fact and causation. *See Multistar Indus.*, 707 F.3d at 1054. Although the Court previously found that Plaintiffs' claims were redressable at the motion to dismiss stage, it relied in part on *Heckler v. Mathews*, 465 U.S. 728, 738 (1984), as support for its authority to "either declare the statute a nullity . . . or … *extend the coverage of the statute*." (Dkt. 83 at 12, emphasis added). The court in *Mathews*, however, did not need to invalidate the statute because that case involved an as-applied challenge of a statutory provision. *See* 465 U.S. at 735 ("The complaint alleged that *application of the pension offset provision of the 1977 Amendments to Mathews and other nondependent men but not to similarly situated nondependent women* violated the Due Process Clause of the Fifth Amendment and sought a declaratory judgment to that effect.") (emphasis added). Because Plaintiff is now bringing only a facial challenge, their claims cannot be redressed without invalidating the § 36-337(A)(3)'s surgical requirement. Short of (improperly) rewriting the statute entirely in a manner that the Arizona Legislature did not intend, Plaintiffs' facial challenge cannot be redressed for the reasons previously stated in Defendants' Motion to Dismiss and Reply. (Dkt. 54 at 8–10; Dkt. 71 at 2–3.) Plaintiffs thus lack standing based on redressability as well.

**Megan Roe/Helen Roe**



**Laura Poe/James Poe**





**Rachel Voe/Carl Voe**

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

In sum, none of Plaintiffs' testimony shows actual injury that was directly caused by Defendant.  Plaintiffs thus lack individual standing.  *See*, *e.g.*, *Holland-Hewitt v. Allstate Life Ins. Co.*, No. 1:20-cv-00652-ADA-SAB, 2022 WL 16639114, at *14 (E.D. Cal. Nov. 2, 2022) (finding plaintiff whose injury was not directly caused by the defendant was an improper class representative for lack of standing).  And because Plaintiffs lack standing, they are not members of the class, their claims are not typical, and adequacy is lacking.  Plaintiffs thus fail the capacity requirements of Rule 23(a)(3) and (4).

**C.   Class Certification Is Unnecessary and Inappropriate Under Rule 23(b)(2).**

Plaintiffs seek class certification under Rule 23(b)(2).  (Dkt. 89 at 14–15.)  Because this Court is "in the best position to consider the most fair and efficient procedure for conducting any given litigation," *Doninger v. Pac. N.W. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977), it has "'wide discretion' to evaluate" whether litigating a case as a class action is appropriate, *Bateman*, 623 F.3d at 712 (citation omitted).

Under Rule 23(b)(2), "there may be circumstances where class certification is not appropriate because in view of the declaratory or injunctive relief ordered on an individual basis, there would be no meaningful additional benefit to prospective class members in ordering classwide relief."  *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 310 (3d Cir. 2016).  The Ninth Circuit addressed those circumstances in *James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979), *rev'd on other grounds*, 451 U.S. 355, 362 (1981).  There, the plaintiff-class of non-landowners claimed that an Arizona statute discriminated against

----

10 ████████████████████████████████████████████████████
████████████████████████████

them by denying them the right to vote in agricultural, improvement, and power district elections. *Id.* at 182. The court upheld the denial of class certification, finding that "the [injunctive and declaratory] relief sought will, as a practical matter, produce the same result as formal class-wide relief." *Id.* at 186.

Following *James*, district courts in the Ninth Circuit have consistently declined to certify class actions under Rule 23(b)(2), finding certification unnecessary and/or inappropriate where, as here, the requested declaratory or injunctive relief on the individual claims would result in the same classwide relief.[11] *See*, *e.g.*, *DiFrancesco v. Fox*, No. CV 17-66-BU-SHE, 2019 WL 145627, at *2–3 (D. Mont. Jan. 9, 2019) ("Any judgment implicating the constitutionality of Montana's driver's license revocation or reinstatement statutes would be binding on all Defendants and to the benefit of all potential class members. No useful need or purpose is served by certification of Plaintiffs' proposed class. The costs and complexities associated with maintaining a class action outweigh the benefits class certification is intended to provide. Class certification is inappropriate and unnecessary."); *Garris v. City of Los Angeles*, No. CV 17-1452-MWF(Ex), 2018 WL 5919214, at *7 (C.D. Cal. Feb. 9, 2018) ("The focus of this case is now whether Plaintiffs are entitled to declaratory or injunctive relief – e.g., a declaration that the relevant Ordinance provisions violate the Fourth Amendment and an injunction preventing the enforcement of those provisions, as currently written. In light of the fact that any declaratory or injunctive relief

