IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; James Poe, a minor, by and through his parent and next friend Laura Poe; and Carl Voe, a minor, by and through his parent and next friend Rachel Voe,<br><br>Plaintiffs,<br><br>v.<br><br>Don Herrington, in his official capacity as Interim State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,<br><br>Defendant. | No. CV-20-00484-TUC-JAS<br><br>**ORDER** |

Pending before the Court is Plaintiffs' motion for class certification. For the reasons stated below, the motion is granted.[1]

**BACKGROUND**

Plaintiffs Helen Roe, James Poe, and Carl Voe are transgender individuals born in Arizona who have been diagnosed with gender dysphoria. Widely accepted medical and psychological treatment for gender dysphoria includes socially transitioning to live

---

[1] The Court notes that many of the factual and legal issues relevant to the motion for class certification overlap with factual and legal issues that were addressed in previous rulings of the Court. *See* Doc. 83 (Order denying motion to dismiss); Doc. 153 (Order addressing discovery disputes). For the sake of brevity, the Court incorporates those previous factual and legal discussions, and will not rehash those same issues in any detail in this Order addressing class certification.

1

consistent with one's gender identity (as opposed to the gender identified on a birth certificate which is inconsistent for individuals with gender dysphoria). Consistent with medical and psychological treatment for gender dysphoria, transgender individuals seek to align their appearance and identification documents (such as birth certificates, driver's licenses, passports, etc.) with their gender identity. For many transgender individuals, surgical treatment may never be medically or psychologically appropriate or necessary to treat their gender dysphoria. However, Arizona law (A.R.S. § 36-337(A)(3)) requires Arizonans to get a "sex change operation" to be permitted to change the gender marker on their birth certificate (to align with their gender identity) through Arizona's private administrative process. Plaintiffs argue that Arizona law violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment by discriminating against transgender individuals and burdening their right to liberty, privacy, autonomy, and medical decision-making authority. Plaintiffs seek to certify a class of: "All transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificate, but have not undergone a 'sex change operation' as treatment for their gender dysphoria."

**STANDARD FOR CLASS CERTIFICATION**

Pursuant to Fed. R. Civ. Proc. 23 ("Rule 23"), the requirements for class certification include:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; . . .

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of [Rule] 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corporation*, 657 F.3d 970, 979-980 (9th Cir. 2011).[2] A rigorous analysis of the Rule 23 factors is required to ensure that class certification is warranted. *See id*. at 980.

## DISCUSSION

### Numerosity

Numerosity is satisfied if "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, 40 or more members will satisfy the numerosity requirement . . . [and plaintiffs] need not identify the precise number of potential class members." *Toomey v. Arizona*, 2020 WL 2465707, at *2 (D. Ariz. May 12, 2020). "[A class may be] certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).

To satisfy the numerosity requirement, Plaintiffs have submitted demographic studies reflecting that there are likely over 30,000 transgender individuals in Arizona, and there are likely thousands of transgender individuals who would amend their Arizona birth certificates through a private administrative process if it was available in Arizona. The Court notes that a number of these same studies were recently relied on in another District of Arizona case (i.e., *Toomey*) whereby the *Toomey* court found that there were sufficient transgender individuals in Arizona to satisfy the numerosity requirement for purposes of class certification. For example, in *Toomey*, the court found that the Williams Institute survey data was sufficiently reliable to estimate the number of transgender individuals in Arizona, and considering these numbers, found that the number of transgender individuals seeking medical transgender care in Arizona exceeded 40 individuals for purposes of numerosity. *See Toomey*, at *2-3. Like *Toomey*, this Court also finds the Williams Institute

---

[2] Unless otherwise noted by the Court, internal quotes and citations have been omitted when quoting and citing cases throughout this Order.

survey and Plaintiffs' other demographic information to be sufficiently reliable for purposes of numerosity.

