# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; et al., <br><br> Plaintiffs, <br><br> v. <br><br> Jennie Cunico, in her official capacity as State Registrar of Vital Records and Director of the Arizona Department of Health Services, <br> Defendant. | No. CV-20-00484-TUC-JAS <br><br> **ORDER** |

Pending before the Court are cross motions for summary judgment. Both parties agree that there are no genuine issues of material fact. Plaintiffs' Complaint contains four claims against the Arizona Department of Health Services ("ADHS") whereby they allege Subsection (A)(3) of Arizona Revised Statutes § 36-337(A) violates (1) the Equal Protection Clause, (2) The Due Process Right to Privacy, (3) The Due Process Right to Individual Liberty and Autonomy, and (4) The Due Process Right to choose to undergo a particular medical treatment. For the reasons stated below, Plaintiffs' motion for summary judgment on all claims is granted, and Defendant's motion for summary judgment is denied.

## I. STANDARD OF REVIEW

Summary Judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere scintilla of evidence" in support of the

1 nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252. However, in evaluating a motion for summary judgment, "the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The Court will not weigh the evidence or determine its credibility at the summary judgment stage, nor will the court decide what is true; the court will only assess whether there are genuine issues for trial. *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996); *Balint v. Carson City, Nevada*, 180 F.3d 1047, 1054 (9th Cir. 2000).

## II. BACKGROUND

The Named Plaintiffs are three transgender children born in Arizona who sought to change the gender marker on their birth certificates to reflect their gender identities, but were denied because they did not satisfy the sex change operation requirement[1]. The Named Plaintiffs are part of a certified class of transgender individuals born in Arizona who seek to change the sex listed on their birth certificates, but have not undergone a "sex change operation."

### A.R.S. 36-337(A)

ADHS, through the Bureau of Vital Records, is solely responsible for registering, issuing, correcting, and maintaining Arizona birth certificates. *See* A.R.S. § 36-302. Under the Arizona Revised Statutes, there are two potential ways to amend an Arizona birth certificate. *See* A.R.S. § 36-337(A). The first, A.R.S. § 36-337(A)(3), requires an individual seeking an amendment to their birth certificate to undergo a sex change operation as a prerequisite to changing the gender marker on their birth certificate. Transgender individuals who undergo the statutorily mandated surgical operation may then submit a confidential application to ADHS and a physician's letter attesting that the surgical procedure took place. If accepted, ADHS is required to grant the amendment, and the amendment's records are sealed and are not accessible to the public. Importantly, minor children are not eligible to undergo surgery[2] and, thus, are ineligible for an amendment

---

[1] Plaintiffs Helen Roe, James Poe, and Carl Voe (together "Named Plaintiffs") are three minor transgender individuals born in Arizona. The Court will discuss the Named Plaintiffs in further detail later in this Order.
[2] The Court emphasizes that the prevailing medical and psychological consensus is that

- 2 -

using this private administrative process,

The second avenue to amend an Arizona birth certificate, A.R.S. § 36-337(A)(4), permits an amendment to a gender marker if an individual has obtained a court order. However, Arizona courts have interpreted Subsection (A)(4) to include the requirements of Subsection (A)(3), which mandates transgender individuals to get "a sex change operation" to change the gender marker on their birth certificates[3]. Importantly, non-transgender people can apply to change their sex marker with no more than a physician's letter attesting that they are a certain sex in a confidential administrative process.

However, even with a court order, ADHS also requires (1) a written request for an amended birth certificate in a department-approved format from a person or the person's parent or legal guardian if the person is a minor and (2) the applicable fee payment. Subsection (A)(4) forces transgender individuals to prepare and file legal documents, pay a fee, and ultimately, risk publicly outing themselves. While there are means to request confidentiality, these requests are sometimes denied as rulings on such requests are within the court's discretion and risk the psychological well-being of individuals with gender dysphoria.

Named Plaintiffs argue that Subsection (A)(3) and its implementing regulations essentially bar them from the private administration process by requiring these children to undergo an invasive surgery that their doctors and other medical experts recognize is unnecessary. Further, they argue that Subsection (A)(3) is not cured by the alternative court order process in Subsection (A)(4) because of the import of the surgical requirement and

---

minors should not have surgery and may never require surgery.

