Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar. No. 66065
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com

*Attorneys for Amici Curiae President Petersen and Speaker Montenegro*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Helen Roe, a minor, by and through parent and next friend Megan Roe, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Jennie Cunico, in her official capacity as State Registrar of Vital Records and Director of the Arizona Department of Health Services,<br><br>Defendant. | Case No. 4:20-cv-00484-JAS<br><br>**[Proposed] Brief of *Amici Curiae* President Petersen and Speaker Montenegro in Support of Defendant's Response to Plaintiffs' Motion for Permanent Injunction** |

**IDENTITY AND INTEREST OF *AMICI CURIAE***

*Amici curiae* are President of the Arizona State Senate Warren Petersen and Speaker of the Arizona House of Representatives Steve Montenegro.[1] Under Arizona law, when an Arizona statute's constitutionality is challenged, the President of the Senate and the Speaker of the House of Representatives "shall be entitled to be heard" and "may file briefs in the matter." A.R.S. § 12-1841(A), (D). This proceeding challenges the constitutionality of A.R.S. § 36-337(A)(3). *See* Dkt. 279, at 1. Plaintiffs already have confirmed that A.R.S. § 12-1841—the statute that authorizes the President of the Senate and the Speaker of the House to file this amicus brief—is applicable to this proceeding. *See* Notice of Service of Plaintiffs' Notice of Claim of Unconstitutionality Pursuant to A.R.S. § 12-1841, Dkt. 188. In addition, each chamber of the Arizona Legislature has delegated to its presiding officer the authority to litigate on behalf of the chamber. *See* Ariz. Senate R. 2(N); Ariz. House of Reps. R. 4(K). President Petersen and Speaker Montenegro thus respectfully seek the opportunity to be heard in this matter through this amicus brief.

Plaintiffs' request for a permanent injunction raises issues that directly affect the interests of the Arizona Legislature. As described below, binding precedent dictates that the Court's remedial inquiry must be guided by legislative intent. Under the Arizona Constitution, the Arizona Legislature has exclusive authority over legislative functions. *See* ARIZ. CONST. Art. III; *State ex rel. Woods v. Block*, 189 Ariz. 269, 275 (1997). *Amici* thus have a uniquely strong interest in how legislative intent, as reflected by the text of A.R.S. § 36-337, should impact any permanent injunction in this case. In addition, the Arizona House of Representatives is currently considering legislation to amend A.R.S. § 36-337. *See* H.B. 2438 (2025). For this reason, *Amici* have a further interest in minimizing the impact that any permanent injunction might have on the Legislature's exercise of its constitutional legislative authority.

---

[1] *Amici* certify that no party's counsel authored this brief in whole or in part; and that no party, party's counsel, or other person contributed any money that was intended to fund preparing or submitting this brief.

1

**ARGUMENT**

The Court should not enter the proposed permanent injunction that Plaintiffs attached to their Motion for Permanent Injunction and Final Judgment, Dkt. 282 (the "Motion"). In their Motion, Plaintiffs contend that they are entitled to permanent injunctive relief, but they offer no argument in favor of the specific injunction that they have proposed. While vague, Plaintiffs' proposed injunction appears to require the State Registrar of Vital Records to amend any transgender individual's birth certificate upon request.[2] *See* Dkt. 282-1.

Plaintiffs' proposed injunction suffers from at least two fatal defects. First, the proposed injunction conflicts with the clear intent of the Legislature, which governs the Court's remedial inquiry under well-established precedent. Second, the proposed injunction would amount to judicial rewriting of a state statute, which would exceed the Court's role and impermissibly intrude on the exclusive authority of the Arizona Legislature.

For these reasons, the Court cannot grant the injunction proposed by Plaintiffs. Instead, any permanent injunction must be limited to an injunction that simply prohibits the Registrar from amending any birth certificate under A.R.S. § 36-337(A)(3) based on the applicant having undergone a sex change operation.[3]

---

[2] To the extent that Plaintiffs contend that the injunction is more constrained than this, the Registrar would have no way of ascertaining those limitations from the face of the proposed injunction. For that reason, the proposed injunction would violate Rule 65(d), which requires that an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d); *see also Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) (reversing injunction "not crafted in sufficiently precise terms" as required by Rule 65(d)); *Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1264 (9th Cir. 1989) (remanding injunction that "fail[ed] to satisfy the exacting requirements of Rule 65(d)") (quotation omitted). In addition, the proposed injunction also fails to satisfy Rule 65 for the reasons explained by Defendant. *See* Dkt. 287, at 2-3.

