Patrick Hayden (*Pro Hac Vice*)
COOLEY LLP
55 Hudson Yards
New York, New York 10001-2157
(212) 479-6000
phayden@cooley.com

Jessica Taylor (*Pro Hac Vice*)
COOLEY LLP
10265 Science Center Drive
San Diego, California 92121-1117
(858) 550-6000
jtaylor@cooley.com

Mary R. O'Grady (011434)
Colin M. Proksel (034133)
Payslie M. Bowman (035418)
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
mogrady@omlaw.com
cproksel@omlaw.com
pbowman@omlaw.com

*Attorneys for Plaintiffs and the Class*

Additional counsel listed on following page

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; et al., <br><br> Plaintiffs, <br><br> v. <br><br> Sheila Sjolander, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, <br><br> Defendant. | Case No. 4:20-cv-00484-JAS <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR PERMANENT INJUNCTION AND ENTRY OF FINAL JUDGMENT** |

1  Rachel Berg (*Pro Hac Vice*)
   NATIONAL CENTER FOR LGBTQ RIGHTS
2  870 Market Street
   San Francisco, California 94102
3  (415) 343-7679
   rberg@nclrights.org
4

5  *Attorneys for Plaintiffs and the Class*

1    Pursuant to the Court's order (Dkt. No. 302), Plaintiffs hereby submit their
2 supplemental brief in further support of their motion for permanent injunction and entry of
3 final judgment, (Dkt. No. 282). Plaintiffs seek a permanent injunction enjoining Defendant
4 from requiring that a transgender individual first undergo an "operation" as a prerequisite
5 to using the private administrative process to amend the sex marker on their birth certificate.
6 Based on that request, Defendant will therefore be directed to stop enforcing the word
7 "operation" as it appears in A.R.S. § 36-337(A) and A.A.C. R9-19-208(O).

8    Under any reasonable reading, what the proposed injunction requires is clear: in
9 processing an application for a change in the sex marker on a birth certificate under § 36-
10 337(A) and R9-19-208(O) based on a gender transition (or what the statute terms a "sex
11 change"), Defendant may not apply the term "operation" to require surgery as a condition
12 of the requested amendment. The provisions of § 36-337(A) and R9-19-208(O) would
13 otherwise remain in effect, meaning Defendant would be required to make the change upon
14 receipt of a "written request" for amendment and a "written statement by a physician that
15 verifies the sex change." The proposed injunction therefore is both limited in scope and
16 clear in its application. Rule 65 requires no more.

17    None of the arguments presented at oral argument by either Defendant or the amicus
18 party (the "Legislative Leaders") are persuasive. First, Defendant argued that the term "sex
19 change" is unclear. As discussed at the oral argument, although the term "sex change" (what
20 one might currently refer to today as a gender transition) is no longer frequently used, the
21 term is widely known in the medical community that treats gender dysphoria and is the very
22 term used in the current statutory language, which remains operative with no reported issues
23 from Defendant. As the Court mentioned at the oral argument, Defendant can easily review
24 letters from physicians stating that a particular individual has undergone a "sex change."
25 To be clear, Plaintiffs' proposed permanent injunction is not requesting the Court define the

phrase "sex change" because to do so is unnecessary and would also run afoul of the Supreme Court precedent discussed herein.[1]

Second, the Legislative Leaders invoked *Sessions v. Morales-Santana*, 582 U.S.47 (2017), for the proposition that the Court must look to the legislative intent to determine the proper remedy in this case.[2] *Sessions* discusses *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006), which sets forth three principles that should govern a court's approach to remedying an unconstitutional statute: (1) try not to nullify more of the statute than necessary; (2) refrain from rewriting the statute to conform it to constitutional requirements; and (3) look to legislative intent. *See id.* at 329–30. To preserve legislative intent in the face of an unconstitutional statute or application thereof, courts "must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Id.* at 330. Unless it is evident that the Arizona legislature would have wanted to nullify § 36-337(A)(3) in its entirety if it did not contain the word "operation," the rest of the statute must remain intact. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 587 (2012) (citing *Champlin Ref. Co. v. Corp. Comm'n of Okl.,* 286 U.S. 210, 234 (1932)).

