**KRISTIN K. MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Patricia Cracchiolo LaMagna (Bar No. 021880)
Kelly L. Soldati (Bar No. 036727)
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004
Tel.: (602) 542-1610
Fax: (602) 364-0700
EducationHealth@azag.gov

Nathan T. Arrowsmith (Bar No. 031165)
Lauren A. Watford (Bar No. 037346)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Tel.: (602) 542-3333
Nathan.Arrowsmith@azag.gov
Lauren.Watford@azag.gov
ACL@azag.gov

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; et al., <br><br> Plaintiffs, <br><br> v. <br><br> Sheila Sjolander, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, <br><br> Defendant. | No. 4:20-cv-00484-JAS <br><br> **DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION** |

The purpose of this supplemental brief is to address issues raised during oral argument on Plaintiffs' Motion for a Permanent Injunction (Doc. 282). *See* Doc. 302 (authorizing parties and amici to file simultaneous supplemental briefs). To be clear, by filing this brief, Defendant does not concede any issue and preserves all issues and arguments for appeal.

As Defendant explained in her response to Plaintiffs' permanent injunction motion, any order granting an injunction must state its terms specifically and describe in detail the acts restrained or required. *See* Fed. R. Civ. P. 65. Plaintiffs' proposal (even as revised in their reply) does not meet this standard and asks the Court to effectively re-write the challenged statute and rule. During oral argument, the Court asked counsel for Defendant if the Defendant had a proposed alternative remedy. Although it is not Defendant's responsibility to craft Plaintiffs' remedy for them, Defendant explains below some additional considerations.

Finally, the President of the Arizona Senate and Speaker of the Arizona House (the "Legislative Leaders"), as amici, offer an alternative remedy and ask the Court to reconsider its summary judgment order. Defendant also responds to these issues below.

## BACKGROUND

On August 20, 2024, the Court found "the sex change operation requirement [in A.R.S. § 36-337(A)(3)] violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment" and granted summary judgment for Plaintiffs. Doc. 279 at 13. Accordingly, on January 15, 2025, Plaintiffs moved for a permanent injunction. Doc. 282. Plaintiffs requested the Court enjoin Defendant from "requiring that a transgender individual first undergo a sex change operation as a prerequisite to changing the sex on their birth certificate through the private administrative process" under A.R.S. § 36-337(A)(3) and A.A.C § R9-19-208(O). Doc. 282-1.

On January 29, 2025, Defendant filed a Response, arguing that Plaintiffs had failed to propose an injunction that complied with Rule 65. Doc. 287. On February 5, 2025, President of the Arizona State Senate Warren Petersen and Speaker of the Arizona House

1

of Representatives Steve Montenegro (collectively, "the Legislative Leaders") filed a brief as *amicus curiae* in support of Defendant's Response. Docs. 288, 289.

In a reply filed February 12, 2025, Plaintiffs proposed, for the first time, that the Court enjoin Defendant from "applying the term 'operation.'" Doc. 290 at 1. In other words, "in processing an application for a change in the sex marker on a birth certificate under § 36-337(A) and R9-19-208(O) based on a gender transition (or what the statute terms a 'sex change'), Defendant may not apply the term 'operation' to require surgery as a condition of the requested change." *Id.* Defendant would be required to amend a birth certificate upon written request and a "written statement by a physician that *verifies the sex change.*" *Id.* (emphasis added). But Plaintiffs' proposed injunction order did not define the term "sex change" or include any specific language Defendant is required to accept from a physician's letter verifying the "sex change."

On August 7, 2025, the Court heard argument on Plaintiffs' motion for a permanent injunction and ordered supplemental briefing.

**LEGAL STANDARD**

Under Rule 65, an order granting an injunction must (1) "state the reasons why it issued," (2) "state its terms specifically; and," (3) "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A)-(C). When crafting injunctive relief based on "a constitutional flaw in a statute," courts "try to limit the solution to the problem." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006). Courts "try not to nullify more of a legislature's work than is necessary." *Id.* at 329 (citation omitted). For example, a "statute may ... be declared invalid to the extent that it reaches too far, but otherwise left intact." *Id.* (citations omitted). In so doing, courts refrain from "'rewrit[ing] state law to conform it to constitutional requirements' even as [they] strive to salvage it." *Id.* (citation omitted). Indeed, "making distinctions in a murky constitutional context, or where line-drawing is inherently complex, may call for a far more serious invasion of the legislative domain than we ought to undertake." *Id.* (cleaned

up, citation omitted). Finally, because "the touchstone for any decision about remedy is legislative intent," a court "cannot 'use its remedial powers to circumvent the intent of the legislature.'" *Id.* at 330 (citation omitted).

