# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe, et al., | No. CV-20-00484-TUC-JAS |
| Plaintiffs, | **ORDER** |
| v. | |
| Sheila Sjolander, in her official capacity as State Registrar of Vital Records and Director of the Arizona Department of Health Services, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Motion for Permanent Injunction and Final Judgment. For the following reasons, the motion is granted.

**BACKGROUND**

Named Plaintiffs Helen Roe, James Poe, and Carl Voe are transgender minors born in Arizona who experience gender dysphoria.[1] They were denied the ability to change the gender marker on their birth certificates because they failed to satisfy the current sex change operation requirement. The Named Plaintiffs are part of the much larger certified class of both transgender adults (and minors) in Arizona who fail to satisfy the sex change operation requirement when attempting to amend the gender marker on one's birth certificate.

**Motion for Summary Judgment**

On August 20, 2024, the Court granted Plaintiffs' motion for summary judgment on all

---

[1] Gender dysphoria is a recognized health condition where an individual's gender identity is inconsistent with one's biological sex. Treatment for gender dysphoria includes both medical and psychological methods, which may include seeking to change identification documents to align with their gender identity.

four claims and denied Defendant's cross-motion for summary judgment. The parties agreed there was no dispute as to the case's material facts. The disagreement arose around the interpretation of A.R.S. § 36-337(A)(3) and how it related to the rights of transgender individuals born in Arizona. The Court determined that Arizona courts had imported a surgery requirement for transgender individuals to amend their birth certificates under subsection (A)(4). This Surgical Requirement necessitated either two options for transgender individuals: (1) involuntary disclosure of one's transgender status, or (2) undergo surgery. The Court held that subsection (A)(3) of § 36-337(A) violated (1) the Equal Protection Clause, (2) The Due Process Right to Privacy, (3) The Due Process Right to Individual Liberty and Autonomy, and (4) The Due Process Right to choose to undergo or forgo a particular medical treatment.

**Request for Permanent Injunction and Final Judgment**

Plaintiffs seek a permanent injunction enjoining Defendant from requiring a "sex change operation" as a prerequisite to changing the sex on a transgender individual's birth certificate via a private administrative process under § 36-337(A)(3) and its implementing regulation (Arizona Administrative Code R9-19-208(O)). Plaintiffs request that Defendant comply within 60 days of the Court's Order and that the Court retain jurisdiction to ensure Defendant complies with the Court's decisions. Plaintiffs argue that relief is warranted because they have shown that: (1) they have suffered a deprivation of constitutional rights and thus an irreparable injury; (2) constitutional violations cannot be adequately remedied through monetary damages; (3) the balance of hardships between the parties justifies an equitable remedy; and (4) a permanent injunction would serve the public interest.

Plaintiffs request the Court enter an injunction enjoining Defendant from requiring transgender individuals to undergo an "operation" to amend a birth certificate through the administrative process. Plaintiffs ask the Court to strike the word "operation" from the few places it appears in § 36-337(A)(3) and A.A.C R9-19-208(O).

In response, Defendant does not dispute that Plaintiffs are entitled to a permanent injunction, nor that final judgment be entered in Plaintiffs' favor. Instead, Defendant

1  contends that Plaintiffs have failed to propose a permanent injunction that would allow the
2  Court to craft a remedy in compliance with Rule 65, Fed. R. Civ. P.  Defendant argues that
3  Plaintiffs do not clearly articulate the requested relief and that the proposed injunction will
4  not adequately provide Plaintiffs with the relief they are seeking. For the Court to rule in
5  compliance with Rule 65, Defendant argues that Plaintiffs must propose an instruction that
6  equates "undergone a sex change" to "undergone a gender transition."  Defendant further
7  argues that assuming that Plaintiffs are intending that Defendant amend birth certificates
8  for those who have not "undergone a sex change operation," Plaintiffs' proposal to strike
9  the word "operation" fails to provide adequate relief.[2]

**Amici Curiae**

On June 5, 2025, the Court granted the motion of Arizona Senate President Warren Petersen and Speaker of the Arizona House Steve Montenegro's motion to file a brief as amici curiae.  Amici curiae argue that Plaintiffs' proposed injunction fails to conform with legislative intent and asks the Court to exceed its boundaries in rewriting a state statute. Departing from Defendant's requests, amici curiae ask that the permanent injunction be granted and nullify "sex change operation" language in its entirety.[3]  Further, amici curiae ask the Court to reconsider its summary judgment ruling in light of recent Supreme Court authority.

