Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar No. 66065
James Otis Law Group, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com

*Attorneys for Proposed Intervenors President Petersen and Speaker Montenegro*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through parent and next friend Megan Roe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Sheila Sjolander, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, <br><br> Defendant. | Case No. 4:20-cv-00484-JAS <br><br> **Motion to Intervene Post-Judgment as Defendants by Arizona State Senate President Warren Petersen and Speaker of the Arizona House of Representatives Steve Montenegro** |

1

## INTRODUCTION

2    The Court has permanently enjoined an Arizona law governing amendments of birth

3    certificates.  *See* Doc. 310.  Under the Court's order, anyone may obtain a new birth

4    certificate based on a "sex change," a dramatic departure from a state law that, for more

5    than 50 years, required a "sex change operation."

6    Despite diligent inquiries, the Defendant has not committed to appealing this

7    permanent injunction.  President of the Arizona State Senate Warren Petersen and Speaker

8    of the Arizona House of Representative Steve Montenegro (the "Legislative Leaders") thus

9    move this Court to grant them intervention as Intervenor-Defendants for purposes of

10   appealing the Court's orders on summary judgment (Doc. 279), permanent injunction

11   (Doc. 310), and judgment (Doc. 311).

12   The Legislative Leaders easily satisfy the requirements for intervention.  The

13   motion is timely because it is made within the time to appeal.  The motion also is made

14   promptly, just one business day after the date by which the Legislative Leaders asked the

15   Defendant to make a decision on whether to appeal.

16   The Legislative Leaders have a significant protectable interest in the

17   constitutionality of state laws.  This interest is impaired by the permanent injunction, which

18   enjoins part of a state law based on the Court's interpretation of legislative intent.

19   The Legislative Leaders' interests will not be adequately represented if the

20   Defendant does not appeal.  But even if the Defendant does ultimately appeal, the

21   Legislative Leaders' interests still will not be adequately represented because Defendant

22   recently opposed merits and remedy arguments raised by the Legislative Leaders.

23   Finally, similar to the significant protectable interest analysis, the Legislative

24   Leaders have standing to defend the constitutionality of a state law.

25   The Court should grant the Legislative Leaders intervention as of right.  Moreover,

26   the Court should grant permissive intervention for purposes of appeal even if the

27   Legislative Leaders were not entitled, as they are, to intervention as of right.  Plaintiffs

28   oppose this motion.  The Defendant was not able to provide its position before this filing.

**BACKGROUND**

Plaintiffs brought a facial constitutional challenge to A.R.S. § 36-337(A)(3) and its implementing regulation A.A.C. R9-19-208(O).  Doc. 47; Doc. 279, at 1, 7.  Defendant State Registrar of Vital Records and Director of ADHS, represented by the Attorney General, opposed Plaintiffs' claims.  Doc. 56; Doc. 88; Doc. 230.  The Court granted summary judgment to the Plaintiffs on their constitutional claims, Doc. 279, and ordered briefing on the remedy, Doc. 281.

During the remedy briefing, the Legislative Leaders sought leave from the Court to file a brief as *amici curiae*.  Doc. 288.  Recognizing the Legislative Leaders' interests in the issues presented by this case, the Court granted *amici curiae* status, Doc. 292, and allowed the Legislative Leaders to brief and argue the issues before the Court, Doc. 289; Doc. 307.  Ultimately, the Court entered a permanent injunction in favor of Plaintiffs on September 30, 2025.  Doc. 310.

The next day, October 1, 2025, counsel for the Legislative Leaders reached out to an attorney in the Attorney General's Office representing the Defendant to see if the Defendant and the Attorney General's Office planned to file an appeal and what issues they planned to pursue on appeal.  The Legislative Leaders requested a response by October 6, 2025.

