Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar No. 66065
James Otis Law Group, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com

*Attorneys for Proposed Intervenors President Petersen and Speaker Montenegro*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Helen Roe, a minor, by and through parent and next friend Megan Roe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Sheila Sjolander, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, <br><br> Defendant. | Case No. 4:20-cv-00484-JAS <br><br> **Legislative Leaders' Motion for a Stay Pending Appeal and Request for an Administrative Stay** |

**INTRODUCTION**

President of the Arizona State Senate Warren Petersen and Speaker of the Arizona House of Representatives Steve Montenegro (the "Legislative Leaders") seek a stay pending appeal and an administrative stay in the interim. The Court previously denied the Attorney General's Office's single unsupported sentence requesting a stay, *see* Doc. 308, at 11, because "[t]here has been no showing that a stay pending appeal is warranted in this case," Doc. 310, at 8. The Legislative Leaders file this motion to demonstrate that a stay is warranted and to preserve their right to appeal any denial of a stay.

The Legislative Leaders are likely to succeed on the merits. The Supreme Court's recent decision in *United States v. Skrmetti* already requires reversal of this Court's decision on Plaintiffs' Equal Protection claim, as the Supreme Court itself demonstrated by vacating and remanding a judgment by the Tenth Circuit that contained reasoning similar to this Court's order. The Supreme Court is expected to issue another important Equal Protection ruling on transgender issues this term that also could have dispositive effect on Plaintiffs' challenge, further warranting a stay. *See W. Va. v. B. P. J.*, No. 24-43 (U.S.); *Little v. Hecox*, No. 24-38 (U.S.). Every known decision by the Courts of Appeals on similar laws, with the exception of the now-vacated Tenth Circuit decision, also shows that the Legislative Leaders are likely to prevail in their appeal of the Court's Equal Protection and Due Process decisions. And the Court's ruling on the remedy conflicts with Supreme Court precedent relating to legislative intent and other key issues.

The State of Arizona and the Legislative Leaders will suffer irreparable harm absent a stay. A State suffers irreparable harm whenever a statute is enjoined. That harm is exacerbated here because the permanent injunction will disrupt a stable system by imposing ambiguous rules to issue amended birth certificates, which the State may not be able to revoke even if the Legislative Leaders prevail on appeal. The equities and the public interest thus strongly favor a stay.

Plaintiffs oppose this motion. Defendant was not able to provide its position before this filing.

# ARGUMENT

## I. Legal Standard

Courts analyze four factors when considering a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). "The first two factors … are the most critical." *Immigrant Defenders Law Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025) (quoting *Nken*, 556 U.S. at 434).

## II. The Legislative Leaders Are Likely to Succeed on the Merits

The Legislative Leaders are likely to succeed on appeal.

### A. *United States v. Skrmetti* requires a different outcome in this case.

Earlier this year, the Supreme Court vacated and remanded the Tenth Circuit's opinion in *Fowler v. Stitt*, which upheld an Equal Protection challenge to Oklahoma's birth certificate law. *Fowler v. Stitt*, 104 F.4th 770, 800 (10th Cir. 2024), *cert. granted, judgment vacated*, 145 S. Ct. 2840 (U.S. June 30, 2025). The Tenth Circuit's Equal Protection analysis was similar to this Court's analysis. *See id.* at 783-97. Significantly, the Supreme Court vacated and remanded "in light of *United States v. Skrmetti*." 145 S. Ct. 2840. *Skrmetti* applies with equal force here.

The Court, in its order granting a permanent injunction (Doc. 310), declined to provide analysis of *Skrmetti*'s impact on this case. Instead, in a footnote, the Court stated that it had "reviewed" the opinion and found it "distinguishable" and "inapplicable." Doc. 310, at 3 n.4. That is incorrect.

