**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Patricia Cracchiolo LaMagna (Bar No. 021880)
Kelly L. Soldati (Bar No. 036727)
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004
Tel.: (602) 542-1610
Fax: (602) 364-0700
EducationHealth@azag.gov

Nathan T. Arrowsmith (Bar No. 031165)
Lauren A. Watford (Bar No. 037346)
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
(602) 542-3333
Nathan.Arrowsmith@azag.gov
Lauren.Watford@azag.gov
ACL@azag.gov

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend Megan Roe; et al., | No. 4:20-cv-00484-JAS |
| Plaintiffs, | |
| v. | **DEFENDANT'S RESPONSE TO LEGISLATIVE LEADERS' MOTION TO INTERVENE FOR PURPOSES OF APPEAL** |
| Sheila Sjolander, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, | |
| Defendant. | |

1    This case has been going on for half a decade. On September 30, 2025, the Court

2    entered final judgment. On October 30, 2025, Defendant timely filed a notice of appeal.

3    Over the past five years, Defendant has vigorously defended the constitutionality of

4    Arizona's vital records law concerning amendment to birth records. Defendant opposed

5    preliminary relief, moved to dismiss the complaint, opposed class certification, moved

6    for summary judgment and opposed Plaintiffs' motion for summary judgment. Therein,

7    Defendant consistently argued that A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208 do not

8    discriminate against the Plaintiffs or deprive them of any recognized due process right.

9    Most recently, Defendant opposed entry of a permanent injunction, arguing Plaintiffs had

10   not established entitlement to such relief.

11   Arizona State Senate President Warren Peterson and Speaker of the Arizona House

12   of Representatives Steve Montenegro ("Legislative Leaders") have been aware of this

13   case since its inception. In February 2025, they moved for leave to file a brief as amicus

14   curiae, which the Court granted.    Docs. 288, 292. The Legislative Leaders also

15   participated at oral argument on Plaintiffs' motion for a permanent injunction and filed a

16   supplemental brief. Doc. 307.

17   Now, weeks after judgment was entered, the Legislative Leaders move to

18   intervene, with no apparent change in circumstances to justify their five-year delay in

19   seeking party status. Doc. 314. The Legislative Leaders' seek only to defend the

20   constitutionality of A.R.S. § 36-337(A), an objective which they share with Defendant.

21   In support of their intervention, they point only to differences in litigation strategy

22   between Defendant and the Legislative Leaders in opposition to Plaintiffs' motion for a

23   permanent injunction. *See, e.g., Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838

24   (9th Cir. 1996) (affirming denial of motion to intervene where proposed intervenors rested

25   claim for intervention solely on a "difference in strategy."). It is apparent that Defendant

26   has adequately represented the Legislative Leaders' interest in this case for the past five

27   years and will continue to do so on appeal.    Their motion is also untimely. The

28   Legislative Leaders have known about this case since 2020 and the "concerns" they now

1

1    raise occurred months ago.  The Court should deny intervention as of right and permissive

2    intervention.

3    <center>**ARGUMENT**</center>

4    Under Rule 24, Fed. R. Civ. P., a party may seek to intervene as of right or

5    intervene permissively.  Because Defendant has vigorously defended the constitutionality

6    of the challenged statute and regulation for five years and the Legislative Leaders do not

7    purport to add anything to this defense but differences in litigation strategy, neither type

8    of intervention is appropriate here.

9    **I.    Defendant adequately represents the Legislative Leaders' interest in
10   defending state law.**

11   To intervene as of right under Fed. R. Civ. P. 24(a), the Legislative Leaders must

12   satisfy four criteria:

> (1) the applicant must timely move to intervene; (2) the
> applicant must have a significantly protectable interest relating
> to the property or transaction that is the subject of the action;
> (3) the applicant must be situated such that the disposition of
> the action may impair or impede the party's ability to protect
> that interest; and (4) the applicant's interest must not be
> adequately represented by existing parties.

17   *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*,

18   159 F.3d 405, 409 (9th Cir. 1998)).  "Failure to satisfy any one of the requirements is fatal

19   to the application."  *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841

20   (9th Cir. 2011) (citation omitted).

