Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar No. 66065
James Otis Law Group, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
* *pro hac vice*

*Attorneys for Proposed Intervenors President Petersen and Speaker Montenegro*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through parent and next friend Megan Roe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Sheila Sjolander, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, <br><br> Defendant. | Case No. 4:20-cv-00484-JAS <br><br><br> **Reply in Support of Motion to Intervene Post-Judgment as Defendants by Arizona State Senate President Warren Petersen and Speaker of the Arizona House of Representatives Steve Montenegro** |

In 2022, the Supreme Court ruled that, based on a state law similar to A.R.S. § 12-1841, the president of the North Carolina State Senate and the speaker of the North Carolina House of Representatives satisfied Rule 24's intervention requirements. *See Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 200 (2022). Plaintiffs' and Defendant's arguments opposing intervention are directly rejected by *Berger*. Defendant does not even mention the case, and Plaintiffs cite it once to incorrectly argue that no state official was defending the challenged statute. *Compare* Doc. 328, at 10 *with Berger*, 597 U.S. at 212 (Sotomayor, J., dissenting) ("the attorney general 'actively and adequately defend[ed] this

1    lawsuit'"").    Nor is *Berger* the only time that legislative leaders have been granted

2    intervention when an attorney general is already involved.  *See, e.g.*, *Horne v. Flores*, 557

3    U.S. 433, 443 (2009); *Robinson v. Ardoin*, No. 22-cv-211, 2022 WL 1154607, at *5 (M.D.

4    La. Apr. 19, 2022); *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 766 (E.D. Mich. 2020);

5    *Whitford v. Gill*, No. 15-cv-421, 2018 WL 11450090, at *2 (W.D. Wis. Nov. 13, 2018).

6    Under *Berger* and other relevant Ninth Circuit precedent, the Legislative Leaders

7    should be granted intervention.  Their motion is timely because it is made within the time

8    for appeal, does not prejudice the parties, and was not delayed.  A.R.S. § 12-1841 confers

9    on the Legislative Leaders a significant protectible interest in the constitutionality of state

10   statutes that would be impaired absent intervention.  Finally, Defendant's notice of appeal

11   does not change the critical fact that Defendant will not undoubtedly make all of the

12   Legislative Leaders' arguments on appeal because it already has opposed them.

13   The Court should grant the Legislative Leaders' Motion to Intervene.

14   <u>**ARGUMENT**</u>

15   **I.    The Court Should Grant Intervention as of Right.**

16   The Legislative Leaders have demonstrated their entitlement to intervention as of

17   right for purposes of appeal, and the arguments to the contrary lack merit.

18   **A.    The Legislative Leaders' Motion is timely.**

19   Plaintiffs and Defendant both recognize the three-factor test to determine timeliness,

20   Doc. 327, at 8, Doc. 328, at 4, yet Defendant does not argue any factor while Plaintiffs

21   invent inapplicable factors, *see id*.  The Legislative Leaders' Motion is timely under all

22   three applicable factors.

23   **1.    The stage of proceedings is post-judgment.**

24   No party disputes that motions to intervene post-judgment are generally timely in

25   this Circuit "if filed within the time limitations for filing an appeal."  *U.S. ex rel.*

26   *Killingsworth v. Northrop Corp.*, 25 F.3d 715, 719 (9th Cir. 1994); *U.S. ex rel. McGough*

27   *v. Covington Tech. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).  No party contests that the

28   Legislative Leaders moved to intervene within the time to file an appeal.  *See* FED. R. APP.

P. 4(a)(1).  And no party claims that the Legislative Leaders did not act "promptly" post-judgment.  *See Covington Tech. Co.*, 967 F.2d at 1395.  These undisputed points establish the first timeliness factor.

The Court should reject Plaintiffs' invention of an "unusual circumstances" factor and the 50-year-old district court case on which it relies.  *See* Doc. 328, at 4 (quoting *Associated Gen. Contractors of Cal. v. Sec'y of Com.*, 77 F.R.D. 31, 37 (C.D. Cal. 1977)).  *First*, the case is an outlier.  According to Westlaw, of the four cases citing this decision (all before 1987), only one cited its post-judgment intervention analysis—and that came from the same case on remand, when the same judge reversed course and granted intervention.  *See Associated Gen. Contractors of Cal. v. Sec'y of Com.*, 459 F. Supp. 766, 772 (C.D. Cal. 1978).  *Second*, the case is factually distinguishable.  Unlike here, *Associated General Contractors* involved parties who wanted to reopen the case and "move for a new trial," not file an appeal.  77 F.R.D. at 33.  *Third*, the Ninth Circuit has since determined that motions to intervene post-judgment for purposes of an appeal come "at an appropriate stage of the proceedings," and "comply[] with the first factor of the timeliness test."  *Northrop Corp.*, 25 F.3d at 719.

