Rachel Berg (*Pro Hac Vice*)
NATIONAL CENTER FOR LGBTQ RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone:   (415) 343-7679
Facsimile:   (415) 392-8442
Email:       rberg@nclrights.org

Mary O'Grady (011434)
Payslie Bowman (035418)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone:   (602) 640-9000
Facsimile:   (602) 640-9050
Email:       mogrady@omlaw.com
Email:       pbowman@omlaw.com

*Attorneys for Plaintiffs and the Class*

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Helen Roe, a minor, by and through her parent and next friend, Megan Roe; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Deborah Johnston, in her official capacity as State Registrar of Vital Records and Director of the Arizona Department of Health Services,<br><br>Defendant,<br><br>Warren Peterson, in his official capacity as President of the Arizona State Senate, and Steve Montenegro, in his official capacity as Speaker of the Arizona House of Representatives,<br><br>Intervernor-Defendants. | Case No. 4:20-cv-00484-JAS<br><br>**PLAINTIFFS' OPPOSITION TO INTERVENORS' MOTION TO STAY** |

1  Kyle C. Wong (*Pro Hac Vice*)
   COOLEY LLP
2  3 Embarcadero Center, 20th Floor
   San Francisco, California 94111-4004
3  Telephone:   (415) 693-2000
   Facsimile:   (415) 693-2222
4  Email:       kwong@cooley.com

5  Patrick J. Hayden (*Pro Hac Vice*)
   COOLEY LLP
6  55 Hudson Yards
   New York, New York 10001-2157
7  Telephone:   (212) 479-6000
   Facsimile:   (212) 479-6275
8  Email:       phayden@cooley.com

9  Jessica Taylor (*Pro Hac Vice*)
   COOLEY LLP
10 10265 Science Center Drive
   San Diego, California 92121-1117
11 Telephone:   (858) 550-6000
   Facsimile:   (858) 550-6420
12 Email:       jtaylor@cooley.com

13 *Attorneys for Plaintiffs and the Class*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

In seeking the "extraordinary remedy" of a stay pending appeal, Intervenors President of the Arizona State Senate Warren Petersen and Speaker of the Arizona House of Representatives Steve Montenegro ("Intervenors") claim that they meet all four elements required for a stay, including the two "most critical" ones—a likelihood of success on the merits and irreparable harm. But, for these two elements, Intervenors simply recycle the same meritless arguments regarding the constitutionality of A.R.S. § 36-337(A)(3) and irreparable harm this Court already rejected when it granted Plaintiffs a permanent injunction. This Court has already explained in detail why A.R.S. § 36-337(A)(3) violates the Fourteenth Amendment and why the state suffers no cognizable harm when prevented from enforcing an unconstitutional law. Intervenors' motion to stay (Dkt. No. 316, the "Motion" or "Mot.") offers nothing new and should be denied on this basis alone.

Intervenors also fail to establish the remaining stay elements. Denying a stay does not cause Intervenors injury, but granting a stay would cause Plaintiffs to suffer severe harm. Additionally, the public interest clearly favors striking down discriminatory laws. All four elements thus weigh against a stay.

Intervenors should not be permitted to disrupt this Court's rulings at the eleventh hour by forcing reconsideration of issues already decided. Denying this motion will also serve judicial economy: because Defendant's stay motion is currently pending before the Ninth Circuit (*Roe v. Johnston*, No. 25-6970 (9th Cir. Dec. 2, 2025), Dkt. No. 4), the appellate court can consider both stay petitions together rather than reviewing different rulings for different appellants in the same case.

For the reasons stated herein, Plaintiffs respectfully ask the Court to deny Intervenors' Motion, just as it denied Defendants' prior motion to stay the case pending appeal.

## II. LEGAL STANDARD

A stay pending appeal is an "'extraordinary remedy'" that will not be granted lightly. *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020) (quoting *Nken v. Holder*, 556

U.S. 418, 428 (2009)). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (citation omitted). Whether to grant a stay is a matter of discretion, guided by "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (citation omitted). "The first two factors … are the most critical." *Id*. The Ninth Circuit employs a sliding-scale approach to these factors, under which "the required degree of irreparable harm increases as the probability of success decreases." *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023) (citation omitted). Intervenors, as movants, bear the burden of showing that these factors favor a stay. *Mitchell*, 971 F.3d at 996.

### III.   ARGUMENT

#### A.   Intervenors Are Not Likely to Succeed on the Merits.

Intervenors cannot demonstrate a likelihood of success on the merits. Their four main arguments attacking this Court's rulings, addressed below, provide no basis for this Court to disregard its prior analysis. This Court properly found A.R.S. § 36-337(A)(3) unconstitutional and fashioned an appropriate remedy.

