Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar No. 66065
James Otis Law Group, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Montenegro*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Roe, a minor, by and through parent and next friend Megan Roe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Deborah Johnston, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services, <br><br> Defendant, <br><br> and <br><br> Warren Petersen, President of the Arizona State Senate; Steve Montenegro, Speaker of the Arizona House of Representatives, <br><br> Intervenor-Defendants. | Case No. 4:20-cv-00484-JAS <br><br> **Intervenor-Defendants' Reply in Support of Their Motion for a Stay Pending Appeal** |

Every factor favors a stay. The Legislative Leaders have presented strong arguments that could win on appeal and serious legal questions under recent precedent. The State is irreparably harmed anytime its laws are enjoined, and the Legislative Leaders may protect those interests. Plaintiffs, on the other hand, will not be harmed during the stay. The public interest also strongly favors a stay. The Court should grant a stay pending appeal or, in the alternative, an administrative stay.

## I. The Likelihood of Success Factor Favors a Stay

Plaintiffs suggest that the Court must "disregard its prior analysis" in order to grant a stay. Opp'n at 2. Not so. Even if the Court remains convinced that a permanent injunction was warranted, "this 'does not preclude a granting of a stay of that injunction pending appeal as both issues require different analyses.'" *Sealant Sys. Int'l, Inc. v. TEK Glob., S.R.L.*, No. 5:11-CV-00774-PSG, 2014 WL 5141819, at *2 (N.D. Cal. Oct. 13, 2014) (citation omitted).

The likelihood of success factor does not "demand a showing that success is more likely than not." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (per curiam). When evaluating this factor, the Ninth Circuit applies "largely interchangeable" formulations of "reasonable probability," "fair prospect," "substantial case on the merits," or "serious legal questions … raised." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (quoting *Leiva-Perez*, 640 F.3d at 967-68). In essence, the Court considers whether the Legislative Leaders have "made a strong argument on which [they] could win." *Leiva-Perez*, 640 F.3d at 968.

The first factor favors a stay pending appeal because the Legislative Leaders have presented strong arguments on which they could win and raised serious legal questions.

### A. The Supreme Court's decision in *Skrmetti* provides a strong argument that could win.

Plaintiffs attempt to distinguish the Supreme Court's June 2025 decision in *United States v. Skrmetti*, 605 U.S. 495 (2025), by arguing that A.R.S. § 36-337(A)(3) is different from the law at issue in *Skrmetti* because the Arizona law "applies nearly exclusively to

2

transgender people." Opp'n at 2 (quoting Doc. 83 at 9-10). The Supreme Court rejected that argument in *Skrmetti*. 605 U.S. at 517-19.

In *Skrmetti*, the Supreme Court explained that the challenged statute divided patients "into two groups: those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." *Id.* at 519. The Supreme Court acknowledged that "only transgender individuals seek puberty blockers and hormones for the excluded diagnoses," and thus "the first group includes only transgender individuals." *Id.* However, "the second group, in contrast, encompasses both transgender and nontransgender individuals." *Id.* Thus, "there is a 'lack of identity' between transgender status and the excluded medical diagnoses." *Id.* For this reason, the Supreme Court held that the statute at issue did not classify based on transgender status. *Id.*

*Skrmetti*'s analysis is dispositive here. Just as in *Skrmetti*, § 36-337(A)(3) divides individuals into two groups: those who have undergone a sex change operation and those who have not. Neither group includes only transgender individuals. The former group, those who have undergone a sex change operation, consists of both transgender individuals and non-transgender individuals. *See* Amended Compl., Doc. 47, ¶ 47 ("A.R.S. § 36-337 provides for the issuance of an updated birth certificate … to correct the sex of a transgender or intersex person.").[1] The latter group, those who have not undergone a sex change operation, includes both transgender individuals (*e.g.*, Plaintiffs) and non-transgender individuals. Indeed, the overwhelming majority of individuals in the latter group—*i.e.*, the group of persons who *cannot* obtain an amendment under the statute—are not transgender.