---

[11] Defendant is not arguing necessity as a formal requirement for certification. Under the common-sense approach in *James*, necessity is a proper consideration under Rule 23(b)(2), and a finding that certification is unnecessary is sufficient to deny certification. *See M.R. v. Bd. of Sch. Com'rs of Mobile Cnty.*, 286 F.R.D. 510, 518 (S.D. Ala. 2012) ("[C]onsiderable authority demonstrates that, whether it is deemed a formal 'requirement' or not, the necessity of the class mechanism to afford complete relief is a proper consideration in the Rule 23(b)(2) analysis. One prominent commentator has remarked that it is commonplace for "the vast majority of courts" evaluating Rule 23(b)(2) class certification to consider the necessity for class relief, and that "the need requirement now seems well-accepted as an appropriate consideration when certifying a Rule 23(b)(2) action." 7A Charles Alan Wright et al., Federal Practice and Procedure § 1785.2 (3d ed.). A survey of the case law reveals that this common-sense notion has resonated with many federal courts, prompting them to deny class certification where the injunctive relief requested would inure to the benefit of prospective class members whether a class was certified or not.") (collecting cases).

11

that Plaintiffs might ultimately obtain would inure to the benefit of every landlord and tenant in Los Angeles, regardless of whether or not they have sued the City, it seems that class treatment may be something of an empty exercise – i.e., not superior."); *Spry v. Thompson*, No. 03–121–KI, 2004 WL 1146543, at *6 (D. Or. May 20, 2004) ("Here, the court is issuing an injunction prohibiting certain practices by the state and federal defendants. As a practical matter, that injunctive relief will benefit not only the named plaintiffs but also the putative class if Oregon stops charging co-payments to OHP Standard members."); *Sokol v. New United Mfg., Inc.*, No. C 97-4211 SI, 1999 WL 1136683, at *7 (N.D. Cal. Sept. 20, 1999) (denying class certification where "all putative class members would benefit from an injunction issued on behalf of a single plaintiff"); *Calderon v. Madigan*, 831 F. Supp. 1484, 1489 (D. Idaho 1992) ("If this Court declares the occupancy limitations invalid, all those whose right to tenancy is threatened or may be threatened because their household size does not conform to the occupancy limitations will be directly benefited by the Court's decision.  There is thus no need for class certification."); *LaMadrid v. Hegstrom*, 599 F. Supp. 1450, 1453 (D. Or. 1984) ("As a practical matter, my finding that defendants' policies violate the SSA and the Equal Protection Clause, and my order that defendants be enjoined from applying these policies will apply to and benefit the entire class."), *rev'd on other grounds*, 830 F.2d 1524 (9th Cir. 1987).[12]

Like *James* and its progeny, any declaratory or injunctive relief in this case is the same regardless of whether the class is certified.  If Plaintiffs prevail on their facial challenge—which is now the only challenge they make—and secure the relief requested in