In the case at bar, Plaintiffs' proposed class includes "[a]ll transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificates, but have not undergone a 'sex change operation' as treatment for their gender dysphoria." Considering the thousands of transgender individuals in Arizona reflected in Plaintiffs' demographic studies, common sense dictates that there are at least 40 transgender individuals in Arizona who would seek to change their gender marker (through a private administrative process) as pursuing such a course of action is a widely accepted medical and psychological practice in treating gender dysphoria. *See Chief Goes Out v. Missoula Cnty.*, 2013 WL 139938, at *4 (D. Mont. Jan. 10, 2013) ("A court must rely on simple common sense when determining whether a class size meets the numerosity requirement."). The Court finds that numerosity is satisfied in this case.

**Commonality**

A proposed class satisfies the commonality requirement if "questions of law or fact are common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met where class claims "depend upon a common contention" that is "capable of class wide resolution[.]" *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1153 (9th Cir. 2016). "[E]ven a single common question of law or fact that resolves a central issue will be sufficient." *Castillo v. Bank of Am.*, NA, 980 F.3d 723, 728 (9th Cir. 2020). Numerous courts have found commonality satisfied where a proposed class challenges government policies that discriminate against transgender individuals. *See Toomey v. Arizona*, 2020 WL 3197647, at *1 (D. Ariz. June 15, 2020); *Monroe v. Meeks*, 335 F.R.D. 201, 206 (S.D. Ill. 2020); *Flack v. Wisc. Dep't of Health Servs.*, 331 F.R.D. 361, 370 (W.D. Wis. 2019). In this case, Plaintiffs and members of the proposed class trace their injury to a common source: the "sex change operation" requirement in A.R.S. §36-337(A)(3). The inability of transgender individuals in Arizona to change the gender marker on their birth certificate through a private administrative process stems from the enforcement of the surgical requirement in

A.R.S. §36-337(A)(3). Plaintiffs argue this violates the Equal Protection and Due Process Clauses; these legal issues and the resolution of those issues are common to the proposed class, and the commonality requirement is satisfied in this case. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**Typicality**

Typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is present "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). The named Plaintiffs are transgender individuals who are unable to amend their birth certificates through a private administrative process. As referenced above, A.R.S. § 36-337(A)(3) requires transgender individuals to have a "sex change operation" in order to have the gender marker changed on their birth certificate through Arizona's private administrative process. Without this "sex change operation", Plaintiffs are barred from amending the gender marker on their birth certificates through Arizona's private administrative process. Thus, the claims of the named Plaintiffs and the proposed class arise from "the same course of events" as the class-wide claims (i.e., the surgical requirement imposed by Subsection (A)(3) which bars them from correcting the sex listed on their birth certificates through a private administrative process). *See Rodriguez*, 591 F.3d at 1124. In addition, as referenced above, Plaintiffs and members of the Proposed Class also share the same legal claims under the Equal Protection and Due Process Clauses. It is evident that the interests of the named Plaintiffs and the proposed class are in alignment, and if the Plaintiffs succeed in obtaining class-wide declaratory and injunctive relief in this case, each of the named plaintiffs and members of the proposed class will benefit from this injunctive relief.

The Court notes that Defendant's contention that Plaintiffs are unable to satisfy the typicality requirement rests on Article III standing arguments which this Court has already considered and rejected. In a previous Order, the Court held that the Plaintiffs have

redressable injuries in this case and that standing was otherwise satisfied. Further, the Court already concluded that the "sex change operation" requirement at issue invades Plaintiffs' rights under the Due Process and Equal Protection Clauses. Plaintiffs' injuries stem from Subsection (A)(3)'s invasion and violation of Plaintiffs' rights to Due Process and Equal Protection. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (an injury in fact is "an invasion of a legally protected interest"); *NE 5 Fla. Ch. of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("[T]he 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of the barrier."); *Ruelas v. Cnty. of Alameda*, 519 F. Supp. 3d 636, 659 (N.D. Cal. 2021) (injury for equal protection purposes was a constitutional violation, not the underlying impacts stemming from the violation*)*; *Hecox v. Little*, 479 F. Supp. 3d 930, 960 (D. Id. 2020) (holding that law preventing a transgender athlete from participating in collegiate athletic teams injured her regardless of whether she would have ultimately made the team). The Court also notes that the relevant injuries at issue in this case are not the individualized emotional injuries of each Plaintiff as indicated by Defendant, but rather constitutional injuries (via Arizona's "sex change operation" requirement) stemming from the Equal Protection and Due Process Clause violations. The typicality requirement is satisfied in this case.