[3] While the Defendants argue that *McLaughlin v. Swanson,* 476 P.3d 336, 339 (Ariz. App. 2020), ended Arizona courts surgical requirement interpretation, the Court does not find this to be the case. There, the court recognized Arizona courts' broad authority over birth certificate amendments, but it did not change any substantive interpretation of the statute. *Id.* Here, the recognition of Arizona courts' discretion does little to change the burden placed on the Plaintiffs and other transgender individuals who seek to amend their birth certificates. Further, even if Arizona courts had not imported the sex change operation requirement, forcing transgender individuals to sue the government is an incredibly burdensome process fraught with expense, uncertainty and confusion.

the undue burden that is required of transgender individuals to go to court to obtain a court order. They assert that the statutory and regulatory scheme violates the Equal Protection Clause, the Due Process Right to Privacy, the Due Process Right to Individual Liberty and Autonomy, and the Due Process Right to choose whether to undergo a particular medical treatment.

The Defendant contends that there is a compelling state interest in ensuring the accuracy of vital records[4] and that the court order alternative is not overly burdensome and facially permits a transgender individual to change their gender marker without a sex change operation. The Court will address these claims in the succeeding parts of this Order.

**Birth Certificates**

A birth certificate is one of the most common and important identification documents. It is necessary for a variety of essential services and activities; these include school enrollment, after-school programs, and extracurricular activities. If a birth certificate does not accurately reflect the gender of transgender children, it can create numerous challenges in school enrollment and hinder their participation in school and extracurricular activities. Named Plaintiffs argue that without amended birth certificates, their transgender status is exposed during school registration and other programs, leading to harassment, discrimination, and potential violence. There are studies to support these fears[5], and different courts have reached similar conclusions. *See e.g.*, *Ray v. McCloud*, 507 F.Supp.3d 925, 931-32 (S.D. Ohio 2020). The Defendant argues that the State's

---

[4] The Court notes that several federal agencies have recognized that a sex change operation is not necessary to ensure the accuracy of identity documents. For example, the U.S. Department of State for passports, and the Social Security Administration for social security cards, allow applicants to self-attest to their sex and do not require proof of surgery to change a gender marker on these identification documents. *See* U.S. Department of State Passport "Selecting Your Gender Marker," attached as Exhibit 31 to Dkt. 233.; U.S. Social Security Administration "How do I change the sex identification on my Social Security record?" attached as Exhibit 32 to Dkt. 233. Moreover, the Arizona Department of Transportation ("ADOT") also does not require proof of a sex change operation to change the gender marker on driver licenses. *See* ADOT Customer Records Policy 4.1.1(G) at 2, attached as Exhibit 34 to Dkt. 233.

[5] The Court has previously cited to a 2015 study by the National Center for Transgender Equality from 2015, which found that nearly one-third of transgender respondents who had an identity document that did not match their gender presentation were harassed, discriminated against, or assaulted. (Dkt. 83 at 3).

interest in maintaining vital records laws does not deprive "any transgender individuals of any rights to privacy, gender autonomy, or medical autonomy" because the amendment process does not single out transgender individuals. (Dkt. 230 at 10-17)[6]. Both parties agree, however, that without accurate identification documents, transgender individuals are exposed to emotional and physical harm.

**Named Plaintiffs**

The Named Plaintiffs Helen Roe, James Poe, and Carl Voe are a part of a certified class of all transgender people born in Arizona. The Named Plaintiffs are transgender individuals under the age of eighteen born in Arizona. All of them suffer from gender dysphoria and have attempted to follow medical treatment recommendations by adopting the characteristics of their gender identity.

The Named Plaintiffs possessed inaccurate identity documents as the gender marker on their birth certificate did not align with their gender identity. Every time they used these documents, they risked disclosing private medical information and exposing their transgender status, which in turn risked their well-being when participating in everyday activities. The Named Plaintiffs have shared episodes of violence, discrimination, and harassment due to involuntary outings of their transgender status [7].

**Gender Dysphoria**

Gender dysphoria is a medically recognized and diagnosable condition where there is an incongruence between a transgender person's gender identity and assigned sex[8]. Left untreated, gender dysphoria may result in severe psychological distress, anxiety, depression, suicidal ideation, and even self-harm.

---

[6] The Court will address this argument in more detail later in the Order. However, the Court notes that this argument is unpersuasive as it fails to address how the amendment process is not overly burdensome on transgender individuals inasmuch as they comprise the vast majority of individuals seeking to change the gender markers on their birth certificates.

[7] The Court has previously provided a more detailed account of the individual experience of the Plaintiffs. (Dkt. 83 at 5).