[3] The Arizona Legislature respectfully disagrees with Plaintiffs' position on the merits, and the Arizona Legislature does not believe that Plaintiffs are entitled to any relief at all. However, this brief addresses only the remedial issues currently before the Court.

**I.      The Clear Intent of the Legislature—Which Governs the Remedial Inquiry—Precludes Plaintiffs' Proposed Injunction.**

Whenever a court finds a statute to be unconstitutional, it must determine the appropriate remedy. *See, e.g.*, *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329-30 (2006). In particular, "[a]fter finding an application or portion of a statute unconstitutional, [a court] must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Id.* at 330. "[T]he touchstone for any decision about remedy is legislative intent, for a court cannot use its remedial powers to circumvent the intent of the legislature." *Id.* (quotation omitted); *see also Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 97 (1981) ("the authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which [the legislature] has decided not to adopt").

Here, Plaintiffs present no argument that the Legislature would intend to enact the remedy reflected in the proposed injunction. *See* Dkt. 282. To the contrary, as described below, A.R.S. § 36-337 demonstrates that the Legislature would intend the opposite.

Plaintiffs' proposed injunction is not supported by their equal protection claim. When a court finds a provision to violate equal protection, it "faces two remedial alternatives: it may either declare the statute a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion." *Heckler v. Mathews*, 465 U.S. 728, 738 (1984) (cleaned up). "The choice between these outcomes is governed by the legislature's intent, as revealed by the statute at hand." *Sessions v. Morales-Santana*, 582 U.S. 47, 74 (2017) (holding, based on legislative intent, that the appropriate remedy for the equal protection violation at issue was to nullify the benefit for all persons rather than extending the benefit to others).

Here, Plaintiffs do not acknowledge this standard and offer no argument that the Legislature intended to extend A.R.S. § 36-337(A)(3) beyond those individuals identified in the statutory text. *See* Dkt. 282. To the contrary, that result would directly conflict with

the clear intent of the Legislature, as revealed by A.R.S. § 36-337. Section 36-337 as a whole reflects a clear legislative intent to limit birth certificate changes only to specific, carefully delineated, and expressly enumerated circumstances. *See* A.R.S. § 36-337. Moreover, A.R.S. § 36-337(A)(3) reflects a legislative intent to limit birth certificate changes under the provision to a narrow class of cases involving objectively verifiable circumstances that can be corroborated by independent documentation. *Id.* § 36-337(A)(3).

In contrast, Plaintiffs' proposed injunction would rewrite the statute to allow birth certificate amendments based on uncertain boundaries, without a textual basis, and relying on the subjective representations of the person seeking the government benefit. This new basis for amendments would directly conflict with the intent of the Legislature. Here, the statutory text makes clear that the Legislature would have preferred that the benefit conferred by A.R.S. § 36-337(A)(3) be nullified in its entirety, rather than turning that narrow provision into a broad authorization for birth certificate changes. *Compare Morales-Santana*, 582 U.S. at 75-76 (holding that Congress would have preferred not to grant citizenship under a gender-discriminatory provision to *anyone* rather than grant citizenship under the provision without discriminating based on gender).

The same analysis applies to Plaintiffs' substantive due process claims. As with equal protection, "the touchstone for any decision about remedy [for a due process violation] is legislative intent." *Ayotte*, 546 U.S. at 330 (quotation omitted). Importantly, Plaintiffs' due process claims—like their equal protection claim—rest on the fact that A.R.S. § 36-337(A)(3) permits a birth certificate amendment if the applicant has undergone a sex-change operation but does not provide a basis for other transgender individuals to amend their birth certificates. *See, e.g.*, Dkt. 61, at 18-19; Dkt. 232, at 16-20. Importantly, Plaintiffs did not argue that, in the absence of A.R.S. § 36-337(A)(3), the Due Process Clause would have compelled the State to amend transgender individual's birth certificates through a private administrative process. *See, e.g., id.* Such an argument would conflict with the weight of federal authority. *Compare Gore v. Lee*, 107 F.4th 548, 562 (6th Cir.

2024) (holding that the Due Process Clause does not guarantee a "right to a birth certificate conforming to one's gender identity"); *see also Corbitt v. Sec'y of Alabama Law Enforcement Agency*, 115 F.4th 1335, 1351 (11th Cir. 2024) (rejecting notion that a driver's license listing a person's gender identity, rather than assigned sex, constitutes a government benefit that trigger's due process scrutiny).