Third, as it relates to the issue of legislative intent, the Legislative Leaders' focused their oral argument on the notion that the statute's text and legislative history reflect a legislative intent to require surgery for a transgender person to the amend the sex marker on their birth certificate. However, they failed to adequately address the proper question, which is whether the Arizona legislature would have wanted what is left of its statute without enforcement of the word "operation" to no statute at all. The answer is clearly the former. The statute's text makes clear that the legislature wanted to provide an avenue for

---

[1] Under the current process, Defendant merely reviews the physician's verification to determine whether it complies with the statute; the Department does not independently validate the physician's verification of the "sex change operation." *See* Dkt. 231-2 at 197–99 (Defendant's Statement of Facts in Support of Motion for Summary Judgment, Exh. 2 (Colburn Dep. Tr. at 165:3–167:15)).

[2] *Sessions* involved, *inter alia*, a fact-specific inquiry into the legislative intent of U.S.C. § 1401(a)(7) (1958 ed.), now § 1401(g) (2012 ed.), which concerned a gender-based differential in the law governing acquisition of U.S. citizenship by a child born abroad, when one parent is a U.S. citizen and the other was not. This fact-specific inquiry does not apply to the Arizona statute at issue here.

2

1  transgender individuals to amend their birth certificates through the private administrative
2  process. In addition, Defendant stated in her Motion for Summary Judgment that § 36-
3  337(A) and its earlier iterations in Arizona's vital records laws were enacted to provide an
4  avenue for transgender people to amend the sex marker on their birth certificates and were
5  not the result of anti-transgender bias. *See* Dkt. 230 at 18. Written discovery in this case
6  also supports Defendant's statements. *See, e.g.*, Dkt. 233-10, Exh. 23 at 23 ("[T]he purpose
7  of this statute was altruistic.").[3] Moreover, § 36-337 does not say that birth certificates may
8  be amended *only* pursuant to the terms of § 36-337. In fact, the Arizona vital records laws
9  provide additional avenues to amend birth certificates. For example, Arizona law also
10 provides that Defendant "shall amend a registered certificate pursuant to [Title 36,
11 Chapter 3 of the Arizona Revised Statutes] and rules adopted pursuant to [the same],"
12 A.R.S. § 36-323(A), and shall "prescribe by rule the information required to be submitted
13 to create or amend a vital record," A.R.S. § 36-321. Defendant also does not dispute that it
14 had authority under A.R.S. § 36-321(A) and § 36-136(I)(3) to prescribe by rule a process
15 for persons who have not undergone surgery to obtain a birth certificate with an amended
16 sex marker without a court order, *see* Dkt. 287 at 3 n.1, but Defendant failed to prescribe
17 such rules.

18       For the foregoing reasons as well as those in Plaintiffs' briefs and stated at the oral
19 argument, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for
20 Permanent Injunction and Final Judgment.

21       RESPECTFULLY SUBMITTED this 29th day of August, 2025.

22                            OSBORN MALEDON, P.A.

23                            By  s/Payslie M. Bowman
                               Mary R. O'Grady
24                                Colin M. Proksel
                               Payslie M. Bowman
25                                2929 N. Central Avenue, Suite 2000
                               Phoenix, Arizona 85012
26

---

[3]   At the oral argument, the Legislative Leaders for the first time made an argument regarding the definition of sex. However, in declaring the Surgical Requirement unconstitutional in its summary judgment ruling, the Court has already rejected this argument.

3

| | |
|---|---|
| 1 | NATIONAL CENTER FOR LGBTQ RIGHTS |
| 2 | Rachel Berg (*Pro Hac Vice*)<br>870 Market Street<br>San Francisco, California 94102 |
| 3 | |
| 4 | COOLEY LLP<br>Patrick Hayden (*Pro Hac Vice*)<br>55 Hudson Yards |
| 5 | New York, New York 10001-2157 |
| 6 | COOLEY LLP<br>Jessica L. Taylor (*Pro Hac Vice*) |
| 7 | 10265 Science Center Drive<br>San Diego, California 92121-1909 |
| 8 | Attorneys for Plaintiffs |

4