## ARGUMENT

### I. Plaintiffs' proposal asks the Court to rewrite the statute.

As explained in Defendant's Response (Doc. 287), Plaintiffs' proposed order asks the Court to enjoin Defendant from imposing a surgical requirement as a prerequisite to amendment of a birth certificate under A.R.S. § 36-337(A)(3), but Defendant has never imposed such a requirement. Rather, A.R.S. § 36-337(A)(3) requires Defendant to process amendments "for a person who has undergone a sex change operation" or has a chromosomal count establishing a sex different than in the registered birth certificate when Defendant receives a written request and a letter from a physician. The statute does require amendments to birth certificates in any other circumstances. *See id.* Plaintiffs initially seemed to be asking that Defendant be required to amend the sex field on a birth certificate for a person who has not "undergone a sex change operation" and also has not obtained a court order ordering an amendment. *See* Doc. 282. But A.R.S. § 36-337(A) does not authorize such action and Plaintiffs failed to identify any other statutory basis for the Court to order the Defendant to do so. *See* Doc. 282. As discussed during oral argument, Plaintiffs have changed their ask. They now want the Court to enjoin Defendant from enforcing the word "operation'' in A.R.S. § 36-337(A)(3). *See* Doc. 290 at 1. Here's what that would look like:

"The state registrar shall amend the birth certificate for a person born in this state when the state registrar receives any of the following:"

(1) proof of adoption,

(2) a voluntary acknowledgement of paternity,

(3) "For a person who has undergone a sex change ~~operation~~ or has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate, both of the following:

3

|   |   |
|---|---|
| 1 | (a) A written request for an amended birth certificate from the person or, if |
| 2 | the person is a child, from the child's parent or legal guardian. |
| 3 | (b) A written statement by a physician that verifies the sex change ~~operation~~ |
| 4 | or chromosomal count." |
| 5 | (4) A court order ordering an amendment to a birth certificate. |

See A.R.S. § 36-337. Plaintiffs did not suggest a definition of the phrase "undergone a sex change" in their briefing, but at argument, they suggested that "sex change" should be read as synonymous with "gender transition." Hearing Tr. at 7:21-25. Respectfully, that does not make sense.

Plaintiffs did not present any evidence from which the Court could conclude that "sex change" and "gender transition" are synonymous. *See* Docs. 282, 290. To the contrary, at the summary judgment phase, Plaintiffs presented an expert report which states that "[g]ender transition is the process through which a person begins bringing their outer appearance and lived experience into alignment with their core gender." Doc. 233-2 at ¶ 38. Plaintiffs' expert also opined that "[t]ransition may or may not include medical or legal aspects, such as taking hormones, having surgeries, or correcting the sex designation on identity documents." *Id.* The expert further opined that a "person's gender identity … is not determined by a particular medical treatment or procedure" and that "medical treatments provided to transgender people … do not 'change a woman into a man' or vice versa," but instead "affirm the authentic gender that an individual person is." *Id.* ¶ 41. According to this expert, treatments for gender dysphoria "do not change a transgender person's sex, which is already determined by their gender identity." *Id.* ¶ 42. That same expert also opined that a person's gender identity reflects that person's "actual sex," which may differ from a person's "birth-assigned sex," which is "based solely on the appearance of their external genitalia." *Id.* at ¶¶ 16, 44.

In light of this evidence, there is no basis to conclude that the medical community does understand or would understand the phrase "undergone a sex change" to mean the same thing as a "gender transition." Indeed, based on this evidence, there are likely some

4

1  members of the Plaintiffs class whose "gender transitions" would not include any
2  "medical … aspects." *Id.* ¶ 238.  It is not clear how these class members would be able
3  to obtain a "written statement by a physician that verifies [a] sex change," which would
4  still be required even under Plaintiffs' proposed injunction.