Following oral arguments held on August 7, 2025, Defendant responded in opposition to amici curiae's proposed permanent injunction.  Defendant argues that the current constitutional applications should be left alone, and that removing the "sex change operation" language in its entirety is inconsistent with legislative intent.  Defendant also opposed amici curiae's request for reconsideration of this Court's summary judgment ruling, arguing that these issues could be raised on appeal.[4]

---

[2] The "proper remedy" argument has been made numerous times with the Court throughout this case, and the Court has consistently considered, discussed, and rejected this argument (*see generally* Docs. 83, 279); the Court again rejects Defendant's arguments as to the appropriate remedy.
[3] The explicit language asked for is "that permanent injunction should simply and straightforwardly provide: 'The Registrar shall not amend any birth certificate pursuant to A.R.S. § 36-337(A)(3) based on the applicant having undergone a sex change operation.'"
[4] The Court has reviewed *United States v. Skrmetti*, 145 S.Ct. 1816 (2025) as raised by

**STANDARD FOR A PERMANENT INJUNCTION**

Rule 65(d) of the Federal Rules of Civil Procedure requires that an order granting an injunction: (1) "state the reasons why it issued;" (2) "state its terms specifically; and" (3) "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." This Court can begin fashioning an injunctive remedy "[o]nce plaintiffs establish they are entitled to injunctive relief." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) (citing *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)).

This Court has considerable discretion in granting and tailoring suitable injunctive relief. *Lamb-Weston, Inc. v. McCain Foods*, Ltd., 941 F.2d 970, 974 (9th Cir. 1991); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."). Appellate review of the injunctive relief "is correspondingly narrow." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256 n. 16 (9th Cir. 1982).

**DISCUSSION**

<u>Plaintiffs Have Established That They are Entitled to a Permanent Injunction</u>

Plaintiffs have met the applicable standard for granting injunctive relief. Generally, a permanent injunction is appropriate where: (1) a plaintiff has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) considering the balance of the hardships between the parties, a remedy in equity is warranted; and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc.*, 547 U.S. at 391; *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

As to the first factor, a deprivation of constitutional rights constitutes an irreparable injury. *See Melendres*, 695 F.3d 990, 1002 (9th Cir. 2022). These deprivations cannot be remedied through monetary damages. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th

---

amici curiae, but agrees with both Defendant and Plaintiffs that this case is distinguishable and is inapplicable to the circumstances in this particular case.

Cir. 2019). When the Government is the opposing party (as in this case), the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022). In the interest of the public, the Court should seek to prevent the violation of a party's constitutional rights. *Melendres*, 695 F.3d at 1002. Government officials "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Here, Plaintiffs have met all four factors and are entitled to injunctive relief. First, Plaintiffs have suffered an irreparable injury. The Court previously found several constitutional deprivations in § 36-337(A)(3) which violated Plaintiffs' constitutional rights. Thus, Plaintiffs' constitutional deprivations demonstrate an irreparable injury. Second, monetary damages fail to adequately provide a remedy in response to the Plaintiffs' constitutional deprivation. Finally, when considering the balance of hardships between the Defendant and the public interest, the scales tip towards the public. The Court seeks to prevent the violation of constitutional rights, and the Defendant in the case at bar suffers no harm from the remedy of these violations. Accordingly, Plaintiffs have met the standard for a permanent injunction and are entitled to injunctive relief.

Crafting an Appropriate Remedy

As Plaintiffs have established that they are entitled to injunctive relief, this Court has the discretion to craft an appropriate remedy under the unique circumstances of this particular case. When a statute is unconstitutional due to under-inclusion of a class benefit, the Court may consider two remedial alternatives. *See Sessions v. Morales-Santana*, 582 U.S. 47, 72–73 (2017). "[A] court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion." *Califano v. Westcott*, 443 U.S. 76, 89 (1979) (quoting *Welsh v. United States*, 398 U.S. 333, 361 (1970) (concurring in result)). "[W]hen the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the

excluded class." *Sessions*, 582 U.S. at 73 (citing *Heckler v. Matthews*, 465 U.S. 728, 740 (1984)).

Generally, the preferred rule is to extend the favorable treatment, especially when addressing a carved-out exception. *Sessions*, 582 U.S. at 77; *see also Califano*, 443 U.S. at 89–90. When choosing between these two outcomes, the Court considers "the legislature's intent, as revealed by the statute at hand." *Sessions*, 582 U.S. at 73.