On October 2, 2025, counsel for the Legislative Leaders spoke by phone with counsel for the Defendant in the Attorney General's Office.  The Attorney General's Office reported that the Defendant had not reached a decision on whether to appeal, but the Office expected that a meeting would be held to discuss the decision by the end of the following week and expressed optimism that the decision would be made to appeal.  The Attorney General's Office promised to provide a report on the results of the following week's meeting.  In a follow-up email sent to counsel for the Legislative Leaders on October 6, 2025, the Attorney General's Office indicated that it should be able to provide the Department's final decision by October 9 or October 10, 2025.

The Attorney General's Office called counsel for the Legislative Leaders as

promised on October 10, 2025, but counsel did not carry news of a final decision.  Instead, counsel reported that the Defendant and the Attorney General's Office still had not reached a decision on whether to appeal and now expressed pessimism that an appeal would be filed.  The Attorney General's Office related that another meeting to discuss the appeal decision was planned for October 16, 2025, and counsel again promised to provide a report on the results of the meeting.  Counsel for the Legislative Leaders observed that the deadline to appeal was approaching, and that the Legislative Leaders would have to consider their options soon if the Defendant and the Attorney General's Office did not reach a firm decision to appeal.

In a follow-up message sent October 14, 2025, counsel for the Legislative Leaders reiterated that the Legislature strongly supported the Defendant and the Attorney General's Office filing an appeal, appealing all merits and remedy decisions, and seeking a stay pending appeal from the Ninth Circuit.  Counsel for the Legislative Leaders noted that if the Legislature did not receive a definitive response by October 17, 2025, that the Defendant would file an appeal, then the Legislature would have no choice but to proceed as if the Defendant would not file an appeal.

On October 16, 2025, the Attorney General's Office notified counsel for the Legislative Leaders that Defendant still had not reached a decision on whether to appeal and would not have an answer by October 17, 2025.  The Attorney General's Office gave no indication of when, or if, the Defendant would reach a decision on whether to appeal.

No decision on an appeal has been received to date from the Defendant or the Attorney General's Office.  Counsel for the Legislative Leaders contacted counsel for all parties at approximately 6 a.m. Arizona Time on October 20, 2025, to request positions on the motions to be filed by the Legislative Leaders later the same day.  Plaintiffs' counsel provided their position.  The Attorney General's Office was not able to provide its position before counsel for the Legislative Leaders filed the motions.

The Legislative Leaders thus are proceeding on the belief that the Defendant and the Attorney General's Office will not file an appeal.  Intervention by the Legislative

1    Leaders is necessary to protect their interests and to ensure that an appeal is filed. But even

2    if the Defendant and the Attorney General's Office ultimately file an appeal, intervention

3    by the Legislative Leaders is still necessary to ensure that all issues are raised and a stay

4    pending appeal is sought from the Ninth Circuit.

5          Even though this is a post-judgment proceeding and this Circuit has granted

6    intervention motions that did not include a pleading, *see, e.g.*, *Westchester Fire Ins. Co. v.*

7    *Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009), the Legislative Leaders are attaching an

8    Answer pursuant to Rule 24(c), *see* Exhibit A. The Legislative Leaders also are separately

9    moving to extend their time to appeal. *See Evans v. Synopsys, Inc.*, 34 F.4th 762, 772 (9th

10   Cir. 2022). Based on *Evans*, the Legislative Leaders also plan to file a protective notice of

11   appeal on or before October 30, 2025. *Id.* at 776 n.15. The notice of appeal is attached as

12   Exhibit B. Finally, the Legislative Leaders are separately moving for a stay pending

13   appeal.