As the Supreme Court's remand of *Fowler* made clear, *Skrmetti* applies to this birth certificate case. In *Skrmetti*, the Court considered an Equal Protection challenge to a state law banning use of puberty-blockers and hormones to treat gender dysphoria in minors. 145 S. Ct. 1816, 1824, 1829 (2025). The Court found that the state law classified based

3

on: (a) age; and (b) medical use. *Id.* at 1829. The Court rejected the argument that, because only transgender individuals are diagnosed with gender dysphoria, the state law represented a veiled sex-based classification. *Id.* The Court found that the law "does not prohibit conduct for one sex that it permits for the other," finding instead that under the law, "*no* minor may be administered puberty blockers or hormones to treat gender dysphoria" while "minors of *any* sex may be administered puberty blockers or hormones for other purposes." *Id.* at 1831. Put another way, the Court found that while "only transgender individuals seek puberty blockers and hormones for the excluded diagnoses, … in contrast … both transgender and nontransgender individuals" "seek puberty blockers or hormones to treat other conditions." *Id.* at 1833. Thus, the Court held that the state law did not "exclude any individuals on the basis of transgender status." *Id.* at 1833-34. The Court also observed that it "has not previously held that transgender individuals are a suspect or quasi-suspect class."[1] *Id.* at 1832.

Here, in its summary judgment ruling, the Court relied upon its finding that the "sex change operation" provisions in A.R.S. § 36-337(A)(3) and A.A.C. § R9-19-208(O) (collectively, the "challenged law"), "targets" transgender individuals because only transgender individuals would seek such an operation. Doc. 310, at 9, 11. This Court thus erroneously rejected the argument that the challenged law applies to any person, whether biologically male or female, thereby failing to represent any sex-based classification at all. *See also* A.R.S. § 36-337(A)(3) (providing exception for "a person" who has undergone the operation).

Under *Skrmetti*'s reasoning, this was error. Just as the state law in *Skrmetti* did not classify based on sex when it did "not prohibit conduct for one sex that it permits for the

---

[1] Notably, three concurring Justices separately explained their view that transgender status does *not* constitute a suspect class. *Skrmetti*, 145 S. Ct. at 1849-50, 1855 (Barrett, J., joined by Thomas, J., concurring) (opining "[t]he Equal Protection Clause does not demand heightened judicial scrutiny of laws that classify based on transgender status" and that "[r]ational-bases review applies"); *id.* at 1855, 1860 (Alito, J., concurring in part and concurring in the judgment) ("neither transgender status nor gender identity should be treated as a suspect or 'quasi-suspect' class"). The fact that this issue is likely to be settled upon the Supreme Court's resolution of *Hecox* and *B.P.J.* further underscores the vulnerability of this Court's rulings here, warranting a stay.

other"—*i.e.*, when it allowed individuals of "*any* sex" to receive the same benefit—here, the challenged law allows any individual of either sex to qualify for the exception. Similarly, just as in *Skrmetti*, where the Supreme Court found that the state law did not represent a veiled sex-based classification just because only transgender individuals seek puberty-blockers and hormones for gender dysphoria, here, the challenged law does not classify based on sex if, in the Court's view, only transgender individuals would seek sex change operations. Thus, under *Skrmetti*, rational basis review applies to this case. *See Skrmetti*, 145 S. Ct. at 1835.

For this reason, the Legislative Leaders are likely to prevail on appeal.

**B.     Recent decisions from the Courts of Appeals confirm the likelihood of success on appeal.**

In every known birth certificate and identification challenge similar to this action, with the exception of the Tenth Circuit's Equal Protection decision that the Supreme Court has since vacated, the Courts of Appeals have rejected the arguments accepted by this Court. These decisions by the Sixth, Tenth, and Eleventh Circuits strongly indicate that the Legislative Leaders will succeed on appeal.