21   The Legislative Leaders "bear the burden of demonstrating that existing parties do

22   not adequately represent [their] interests." *Nw. Forest Res. Council*, 82 F.3d at 838.  The

23   "most important factor" in this analysis is how their interests compare to those of

24   Defendant.  *Arakaki,* 324 F.3d at 1086.  "When an applicant for intervention and an

25   existing party have the same ultimate objective, a presumption of adequacy of

26   representation arises," and a "compelling showing" to the contrary is required to rebut

27   that presumption.  *Id.*   And when a proposed intervenor has rested "its claim for

28   intervention entirely upon a disagreement over litigation strategy or legal tactics, courts

<center>2</center>

1    have been hesitant to accord the applicant full-party status." *League of United Latin Am.*

2    *Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997) (citing *Nw. Forest Res. Council,*

3    82 F.3d at 838).

4          Here, Defendant and the Legislative Leaders share an identical interest—to

5    "defend the constitutionality" of A.R.S. § 36-337(A)(3) and A.A.C. R9-19-208 (Mot. at

6    9). *See, e.g., Freedom from Religion Found., Inc.*, 644 F.3d at 841 (finding shared

7    ultimate objective in "uphold[ing] the constitutionality of the challenged statutes"); *Prete*

8    *v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) (same). The Legislative Leaders cannot

9    show, let alone make a "compelling showing," that their interests are not adequately

10   represented.

11         Throughout this case, Defendant has opposed Plaintiffs' requested relief at every

12   stage. After Plaintiffs filed their complaint and motion for a preliminary injunction in

13   November 2020, Defendant opposed preliminary injunctive relief. Doc. 23. When

14   Plaintiffs filed an amended complaint, Defendant promptly moved to dismiss. Docs. 47,

15   56. Defendant argued, among other things, that Plaintiffs lacked standing, that the Court

16   should exercise its discretion to decline jurisdiction, and that Plaintiffs failed to state a

17   claim because A.R.S. § 36-337(A) is facially neutral, does not discriminate against

18   individuals based on transgender status, and does not deprive Plaintiffs of any recognized

19   substantive due process right or force anyone to undergo a "sex change operation." Doc.

20   56. *Id.* at 24. Plaintiffs then moved for class certification on their facial and as-applied

21   claims. Doc. 89. Defendant engaged in a lengthy discovery process and then opposed

22   class certification. Doc. 169. By then, Plaintiffs had withdrawn their as-applied

23   challenge. Doc. 153 at 3. Defendant moved for summary judgment, arguing that A.R.S.

24   § 36-337(A) and A.A.C. R9-19-208 are constitutional because they do not facially

25   discriminate against Plaintiffs based on transgender status or deprive them of any

26   protected liberty interest. Doc. 230.

27         After the Court granted summary judgment to Plaintiffs on their claims, the Court

28   set a briefing schedule on the appropriate remedy. Docs. 279, 281. In responding to

Plaintiffs' motion for a permanent injunction, Defendant noted its disagreement with the Court's finding of a constitutional violation, reserved all arguments for appeal, and argued Plaintiffs failed to propose a permanent injunction that complied with Rule 65, Fed. R. Civ. P., and that could afford Plaintiffs the relief they seek.  Doc. 287.  In particular, Defendant argued Plaintiffs' proposal would require a complete rewrite of A.R.S. § 36-337(A) and Plaintiffs failed to cite any authority permitting Defendant to process amendments in the way Plaintiffs proposed.  *Id.*  After oral argument, the Court ordered supplemental briefing, wherein Defendant again argued Plaintiffs' revised proposal failed to comply with Rule 65, relied on an impermissible rewrite of the statute, and asked the Court to order Defendant to act in ways it lacked authority to do.  Doc. 308.  Defendant even suggested that these persistent deficiencies "illustrate that a permanent injunction may not be the right remedy here" and "[t]he Court need not award a permanent injunction just because Plaintiffs have asked for one."  *Id.*  It is clear that Defendant is appropriately defending the constitutionality of A.R.S. § 36-337(A).  *See League of United Latin Am. Citizens*, 131 F.3d at 1306.

Nevertheless, the Legislative Leaders now argue that their interests are not represented because at the time of their motion, Defendant was still analyzing whether to file an appeal.  Now that Defendant has appealed, this argument is moot.  But it is worth noting that Defendant, through counsel, communicated openly with the Legislative Leaders regarding the decision-making process up until the point that the Legislative Leaders filed their motion to intervene.  Rather than expressing "pessimism," as the Legislative Leaders claim (at 4), Defendant shared with the Legislative Leaders that one of the considerations was the potential financial impact of pursuing an appeal on the department, as any responsible public servant would consider.