Plaintiffs also cite *Associated General Contractors* and three other decisions to incorrectly argue against timeliness of intervention in a post-judgment proceeding.  *See* Doc. 328, at 4.  But these decisions all involve motions to intervene for purposes of further district court litigation, not to pursue an appeal.  *See Associated Gen. Contractors of Cal.*, 77 F.R.D. at 33; *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1361 (11th Cir. 2022); *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997); *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).  As the Ninth Circuit explained when it distinguished the *Washington* case, when a party is seeking post-judgment intervention to appeal and not to participate in future aspects of district court litigation, the district court should treat the request as "timely if filed within the time allowed for the filing of an appeal."  *W. Watersheds Project v. Haaland*, 22 F.4th 828, 837 (9th Cir. 2022).  Nor do Plaintiffs provide any authority explaining why an original defendant filing an appeal

affects the timeliness analysis.  Doc. 328, at 5.

Because it is undisputed that the Legislative Leaders acted promptly and within the time to file a notice of appeal, the Legislative Leaders' Motion is timely.  *See Covington Tech. Co.*, 967 F.2d at 1395.

### 2.    No party will be prejudiced.

Even though prejudice to existing parties is "the most important consideration in deciding whether a motion for intervention is untimely," *W. Watersheds Project*, 22 F.4th at 838 (quotation omitted), no party has identified any relevant prejudice that will occur if intervention is granted.  Plaintiffs and Defendant do not dispute that the only relevant prejudice "is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016).

Defendant does not identify any prejudice.  In opposition to permissive intervention, Defendant concludes that "[i]t would be prejudicial" to permit post-judgment intervention.  Doc. 327, at 10.  However, by not identifying what that prejudice might be, Defendant has failed to establish any prejudice from intervention.

Plaintiffs also fail to identify any relevant prejudice.  Plaintiffs point to "the further delays intervention will cause," and worry that a stay will be granted.[1]  Doc. 328, at 7. None of this is relevant prejudice.  In fact, the Ninth Circuit has expressly rejected "prolonging the litigation" as prejudice from a post-judgment intervention motion.  *Smith*, 830 F.3d at 859.  Plaintiffs "do not suggest that their problems are materially different now than they would have been had" the Legislative Leaders sought intervention at an earlier date.  *United States v. Oregon*, 745 F.2d 550, 553 (9th Cir. 1984).  Indeed, "the passage of time does not significantly worsen their positions." *Northrop Corp.*, 25 F.3d at 719.

---

[1] Plaintiffs' argument relating to the Answer is a red herring.  Doc. 328, at 5, 7.  The Legislative Leaders made clear that they only attached an Answer to comply with Rule 24(c).  Doc. 314, at 5.  Plaintiffs have not identified any specific "conflict" in the Answer that causes prejudice, or any issue that they would need to "challenge" after the close of discovery.  Doc. 328, at 7.  And since the Legislative Leaders are seeking intervention only to appeal, no part of the Answer must be resolved to appeal judgment in Plaintiffs' favor.

4

Plaintiffs and Defendant both argue that the Legislative Leaders should have intervened at some earlier date—January 2025, Doc. 327, at 8, February 2025, Doc. 328, at 6, or August 2025, *id.*—but no party "has pointed to any evidence whatsoever of additional costs or other prejudice suffered between" those dates and October 2025. *Smith*, 830 F.3d at 859. "When our inquiry is properly narrowed to the prejudice attributable to [the intervenors'] delay in moving to intervene after the time [the intervenors] knew, or reasonably should have known, that their interests were not being adequately represented by existing parties, the prejudice to existing parties becomes nominal at best." *Id.*

Because no party has identified any relevant prejudice, the Legislative Leaders' Motion is timely. *See id.*

### 3.    Reason for the delay

The Legislative Leaders moved to intervene to appeal the district court's judgment. "[A]bsent some circumstance permitting an interlocutory appeal, the earliest the [Legislative Leaders] could have moved to intervene for purposes of taking an appeal from the [permanent injunction] order was after the judgment in the district court became final." *Covington Tech. Co.*, 967 F.2d at 1396. No party has identified an earlier point at which the Legislative Leaders could have intervened and sought an appeal of the Court's merits and remedy decisions. Indeed, the Legislative Leaders' earliest opportunity to appeal arrived after the Court issued its final judgment on September 30, 2025. The Legislative Leaders "attempted to intervene at that time and filed [their] motion to intervene within the time a named [defendant] could have filed a notice of appeal," which the Ninth Circuit held established timeliness under this factor. *Id.*; *see also Northrop Corp.*, 25 F.3d at 720. No party disputes these facts, and thus no delay existed.