***First***, this Court has already rejected Intervenors' argument that *United States v. Skrmetti*, 605 U.S. 495 (2025) controls here. Intervenors claim that *Skrmetti* dictates that A.R.S. § 36-337(A)(3) does not discriminate on the basis of transgender status. But *Skrmetti* held that a statute regulating medical treatment for minors classified individuals based on age and medical use—not by transgender status—and therefore did not involve an impermissible classification for purposes of the Equal Protection Clause. Here, by contrast, the Surgical Requirement is a direct proxy for transgender status and discriminates on that basis.

As this Court explained, "any logical reading of the statute and regulation reflects that it applies nearly exclusively to transgender people." Dkt. No. 83 at 9–10; *see* Dkt. No. 279 at 8–9. This finding of discrimination was well-founded: as the Supreme Court and

1. Ninth Circuit have long explained, statutes that classify based on conduct or characteristics that define or closely correlate with a particular group facially discriminates against that group. *See, e.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews."); *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 689 (2010) (exclusion based on same-sex conduct is discrimination based on sexual orientation); *Latta v. Otter*, 771 F.3d 456, 467–68 (9th Cir. 2014) (bans on marriage for same-sex couples discriminated based on sexual orientation despite not referencing it explicitly). And because A.R.S. § 36-337(A)(3) classifies individuals based on transgender status, it is subject to heightened scrutiny under controlling Ninth Circuit precedent. *See Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019). Moreover, even if Intervenors are correct about the standard of review (they are not), this Court already correctly held that the statute cannot survive any level of scrutiny, *including* rational basis review. *See* Dkt. No. 279 at 13 n. 10 ("Defendant's positions in this case fail any level of scrutiny—including rational basis review."). Intervenors do not even address this holding.

In addition, Intervenors improperly invoke the Supreme Court's remand of the Tenth Circuit's decision in *Fowler v. Stitt*, 104 F.4th 770, 800 (10th Cir. 2024), *cert. granted, judgment vacated*, 145 S. Ct. 2840 (2025) (Mot. at 3) to claim that "*Skrmetti* applies with equal force" in this case. *Id.* Not so. In *Fowler*, transgender individuals obtained court orders directing amendment of their sex designations on official documents, but the Oklahoma State Department of Health denied their applications. *Fowler*, 104 F.4th at 775. Plaintiffs sued the state over its practice of denying amendments. Notably, the Tenth Circuit reversed dismissal of Plaintiffs' Equal Protection claim. *Id.* at 794. The Supreme Court did not reverse the Tenth Circuit's decision; it merely granted certiorari, vacated and remanded ("GVR") for further consideration in light of *Skrmetti*.

A GVR is not a ruling on the merits and does not displace controlling Ninth Circuit precedent. *See Lawrence on Behalf of Lawrence v. Chater*, 516 U.S. 163, 167 (1996) ("[A] GVR order . . . assists this Court by procuring the benefit of the lower court's insight before we rule on the merits[.]"); *Florida v. Burr*, 496 U.S. 914, 918 (1990) ("an order remanding

1  a case to a lower court does 'not amount to a final determination on the merits[.]'") (citing
2  *Henry v. City of Rock Hill*, 376 U.S. 776, 777 (1964)). It is well-established that a GVR
3  order "doesn't necessarily signal a disagreement with the panel's reasoning or
4  result." *Vincent v. Bondi*, 127 F.4th 1263, 1264 n.1 (10th Cir. 2025). And a GVR order does
5  not carry with it "some kind of presumption that the result should change." *Klikno v. United*
6  *States*, 928 F.3d 539, 544 (7th Cir. 2019); *see also Communities for Equity v. Michigan*
7  *High Sch. Athletic Ass'n*, 459 F.3d 676, 680 (6th Cir. 2006) ("[A] GVR does not indicate,
8  nor even suggest, that the lower court's decision was erroneous."). And as previously
9  discussed, *Skrmetti* does not change the result here.

10  **Second**, Intervenors' citation to a handful of the out-of-circuit decisions (Mot. at 5)
11  cannot show a likelihood of success. Intervenors do not cite a single Ninth Circuit case
12  supporting their position, and they ignore Ninth Circuit precedent that forecloses their
13  arguments. *See Karnoski*, 926 F.3d at 1200–01. And even if they were relevant, the out-of-
14  circuit cases Intervenors cite are readily distinguishable. In *Gore v. Lee*, the Tennessee
15  statute prohibited any changes to birth certificate gender markers absent proof of doctor
16  error at birth. 107 F.4th 548, 554 (6th Cir. 2024). Because the statute distinguished solely
17  based on whether a doctor erred in identifying biological sex at birth—a classification that
18  applies equally regardless of transgender status—the court applied rational basis review and
19  held that preserving historical facts was a rational basis. *Id.* at 555. Likewise, in *Corbitt v.*
20  *Secretary of the Alabama Law Enforcement Agency*, the Eleventh Circuit applied rational
21  basis review to a driver's license law that established uniform documentation requirements
22  for all individuals seeking to amend sex designations, regardless of whether they were
23  transgender. 115 F.4th 1335, 1347–48 (11th Cir. 2024). A.R.S. § 36-337(A)(3) is
24  fundamentally different. The Surgical Requirement does not establish a neutral, uniform
25  standard that applies to everyone. Instead, it targets transgender individuals specifically.
26  This facial discrimination based on transgender status triggers heightened scrutiny under
27  controlling Ninth Circuit precedent. And even under rational basis review, Defendant
28  offered no rational basis for the statute, as this Court correctly held.