Thus, as in *Skrmetti*, "there is a 'lack of identity' between transgender status" and

---

[1] For example, for decades, intersex children were often subjected to sex change operations. *See generally* Human Rights Watch & InterACT, *"I Want to Be Like Nature Made Me": Medically Unnecessary Surgeries on Intersex Children in the US* (July 25, 2017), *available at* https://tinyurl.com/ymemv4x7. For many of those children, the decision to conduct a sex change operation was made without them—before they were even old enough to have a say. *See id.*

3

whether an individual has undergone a sex change operation. *Skrmetti*, 605 U.S. at 519. As a result, *Skrmetti* dictates that § 36-337(A)(3) does not classify based on transgender status and is subject to rational basis review. *See id.*[2] This analysis is consistent with the decisions by the Sixth and Eleventh Circuits in cases involving sex identification on birth certificates and driver's licenses. *See Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024); *Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335 (11th Cir. 2024). Plaintiffs attempt to distinguish these cases by arguing that the statutes applied the same standards regardless of transgender status, Opp'n at 4, but so does the Arizona law at issue here.

### B. Post-*Skrmetti* actions underscore the strong arguments and serious legal questions present here.

Recent activity confirms that *Skrmetti* is a strong argument that could win and raises serious legal questions. The Ninth Circuit has cited to *Skrmetti* in only one case, *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646 (9th Cir. 2025), decided in November 2025, after the Legislative Leaders moved for a stay. In *Pritchard*, the Ninth Circuit vacated summary judgment for transgender plaintiffs who claimed that a health insurance plan that excluded gender reassignment surgery violated Section 1557 of the Affordable Care Act. *Id.* at 653, 655. Like Plaintiffs here, the plaintiffs in *Pritchard* argued that "*Skrmetti* is different because the exclusions here make 'direct references to transgender status'" and the provision at issue "equates with transgender status." *Id.* at 670-71. The Ninth Circuit rejected those arguments. *See id.*

*Pritchard*'s reasoning also applies to the Supreme Court's post-*Skrmetti* decision to grant certiorari, vacate, and remand ("GVR") in a birth certificate case. In *Pritchard*, the Ninth Circuit determined that the district court's "reasoning fail[ed] in light of *Skrmetti*" because the district court had relied on a decision that the Supreme Court vacated after

---

[2] Plaintiffs cite a single-sentence footnote that § 36-337(A)(3) cannot survive rational basis review. Opp'n at 3 (citing Doc. 279, at 13 n.10). Serious questions exist about whether this analysis survives after *Skrmetti*, a decision which the Court also dismissed in a single-sentence footnote. *See* Doc. 310, at 3 n.4. Due to these serious legal questions, the likelihood of success factor favors a stay.

4

*Skrmetti*. *Id.* at 669-70. While Plaintiffs dismiss the significance of a GVR, Opp'n at 3-4, the Ninth Circuit did not: "[W]hen the Supreme Court handed down *Skrmetti*, it held *Kadel* was no longer good law." *Pritchard*, 159 F.4th at 670 (citing *Folwell v. Kadel*, 145 S. Ct. 2838 (2025)). The GVR cited by the Ninth Circuit contains the same language as the GVR cited by the Legislative Leaders. *Compare Folwell*, 145 S. Ct. 2838 *with Stitt v. Fowler*, 145 S. Ct. 2840 (2025).

In other words, when presented with equal protection analysis in a birth certificate case similar to this Court's analysis, *see Fowler v. Stitt*, 104 F.4th 770, 783-97 (10th Cir. 2024), the Supreme Court found "enough similarity between the case before it and the intervening decision to indicate, as a *prima facie* matter, that the judgment below is in error," A. Hellman, *"Granted, Vacated, and Remanded"—Shedding Light on a Dark Corner of Supreme Court Practice*, 67 JUDICATURE 389, 393 (1984). Showing that the Supreme Court directed the Tenth Circuit "to reassess the validity of [its] panel opinion in light of [the new Supreme Court decision]," *Vincent v. Bondi*, 127 F.4th 1263, 1264 n.1 (10th Cir. 2025), supports a stay pending appeal.

Other stay decisions agree. In December 2025, the D.C. Circuit granted a stay pending appeal in a case by transgender plaintiffs challenging the military's gender dysphoria policy. *Talbott v. United States*, No. 25-5087, 2025 WL 3533344, at *1 (D.C. Cir. Dec. 9, 2025) (per curiam). The two judges who granted the stay relied on *Skrmetti* for their equal protection analysis. *Id.* at *5 (Katsas, J., joined by Rao, J.).