[12] In *Zepeda v. United States Immigration and Naturalization Service*, 753 F.2d 719, 729 n.1 (9th Cir. 1985), the court suggested in a footnote that class certification should be denied unless classwide injunctive relief is the *inevitable* result.  As another court explained, these statements were merely dicta, and the Ninth Circuit has since limited *Zepeda* to cases involving a preliminary injunction, agreeing with the *Zepeda* dissent that courts may enjoin a defendant in an individual action even if it has the practical effect of providing all putative class members relief. *See Snake River Farmers' Ass'n v. U.S. Dep't of Labor*, Nos. 91–0075–S–HLR, 91–0130–S–HLR, 1991 WL 539566, at *3 (D. Idaho) (citing *Bresgal v. Brock*, 843 F.2d 1163, 1169–70 (9th Cir. 1987)). Even under *Zepeda*'s dicta, however, class certification is inappropriate here because a judgment declaring § 36-337(A)(3)'s surgical requirement unconstitutional and an order enjoining the State Registrar from enforcing the statute as written will bind the State Registrar and apply to all putative class members.

their Amended Complaint, then § 36-337(A)(3)'s surgical requirement would be declared unconstitutional, and Defendant would be enjoined from enforcing the statute as written. That prospective relief will have the practical effect of granting an injunction to any individual who might fall within the putative class.  Under these circumstances, class certification is unnecessary and inappropriate.  *See*, *e.g.*, *DiFrancesco*, 2019 WL 145627, at *2–3 ("No useful need or purpose is served by certification of Plaintiffs' proposed class. The costs and complexities associated with maintaining a class action outweigh the benefits class certification is intended to provide. Class certification is inappropriate and unnecessary."); *Wells v. Schweiker*, 536 F. Supp. 1314, 1322 (E.D. La. 1982) ("Plaintiffs assert a facial attack on regulations administered by public officials sworn to uphold the law.  A decision granting injunctive and declaratory relief clearly would benefit other persons in Mrs. Wells' position. …. In these circumstances, class action status would serve no useful purpose.").

> **D.    Alternatively, Plaintiffs Have Failed to Establish Certification Under Rule 23(b)(2).**

Rule 23(b)(2) gives the Court discretion to certify a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is *appropriate* respecting the class as a whole[.]"  (Emphasis added.)  The Supreme Court has explained that "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"  *Wal-Mart*, 564 U.S. at 360 (citation omitted and emphasis added).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Id*.

Here, Plaintiffs have failed to prove that a single injunction would be appropriate for the entire class.  An injunction that enjoins the State Registrar from enforcing the surgical requirement could harm members of the class.  For example, a child who is too young to understand the concept of sex or gender or communicate their comprehension could be

misdiagnosed with gender dysphoria.  Or a parent or legal guardian could seek an amended birth certificate for a child with an intent to obtain other identification documents and commit a fraud.  *See* https://oig.hhs.gov/oei/reports/oei-07-99-00570.pdf (Office of Inspector General 2000 Report on Birth Certificate Fraud).  Under these scenarios, without Subsection (A)(3), a parent or legal guardian, either well-intentioned or nefariously, could privately and unilaterally amend the child's birth certificate.  In such a case, the injunction would be directly *contrary* to the child's interests and put some at risk, rendering it *in*appropriate classwide relief.  *See Stewart v. Superior Court*, 787 P.2d 126, 129 (Ariz. App. 1989) ("The doctrine of parens patriae recognizes both the power and the duty of the courts to act for the child's best interests."); *see also Moheb v. Nutramax Labs. Inc.*, No. CV 12–3633–JFW (JCx), 2012 WL 6951904, at *6 (C.D. Cal. Sept. 4, 2012) (ruling that "the presence of consumers in the Class who will not benefit from injunctive relief … renders such relief inappropriate respecting the Class as a whole").  The potential harm to class members also presents a fundamental conflict between Plaintiffs' interests and the interests of those class members, which further defeats adequacy under Rule 23(a)(4).  *See Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156, 177–78 (C.D. Cal. 2007) ("[M]ost courts share the view that 'a class cannot be certified … when it consists of members who benefit from the same acts alleged to be harmful to other members of the class.'") (citation omitted).