**Adequacy**

The adequacy requirement implicates two primary issues: whether "the named plaintiffs and their counsel have any conflicts of interest with other class members", and whether the named plaintiffs and counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (commonality and typicality requirements "merge with the adequacy-of-representation requirement"). The claims of the named Plaintiffs and the proposed class hinge on whether class members should be able to amend the gender marker on their birth certificates through a private administrative process. The named Plaintiffs and proposed class members seek the same declaratory and injunctive relief: a declaratory judgment that

A.R.S. §36-337(A)(3) and A.A.C. R9-19-208(O) are unconstitutional, permanent injunctions preventing enforcement of the statute and regulation, and an order for Defendant to create a constitutionally valid process for transgender individuals born in Arizona to amend the sex listed on their birth certificates through a private administrative process. There is no conflict of interest in this case. Furthermore, Plaintiffs are represented by experienced class action and civil rights attorneys from Cooley LLP and Osborn Maledon (two large law firms), and the National Center for Lesbian Rights. As there are no conflicts of interest and class counsel are experienced attorneys that would properly represent the class, the adequacy requirement is satisfied.

**Rule 23(b)(2)**

Lastly, the requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Class certification under Rule 23(b)(2) is appropriate where, as here, "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

In this case, Plaintiffs and the proposed members of the class seek an injunction against the Arizona Department of Health Services that bars enforcement of the "sex operation" requirement under A.R.S. §36-337(A)(3). Such an injunction in this matter would protect all proposed class members' Due Process and Equal Protection rights, and otherwise make it less burdensome for transgender individuals to amend the gender marker on their birth certificates in Arizona through a private administrative process. The requirements of Rule 23(b)(2) are satisfied in this case.[3]

---

[3] The Court notes that Defendant argues that class certification is unnecessary in this case because all transgender individuals in Arizona could benefit from the injunction Plaintiffs seek without being a member of a class action. However, Rule 23(b)(2) does not impose a necessity requirement on Plaintiffs, and the Court will not impose such a requirement that is not mandated by Rule 23(b)(2). Furthermore, even if there was such a requirement under Rule 23(b)(2), addressing the constitutional claims at issue in this case via a class action is warranted to ensure consistent results, provide notice to unnamed class members and to avoid mooting claims for class members that can otherwise reach amendable agreements with Defendant.

**CONCLUSION**

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' motion for class certification (Doc. 89) is granted.

(2) The Court notes that two intertwined discovery motions (Docs. 206, 207) were very recently filed; upon review of the briefs and pertinent record and authority related thereto, Defendant's motion to extend remaining deadlines (Doc. 207) is granted and Plaintiffs' motion to quash or for a protective order (Doc. 206) is denied.[4] The deadlines and the parties' discovery obligations are reset as follows: (a) Plaintiffs shall disclose the information requested in Defendant's subpoenas as to Plaintiffs' experts (Doctors Shumer and Ettner) by no later than 8/18/23; (b) Based on the newly disclosed information as to Doctors Shumer and Ettner, Defendant has leave to conduct any supplemental depositions of Doctors Shumer and Ettner by no later than 8/31/23; (c) Summary judgment motions are due no later than 9/29/23; (d) The joint proposed pretrial order ("PTO") is due by no later than 10/31/23. If summary judgment motions are filed, the PTO shall be due 30 days after any non-dispositive summary judgment rulings. If the parties can agree to adjust these deadlines to better suit their schedules and those of the experts, the parties are free to submit a stipulation and proposed order adjusting the deadlines.

Dated this 10th day of August, 2023.

Honorable James A. Soto
United States District Judge

---

[4] The Court notes that the motion to extend remaining deadlines is fully briefed. However, as to the closely related motion to quash or for a protective order, Defendant filed its response to the motion to quash on 8/8/23, and a reply would not be due until later next week. Given the rapidly approaching 8/18/23 dispositive motion deadline, the Court rules on the pending discovery motions without the reply mentioned herein.