[8] Gender Dysphoria is in the Diagnostic and Statistical Manual of Mental Disorders 5th edition ("DSM-5"), and it is recognized by the American Psychiatric Association, the American Medical Association, and other professional medical organizations.

According to current standards for treatment, changing the sex marker on a transgender child's birth certificate is an important step in protecting the child's transgender status from being improperly exposed to others. It helps them avoid numerous harms caused by the disclosure of their private medical information. Studies show that children between the ages of two and five years old become aware of their gender identity and begin to express their gender identification through their behavior. There is a biological component to a transgender individual's gender identity and attempts to forcibly change it are harmful to a person's health and well-being.

Standards of care for gender dysphoria were developed by the World Professional Association for Transgender Health ("WPATH"), an international, multidisciplinary professional association of medical providers. Named Plaintiffs have all suffered psychological distress due to gender dysphoria and are following the standards of care for this condition while under the supervision of doctors. The goal of gender dysphoria treatment is to align a transgender person's life with their gender identity. Not every transgender person needs surgery to complete a gender transition. Starting social transitioning and other recommended therapy may eliminate the need for any potential surgical intervention.

In this case, Named Plaintiffs have begun to socially transition by changing their names, using different pronouns, wearing clothing, and adopting grooming habits consistent with their gender identity. These help the Named Plaintiffs find acceptance and support in their lives, which, in turn, alleviates the psychological distress from their gender dysphoria. However, without the proper gender marker on their birth certificate, the Plaintiffs argue that they are prevented from continuing their social transition and are exposed to grievous harm.

## III. DISCUSSION

Plaintiffs move for summary judgment on their claims that A.R.S. § 36-337(A)(3) is facially unconstitutional and violates their constitutional rights to Equal Protection and Due Process. Defendant likewise moves for summary judgment, contending that Arizona's

statutory scheme is constitutional.

### A. Facial Challenge

At the outset of the litigation, the challenge to the statutory provision was both an as-applied and facial challenge. However, through the course of the proceedings, the challenge has evolved solely into a facial challenge. (Dkt. 153 at 3 & n.4.).

To succeed with a facial challenge, a plaintiff must show that a statute, as written, "establishe[s] that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745 (1987). However, the Court must "be careful to not go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

### B. Equal Protection

Plaintiffs argue that the Defendant's amendment requirements discriminate against Plaintiffs in violation of the Equal Protection Clause by requiring transgender individuals to undergo surgery to secure a birth certificate that reflects their gender identity. In contrast, non-transgender individuals' birth certificates properly reflect their gender identity, which already aligns with their biological sex.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This extends to protection against "intentional and arbitrary discrimination" by the State. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Ninth Circuit has held that heightened scrutiny applies to laws that discriminate based on transgender status. *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019). Heightened scrutiny places a high burden upon the state to demonstrate an "exceedingly persuasive" justification for its differential treatment. *United States v. Virginia*, 518 U.S. 515, 533 (1996). To survive heightened scrutiny, the government must demonstrate that the discriminatory means are tailored to important governmental objectives. *Id.* at 516. As reflected in *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d

471, 483 (9th Cir. 2014), the Court's review under heightened scrutiny is extremely fact-bound, requiring us to "examine [a policy's] actual purposes and carefully consider the resulting inequality to ensure our most fundamental institutions neither send nor reinforce messages of stigma or second-class status."

Here, there is no dispute among the parties as to the case's material facts. Transgender individuals, if they seek to amend their birth certificate, have two options: Subsection (A)(3) and Subsection (A)(4). The disagreement rests in how these subsections, read together, are to be interpreted as they relate to the rights of transgender individuals born in Arizona.

The Defendant argues that when read in conjunction, there is no barrier to amending a birth certificate. Plaintiffs can either undergo surgery or petition an Arizona court for relief. The Defendant argues that under this statutory scheme, there is nothing unconstitutional regarding the sex change operation if transgender individuals are presented with the court order alternative. Further, the Defendant claims that the statute does not require a transgender individual to disclose their transgender status because it does not explicitly document gender identity.

The Court does not find the Defendant's arguments persuasive. The mere fact that Subsection (A)(4) provides an alternative court order process does not address the substantive requirements of the process[9]. Here, the Arizona courts have imported a requirement of surgery for amending an Arizona birth certificate, and if transgender individuals choose not to, or are unable to undergo surgery, they are barred from amending their birth certificate. The interpretation of the Subsections that the Defendant seeks the Court to adopt does not rationally exist. In the case of the Named Plaintiffs and other similarly situated transgender individuals, they are forced to undergo surgery against medical treatment recommendations and their individual choice to amend their birth

---

[9] While the court order process permits Arizona courts, at their discretion, to seal documents, the courts are not required to do so. Under Arizona's alternative court order process, transgender individuals must sue the government, navigate the litigation process and hope the courts seal the documents to protect their privacy. Arizona's alternative court order process does not alleviate the burden imposed on transgender individuals.

- 8 -

certificate. The statute and supporting regulations do not explicitly single out transgender individuals; however, as the Court previously discussed in the Order denying the Defendant's Motion to Dismiss:

> [T]he statute and regulation do not explicitly use the phrase 'transgender' or explicitly state that these laws are aimed directly at 'transgender' people, [but] any logical reading of the statute and regulation reflects that it applies nearly exclusively to transgender people; who else is going to voluntarily seek out a "sex change operation"? *See Latta v. Otter*, 771 F.3d 456, 467-68 (9th Cir. 2014) ("Whether facial discrimination exists does not depend on why a policy discriminates, but rather on the explicit terms of the discrimination . . . [W]hile the distinction . . . that defendants seek to draw could in theory represent a justification for the discrimination worked by the law, it cannot overcome the inescapable conclusion that the [states' laws] discriminate on the basis of sexual orientation.")

(Dkt. 83 at 9–10). Similarly, it follows that if a transgender individual were unable to satisfy the surgical requirement and obtain an amended birth certificate, it forcibly requires an individual to disclose their transgender status when they present an inaccurate identity document. For non-transgender individuals—the vast majority of whom have an accurate birth certificate—they are not presented with the unlawful choice of being stripped of their bodily autonomy or face discrimination, harassment, and potential violence.

The Defendant contends that the government has a vital interest in accurate birth records, and thus, this is a tailored means of achieving its goals. These points will be addressed in further detail later in this Order. However, as a threshold matter, the Court finds this argument unpersuasive as the amendment process does not destroy the original birth certificate record, but simply maintains it under seal in the agency's records. The amendment process sought by the Plaintiffs would not impede the governmental interest in maintaining accurate vital records and if anything, improves the accuracy of governmental records regarding the gender identity of its citizens. The Court finds that the Defendant's requirements treat transgender individuals differently without a persuasive government interest and fails under a heightened scrutiny analysis. Accordingly, the Defendant's motion for summary judgment is denied, and Plaintiffs' motion for summary judgment regarding their Equal Protection claim is granted.

The Court will discuss the Due Process claims before addressing the Defendant's justifications, as they overlap for the claims at issue in this case.

***C. Due Process***

Plaintiffs request summary judgment on their claims that Subsection (A)(3) violates their Due Process Rights (Counts 2, 3, and 4). These claims are substantively related and will be addressed in tandem below.

The Due Process Clause "promises liberty to all within its reach, a liberty that includes certain specific rights that allow persons . . . to define and express their identity." *Obergefell v. Hodges*, 576 U.S. 644, 651-52 (2015). This liberty includes the right to make "personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *Id.* The Due Process Clause protects against intrusions pertaining to personal decisions regarding one's bodily integrity, including choices about medical treatment and the right to refuse unwanted medical treatment. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Washington v. Harper*, 494 U.S. 210, 221 (1990); *Parham v. J.R.*, 442 U.S. 584, 600 (1979). Infringement of an individual's due process rights is subject to strict scrutiny, which forbids any government restriction of due process unless the action is "narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721 (citation omitted).

The relevant issue before the Court is that both Subsection (A)(3) and its corresponding regulations require the state registrar to amend a birth certificate if the registrar receives "a written statement by a physician that verifies the [person's] sex change operation…" A.R.S. § 36-337(A). Notwithstanding the Defendant's assertion that this does not require a transgender person to reveal their transgender status, it is apparent that the Surgical Requirement obligates individuals either to present inaccurate identity documents, which in turn necessitates the involuntary disclosure of one's transgender status, or to undergo surgery. Both options implicate the core of Due Process protections.

For the first choice, the Plaintiffs argue this is a violation of their Due Process Right to Privacy; Defendant contends that the amendment process does not force disclosure of one's

transgender status. The Court does not find the Defendant's argument persuasive. Named Plaintiffs have offered evidence showing that if they follow medical treatment recommendations, their outward physical appearance will not fit with the gender marker on their birth certificate; thus, if these documents are presented to others, they would, of course, be forced to involuntarily out themselves as transgender. These experiences have resulted in psychological distress and other harm to the children in this case.

If transgender individuals are uniquely faced with the decision to either undergo surgery, or involuntarily disclose their transgender status by presenting an inaccurate birth certificate, their right to privacy is implicated under the current statutory and regulatory regime. Facially, the statute targets transgender individuals with an impossible and unconstitutional decision to either give up their bodily autonomy or disclose highly intimate medical details when they present these documents. Moreover, this forced decision prevents individuals from following modern treatment recommendations for gender dysphoria.

For the second choice, the Plaintiffs have made two claims: the subsection and implementing regulations violate The Due Process Right to Individual Liberty and Autonomy (Count 3) and The Due Process Right to choose a particular medical treatment (Count 4). The Defendant claims there are no strictly textual requirements that transgender individuals undergo surgery, and thus, it survives a facial challenge under strict scrutiny. As previously discussed by the Court in this Order, the Defendant's argument that the word 'transgender' needs to be used for the statutory language to target transgender individuals is unpersuasive. The Defendant urges the Court to dismiss the Plaintiffs' claims because it argues that this discrimination is out of happenstance since transgender is never used in the provisions. However, it is readily apparent that the vast majority of individuals seeking to change the gender marker on their birth certificate are transgender, and the requirement of a sex change operation targets them. Named Plaintiffs have presented evidence that without a sex change operation, they were unable to amend their birth certificates. They were presented with a statutory and regulatory scheme that forces them to undergo surgery if

they sought to amend their birth certificates, and this infringed on their right to define their identities and follow medical treatment. This is further compounded by the stark reality that by being unable to amend their birth certificate, the Plaintiffs are constantly subject to the risk of exposure, discrimination, and violence.

### D. Defendant's Justifications

The Court examines Defendant's justifications under heightened scrutiny for the equal protection violation and strict scrutiny for the due process violations.

As discussed earlier in this Order, Defendant claims that the State has a compelling interest in maintaining accurate identification documents, which includes documenting the "external genitalia at the time of birth" and ensuring that amendments to that identification document are accurate. The Court generally agrees with the Defendant that the accuracy of vital records is important. However, Defendant's position in this case is without basis as the Defendant has not demonstrated how an amendment process without a sex change operation prevents the accuracy of birth certificates if the ADHS still nonetheless maintains the original documents. Additionally, if transgender individuals follow medical recommendations and adopt their gender identity, the current birth certificate would be misleading and likely unhelpful in accurately verifying identity.

Further, the Defendant argues that this is a preventative measure for fraud. The evidence presented by the Defendant to support this claim has relied on a generalized truism that fraud could happen, and the sex change operation requirement deters this fraud. Notably, the ADHS Fraud Manager admits that "she did not recall ever investigating or even seeing documents related to alleged fraud related to sex markers."

Thus, the Court does not find the Defendant's argument persuasive. All that is required for non-transgender individuals seeking to change a sex marker on their birth certificate is a written letter from a physician. However, the Defendant would have the Court believe that the same sort of deterrence for fraud would not work with transgender individuals seeking an amendment to their birth certificates. There has been no showing of how changing a gender marker without a sex change operation would lead to more fraud and

prevent the State from maintaining the accuracy of vital records.

Therefore, without a compelling state interest, the Defendant's justifications fail both a heightened and strict scrutiny analysis[10]. The infringement of the Plaintiffs' Due Process and Equal Protection rights is found to be unconstitutional. The Plaintiffs' motion for summary judgment on all four counts is granted. The Defendant's motion for summary judgment is denied.

**IV. CONCLUSION**

Plaintiffs' motion for summary judgment on all claims: (1) the Equal Protection Clause, (2) The Due Process Right to Privacy, (3) The Due Process Right to Individual Liberty and Autonomy, and (4) The Due Process Right to choose to undergo a particular medical treatment are granted. The Defendant's motion for summary judgment is denied. The Court hereby finds that the sex change operation requirement violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment[11].

Dated this 20th day of August, 2024.

Honorable James A. Soto
United States District Judge

---

[10] Defendant's positions in this case fail any level of scrutiny—including rational basis review.

[11] Regarding potential remedies, the Court notes that the Plaintiffs have taken issue with ADHS rejecting applications with physician's letters attesting the applicant is receiving the "appropriate clinical treatment" to transition or is "irrevocably committed" to transitioning. As the Court noted in the Order on the Defendant's Motions to Dismiss, it would "not be a herculean effort" by ADHS to accept a physician's certification to amend an individual's birth certificate.