Because Plaintiffs' due process claims arise solely because A.R.S. § 36-337(A)(3) offers a benefit to individuals who have undergone a sex change operation, the Court can fully remedy the perceived constitutional infirmity by nullifying that benefit. And, as described above, that approach also best respects the clear intent of the Legislature, which must dictate the Court's remedial decision. *Ayotte*, 546 U.S. at 330. Thus, the clear legislative intent would be best implemented by an injunction that prohibits the Registrar from amending any birth certificate under A.R.S. § 36-337(A)(3) based on the applicant having undergone a sex change operation.

## II. Plaintiffs' Proposed Injunction Would Impermissibly Task the Court with Rewriting the Statutory Text of A.R.S. § 36-337.

As noted above, Plaintiffs' proposed injunction appears to require the Registrar to amend any transgender individual's birth certificate upon request. *See* Dkt. 282-1. Such relief would do far more than excise a constitutionally infirm provision. Instead, that relief would effectively require the Court to rewrite the statutory text, at a minimum by replacing the legislatively enacted phrase "person who has undergone a sex change operation" with the very different "transgender individual." This proposed remedy exceeds the Court's role and impermissibly usurps the exclusive authority of the Arizona Legislature.

When granting relief from an invalid statute, courts must avoid "tamper[ing] with the text of the statute." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 478 (1995). Courts must "restrain [themselves] from rewriting state law to conform it to constitutional requirements even as [they] strive to salvage it." *Ayotte*, 546 U.S. at 329 (cleaned up). Indeed, the fact that a plaintiff's proposed remedy "does not simply correct a gender disparity [but instead] rewrites the statute" calls the merits of the plaintiff's claim

5

into doubt. *Roy v. Barr*, 960 F.3d 1175, 1183 (9th Cir. 2020). These concerns are particularly acute when a plaintiff invites a federal court to rewrite a state statute. *See, e.g.*, *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) ("[A]s a federal court, we must be particularly reluctant to rewrite the terms of a *state* statute.") (emphasis original) (citing cases).

Only the Arizona Legislature has the authority to rewrite Arizona statutes. Under Arizona's Constitution, "[t]he legislature has the exclusive power to declare what the law shall be." *State ex rel. Woods v. Block*, 189 Ariz. 269, 275 (1997) (quotation omitted). Thus, the power to "rewrite" a statute "is the legislature's prerogative." *State ex rel. Polk v. Campbell*, 239 Ariz. 405, 408 (2016); *see also N. Arizona Properties v. Pinetop Properties Grp.*, 151 Ariz. 9, 12 (App. 1986) (explaining that "only the legislature can correct the language of [a statute]"). Indeed, "[n]owhere in the United States is this system of structured liberty [of separation of powers] more explicitly and firmly expressed than in Arizona." *Block*, 189 Ariz. at 275 (quotation omitted). If Plaintiffs desire a statute that permits all transgender persons to obtain amended birth certificates, they must persuade the Arizona Legislature to enact a statute that accomplishes that effect.

It is anything but hypothetical that the Legislature might amend A.R.S. § 36-337(A)(3). This legislative session, the Legislature is considering at least one bill that would amend portions of A.R.S. § 36-337. *See* H.B. 2438 (2025). The House Judiciary Committee held a hearing on that bill on February 5, 2025. During that hearing, the Committee amended the bill, including an amendment that repeals the language at issue in this litigation. H.B. 2438, House Judiciary Committee Version (2025); *see also Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc) (the Ninth Circuit "presume[s] that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it").

Thus, Plaintiffs can resolve precisely the disparate treatment that they allege in this

lawsuit by petitioning their elected officials in connection with the ongoing legislative process. Unless and until the Arizona Legislature amends the applicable statutory provisions, however, Plaintiffs cannot obtain the significant legislative changes that they have attempted to enact through their proposed permanent injunction.

## CONCLUSION

For the reasons stated above, if the Court enters a permanent injunction in favor of Plaintiffs, that permanent injunction should simply and straightforwardly provide: "The Registrar shall not amend any birth certificate pursuant to A.R.S. § 36-337(A)(3) based on the applicant having undergone a sex change operation."

Dated: February 5, 2025                    Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar No. 66065
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com
* *pro hac vice*

*Attorneys for Amici Curiae*
*President Petersen and Speaker Montenegro*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 5, 2025, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*