5      All of this illustrates that by asking the Court (and Defendant) to interpret "sex
6  change" to mean "gender transition," Plaintiffs are asking the Court to rewrite the statute
7  and rule, which the Court cannot do.  *See Ayotte*, 546 U.S. at 968.

8  **II.  Even assuming the Court could direct the Defendant to interpret the phrase "undergone a sex change" to mean "undergone a gender transition," Rule 65 requires that the Court's order state that instruction specifically.**

10      Absent some direction from the Court as to the effect of enjoining the word
11  "operation," there would be no way for Defendant (or her successors) to know what,
12  specifically, she is being ordered to do, as required by Rule 65.  *See* Fed. R. Civ. P
13  65(d)(1)(C) (requiring order granting injunction to "describe in reasonable detail … the
14  act or acts restrained or required).

15      Under Plaintiffs' current proposal, if the Court were to say only that Defendant is
16  enjoined from enforcing the word "operation," it is Defendant's understanding that
17  pursuant to A.R.S. § 36-337(A)(3), as modified by the Court's injunction, Defendant
18  would then be required to amend the birth certificate of a "person who has undergone a
19  sex change" upon receipt of a written amendment request and "a written statement by a
20  physician that verifies the sex change."  Accordingly, the only acceptable physician's
21  statement is one that says the person requesting an amendment has "undergone a sex
22  change."  To the extent Defendant were to receive a physician's letter using any other
23  language, it is unclear to Defendant whether she would be able to process the amendment
24  request because it would not comply with the plain language of A.R.S. § 36-337(A)(3).

25      But what Plaintiffs seem to want is for the Court to interpret "sex change" to mean
26  "gender transition" and order Defendant to accept physician's letters verifying the
27  individual's *gender transition*.  For example, the Court has previously observed that
28  "Plaintiffs have taken issue with [Defendant] rejecting applications with physician's

letters attesting the applicant is receiving the 'appropriate clinical treatment' to transition or is 'irrevocably committed' to transitioning" and "it would not be a herculean effort" by Defendant to accept such certifications. Doc. 279 at 13 n.11. Assuming for purposes of argument that the Court could order the Department to do that under A.R.S. § 36-337(A)(3), Rule 65 would require that the Court's order specifically state that "sex change" means "gender transition," specify the acceptable language for the physician's letters, and direct the Department to accept such physician letters.

In sum, at a minimum, the Court's order should explain how the Court interprets "undergone a sex change" for purposes of assessing Defendant's compliance with the order. If the Court intends to require Defendant (and her successors) to process amendment requests for individuals who have not "undergone a sex change operation" and cannot request amendment based on chromosomal count, then the Court's order should state specifically the language Defendant is required to accept to "verif[y] a sex change."

On a broader note, although Defendant did not dispute the general proposition that a permanent injunction is often an appropriate remedy for a constitutional violation, the problems Defendant has identified with Plaintiffs' proposed injunction illustrate that a permanent injunction may not be the right remedy here. The Court need not award a permanent injunction just because Plaintiffs have asked for one. It is rare, but not unprecedented, for a court to decline to award an injunction after finding a constitutional violation. *See, e.g.*, *Poder in Action v. City of Phoenix*, 506 F. Supp. 3d 725, 736-37 (D. Ariz. 2020) (declining to issue permanent injunction where court concluded that declaratory judgment was sufficient). It is also rare, but not unprecedented, for courts to acknowledge that a defendant may lack authority under state law to take all actions necessary to completely remedy a constitutional violation. *See, e.g.*, *Welsch v. Likins*, 550 F.2d 1122, 1129-1132 (8th Cir. 1977) (reversing district court order that effectively rewrote state law while acknowledging that the state agency would be unable to fully remedy constitutional violation as a result).

### III. The Legislature's proposed injunction is not the right remedy here.

The Legislative Leaders suggest that the only proper remedy is to enjoin the Department from processing amendment requests for transgender persons who have undergone surgical procedures. Defendant understands that argument and has previously pointed out that such an injunction would be one way to avoid a substantial rewrite of the statute and rule. Doc. 287 at 6. But Defendant does not agree that the Court should enter such an injunction. As Defendant explained in her summary judgment briefing, the Legislature's intent in enacting A.R.S. § 36-337(A)(3) was to provide a pathway for persons who had "undergone a sex change operation" to amend the sex marker on their Arizona birth certificate. Doc. 230 at 4-7, 18-19 (noting that 2004 amendments to §36-337 "expanded [the] opportunity" for Arizonans to amend the sex marker on their birth certificates. Removing this pathway from the statute is inconsistent with that intent. The Court should leave in place that plainly constitutional application of the statute. *See Ayotte*, 546 U.S. at 329 (courts should only enjoin unconstitutional applications of a statute).

The Legislative Leaders rely on *Sessions v. Morales-Santana*, 582 U.S. 47, 74 (2017). In that case, the Court addressed a statute establishing a one-year physical presence requirement for unwed U.S. citizen mothers to pass citizenship to their children born abroad, but five years of continuous U.S. citizenship for unwed fathers. *Id.* at 51. The Court remedied the sex-based discrimination by invalidating the one-year residency exception offered only to unwed mothers and applying a five-year requirement to unwed mothers and fathers alike. *Id.* at 52. Although "[t]he preferred rule in the typical case is to extend favorable treatment," the Court found this was "hardly the typical case" where extension would render the special treatment of a one-year physical presence requirement "the general rule, no longer an exception." *Id.* at 77.

Respectfully, the Legislative Leaders overstate the applicability of that principle to this case. The *Sessions* court applied a five-year residency requirement evenly to avoid conferral of a special exception to a broader class than intended by Congress. *See id.*

7

1 Quite the opposite, here, the Legislature proposes removing the benefit for nearly
2 everyone, all but those who can provide evidence based on their chromosomal count.

3       This Court found that Arizona's vital records laws violate Plaintiffs' equal
4 protection rights by requiring transgender individuals undergo surgery to obtain an
5 accurate birth certificate. Thus, "if a transgender individual were unable to satisfy the
6 surgical requirement and obtain an amended birth certificate, it forcibly requires an
7 individual to disclose their transgender status when they present an inaccurate identity
8 document." Doc. 279 at 9. Meanwhile, "non-transgender individuals—the vast majority
9 of whom have an accurate birth certificate—they are not presented with the unlawful
10 choice of being stripped of their bodily autonomy or face discrimination, harassment, and
11 potential violence." *Id.* The Legislative Leaders' proposal, to remove the amendment
12 option for most individuals, thereby forcing them to "disclose their transgender status
13 when they present an inaccurate identity document," *id.*, would not remedy the Court's
14 finding of a constitutional violation.

15       At oral argument, the Legislative Leaders suggested that the Legislature would
16 have intended to prohibit all transgender individuals, including those who have undergone
17 surgery, from amending their birth certificates, upon a finding of a constitutional
18 violation. The Legislative Leaders cited the text of A.R.S. § 36-377(A)(3) and noted that
19 the headings or titles of the 1967 bill adding the statute, as well as the 2004 bill amending
20 the statute, included the term "surgical alterations." Hearing Tr. at 16-20. The Legislative
21 Leaders also cited an equal protection case to argue that in 1967, "sex" meant "biological
22 sex." *Id.*; *see also Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) ("since sex, like
23 race and national origin, is an immutable characteristic determined solely by the accident
24 of birth, the imposition of special disabilities upon the members of a particular sex
25 because of their sex would seem to violate 'the basic concept of our system that legal
26 burdens should bear some relationship to individual responsibility.'") (citation omitted).

27       With respect, the Legislative Leaders do not grapple with the fact that the
28 Legislature, when it enacted and amended A.R.S. § 36-337(A)(3), plainly intended to

provide a path for individuals who had "undergone a sex change" to amend the sex marker on their birth certificates. Blocking such individuals from amending the sex marker on their birth certificates seems squarely at odds with that intent. What is more, proposed legislation from the most recent legislative session suggests that the Legislative Leaders do not view A.R.S. § 36-337(A) as an *exhaustive* list of available amendments to birth certificates. *See* H.B. 2438, 57th Legis. 1st Reg. Sess. (2025) (proposing to add language stating that a "birth certificate for a person born in this state may be amended *only* in accordance with this section" to A.R.S. § 36-337(A)) (emphasis added). If the 1967 or 2004 Legislatures had intended for A.R.S. § 36-337(A) to foreclose any other path to amending the sex marker on an Arizona birth certificate, then those legislatures would have said so. *See Padilla v. Indus. Comm'n*, 546 P.2d 1135, 1137 (Ariz. 1976) (Arizona courts presume that "what the Legislature means, it will say").

IV. **Defendant does not ask the Court to reconsider its summary judgment order at this time.**

At oral argument, the Legislative Leaders also invited the Court to *sua sponte* reconsider its summary judgment order in light of *United States v. Skrmetti*, 145 S. Ct. 1816 (2025). In *Skrmetti*, the Supreme Court upheld a state law allowing healthcare providers to "administer puberty blockers or hormones to minors to treat certain conditions but not to treat gender dysphoria, gender identity disorder, or gender incongruence … regardless of the minor's sex." *Id.* at 1829. The Court held that the law classified based on age and "medical use," and not based on sex or transgender status. *Id.* at 1829-35. Therefore, the Court reviewed the law under rational basis review, rather than the heightened review applicable to sex-based classifications. *Id.* at 1835-37.

The Legislative Leaders suggest that this Court should revisit its summary judgment order in light of *Skrmetti*, but it is not clear why. Defendant does not read *Skrmetti* as proclaiming a broad rule that affects this case; rather, the Supreme Court focused specifically on the laws at issue and the classifications drawn by those laws. *See id.* at 1829-37. What's more, to the extent *Skrmetti* can be read to suggest that lower

9

courts should assess whether laws impacting transgender persons classify based on "medical use" rather than sex or transgender status, Defendant already made those arguments in her summary judgment briefing. *See* Doc. 230 at 17-19 (arguing that challenged statute and rule do not classify based on sex or transgender status); Doc. 243 at 8-11, 16. The Court rejected them, and concluded that the statute and rule do not survive even rational basis scrutiny. Doc. 279 at 7-12, 13 n.10.

The Legislative Leaders also point to the Supreme Court's subsequent decision to vacate and remand a birth certificate case to the Tenth Circuit in light of *Skrmetti*. *See Stitt v. Fowler*, No. 24-801, 2025 WL 1787695, at *1 (U.S. June 30, 2025). The Court did not issue a written opinion.

A few facts distinguish *Fowler* from this case. There, the Tenth Circuit had decided that a state law banning amendments to the sex field on birth certificates violated the equal protection rights of transgender individuals living in that state. *See Fowler v. Stitt*, 104 F.4th 770, 784-94 (10th Cir. 2024), cert. granted, judgment vacated, No. 24-801, 2025 WL 1787695 (U.S. June 30, 2025). The court held the policy constituted discrimination based on sex and transgender status and applied heightened scrutiny review. *Id.* The law at issue in *Fowler* prohibited amendments to the sex field on birth certificates for everyone statewide. Here, the Court held A.R.S. § 36-337(A)(3) prohibits amendment for only those transgender individuals who "choose not to, or are unable to undergo surgery." Doc. 279 at 8. And here, in contrast to *Fowler*, the Court also found a violation of the due process rights to privacy, individual liberty and autonomy, and the right to undergo a particular medical treatment. *Id.* at 13.

As a general matter, Defendant does not dispute that there may be arguments to be made to challenge this Court's summary judgment order. Indeed, Defendant reserves the right to raise any and all of those arguments on appeal. But an appeal is the appropriate forum to make them. At this stage, neither *Skrmetti* nor the Supreme Court's order vacating the judgment in *Fowler* control the outcome or warrant the Court taking up the Legislative Leaders' invitation to *sua sponte* reconsider its prior order.

**CONCLUSION**

The Court should enter an injunction that complies with Rule 65. If the Court awards Plaintiffs' requested injunction, Defendant respectfully requests that the Court stay its injunction order pending appeal, or, in the alternative, stay its order for a period of 30 days to allow Defendant to seek a stay pending appeal from the Ninth Circuit.

RESPECTFULLY SUBMITTED this 29th day of August, 2025.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By /s/ Nathan T. Arrowsmith
Patricia Cracchiolo LaMagna
Kelly L. Soldati
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004

Nathan T. Arrowsmith
Lauren A. Watford
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592

*Attorneys for Defendant*