Three principles generally guide a court in remedying an unconstitutional statute: (1) avoid upsetting the legislature's work and only nullify what is necessary; (2) refrain from rewriting the statute when trying to salvage its remains; and (3) use legislative intent as the touchstone for a remedy. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329–330 (2006). Of these three principles, the key in determining a remedy is always asking "'what the legislature would have willed had it been apprised of the constitutional infirmity.'" *Sessions*, 582 U.S. at 74 (2017) (quoting *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 427 (2010)).

This Court must determine whether to extend the intended benefit this statute provides to all transgender individuals (both adults and minors) within Arizona, or nullify the statute in its entirety. Section 36-337(A)(3) clearly intends to extend a benefit to transgender individuals.[5] But the statute currently extends the benefit of amending the gender marker on one's birth certificate only to transgender Arizonan's who have undergone a "sex change operation." Therefore, due to the word "operation," it under-includes members of Plaintiffs' class who have not undergone a sex change operation. However, as time has progressed along with a better understanding of gender dysphoria, the definition of who is classified as a transgender individual has shifted.

When the language was initially added, the legislature clearly intended to provide a carved-out exception for transgender Arizonans to amend their birth certificates. Unlike non-transgender individuals, transgender persons often face negative consequences when

---

[5] This Court has discussed numerous times that "any logical reading of the statute and regulation reflects that it applies nearly exclusively to transgender people; who else is going to voluntarily seek out a 'sex change operation'?" (Doc. 279 at 9)

- 6 -

forced to present a birth certificate whose sex marker fails to reflect their gender identity. The amici curiae urge the Court to nullify the benefit provided to transgender individuals in its entirety. However, Defendant previously conceded that the legislature intended to provide an avenue for transgender persons to access the private administrative process to amend the sex marker on their birth certificate and, therefore, was not the result of anti-trans bias. Precedent demands that the Court follow the legislature's intent based on the statute at hand, not the current legislative intent. The statute at hand presents a viable pathway for what, at the time, likely represented appropriate language in carving this exception for transgender individuals. Therefore, legislative intent reasonably guides this Court in extending the benefit rather than nullifying its coverage.

In crafting a remedy in this case, the Court agrees with Plaintiffs' proposed remedy by striking the singular word "operation" from both Arizona Revised Statutes § 36-337(A)(3) and its implementing regulation Arizona Administrative Code R9-19-208(O). By striking this single word, it avoids upsetting the rest of the statute and only nullifies what is absolutely necessary. Second, the rest of the statute is left unchanged, and thus is salvaged as best as possible in light of the constitutional violations at issue. Third, this remedy to strike the word "operation" aligns with legislative intent. It is reasonable to conclude that with today's understanding and treatment of transgender individuals and gender dysphoria, the language adopted within the statute would have included today's Named Plaintiffs and the larger class of both adults and minors. The elimination of this single word gives faculty to transgender adults and minors (and their parents and treating physicians) who are pursuing treatment for gender dysphoria. It places the decision of what constitutes a "sex change" in the appropriate hands: patients and their treating physicians.[6] Determining if a sex marker change on an individual's birth certificate is warranted because treatment for gender dysphoria is best left in the hands of the patient and their treating physician. It is outside this Court's appropriate purview to determine individual patient care, but today's remedy provides a necessary pathway for all

---

[6] And in the case of minors, of course, the patient (i.e., the minor), the minor's parents, and the treating physician will make the appropriate decision together.

transgender Arizonans to obtain proper relief.

Plaintiffs' motion for permanent injunction and final judgment is granted. The Court hereby issues a permanent injunction enjoining (i.e., striking) the word "operation" from both Arizona Revised Statutes § 36-337(A)(3) and its implementing regulation Arizona Administrative Code R9-19-208(O).

## **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1) The Motion is **GRANTED**. Defendant is permanently enjoined (as discussed above) from requiring that a transgender individual first undergo a sex change operation as a prerequisite to changing the sex on their birth certificate through the private administrative process under Arizona Revised Statutes § 36-337(A)(3) and its implementing regulation Arizona Administrative Code R9-19-208(O).

(2) Defendant shall have **120 days** from the date of this Order to comply with the Court's Order in this case.[7]

(3) A status conference with the parties is hereby scheduled for **February 10, 2026 at 1:30 p.m. in Courtroom 6A**.

(4) The Court **DIRECTS** the Clerk of Court to enter final judgment in Plaintiffs favor in accordance with this Order; the Court will retain jurisdiction over this case to ensure Defendant complies with the Court's Order.

Dated this 30th day of September, 2025.

Honorable James A. Soto
United States District Judge

---

[7] There has been no showing that a stay pending appeal is warranted in this case; the request to stay is therefore denied. *Nken v. Holder*, 556 U.S. 418, 434.