14   ## ARGUMENT

15   **I.**    **Legal Standard**

16         Federal Rule of Civil Procedure 24 governs post-judgment intervention. *U.S. ex rel.*

17   *McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992). A court "must

18   permit any [applicant] to intervene," Fed. R. Civ. P. 24(a)(2), who demonstrates that: "(1)

19   the applicant's motion is timely; (2) the applicant has asserted an interest relating to the

20   property or transaction which is the subject of the action; (3) the applicant is so situated

21   that without intervention the disposition may, as a practical matter, impair or impede its

22   ability to protect that interest; and (4) the applicant's interest is not adequately represented

23   by the existing parties," *Covington Techs.*, 967 F.2d at 1394. "[T]he requirements for

24   intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water*

25   *Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *see also United States v. City of Los Angeles*,

26   288 F.3d 391, 397 (9th Cir. 2002) ("courts generally construe [Rule 24(a)] broadly in favor

27   of proposed intervenors"). Additionally, courts grant permissive intervention when the

28   applicant "has a claim or defense that shares with the main action a common question of

1    law or fact."  Fed. R. Civ. P. 24(b)(l)(B).

2         The "right to intervene for the purpose of appealing is well established" in this

3    Circuit.  *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1412 n.8 (9th Cir.

4    1996) (citing cases).  Since the year that President Dwight D. Eisenhower took office, the

5    Ninth Circuit has recognized that "[i]ntervention should be allowed even after a final

6    judgment where it is necessary to preserve some right which cannot otherwise be

7    protected," which includes "the right to appeal from the judgments entered on the merits

8    by the District Court."  *Pellegrino v. Nesbit*, 203 F.2d 463, 465-66 (9th Cir. 1953).  Post-

9    judgment intervention for purposes of appeal thus is allowed "if the intervenors act

10   promptly after judgment, and meet traditional standing criteria."  *Legal Aid Soc'y of*

11   *Alameda Cnty. v. Brennan*, 608 F.2d 1319, 1328 (9th Cir. 1979) (citations omitted).

12   "Intervenors in suits with a governmental party can often continue an appeal after the

13   governmental party has declined to do so, even if they would not have been proper parties

14   at the outset."  *California Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 845 (9th Cir.

15   2003) (citing cases).  The Legislative Leaders do not have liability for any attorneys' fees

16   already accrued by Plaintiffs.  *See Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.*, 890

17   F.2d 184, 194 (9th Cir. 1989).

18   **II.    The Legislative Leaders Are Entitled to Intervene as of Right**

19        The Legislative Leaders easily satisfy the requirements to intervene as of right for

20   purposes of appeal.

21        **A.    The Legislative Leaders' motion is timely.**

22        Courts evaluate three factors to determine timeliness: "(1) the stage of the

23   proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and

24   (3) the reason for and length of the delay."  *Cal. Dep't of Toxic Subs. Control v.*

25   *Commercial Realty Projs., Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (citations and

26   quotations omitted).  All three factors demonstrate that the Legislative Leaders' motion is

27   timely.

28        *First*, the Legislative Leaders seek to intervene at the post-judgment stage of

proceedings.  In this Circuit, "[g]enerally, the court will consider a post-judgment motion to intervene to be timely if filed within the time limitations for filing an appeal." *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 719 (9th Cir. 1994).  Here, the Court's order granting the permanent injunction and its judgment were each entered on September 30, 2025.  Docs. 310, 311.  Thus, the Legislative Leaders' motion is comfortably within the 30-day window for filing an appeal.  *See* FED. R. APP. P. 4(a)(1).

*Second*, there is no prejudice to the parties.  "[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult.'" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016) (citing *United States v. State of Oregon*, 745 F.2d 550, 552-53 (9th Cir. 1984)).  Additional briefing and different arguments on appeal do not constitute prejudice. *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 839 (9th Cir. 2022).

In other words, delay is the key consideration.  The Legislative Leaders seek to appeal within the normal timeframe to appeal and have not delayed.  No delay means no prejudice.  Another judge in this district held that a party timely filed a motion to intervene when it filed "prior to the expiration of the time for seeking an appeal," because that motion to intervene "cannot be said to prejudice either party to the litigation." *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, No. CV-16-0527, 2018 WL 11352129, at *2 (D. Ariz. Nov. 15, 2018).  Moreover, the Legislative Leaders are filing this motion the business day after the date by which they asked the Defendant to make a decision on whether to appeal.

*Third*, no delay has occurred.  In post-judgment intervention, courts consider whether proposed intervenors "act promptly after entry of judgment." *Covington Techs.*, 967 F.2d at 1395.  Here, the Legislative Leaders have acted promptly.  Counsel for the Legislative Leaders began communicating with counsel for Defendant in the Attorney General's Office the day after the Court issued the judgment.  These communications

continued multiple times per week since then in the attempt to learn Defendant's intentions regarding an appeal.  The Legislative Leaders asked for a decision to appeal by October 17, 2025, or else the Legislature would operate as if the Defendant had decided against appealing.  The Legislative Leaders are filing this motion the business day after that deadline, making this the first business day on which the Legislative Leaders "should have been aware [their] interests would no longer be protected adequately by the parties." *Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997).

The Supreme Court concluded that a post-judgment intervention motion was timely filed when it was filed "within the time period in which the named plaintiffs could have taken an appeal." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 396 (1977).  The Ninth Circuit also has held post-judgment intervention to be timely when parties moved within two weeks of learning that an appeal would not be taken.  *See Pellegrino*, 203 F.2d at 466 (appeal filed 12 days after party learned that party would not appeal).  The Legislative Leaders are moving for intervention within the time to appeal, and the first business day after the date by which they asked the Defendant to make a decision on whether to appeal. The Legislative Leaders' motion is timely.

### B.    The Legislative Leaders have significant protectable interests relating to the statute that is the subject of the action.

Courts "do not require" proposed intervenors to show "a specific legal or equitable interest"; instead, "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (cleaned up).  Accordingly, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (quoting *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)).  This is consistent with the Ninth Circuit's "traditionally liberal policy in favor of intervention." *Id.*

The Legislative Leaders have demonstrated significant protectable interests for

purposes of intervention.  The people of Arizona "have authorized the leaders of their legislature to defend duly enacted state statutes against constitutional challenge." *Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179, 200 (2022).  Under Arizona law, when an Arizona statute's constitutionality is challenged, the President or the Speaker, "in the party's discretion, may intervene as a party … in a proceeding that is subject to the notice requirements of this section."  A.R.S. § 12-1841(D).  Plaintiffs have confirmed that this proceeding is subject to the notice requirements of this section.  *See* Doc. 188.

Thus, when a state statute is challenged as unconstitutional, the Legislative Leaders "shall be entitled to be heard."  A.R.S. § 12-1841(A).  Accordingly, the Legislative Leaders have a crucial interest—bestowed by the people of Arizona through their elected representatives in the Legislature—in defending the constitutionality of state statutes. Courts have previously permitted the Legislative Leaders to intervene to defend the constitutionality of state statutes.  *See* Doc. 142, *Doe v. Horne*, 4:23-cv-00185-JGZ (D. Ariz. Aug. 22, 2023); Doc. 363, *Mi Familia Vota v. Fontes*, 2:22-cv-00509-SRB (D. Ariz. Apr. 26, 2023); *Isaacson v. Mayes*, 2:21-cv-01417-DLR, 2023 WL 2403519, at *2 (D. Ariz. Mar. 8, 2023).

The senators and representatives of Arizona also have authorized their legislative leaders to defend duly enacted state statutes against constitutional challenge.  The Arizona Constitution expressly provides that the Arizona Senate and House of Representatives shall each "determine its own rules of procedure."  Ariz. Const. art. IV, Pt. 2 § 8.  Pursuant to this constitutional authority, the Arizona State Senate and the Arizona House of Representatives passed virtually identical rules that authorize the President of the Senate and the Speaker of the House "to bring or assert in any forum on behalf of the [Senate/House] any claim or right arising out of any injury to the [Senate's/House's] powers or duties under the constitution or laws of this state."[1]  Ariz. State Senate Rule

---

[1] The Arizona Constitution charges the State Senate and House of Representatives to each "choose its own officers."  Ariz. Const. art. IV, Pt. 2 § 8.  In January 2025, the Arizona State Senate elected Warren Petersen as President, and the Arizona House of Representatives elected Steve Montenegro as Speaker.

2(N); Ariz. House of Representatives Rule 4(K).  Chamber rules thus empower President Petersen and Speaker Montenegro to seek intervention.

The Legislative Leaders also have a significant protectable interest in the remedy that enjoined part of a state statute, which the Court ordered based on a view of legislative intent that differed dramatically from the Legislative Leaders' understanding of legislative intent.  Combined with their statutory right to defend the constitutionality of state statutes, the Legislative Leaders are "apparently concerned [parties]" in this matter, *Wilderness Soc'y*, 630 F.3d at 1179, and satisfy this factor in favor of intervention.

**C.    The Legislative Leaders' significant protectable interests will be impaired absent intervention.**

When a proposed intervenor demonstrates a significant protectable interest, courts often "have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."  *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006); *see also* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ("If [a proposed intervenor] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene …."); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

The Supreme Court has held that statutes like A.R.S. § 12-1841 endow legislative leaders with a protectable interest that would be impaired absent intervention.  *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022).  Like Arizona, North Carolina has a law that allows the leaders of its legislature to participate in proceedings challenging the constitutionality of state statutes.  *Id.* at 186 (citing N.C. GEN. STAT. ANN. § 1–72.2).  The Court reaffirmed that "a State … may authorize its legislature to litigate on the State's behalf," for example, by "provid[ing] for other officials, besides an attorney general, to speak for the State in federal court, as some States have done for their presiding legislative officers."  *Id.* at 192-93 (cleaned up).  The Court reaffirmed that "state legislative leaders authorized under state law to represent the State's interests in federal court could defend state laws there as parties."  *Id.* at 193 (citing *Karcher v. May*, 484 U.S. 72, 75, 81-82

1   (1987)) (cleaned up).  As such, the Court held, "courts should rarely question that a State's

2   interests will be practically impaired or impeded if its duly authorized representatives are

3   excluded from participating in federal litigation challenging state law."  *Id.* at 191.

4        Here, the Legislative Leaders have identified significant protectable interests.  *See*

5   *supra*.  The Court's permanent injunction directly impairs those interests.  *See, e.g.,*

6   *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011)

7   (finding that proposed intervenor-defendant, in an action for injunction of a government

8   order, would suffer impairment of its interests, as a practical matter, should the plaintiffs

9   prevail).  Other courts have found that the interests of state legislatures are impaired by

10  injunctions and judgments against state statutes.  *See, e.g.*, *Isaacson*, 2023 WL 2403519,

11  at *2; *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 764–65 (E.D. Mich. 2020) ("If

12  Plaintiff prevails in obtaining an injunction against the enforcement of the signature

13  matching laws or in a judgment that the laws are unconstitutional, the laws that the

14  Legislature enacted, that the Legislature is tasked with designing, and that impact the

15  manner in which members the Legislature are chosen will be essentially declared void,

16  whether temporarily or permanently.").  Therefore, the Legislative Leaders have significant

17  protectable interests that would be impaired absent intervention.

18        **D.    The existing parties do not adequately represent the Legislative Leaders.**

19        Courts consider three factors when evaluating adequacy of representation: "(1)

20  whether the interest of a present party is such that it will undoubtedly make all of a

21  proposed intervenor's arguments; (2) whether the present party is capable and willing to

22  make such arguments; and (3) whether a proposed intervenor would offer any necessary

23  elements to the proceeding that other parties would neglect."  *Citizens for Balanced Use*,

24  647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).  When

25  a proposed intervenor and an existing party share the same "ultimate objective," a

26  presumption of adequacy arises which can be rebutted by a compelling showing of

27  inadequacy.  *Id.* (citations omitted).  However, "intervention of right does not require an

28  absolute certainty … that existing parties will not adequately represent [the proposed

11

intervenor's] interests." *Id.* at 900.  Rather, the proposed intervenor need simply show that representation of its interests "may be" inadequate.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  Indeed, "the burden of showing inadequacy is 'minimal' …." *Berg*, 268 F.3d at 823 (citing *Trbovich*, 404 U.S. at 538 n.10).  Accordingly, "[a]ny doubt as to whether the existing parties will adequately represent the intervenor should be resolved in favor of intervention." *Issa v. Newsom*, No. 2:20-cv-1044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (citation omitted).

The Legislative Leaders satisfy these requirements.  If the Defendant does not appeal, the Defendant will not adequately represent the Legislative Leaders' interests because there will be no appeal.  The Ninth Circuit and sister circuits agree that an original party's failure to pursue an appeal alone is enough to establish the inadequacy of representation factor.  *See, e.g.*, *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 941 (9th Cir. 2016) ("California then appropriately sought to intervene in order to fill the void created by the late and unexpected departure of Sheriff Gore from the litigation."); *see also Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir. 2005); *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997) ("Admittedly, failure to appeal, combined with diverging interests between the representative and the proposed intervenor, is surely enough to warrant intervention."); *Americans United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990) ("We agree with the District of Columbia Circuit that a decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest.").

But even if the Defendant does ultimately appeal, it already is clear that the Defendant will not "undoubtedly make all of a proposed intervenor's arguments" on appeal.  *See Citizens for Balanced Use*, 647 F.3d at 898.  The permanent injunction briefing and hearing before the Court highlighted this fact.  The Legislative Leaders raised numerous arguments before the Court as *amici curiae* which, as became apparent during the course of the permanent injunction proceedings, Defendants never sought nor intended to raise.  Some examples include: (a) the appropriate remedy in this action; (b) legislative

intent, as presented by the Legislative Leaders themselves; and (c) the impact of *United States v. Skrmetti* on Plaintiffs' Equal Protection challenge.[2]  *See generally* Doc. 289; Doc. 307.  In fact, not only did Defendant initially limit its arguments to disputes over the proposed injunctive language, *see* Doc. 287, at 2-6, following the hearing, but the Defendant also actively opposed the Legislative Leaders' requested remedy in its supplemental briefing.  *See* Doc. 308, at 7 ("The Legislature's proposed injunction is not the right remedy here.").  The Defendant also disagreed with the Legislative Leaders' interpretation of key Supreme Court cases that govern the remedy analysis.  *See id.*

In addition, the Legislative Leaders intend to argue on appeal that the Court's Equal Protection analysis is incorrect under *Skrmetti* and related authorities.  This is a substantively divergent (and likely case dispositive) defense of the statute as compared to the defense mounted by Defendant.  In fact, Defendant disagrees that *Skrmetti* even applies to this case.  *See* Doc. 308, at 9-10.  Thus, the Legislative Leaders will bring "necessary elements to the proceeding that other parties would neglect."  *Citizens for Balanced Use*, 647 F.3d at 898.

Therefore, the Legislative Leaders have met their "minimal" burden demonstrating that the existing parties do not adequately represent their interests, *see Berg*, 268 F.3d at 823, whether or not Defendant ultimately appeals.

### D.    The Legislative Leaders have standing to appeal.

The Legislative Leaders have standing to appeal in the event that no party appeals.  *See Legal Aid Soc'y of Alameda Cnty.*, 608 F.2d at 1328 (requiring showing of "traditional standing criteria" for post-judgment intervention where no party appeals).  Under Article III, "a plaintiff has standing if the plaintiff can show (1) an 'injury in fact' that is concrete and particularized and actual or imminent, not hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to

---

[2] The Legislative Leaders do not raise every issue they wish to assert on appeal, and expressly preserve the right to raise issues and arguments on appeal in addition to those mentioned here.

1    merely speculative, that the injury will be redressed by a favorable decision." *Mi Familia*
2    *Vota v. Fontes*, 129 F.4th 691, 707 (9th Cir. 2025).

3        The Supreme Court has "recognized that state legislators have standing to contest a
4    decision holding a state statute unconstitutional if state law authorizes legislators to
5    represent the State's interests." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 65 (1997)
6    (citing *Karcher v. May,* 484 U.S. 72, 82 (1987)); *see also Yniguez v. Arizona*, 939 F.2d
7    727, 733 (9th Cir. 1991), *vacated on other grounds sub nom. Arizonans for Off. English,*
8    520 U.S. 43 (1997) ("It is therefore clear that were Article XXVIII a statute rather than a
9    ballot initiative, the Arizona legislature would have standing to defend its
10   constitutionality."). Here, the Legislative Leaders enjoy standing to bring an appeal
11   because A.R.S. § 12-1841 "authorizes the Legislative [Leaders] to defend Arizona's state
12   laws on behalf of the State." *Mi Familia Vota*, 129 F.4th at 707. The Ninth Circuit recently
13   reaffirmed the well-established principle that a "permanent injunction of parts of [State]
14   Laws causes a clear and obvious injury to the State." *Id.* Because the injunction causes
15   "injury to the State," and the Legislative Leaders are authorized by the State to seek redress
16   from that injury by taking action to defend the constitutionality of state statutes, "the
17   Legislative [Leaders] have standing to bring their appeal." *Id.* at 707-08.

18   **II.    In the Alternative, the Court Should Grant Permissive Intervention**

19       Alternatively, the Legislative Leaders request that the Court grant permissive
20   intervention under Rule 24(b). Courts grant permissive intervention when the applicant
21   "has a claim or defense that shares with the main action a common question of law or fact."
22   FED. R. CIV. P. 24(b)(1)(B). "An applicant who seeks permissive intervention must prove
23   that it meets three threshold requirements: (1) it shares a common question of law or fact
24   with the main action; (2) its motion is timely; and (3) the court has an independent basis
25   for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th
26   Cir. 1998). "[T]he independent jurisdictional grounds requirement does not apply to
27   proposed intervenors in federal-question cases when the proposed intervenor is not raising
28   new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 844 (9th Cir.

2011). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

Here, the Legislative Leaders' motion is timely, and the independent jurisdictional grounds requirement is inapplicable to this federal constitutional challenge to a state statute. Moreover, the Legislative Leaders satisfy the "common question of law or fact" requirement, as they seek to appeal the injunction and judgment on the merits and otherwise uphold the constitutionality of the challenged state law. *See Jackson v. Abercrombie*, 282 F.R.D. 507, 520 (D. Haw. 2012) (finding "common questions of law and fact" where proposed intervenors sought to defend constitutionality of laws); *Issa v. Newsom*, No. 2:20-cv-1044, 2020 WL 6580452, at *1 (E.D. Cal. June 23, 2020) (same). As explained above, the Legislative Leaders have an important interest in defending the challenged law. In addition, there is no undue delay or prejudice here. The Legislative Leaders' motion is timely, and they intend to file an appeal within the normal 30-day appeal window or as soon as allowed by the Court, an appeal to which litigants are entitled as of right. *See* FED. R. APP. P. 3, 4.

Therefore, in the alternative, the Court should grant permissive intervention.

## CONCLUSION

For the reasons stated above, the Legislative Leaders respectfully ask the Court to grant intervention for purposes of appeal as of right or, alternatively, permissive intervention.

Dated: October 20, 2025               Respectfully submitted,

                                      JAMES OTIS LAW GROUP, LLC

                                      */s/ Justin D. Smith*
                                      Justin D. Smith, Mo. Bar No. 63253*
                                      Michael Martinich-Sauter, Mo. Bar No. 66065
                                      530 Maryville Centre Drive, Suite 230

St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
*pro hac vice*

*Attorneys for Proposed Intervenors*
*President Petersen and Speaker Montenegro*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 20, 2025, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*