The Sixth Circuit upheld a state law similar to Arizona's law against Equal Protection and Due Process challenges. *See Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024). Like here, plaintiffs alleged that Tennessee's law had the effect of preventing transgender individuals from changing the sex marker on their birth certificates. *Id.* at 553-54. The Sixth Circuit upheld the law under rational basis review. *Id.* at 566. The court noted that the state law's certificate amendment process "does not attach any significance to the biological sex of the applicant … all may seek to amend their birth certificates on the same terms." *Id.* at 555, 557. The court also held that rational basis review applies to claims of discrimination based on transgender status, stating that "plaintiffs cannot show that they qualify as a suspect class." *Id.* at 558. The Sixth Circuit held that "the Constitution does not create a general right of privacy, leaving most privacy-rights protection to the states or the legislative process" when finding that the state law "does not disclose [plaintiffs']

transgender status." *Id.* at 563 (quotations and citation omitted). The court also found that the state law's "insistence on maintaining a record of a person's biological sex does not disclose any mismatch with their gender identity." *Id.* at 564.

The Eleventh Circuit also upheld a Florida identification law against Equal Protection and Due Process challenges. *See Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335 (11th Cir. 2024). Similar to this action, Plaintiffs challenged the law's requirement that individuals seeking to change the sex marker on their driver's licenses first undergo "gender reassignment surgery." *Id.* at 1340. The Eleventh Circuit held that the state law did "not impose a sex-based classification" since it "imposes the same objective conditions on everyone." *Id.* Rational basis review applied. *Id.* The Eleventh Circuit emphasized that the state law "does not distinguish between males and females in any respect. Rather, it applies to *all* individuals wishing to have their sex changed on their Alabama driver's license." *Id.* at 1346 (cleaned up). The court also rejected the argument that under the state law, non-transgender individuals "can access a driver's license that accurately reflects their gender identity and the sex in which they are living … but that transgender people cannot do the same." *Id.* at 1347 n.9. The court found this argument to be a mere policy disagreement about the state law's merits and rejected the plaintiffs' argument this constituted classification based on transgender status. *Id.*[2] Similarly, the Eleventh Circuit held that the state law "neither violates Plaintiffs' right to informational privacy, nor infringes their right to refuse medical care like sex-change surgery." *Id.* at 1341. The Eleventh Circuit rejected the argument that the state law forced the plaintiffs into "giving up their constitutional right to refuse unwanted medical treatment" in order to obtain "a license they can actually use without sacrificing being their 'true self' or subjecting themselves to harassment, assault, or violence," noting that the plaintiffs failed to show that the state identification document is "meant to confer such a benefit." *Id.* at

---

[2] Like the concurring Justices in *Skrmetti*, the Eleventh Circuit observed that it has "never recognized transgender persons as a suspect class and instead ha[s] expressed 'grave doubt that transgender persons constitute a quasi-suspect class' for purposes of the Equal Protection Clause." *Corbitt*, 115 F.4th at 1347 n.9 (quoting *Adams by and through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 803 n.5 (11th Cir. 2022) (en banc)).

1351.

Finally, the Tenth Circuit's since-vacated opinion in *Fowler* also demonstrates that the Legislative Leaders will prevail on appeal of this Court's substantive due process ruling. In *Fowler*, the Tenth Circuit affirmed the district court's dismissal of a substantive due process challenge to Oklahoma's law on amending birth certificates. 104 F.4th at 797-800. The Tenth Circuit held that, like Plaintiffs in this case, the plaintiffs before it failed "to allege that their involuntary disclosures amount to state action." *Id.* at 800. The *Fowler* plaintiffs did not appeal this decision and did not file a cross-petition for a writ of certiorari, *see Stitt v. Fowler*, 24-801 (U.S.), and thus the issues before the Tenth Circuit on remand do not include substantive due process, *see* Doc. 119, *Fowler v. Stitt*, No. 23-5080 (10th Cir. Aug. 6, 2025), at 2. As previously discussed, the Supreme Court vacated the Tenth Circuit's Equal Protection decision under *Skrmetti*.

### C. The Legislative Leaders are likely to succeed in an appeal of the Court's decision on the remedy.

In its permanent injunction, the Court enjoined the single word "operation" in A.R.S. § 36-337(A)(3) and A.A.C. § R9-19-208(O). This remedy was inconsistent with legislative intent in violation of Supreme Court precedent.

When the court confronts "a constitutional flaw in a statute," "the touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'" *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328, 330 (2006) (citation omitted). The decision whether to declare a statute null and order its benefits not extend to the class "is governed by the legislature's intent, as revealed by the statute at hand." *Sessions v. Morales-Santana*, 582 U.S. 47, 73 (2017).

Without citing any evidence, the Court erroneously concluded that the "remedy to strike the word 'operation' aligns with legislative intent." Doc. 310, at 7. The Court did not address the extensive legislative history provided by the Legislative Leaders. *See* Doc. 307, at 3-13. Nor did the Court evaluate legislative intent or severability under state law,

*see* Doc. 310, as it was required to do, *see* Doc. 307, at 4-5 (citing cases). And the Court did not address issues relating to whether the injunction satisfied Rule 65, was outside the scope of Plaintiffs' complaint, and was waived. *Id.* at 3, 13-14.

These are all reversible errors, and thus the Legislative Leaders are likely to succeed on appeal of the Court's permanent injunction order.

**III.     The Legislative Leaders and the State of Arizona Are Likely to Be Irreparably Injured Absent a Stay.**

The State of Arizona will suffer irreparable injury from a permanent injunction. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (internal quotation omitted); *see also Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined"). As the Sixth Circuit explained when it granted a stay pending appeal of a district court's injunction of a state law challenged by transgender plaintiffs, "[i]f the injunction remains in place during the appeal, Tennessee will suffer irreparable harm from its inability to enforce the will of its legislature." *L. W. by & through Williams v. Skrmetti*, 73 F.4th 408, 421 (6th Cir. 2023). The same is true for Arizona here. Arizona also will suffer irreparable injury from its inability to further the considerations undergirding the law. *See id.*

Arizona and the Legislative Leaders also will suffer irreparable harm if a stay is not entered pending appeal. Without a stay, the Court's order will force Defendant to issue amended birth certificates to individuals who were not eligible for amended birth certificates under the original statute. In the likely event that the Legislative Leaders prevail on appeal, the Legislative Leaders are not aware of any procedure to revoke amended birth certificates issued pursuant to a reversed court order. *Cf.* A.R.S. § 36-337(H) (describing process if adoption annulled). Nor is it clear that the Legislative Leaders could pass legislation setting forth such a procedure after amended birth

certificates have been issued. *See, e.g.*, *Krol v. Indus. Comm'n of Arizona*, 565 P.3d 1013, 1021 (Ariz. 2025). This is especially important given the ambiguity and other Rule 65 issues that the Court did not resolve, which could result in a wide difference in how birth certificates are amended during the appeal. "Allowing the permanent injunction to remain in place before a merits panel of this court can ultimately rule on the constitutionality of the" Arizona birth certificate statute "could throw a previously stable system into chaos." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012)

**IV.   The Balance of the Equities and the Public Interest Strongly Favors a Stay.**

The final factor—public interest—"merge[s]" with the injury to the State and its citizens. *Nken*, 556 U.S. at 435. The Act, as a duly enacted law adopted by Arizona's elected representatives, is itself a clear and authoritative declaration of the public interest in Arizona. *See, e.g., Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937) (holding that a policy enacted in a statute "is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief"). The people of Arizona also have an interest in the effectiveness of laws passed by their elected officials. And statutes and institutions that require birth certificates further an interest in the accuracy of these vital records.

Class members will not be prejudiced because they already have waited approximately five years since this litigation began for relief. Any individual class member with an exigent need for an amended birth certificate could have taken action to address the issue before now. Thus, class members will not be prejudiced by a stay pending appeal.

The equities and the public interest thus strongly favor a stay pending appeal.

**CONCLUSION**

For the reasons stated above, the Legislative Leaders respectfully request that the Court issue a stay pending appeal. The Legislative Leaders further respectfully request that the Court issue an administrative stay while it decides this motion. *See Oregon v. Trump*, No. 25-6268, --- F.4th ---, 2025 WL 2848495, at *1 (9th Cir. Oct. 8, 2025).

Dated: October 20, 2025

Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar No. 66065
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
* *pro hac vice*

*Attorneys for Proposed Intervenors
President Petersen and Speaker Montenegro*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 20, 2025, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*