The Legislative Leaders' remaining arguments fare no better.  The Legislative Leaders speculate that Defendant's defense of the law will be inadequate on appeal. They cite two arguments Legislative Leaders raised as amicus curiae that they claim Defendant

did not make in response to Plaintiffs' motion for a permanent injunction. Neither proves their point.

First, the Legislative Leaders point to Defendant's position on the scope of the proposed remedy. They claim Defendant initially limited opposition to the permanent injunction to "disputes over the proposed injunction language." Mot. at 13. This is simply incorrect, as detailed above. They then argue Defendant opposed their requested remedy based on a different view of legislative intent and interpretation of certain case law and contend they should be permitted to intervene to give their view of legislative intent. *Id.* But this divergence of opinions is, at most, a difference in litigation strategy.

A brief summary of the Legislative Leaders' and Defendant's arguments illustrates this point. As a proposed remedy, the Legislative Leaders as amicus curiae suggested enjoining more parts of A.R.S. § 36-337(A)(3) than challenged by Plaintiffs, including the part of the statute requiring Defendant to amend a birth certificate for persons who had "undergone a sex change operation" upon receipt of required documents. Doc 307. In response, Defendant stated the following: "Defendant understands that argument and has previously pointed out that such an injunction would be one way to avoid a substantial rewrite of the statute and rule." Doc 308 at 8; *see also* Doc. 287 at 6. But Defendant did not advocate for such an injunction because it was thus far undisputed that the Legislature's intent in enacting A.R.S. § 36-337(A)(3) was to provide a pathway for persons who had "undergone a sex change operation" to amend the sex marker on their Arizona birth certificate. Doc. 308; *see also* Court Order on Permanent Injunction, Doc. 310 at 7 (recognizing that this reading of legislative intent was undisputed). Further, Defendant had previously pointed out that courts should not enjoin a statute's plainly constitutional applications. And Defendant likewise did not agree that *Sessions v. Morales-Santana*, 582 U.S. 47, 74 (2017), a case about whether to extend a favorable benefit to remedy an equal protection violation, was applicable.

Defendant is permitted to exercise judgment as a matter of litigation strategy, and the resulting differences do not show inadequate representation of the Legislative

5

Leaders' interests.  *See, e.g., Nw. Forest Res. Council*, 82 F.3d at 838; *Freedom from Religion Found., Inc.*, 644 F.3d at 842.  Indeed, in *Northwest Forest Resource Council*, the Ninth Circuit considered whether an existing party adequately represented a proposed intervenors' interests where the party supported the district court entering a permanent injunction in order to obtain an appealable order, but proposed intervenors disagreed.  82 F.3d at 838.  The Ninth Circuit found such disagreement was merely a difference in strategy and "not central" to the action and affirmed the denial of intervention.  *Id.*; *see also, e.g., Freedom from Religion Found., Inc.,* 644 F.3d at 842 (recognizing the fact that an existing party "may offer a limiting construction of a statute that is narrower than that of a party proposing intervention" does not show inadequacy of representation).

Defendant does not dispute that it could be helpful for an appellate court to hear from the Legislative Leaders on their view of the legislative history and what it means for the scope of a permanent injunction.  But this interest is best served by participating as amicus curiae, "rather than bought with the price of intervention."  *Blake v. Pallan*, 554 F.2d 947, 955 (9th Cir. 1977); *see also, e.g., Miracle v. Hobbs*, 333 F.R.D. 151, 155 (D. Ariz. 2019) (denying motion to intervene by House Speaker and Senate President where Secretary of State already defending law, but allowing leave to file amicus brief); *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 275 (D. Ariz. 2020) (same).

Second, the Legislative Leaders suggest Defendant has taken a different position on the effect of *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), and "disagrees that *Skrmetti* even applies to this case."  Mot. at 13.  As a factual matter, that is not quite right.

At oral argument on the permanent injunction, the Legislative Leaders suggested the Court should reconsider its summary judgment order in light of *United States v. Skrmetti*, 145 S. Ct. 1816 (2025).  Defendant responded in supplemental briefing that it was not asking the Court to reconsider its prior order.  Doc. 308 at 10.  Defendant's reasoning was two-fold: (1) rather than proclaiming a broad rule requiring the Court reconsider its order at this stage, "the Supreme Court [in *Skrmetti*] focused specifically on the laws at issue and the classifications drawn by those laws"; and (2) "to the extent

*Skrmetti* can be read to suggest that lower courts should assess whether laws impacting transgender persons classify based on 'medical use' rather than sex or transgender status, Defendant already made those arguments in her summary judgment briefing" and the "Court rejected them." *Id.*  What is more, the Court said explicitly during oral argument that it was "not going to go back and revisit the issues that led to my issuing the order on summary judgment," and "we're not going to litigate those [issues]."  Transcript, Hearing on Plaintiffs' Motion for Permanent Injunction at 28:10-13.

The decision whether to pursue reconsideration or proceed to obtaining an appealable order is plainly a matter of litigation judgment.  *Nw. Forest Res. Council*, 82 F.3d at 838.  The Legislative Leaders' suggestion that Defendant will not adequately represent their interest on appeal because Defendant declined to ask the Court to reconsider its summary judgment order (something the Court had already avowed it would not do) is misleading and not supported by the record.

The Legislative Leaders cite three cases to suggest courts have permitted their intervention to defend the constitutionality of state statutes.  But none support that they have a right to intervene here.  In one case, the Court exercised its discretion to allow permissive intervention but denied intervention as of right, rejecting arguments similar to those the Legislative Leaders make here.  *See* Order, Doc. 79, *Doe v. Horne,* 4:23-cv-00185-JGZ (D. Ariz. June 12, 2023) (rejecting argument that interests were not adequately represented because Defendant "did not make all of the arguments raised by the Legislators in opposition to the motion for preliminary injunction, such as the definition of 'sex' under Title IX" and "Defendant suggested an alternative remedy while the Legislators did not.").  In the other two cases, either no one opposed intervention or no party disputed that their interests were not already represented.  *See* Order, Doc. 363, *Mi Familia Vota v. Fontes*, 2:22-cv-00509-SRB (D. Ariz. Apr. 26, 2023) (granting motion to intervene where no party opposed intervention); *Isaacson v. Mayes*, 2:21-cv-01417-DLR, 2023 WL 2403519, at *2 (D. Ariz. Mar. 8, 2023) (granting intervention where

existing state Defendants took no position on intervention and "no one contests … that the existing parties do not adequately represent Putative Intervenors' interest.").

## II. Even if the Legislative Leaders' interests were not adequately represented, their motion is untimely.

In determining whether a motion for intervention is timely, courts consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens*, 131 F.3d at 1302 (quoting *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)). "In considering these factors … [courts] must bear in mind that any substantial lapse of time weighs heavily against intervention." *Id.* (citation omitted). "[T]he crucial date in assessing the timeliness of an intervention motion is the date that the applicant should have been aware its interests would no longer be protected adequately by the parties." *Id.* at 1304 (citations and internal quotations omitted).

As explained above, this case has been ongoing for five years. Now, on a motion to intervene after final judgment, the Legislative Leaders argue for the first time that Defendant does not adequately represent their interest in defending the constitutionality of A.R.S. § 36-337(A) and A.A.C. R9-19-208.

If the Legislative Leaders were concerned about Defendant's response to Plaintiffs' permanent injunction motion, as they now claim, then they have been aware of those concerns since Defendant filed that response in January 2025. Doc. 287. But they did not seek to intervene then. Instead, the Legislative Leaders filed an amicus brief in support of Defendant. Docs. 288, 292. The Legislative Leaders also participated at oral argument and filed a supplemental brief as amici. Doc. 307.

The Legislative Leaders also seem to argue that Defendant's delay in filing a notice of appeal beyond the time they asked for Defendant's decision shows an unwillingness to defend the law on the merits. Not so. Rule 4, Fed. R. App. P., provides that all litigants have 30 days to file a notice of appeal from a district court judgment. It makes little sense

1   to read reluctance into Defendant's consideration of available options and then timely

2   filing a notice of appeal.  But, in any event, even an actual delay or stagnation in the

3   course of litigation, without more, would not justify an untimely motion to intervene.

4   *League of United Latin Am. Citizens*, 131 F.3d at 1304.

5         In *League of United Latin American Citizens*, the Ninth Circuit considered an

6   application for intervention as of right filed more than two years after the original actions

7   challenging the state law commenced.  131 F.3d at 1302.  To explain this lengthy delay,

8   the proposed intervenor argued "'the stagnate nature of the case has convinced [proposed

9   intervenor] that its interests may not be adequately represented' by the state defendants."

10  *Id.* at 1304.  The Ninth Circuit rejected this argument.  *Id.*

11        In finding adequacy of representation, the Ninth Circuit emphasized that, as here,

12  the state defendants opposed Plaintiffs' motion for preliminary relief, filed a motion to

13  dismiss, contested Plaintiffs' motion to certify the class, moved for summary judgment

14  and opposed summary judgment for Plaintiffs.  *Id.* at 1305.  The Court concluded there

15  was no reason to think the state defendants could not be counted on to defend the law and

16  in fact, "their actions suggest[ed] precisely the opposite conclusion."  *Id*. at 1306.  The

17  same is true here.

18        Given Defendant's vigorous defense of the constitutionality of the law at issue,

19  including opposing entry of a permanent injunction and filing a notice of appeal, the

20  Legislative Leaders have failed to justify their intervention at this late stage.  They point

21  only to differences in litigation strategy and their alleged concerns arose several months

22  before judgment was entered.  Accordingly, the Legislative Leaders' motion to intervene

23  is untimely and should be denied on that basis alone.  *See id.* at 1302.

24  **III.    The Court should deny permissive intervention.**

25        "[A] court may grant permissive intervention where the applicant for intervention

26  shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

27  applicant's claim or defense, and the main action, have a question of law or a question of

28  fact in common."  *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002)

1    (citation omitted).  "The court must consider whether the intervention will unduly delay

2    or prejudice the adjudication of the original parties' rights."  *Dep't of Fair Employment*

3    *& Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011).

4         "The district court is given broad discretion to make this determination."  *Perry v.*

5    *Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).  Accordingly, "[e]ven if an applicant

6    satisfies those threshold requirements, the district court has discretion to deny permissive

7    intervention."  *Donnelly*, 159 F.3d at 412.  "As with motions for intervention as of right,

8    [a] finding of untimeliness defeats a motion for permissive intervention."  *League of*

9    *United Latin Am. Citizens*, 131 F.3d at 1308 (citation and internal quotations omitted).

10   As with a motion under Rule 24(a), courts assessing timeliness under Rule 24(b)(2)

11   consider "the stage of the proceedings, the prejudice to existing parties, and the length of

12   and reason for the delay."  *Id.*  "In the context of permissive intervention, however,

13   [courts] analyze the timeliness element more strictly than [they] do with intervention as

14   of right."  *Id.* (citing *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)).

15        The Court should deny the Legislative Leaders' untimely motion for permissive

16   intervention.  At bottom, Defendant has been vigorously defending A.R.S. § 36-337(A)

17   for five years, and the Legislative Leaders cannot point to any change in circumstances

18   that justifies their five-year delay in seeking party status.  It would be prejudicial to permit

19   intervention at this late stage when Defendant is still actively defending the law.  And any

20   perspectives the Legislative Leaders may add are best shared in an amicus brief.  *See,*

21   *e.g., Blake*, 554 F.2d at 955; *Miracle*, 333 F.R.D. at 155; *Arizonans for Fair Elections*,

22   335 F.R.D. at 275.  Where, as here, proposed intervenors' interests are already represented

23   by existing parties, courts are well within their discretion to deny permissive intervention.

24   *See, e.g.*, *People of State of California v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 779

25   (9th Cir. 1986) ("[G]iven our conclusion that [proposed intervenors'] interests are

26   adequately represented by existing parties, we cannot say that the district court abused its

27   discretion in concluding that [their] intervention would be redundant and would impair

28   the efficiency of the litigation").

1

2

**CONCLUSION**

3

The Court should deny the Legislative Leaders' motion to intervene.

4

5

6

RESPECTFULLY SUBMITTED this 10th day of November, 2025.

7

8

9

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

10

11

By /s/ *Lauren Watford*

Patricia Cracchiolo LaMagna
Kelly L. Soldati
Assistant Attorneys General
Education and Health Section
2005 N. Central Avenue
Phoenix, Arizona 85004

12

13

14

15

16

Nathan T. Arrowsmith
Lauren A. Watford
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592

17

18

19

*Attorneys for Defendant*

20

21

22

23

24

25

26

27

28