Even if the Court disregards the appellate purpose of this intervention, the Legislative Leaders' Motion is still timely when "measur[ing] the length of an intervenor's delay by reference to the point at which the intervenor knew, or reasonably should have known, that its interests were not being adequately represented by existing parties." *W. Watersheds Project*, 22 F.4th at 839. That point materialized at the earliest when

Defendant filed its supplemental brief on August 29, 2025, disagreeing with case-dispositive arguments raised by the Legislative Leaders, including a Supreme Court decision that did not exist until June 2025.  *See* Doc. 308, at 7, 9-10.

The Legislative Leaders' Motion is timely if calculating from August 2025.  When evaluating post-judgment intervention for purposes of appeal, the Ninth Circuit found intervention timely when the motion, like here, came within three months.  *See W. Watersheds Project*, 22 F.4th at 840; *Smith*, 830 F.3d at 861.  Moreover, the Ninth Circuit has "found motions to be timely even in the face of *longer* delays than are present here."  *Smith*, 830 F.3d at 861 (citing *Oregon*, 745 F.2d at 552) (emphasis in original).  And because the only remaining case activity was the Court's judgment, the only purpose for intervention would be to file an appeal.  That could not be done until the Court ruled, *see Covington Tech. Co.*, 967 F.2d at 1396, and it would be unnecessary if the Court ruled in the Legislative Leaders' favor.  Thus, the Legislative Leaders appropriately waited for the Court's ruling instead of consuming the Court's and parties' resources with intervention that may not have been necessary.

No earlier date is an appropriate measuring point.  Both Plaintiffs and Defendant emphasize this litigation's "five-year" duration more than a dozen combined times in their briefs.  Doc. 327, at 1-2, 8, 10; Doc. 328, at 1, 4, 8, 9 n.3.  But no party claims that the Legislative Leaders should have intervened at the outset of the litigation.  Indeed, "it is settled–particularly where intervention is sought as of right–that the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness."  *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972).  This is not a case, like that cited by Defendant, in which intervention has been sought before trial because "litigation is progressing too slowly."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997).  Thus, the start of the litigation is not the appropriate measuring point.  *See W. Watersheds Project*, 22 F.4th at 839.

Plaintiffs and Defendant also do not identify any reason why the Legislative Leaders knew, or reasonably should have known, that their interests were not being adequately

represented when Defendant filed its original brief on the proposed remedy in January 2025. To the contrary, Plaintiffs repeatedly cite Defendant's January 2025 brief as evidence that Defendant was "put[ting] forth a robust defense of Plaintiffs' Equal Protection claim throughout the case." Doc. 328, at 11 (citing Doc. 287); *see also* Doc. 328, at 9 n.3. Indeed, as Defendant recognizes, "the Legislative Leaders filed an amicus brief *in support of Defendant*." *See* Doc. 327, at 8 (emphasis added). Consistent with the rules for amicus briefs, that amicus brief sought to provide the Legislative Leaders' "unique perspective" and "supplement the efforts of counsel." Doc. 288, at 2-5. Elsewhere, the Legislative Leaders argued against the proposed injunction "for the reasons explained by Defendant." Doc. 288-1, at 2 n.2. Because Plaintiffs and Defendant do not point to any issue in Defendant's January 2025 brief that placed the Legislative Leaders on notice that Defendant was not adequately representing their interests, January and February 2025 are not the appropriate measuring points. *See Smith*, 830 F.3d at 859.

> **B.** **The Legislative Leaders have significant protectable interests that would be impaired absent intervention.**

Defendant does not dispute that the Legislative Leaders have significant protectable interests or that those interests would be impaired absent intervention. *See* Doc. 327. Plaintiffs' cursory argument is easily dismissed. *See* Doc. 328, at 12.

Plaintiffs offer no response to any of the cases cited by the Legislative Leaders, including the on-point Supreme Court decision that post-dates the district court order on which Plaintiffs exclusively rely. *See Berger*, 597 U.S. at 191-95. Plaintiffs do not "question[] that States possess 'a legitimate interest in the continued enforce[ment] of [their] own statutes.'" *Id.* at 191 (second quotation marks omitted). Plaintiffs do not disagree that, "[l]ike the North Carolina statute in *Berger* that authorized the North Carolina House Speaker and Senate President to defend North Carolina's state laws on behalf of the State, Arizona Revised Statute § 12-1841(A) authorizes the Legislative Parties to defend Arizona's state laws on behalf of the State." *Mi Familia Vota v. Fontes*,

129 F.4th 691, 707 (9th Cir. 2025).[2]  Nor do Plaintiffs dispute "that federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Berger*, 597 U.S. at 191.

Holding otherwise in this case would "evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials" and "risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests." *Id.*  Thus, after *Berger*, *Miracle v. Hobbs*, 333 F.R.D. 151 (D. Ariz. 2019), is no longer good law.[3]

### C.    Defendant does not adequately represent the Legislative Leaders' interests for purposes of appeal.

Plaintiffs and Defendant claim that a presumption of adequacy applies because Defendant and the Legislative Leaders share the same "ultimate objective," Doc. 327, at 2-3, Doc. 328, at 9, but "none of these presumptions applies to cases like ours" because "the legislative leaders are *among* those [Arizona] has expressly authorized to participate in litigation to protect the State's interests in its duly enacted laws." *Berger*, 597 U.S. at 196 (emphasis in original).  Indeed, the Supreme Court has ruled "that a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.*  Because interests differ, no presumption applies here.

The Legislative Leaders have met their "minimal" burden to show that representation of their interests by the Defendant "may be" inadequate." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).

---

[2] Plaintiffs' standing argument does not address the fact that, earlier this year, the Ninth Circuit held that A.R.S. § 12-1841 provided the Legislative Leaders with standing to appeal an injunction of a state statute.  *See Mi Familia*, 129 F.4th at 708.  And since standing is only a required element when the original party does not appeal, *see California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 476 (9th Cir. 2022), the Legislative Leaders do not need to establish standing now that Defendant has appealed.

[3] The Legislative Leaders have not attempted to "escape the requirements of Rule 24," Doc. 328, at 12, but instead have meticulously explained why they meet each Rule 24 element.

1          **1.    Defendant will not undoubtedly make all of the Legislative**

2              **Leaders' arguments.**

3          "[T]his litigation illustrates how divided state governments sometimes warrant

4    participation by multiple state officials in federal court." *Berger*, 597 U.S. at 198.  The

5    Legislative Leaders have "identified three arguments that [Defendant] did not raise before

6    the District Court." *W. Watersheds Project*, 22 F.4th at 841.  Plaintiffs and Defendant do

7    not dispute that Defendant opposed the Legislative Leaders' proposed remedy.  *See* Doc.

8    308, at 7 ("The Legislature's proposed injunction is not the right remedy here.").  Plaintiffs

9    and Defendant do not dispute that Defendant did not argue that the remedy ultimately

10   ordered by the Court was inconsistent with legislative intent.  *See* Doc. 307, at 3-13.

11         Plaintiffs and Defendant unpersuasively downplay Defendant's opposition to

12   relying on *United States v. Skrmetti*.  Defendant seeks to cabin its position to whether

13   seeking reconsideration is appropriate.  *See* Doc. 327, at 6-7.  But Defendant was clear that

14   it disagreed that *Skrmetti* "proclaim[ed] a broad rule that affects this case" or "control[led]

15   the outcome," Doc. 308, at 9-10, and it does not argue otherwise now.  Plaintiffs wildly

16   mischaracterize the Legislative Leaders' position as faulting Defendant's summary

17   judgment briefing for not citing a decision that did not yet exist.  *See* Doc. 328, at 11.

18         The Legislative Leaders have identified three "colorable" arguments that Defendant

19   will not undoubtedly make on appeal, which "is sufficient at this stage."  *W. Watersheds*

20   *Project*, 22 F.4th at 841.  That the Legislative Leaders "might raise new, legitimate

21   arguments is a reason to grant intervention, not deny it."  *Id.* at 839.  To date, Defendant

22   also has "declined to seek a stay," *Berger*, 597 U.S. at 198, pending appeal from the Ninth

23   Circuit, meaning that a nearly 60-year-old Arizona law will not be in effect during the

24   appeal if the Legislative Leaders are not allowed to intervene.

25         The fact that the Defendant ultimately filed a notice of appeal does not paper over

26   that it will not undoubtedly make all of the Legislative Leaders' arguments on appeal.  In

27   fact, the Ninth Circuit has repeatedly identified a government defendant's reluctance to

28   take action until forced to do so by an intervening party as a "sufficient reason to doubt the

adequacy of the [defendant's] representation of [the intervenor's] interest so as to warrant intervention as of right." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (discussing cases). As the D.C. Circuit explained, "[t]he Government's representation of the appellants' interests became potentially inadequate only when it equivocated about whether it would appeal the adverse ruling of the district court." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001). Because "it is apparent that [Defendant's] arguments will not include the constitutional deficiencies raised by the [Legislative Leaders]," *Oregon*, 839 F.2d at 638, Defendant does not adequately represent the Legislative Leaders.

### 2. Defendant is not capable and willing to make such arguments.

Plaintiffs and Defendant rely on decisions in which the original defendant demonstrated that it was capable and willing to make all of the proposed intervenor's arguments. *See Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 952 (9th Cir. 2009); *Arakaki v. Cayetano*, 324 F.3d 1078, 1087 (9th Cir. 2003). Here, the Legislative Leaders have provided "examples of … differences" in arguments to be raised on appeal. *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 275 (D. Ariz. 2020). These differences are established through Defendant's own August 2025 briefing. *Compare Miracle*, 333 F.R.D. at 156 (denying intervention based on "suggesti[ons] (without support)").

Both Plaintiffs and Defendant repeatedly dismiss case dispositive arguments that Defendant will not raise as mere disagreements over "litigation strategy." *See* Doc. 327, at 1, 2, 5-6, 9; Doc. 328, at 9, 10, 11. But the Ninth Circuit recognizes a difference between "litigation strategy" and divergence of arguments raised. *See, e.g.*, *W. Watersheds Project*, 22 F.4th at 841 (reversing denial of intervention after finding representation was inadequate when existing parties failed to raise specifically identified arguments). Unlike Defendant's reliance on *Northwest Forest Resource Council v. Glickman*, in which the parties disagreed on the strategy for appealing an order, here Defendant and the Legislative Leaders are not "seeking the same limited interpretation" of the law or advancing the same case dispositive arguments for upholding it. 82 F.3d 825, 838 (9th Cir. 1996).

"It is sufficient for [the Legislative Leaders] to show that, because of the difference in interests, it is likely that Defendant[] will not advance the same arguments as [the Legislative Leaders]." *Berg*, 268 F.3d at 824. The Legislative Leaders have made that showing here.

> ### 3. The Legislative Leaders would offer necessary elements to the proceeding that other parties would neglect.

Defendant "does not dispute that it could be helpful for an appellate court to hear from the Legislative Leaders on their view of the legislative history and what it means for the scope of a permanent injunction"—an admission that the Legislative Leaders would offer necessary elements on appeal—but believes that is "best served by participating as amicus curiae." Doc. 327, at 6. In response to the same argument, the Ninth Circuit explained that this "argument ignores obvious distinctions between parties and amici." *Oregon*, 745 F.2d at 553. For example, the Ninth Circuit generally "do[es] not consider on appeal an issue raised only by an amicus." *Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993). And an amicus might not be able to continue an appeal if Defendant settled and dismissed the appeal. *See Wrightsell v. Cook Cnty.*, 599 F.3d 781, 785 (7th Cir. 2010).

Under A.R.S. § 12-1841, "the legislative leaders bring a distinct state interest to bear on this litigation." *Berger*, 597 U.S. at 199. The Legislative Leaders thus "bring[] a unique perspective to this litigation that existing parties may neglect." *W. Watersheds Project*, 22 F.4th at 842. Thus, Defendant does not adequately represent the Legislative Leaders.

## II.    The Court Should Grant Permissive Intervention.

Neither Plaintiffs nor Defendant dispute that the Legislative Leaders' defenses share "a common question of law or fact with the main action." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Their other arguments are duplicative of the timeliness and adequacy arguments, and they should be rejected for the same reasons discussed above.

## CONCLUSION

For these reasons, the Legislative Leaders respectfully ask the Court to grant intervention for purposes of appeal as of right or, in the alternative, permissive intervention.

Dated: November 17, 2025                    Respectfully submitted,

                                            JAMES OTIS LAW GROUP, LLC

                                            */s/ Justin D. Smith*_____
                                            Justin D. Smith, Mo. Bar No. 63253*
                                            Michael Martinich-Sauter, Mo. Bar No. 66065
                                            530 Maryville Centre Drive, Suite 230
                                            St. Louis, Missouri 63141
                                            (816) 678-2103
                                            Justin.Smith@james-otis.com
                                            * *pro hac vice*

                                            *Attorneys for Proposed Intervenors*
                                            *President Petersen and Speaker Montenegro*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 17, 2025, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

                                            */s/ Justin D. Smith*