***Third***, Intervenors wrongly claim that the legislative history undermines this Court's permanent injunction. But Intervenors provide *no argument* in their Motion as to the relevant legislative intent or how the "remedy was inconsistent with legislative intent in violation of Supreme Court precedent." Mot. at 7. Here, the Court's remedy—enjoining the word "operation"—*is consistent* with the legislative intent to provide this benefit to all transgender individuals born in Arizona who seek to amend their birth certificates but have not undergone surgery, which is consistent with the evidence Defendant introduced in this case. *See* Dkt. No. 230 at 4–7, 18–19. Accordingly, Intervenors are unlikely to succeed on the merits on this basis.

***Finally***, Intervenors assert in a single sentence that "the Court did not address issues relating to whether the injunction satisfied Rule 65, was outside the scope of Plaintiffs' complaint, and was waived." Mot. at 8. This argument is so vague that Plaintiffs cannot even properly respond. The Court simply enjoined enforcement of a *single* word—"operation"—in two locations in the statute. That approach provides the minimum relief necessary to remedy the constitutional violation. And the injunction plainly gives sufficient notice to Defendant about what she must do: grant requests to change sex markers when an application is supported by the requisite evidentiary documents.

In short, Intervenors have not satisfied their burden of showing that they are likely to succeed on appeal, and their stay motion should be denied on that basis alone.

    **B.**    **Intervenors Fail to Show Irreparable Harm.**

Intervenors must also demonstrate that irreparable harm is *probable* if a stay is not granted. *Mitchell*, 971 F.3d at 996. They have not done so. Intervenors identify no hardship or inequity that they will suffer if the case proceeds. *Sarkar v. Garland*, 39 F.4th 611, 617–18 (9th Cir. 2022). Nor can they; as this Court recognized, government officials "cannot suffer harm from an injunction that," as here, "merely ends an unlawful practice." Dkt. 310 at 5 (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

Intervenors argue that any time a State is enjoined, the State suffers. Mot. at 8 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But that is not

1  the law. The Supreme Court "has *never* held that a judicial decision invalidating a state law
2  as unconstitutional inflicts a discrete, cognizable injury on each organ of government that
3  participated in the law's passage." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S.
4  658, 666 (2019) (emphasis added). While "[i]ndividual justices, in orders issued from
5  chambers, have expressed the view that a state suffers irreparable injury when one of its
6  laws is enjoined," as in the case Intervenors rely on, no Ninth Circuit opinion "adopts this
7  view." *Latta*, 771 F.3d at 500 n.1.

8  Even if the State would be harmed without a stay—which it would not—Intervenors
9  are not the State. The *Nken* standard asks "whether the *applicant* will be irreparably injured
10 absent a stay," *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) (quoting *Nken*, 556
11 U.S. at 426) (emphasis added). Intervenors cannot meet this standard because the
12 responsibility to implement the laws lies with the executive branch, not the legislature.
13 Intervenors' own motion makes this issue clear: they complain that "the Court's order will
14 force *Defendant* to issue amended birth certificates." Mot. at 8 (emphasis added). The cases
15 Intervenors cite only reinforce the point—each involves irreparable harm claims by
16 executive officials, not legislators. *See King*, 567 U.S. 1301 (Attorney General); *Coalition*
17 *for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (Governor); *L. W. by &*
18 *through Williams v. Skrmetti*, 73 F.4th 408, 412 (6th Cir. 2023) (Attorney General).

19 Intervenors assert they "are not aware of any procedure to revoke amended birth
20 certificates issued pursuant to a reversed court order." Mot. at 8. But this does not establish
21 how the *Legislature* would be injured. Defendant—not Intervenors—has authority to
22 oversee vital records throughout the state, including the issuance and correction of Arizona
23 birth certificates. *See* A.R.S. § 36-302. Intervenors identify no harm they would suffer, let
24 alone the concrete, immediate injury required for a stay. *See, e.g.*, *Doe #1*, 957 F.3d at 1059–
25 60 (denying stay where government argued harm from not "effectuating an Act" and offered
26 only "conclusory factual assertions and speculative arguments"); *Al Otro Lado v. Wolf*, 952
27 F.3d 999, 1007 (9th Cir. 2020) (denying stay despite estimates of burden on immigration
28 system). This failure alone is dispositive. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th

Cir. 2011).

C. **Harm to Plaintiffs and the Public Interest Weigh Against a Stay.**

On the other side of the ledger, a stay *will* harm Plaintiffs. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). Further, Plaintiffs' irreparable injuries cannot be adequately remedied through monetary damages. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019) (*quoting Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008)) ("[C]onstitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."). A stay here would mean Plaintiffs' constitutional rights will be violated, and money damages will not remedy Plaintiffs' inability to obtain accurate birth certificates.

As the Court explained in granting Plaintiffs' motion for summary judgment, every time Plaintiffs use inaccurate birth certificates, they risk disclosing private medical information and exposing their transgender status—jeopardizing their safety in everyday activities. Dkt. 279 at 3–5, 10–12. The Named Plaintiffs have experienced violence, discrimination, and harassment as a result of being involuntarily outed as transgender. *Id.* at 5.

Finally, the public interest weighs heavily in favor of granting a permanent injunction because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted).

D. **Defendant's Response Does Not Change the Outcome.**

On January 30, 2026, months after this Court denied Defendant's request for a stay pending appeal, Defendant filed a "Response" to Intervenors' Motion in which she inappropriately sought a second bite at the apple. The Court should disregard her "Response" as an untimely motion for reconsideration. Moreover, her stay motion is now before the Ninth Circuit, not this Court. *See Roe v. Johnston*, No. 25-6970 (9th Cir. Dec. 19, 2019), ECF No. 14. Even were the Court to consider her arguments (it should not), they have no merit. Defendant argues that "her appeal will be resolved quickly." Dkt. 349 at 1.

1  First, Defendant cannot make such an assurance. The Ninth Circuit has issued a briefing
2  and argument schedule, but that does not indicate how long the appeal will take to resolve.
3  Second, her pure conjecture on this point is irrelevant. The instant stay must be granted or
4  denied on the basis of the *Nken* factors. Defendant notably cites no case for the proposition
5  that length of time for the resolution of an appeal is a proper stay factor. Intervenors do not
6  meet the requirements for a stay, as discussed above; Defendant's Response does not
7  change that.

8  **IV.    CONCLUSION**

9  For the foregoing reasons, Intervenors' Motion should be denied and Defendant
10 ordered to comply with the Court's permanent injunction within 14 days of an order denying
11 the Motion.

| | | |
|---|---|---|
| 1 | Dated: January 30, 2026 | COOLEY LLP |
| 2 | | |
| 3 | | /s/*Kyle C. Wong*<br>Kyle C. Wong (*Pro Hac Vice*) |
| 4 | | COOLEY LLP<br>3 Embarcadero Center, 20th Floor |
| 5 | | San Francisco, California 94111-4004<br>Telephone: (415) 693-2000 |
| 6 | | Facsimile:  (415) 693-2222<br>Email:     kwong@cooley.com |
| 7 | | Patrick Hayden (*Pro Hac Vice*) |
| 8 | | COOLEY LLP<br>55 Hudson Yards |
| 9 | | New York, New York 10001-2157<br>Telephone: (212) 479-6000 |
| 10 | | Facsimile:  (212) 479-6275<br>Email:     phayden@cooley.com |
| 11 | | Jessica L. Taylor (*Pro Hac Vice*) |
| 12 | | COOLEY LLP<br>10265 Science Center Drive |
| 13 | | San Diego, California 92121-1909<br>Telephone: (858) 550-6000 |
| 14 | | Facsimile:  (858) 550-6420<br>Email:     jtaylor@cooley.com |
| 15 | | |
| 16 | | Mary O'Grady (011434)<br>Payslie M. Bowman (035418) |
| 17 | | OSBORN MALEDON, P.A.<br>2929 North Central Avenue, 21st Floor |
| 18 | | Phoenix, Arizona 85012-2793<br>Telephone:  (602) 640-9000 |
| 19 | | Facsimile:   (602) 640-9050<br>Email:     mogrady@omlaw.com |
| 20 | | Email:     pbowman@omlaw.com |
| 21 | | Rachel Berg (*Pro Hac Vice*)<br>NATIONAL CENTER FOR LGBTQ |
| 22 | | RIGHTS<br>870 Market Street, Suite 370 |
| 23 | | San Francisco, California 94102<br>Telephone:  (415) 343-7679 |
| 24 | | Facsimile:   (415) 392-8442<br>Email:     rberg@nclrights.org |
| 25 | | *Attorneys for Plaintiffs and the* |
| 26 | | *Class* |
| 27 | | |
| 28 | | |