In another decision, the Supreme Court stayed pending appeal a preliminary injunction enjoining "an Executive Branch policy requiring all new passports to display an individual's biological sex at birth" rather than gender identity. *Trump v. Orr*, 146 S. Ct. 44, 46 (2025). According to the Supreme Court, "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." *Id.* While the Supreme Court's "interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion

in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

These decisions all demonstrate that the Legislative Leaders have strong arguments that could win on appeal and have raised serious legal questions meriting a stay.

C. **Serious legal questions support a stay.**

If the Court does not believe that *Pritchard* or the Supreme Court's GVR decision have any bearing here, then how the Ninth Circuit should apply *Skrmetti* to a birth certificate law will be an issue of first impression. In addition, this Court's summary judgment order did not cite a single case holding that a birth certificate law implicates due process rights to privacy, to define their identities, and to choose a particular medical treatment. *See* Doc. 279, 11-12. "District courts in this circuit often find that serious legal questions are presented when novel issues or matters of first impression are raised." *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1074 (S.D. Cal. 2019) (citing cases).

The Supreme Court also granted certiorari and heard arguments in two cases considering the appropriate standard of review to apply to equal protection challenges by transgender plaintiffs. *See W. Va. v. B. P. J.*, No. 24-43 (U.S.); *Little v. Hecox*, No. 24-38 (U.S.). Like the Ninth Circuit's acceptance of the Rule 23(f) petition in *Romero*, the Supreme Court's decision to hear these cases "demonstrates that serious legal questions are at issue." *Romero*, 383 F. Supp. 3d at 1074. For this reason, another Court in this district has stayed proceedings pending the outcome of *Hecox* and *B.P.J. See* Doc. 338, *Doe v. Horne*, No. 4:23-cv-185 (D. Ariz. Oct. 2, 2025). Plaintiffs have no response to the significance of *Hecox* and *B.P.J.*, never mentioning either. *Compare* Mot. at 2 *to* Opp'n.

Finally, "'[s]erious questions' that would support issuance of an injunction may also include serious legal questions as to proper interpretation of a statute." *Apache Stronghold v. United States*, 782 F. Supp. 3d 756, 765 (D. Ariz. 2025). The appeal here involves interpretation of § 36-337(A)(3) to craft the remedy. *See* Doc. 18, 25-6980 (9th Cir. Feb. 13, 2026), 38-49; Doc. 20, 25-6980 (9th Cir. Feb. 13, 2026), 51-56. The parties dispute whether the permanent injunction is consistent with legislative intent, *see* Opp'n at 5, and the injunction should be stayed while these serious legal questions are considered.

The Ninth Circuit has recognized the importance of these issues by scheduling the appeals for argument in April 2026 and imposing a briefing schedule that disallowed streamlined extensions of time. Doc. 9, 25-6980 (Jan. 28, 2026), 2. This Court should grant a stay pending appeal while the Ninth Circuit considers these serious legal questions.

## II.  The Irreparable Harm Factor Favors a Stay.

Plaintiffs do not deny that enjoining a state law constitutes irreparable harm. *See* Opp'n at 5-6. They instead incorrectly contend that this irreparable harm has only been recognized by individual justices in chambers and is not the law in the Ninth Circuit. *See* Opp'n at 5-6. But the Supreme Court recognized this irreparable harm in a majority opinion last year: "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). Citing *CASA*, the Ninth Circuit "acknowledge[d] the harms involved in denying the duly elected branches the policies of their choice" when it granted in part a stay pending appeal. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 994 (9th Cir. 2025). Under Supreme Court and Ninth Circuit precedent, enjoining § 36-337(A)(3) will cause irreparable harm to the State.

Plaintiffs are also incorrect that the Legislative Leaders cannot assert this irreparable harm. *See* Opp'n at 6. "Arizona law grants the Legislative Leaders authority to contest an injunction suspending the Legislature's enactments." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 994 (9th Cir. 2024) (Bumatay, J., dissenting) (citing A.R.S. § 12-1841). "Under the law, the Legislative Leaders are 'entitled to be heard' in proceedings implicating the constitutionality of a state law and 'may intervene as a party' or 'file briefs in the matter.'" *Id.* (quoting A.R.S. § 12-1841). "Given all this, the Legislative Leaders may assert irreparable harm on behalf of the State."[3]  *Id.*

---

[3] The majority in *Mi Familia Vota* did not reach whether the Legislative Leaders had authority to assert these interests and instead based their irreparable injury analysis on the conflicting views between the Legislative Leaders and the Attorney General. *Mi Familia*

To argue the contrary, Plaintiffs rely on an inapposite case that denied standing because only one legislative house appealed. *See* Opp'n at 6 (quoting *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 666 (2019)). But as that case noted, "the Court [has] recognized the standing of the Arizona House and Senate—*acting together*," *Virginia House of Delegates*, 587 U.S. at 667 (emphasis in original), as they are here.

Plaintiffs do not deny that "[a]llowing the permanent injunction to remain in place before a merits panel of this court can ultimately rule on the constitutionality of the" Arizona birth certificate statute "could throw a previously stable system into chaos." Mot. at 9 (quoting *Lair*, 697 F.3d at 1214). Plaintiffs also do not claim that amended birth certificates could be revoked or promise to return them if the Legislative Leaders are successful on appeal. The Supreme Court granted a stay in a similar situation. *See Dep't of Educ. v. California*, 604 U.S. 650, 651–52 (2025) ("respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed. No grantee 'promised to return withdrawn funds should its grant termination be reinstated'"). The Ninth Circuit also has found irreparable harm when the fundamental changes "the injunction imposes cannot be easily undone should [the appellant] prevail on appeal." *Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 756 (9th Cir. 2019) (citing cases).

Arizona's "clear framework," *Lair*, 697 F.3d at 1214, for birth certificate amendments has been in place for almost 60 years, Doc. 307, at 8-9. The Legislative Leaders have demonstrated a probability of irreparable harm absent a stay.

**III.   The Lack of Harm to Plaintiffs Favors a Stay.**

Plaintiffs do not identify a single, specific harm that will occur between now and when the Ninth Circuit issues a ruling. *See* Opp'n at 7. For purposes of a stay pending appeal, the Ninth Circuit "consider[s] the relative hardships during that period." *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1125 (9th Cir. 2008).

---

*Vota*, 111 F.4th at 983-84. That conflict does not exist here because the Attorney General supports a stay pending appeal. *See* Doc. 349.

Plaintiffs have presented no evidence that they or any class member will suffer any specific harm before the Ninth Circuit rules on the appeals by the Legislative Leaders and the State.

Instead, Plaintiffs claim a categorical harm based on deprivation of rights. Opp'n at 7. But when evaluating the probability of irreparable harm, the Ninth Circuit "focus[es] on the individualized nature of irreparable harm and not whether it is 'categorically irreparable.'" *Lair*, 697 F.3d at 1214. Plaintiffs present no evidence of individualized harm that will occur before the Ninth Circuit decides the appeals. In the stay context, mere "vague and generalized claims of potential harm" which are not "quantif[ied] or substantiate[d]" are insufficient. *EEOC v. Bashas' Inc.*, No. CV 05-2382, 2006 WL 8440620, at *5 (D. Ariz. Dec. 14, 2006). Even if Plaintiffs had identified specific instances in which they would use their birth certificates, Opp'n at 7, "any ensuing irreparable harm would be of their own making." *California*, 604 U.S. at 652. "Such self-imposed costs are not properly the subject of inquiry on a motion for stay." *Id.* (citation omitted).

Plaintiffs do not deny that any individual class member with an exigent need for an amended birth certificate could have taken action to address the issue before now. Nor do Plaintiffs' actions demonstrate that they imminently need relief. For example, in September 2024, Plaintiffs jointly proposed a January and February 2025 briefing schedule on the appropriate remedy in which briefing did not conclude until approximately 150 days after Plaintiffs submitted the proposed schedule. See Doc. 280, at 1. Nor did Plaintiffs seek to expedite this stay briefing. *See* Doc. 323. Plaintiffs' "long delays in taking action here suggest that they have been unbothered by whatever repercussions have been caused … and will not suffer irreparable harm if the injunction is not stayed." *Washington v. Trump*, No. 2:25-CV-00244-LK, 2025 WL 3144950, at *4 (W.D. Wash. Nov. 10, 2025).

The lack of harm to Plaintiffs before the Ninth Circuit's decision favors a stay.

### IV. The Public Interest Favors a Stay

Plaintiffs provide only a single sentence on why the public interest supports a stay, citing constitutional violations. Opp'n at 7. They have no response to the Supreme Court's declaration that a statute "is in itself a declaration of public interest and policy which should

be persuasive in inducing courts to give relief." Mot. at 9 (quoting *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937)). Arizona has declared the public interest by enacting § 36-337(A)(3) and keeping it in effect for decades.

The public also has an interest in the stability of long-standing laws. In a case involving a "stable" system that existed for decades, "the public interest lies with maintaining the *status quo* while the appeal is pending." *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020). Arizona's birth certificate law has "long stood" to verify identity, prevent fraud, and only allow amendments upon "well-laid and understood ground-rules." *Lair*, 697 F.3d at 1215. Plaintiffs do not contest that the people of Arizona have an interest in the effectiveness of laws passed by their elected officials decades ago. *Compare* Mot. at 9 *with* Opp'n at 7. Nor do Plaintiffs contest the public interest in the accuracy of vital records. *Id.*

Finally, federalism is an important public interest. "[I]t is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Golden Gate Rest. Ass'n*, 512 F.3d at 1127 (citation omitted). This Court should allow a long-standing state policy to remain in place during the appeal, which is set to be argued in just a few weeks.

## V. An Administrative Stay Is Warranted

The Court should grant a stay pending appeal. But if it does not, it should grant the Legislative Leaders' alternative request for an administrative stay, *see* Mot. at 9; Doc. 344, at 4, to allow the Ninth Circuit to decide the fully briefed motion for stay, *see* Doc. 349, at 1. The Legislative Leaders' requested stay pending appeal "will not be meaningful" absent an administrative stay to allow time for the Court to consider the request, "given the timelines specified in the Injunction" that require "evidence [of] compliance with the Injunction." *Oracle Int'l Corp. v. Rimini Street, Inc.*, No. 2:14-cv-1699, 2023 WL 5221947, at *5 (D. Nev. Aug. 15, 2023). Courts in this Circuit that have denied stays pending appeal have nevertheless entered administrative stays when a ruling on a motion

for stay cannot be obtained before compliance deadlines arrive. *Id.* at *6; *see also Planned Parenthood Monte Mar, Inc. v. Ford*, No. 3:85-cv-331, 2025 WL 1210968, at *6 (D. Nev. Apr. 25, 2025). Therefore, the Court should grant an administrative stay.

Plaintiffs believe it would "serve judicial economy" to deny a stay so "the appellate court can [somehow] consider both stay petitions together." Opp'n at 1. The opposite is true; judicial economy would be served by staying the permanent injunction from taking effect at least until the Ninth Circuit has had an opportunity to rule on the fully briefed stay motion before it. Denying a stay shortly before the Ninth Circuit hears the case and decides the fully briefed stay motion "could create a situation in which the provisions at issue are enjoined, un-enjoined, and then re-enjoined all in a matter of days or weeks, potentially leading to confusion." *Planned Parenthood*, 2025 WL 1210968, at *6. Because the Ninth Circuit is currently considering a motion for stay, the prudent course of action is to preserve the status quo and stay the permanent injunction until that motion is decided. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ("A stay is appropriate to avoid the disruptive effect of the repeated [enforcement and nonenforcement] of ["operation" in A.R.S. § 36-337(A)(3)] during the pendency of this litigation."); *Leiva-Perez*, 640 F.3d at 966 ("stays are typically … less disruptive than are injunctions"); *United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, No. 15-cv-1039, 2016 WL 1534885, at *2 (N.D. Cal. Apr. 15, 2016) (finding that "the risk of inconsistent results" contributed to "a 'pressing need' necessitating a stay" (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936))).

## **CONCLUSION**

The Legislative Leaders respectfully ask the Court to issue a stay pending appeal. In the alternative, the Legislative Leaders respectfully ask the Court to administratively stay the permanent injunction until the Ninth Circuit rules on the motion for stay.

| | | |
|---|---|---|
| 1 | Dated: February 20, 2026 | Respectfully submitted, |

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
Justin D. Smith, Mo. Bar No. 63253*
Michael Martinich-Sauter, Mo. Bar No. 66065
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
\* *pro hac vice*

*Attorneys for Intervenor-Defendants
President Petersen and Speaker Montenegro*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 20, 2026, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*