Plaintiffs' authorities are inapposite.  Plaintiffs improperly cite dictum in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997), to argue that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases where Rule 23(b)(2) is permitted.  (Dkt. 89 at 15.)  But the *Amchem* court was merely distinguishing Rule 23(b)(3) and addressed only the appropriateness of certification of claims involving individualized damages.  *Id*. at 614–20.  Plaintiffs also cite *Wal-Mart*, *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), and *Toomey v. Arizona*, No. CV 19-0035-TUC-RM (LAB), 2020 WL 2465707 (D. Ariz. May 12, 2020), but none of those cases involved certification under Rule 23(b)(2) of a facial challenge to a statute.  Indeed, *Wal-*

*Mart* held that certification was *not* appropriate under Rule 23(b)(2) because the claims were governed by Rule 23(b)(3). 564 U.S. at 360–363. *Parsons* involved claims that a prison's systemwide policies and practices (as applied) subjected all class members to Eighth Amendment violations. 754 F.3d at 688–89. And *Toomey* involved an individual's claim that an insurance policy excluding coverage for sex-change operations was unlawful as applied to him because he was denied a hysterectomy that was medically necessary treatment for his gender dysphoria. 2020 WL 2465707, at *1–2. Plaintiffs cite no cases upholding Rule 23(b)(2) certification of an injunction like what they request here.

### E.     Plaintiffs' Proposed Class Definition Is Overbroad.

Plaintiffs' proposed class definition includes:

> All transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificates but have not undergone a "sex change operation" as treatment for their gender dysphoria.

(Dkt. 47, ¶ 113.) Plaintiffs' facial claim, however, is not that broad. They contend only that § 36-337(A)(3) discriminates against *young minor children* ("transgender youth") because, unlike adults, they cannot undergo a "sex-change operation" and may never need to because of other gender dysphoria treatments, e.g., medications to delay puberty or hormone-replacement therapy. (*Id*., ¶¶ 35–39, 42–45, 50–55, 86–111.) They also allege that unlike adults, children must use their birth certificates "in a wide variety of contexts" because they "do not have any other form of government-issued identification" (*id*., ¶ 42), even though the majority of Plaintiffs have government-issued identification that corresponds with their gender identity (Ex. 1, at 43:2–8; 113:3–5; Ex. 2, at 35:9–37:5; 108:6–109:15).

Plaintiffs, who are all young minor children under the age of 12, do not allege that the statute unconstitutionally impacts transgender *adults*. Moreover, Plaintiffs' constitutional claims are premised on their allegation that securing an amended birth certificate under § 36-337(A)(4) is unduly burdensome and traumatic. (*Id*., ¶¶ 54–55.) But the proposed class definition encompasses "[a]ll transgender individuals," including adults,

15

*and* those who do not object to obtaining a court order under Subsection (A)(4). At the very least, the class definition should be narrowed to include only those young minor children who are under the age of 12 and are unwilling to obtain a court order. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("The class must … be defined in such a way that anyone within it would have standing."); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming denial of class certification where "it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief."); *Allen v. Holiday Universal*, 249 F.R.D. 166, 171 (E.D. Pa. 2008) ("Courts likewise have held that a class definition is overly broad where the class encompassed persons who had not suffered any injury."). Otherwise, Plaintiffs' claims are not typical of the class. *See Briseno*, 844 F3d at 1125 n.4 (noting that the propriety of a class definition may be resolved "through analysis of Rule 23's enumerated requirements").

**III.  Conclusion.**

For these reasons, Plaintiffs have failed to establish that class certification is appropriate. Their motion for class certification should be denied.

DATED this 13th day of January, 2023.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/ Daniel P. Struck
    Daniel P. Struck
    Nicholas D. Acedo
    Dana M. Keene
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    KRIS MAYES
    ATTORNEY GENERAL
    Patricia Cracchiolo LaMagna
    Aubrey Joy Corcoran
    1275 West Washington Street
    Phoenix, AZ 85007

    *Attorneys for Defendant*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Asaf Orr | aorr@nclrights.org |
| Barrett J. Anderson | banderson@cooley.com |
| Colin M. Proksel | cproksel@omlaw.com |
| Mary R. O'Grady | mogrady@omlaw.com |
| Patrick P. Gunn | pgunn@cooley.com |
| Payslie M. Bowman | pbowman@omlaw.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck